# EXHIBIT 8

# LOAN SERVICING AGREEMENT

This Loan Servicing Agreement (the "Agreement") is dated May 31, 2021, and is between Benworth Capital Partners PR, a company in formation under the laws of the Commonwealth of Puerto Rico ("SERVICER") and Benworth Capital Partners LLC, a Florida limited liability company (Lender).

1. **Scope.**

    a.  Lender retains SERVICER as Lender's agent to employ commercially reasonable efforts to collect all scheduled payments on various Loans originated by Lender ("Loan") which are evidenced by one or more promissory note(s) ("Note") and secured by one or more deed(s) of trust/mortgages ("Deed of Trust"), including the protection of the security for the Loan. SERVICER shall consult with and follow instructions from Lender on non-routine collection matters.

    b.  Lender retains SERVICER as Lender's agent to assist with its portfolio of Paycheck Protection Program loans ("PPP loans"), mainly by assisting with obtaining Forgiveness for said loans, Servicing, administering Guaranteed Purchase, and to provide Fraud monitoring for said loans.

2. **Term and Termination.** This Agreement shall commence as of the date of this agreement and continue throughout as "SERVICER" receives all necessary documents to service loans and this Agreement executed by all parties.

3. **Handling of Funds and Notices.** Payments received by SERVICER pursuant to this agreement shall not be commingled with the assets of the SERVICER or used for any transaction other than the transaction for which the funds are received (unless directed by Lender or Lender's agent).

4. **SERVICER Reliance of Information and Lender Representations.** The undersigned Lender represents that Lender, or its assignees, if any, owns the entire beneficial interest in the Loan. Lender agrees that SERVICER may rely on all prior servicing records and information provided to SERVICER by Lender or by a predecessor loan servicer and that SERVICER has no obligation or duty to research or verify such prior servicing records and information.

5. **Authority of SERVICER.** Without further authorization, Lender expressly authorizes SERVICER to take any actions set forth in this Agreement including, but not by way of limitation, those necessary to engage in loss mitigation, forbearance agreements, loan modifications, to initiate, conduct and conclude a non-judicial or judicial foreclosure or to exercise, on behalf of Lender, any remedies Lender may have.
whether they are yet to be incurred, upon SERVICER'S demand, Lender shall pay said Contractor fees and costs as directed by SERVICER. SERVICER may produce a copy of this Agreement as evidence of its authority. Should property be located in a city or county in which an ordinance exists where registration fees, inspection fees, etc. exist, Lender understands that Lender is responsible for payment of said fees, either directly by request of SERVICER or reimbursement to SERVICER.

6. **Default of Borrower.** Upon borrower's default under the Loan Documents and after receiving instructions of Lender, SERVICER, or its designated Contractor (e.g., trustee, substitute trustee, or foreclosure agent) are each authorized by Lender to take any and all reasonable or necessary actions on behalf of Lender to: (1) satisfy or complete any conditions precedent to initiating, processing and concluding a non-judicial or judicial foreclosure, including, but not limited to, taking any actions required or permitted by the Loan Documents or pursuant to State law; and (2) to initiate, process, and conclude a non-judicial foreclosure including, but not limited to, taking any actions required or permitted by the Loan Documents or pursuant to State law. The authority granted by the Lender under this Agreement includes, but is not limited to, SERVICER and a Contractor selected by SERVICER (e.g., trustee, substitute trustee, or foreclosure agent) each of whom is authorized to take all actions on behalf of Lender relating to executing and processing a Notice(s) of Default; a Declaration of Mortgage SERVICER included in the Notice(s) of Default; using a title company or vendor of SERVICER'S  choice for recording documents on behalf of Lender, SERVICER or its Contractor; to prepare and record a

Substitution of Trustee, if needed; to order a Trustee's Sale Guarantee or litigation guaranty; to mail "Post-Notice of Default Solicitation Letter" if necessary; to post, publish and take any and all other action regarding a Notice of Foreclosure Sale; to request a bid or postponement information; to send required postponement letters under Lender's or SERVICER'S name; to conduct and/or continue a Foreclosure Sale; to distribute all funds received whether reinstatement, payoff, or trustee sale proceeds.

**6. Loan Documents.** SERVICER shall retain custody as agent for Lender of the original note, deed of trust, mortgage, and any other document SERVICER feels is necessary to properly service the Loan. Lender is to receive notice of receipt of original documents at time of receipt by SERVICER. On assigned investor loans, the custody of documents shall be agreed upon by all parties.

**7.  Compensation.** For its services, SERVICER shall be paid the following amounts, broken down as follows:

| TYPE OF SERVICE | to SERVICER | | to Lender |
|---|---|---|---|
| Mortgage Loan Servicing Fee | 75% of the differential fee | | 25% of the differential fee |
| Mortgage Late Charge (10%) | 50% | | 50% |
| Mortgage loan preparation and recording of each Request for Notice | $50.00 | | 0 |
| Mortgage loan Set Up Fee – Should all documentation not be received at the onset or additional work must be performed to set up this file, an additional fee in the amount of "$75.00-$150.00" shall be charged to Lender | $125.00 | | 0 |
| Mortgage Default Interest | If default interest is 25%, 25%<br>If default interest is 18%, 25% | | 75%<br>75% |
| Mortgage Prepayment Penalty | 50% | | 50% |
| PPP loan forgiveness Fee | $500.00 per file | | 0 |
| PPP loan Fraud Monitoring Fees and Guaranteed Purchase | $50.00 per file | | 0 |
| PPP loan Servicing | 65 bps | | 0 |

**8.  Value of Real Estate Security.** Lender further understands and agrees that the security for any Note and Deed of

Trust/Mortgage is directly related to the equity in the security real estate ("Secured Property"). Lender understands that the value or saleability of real estate can change at any time and, therefore, that equity in the security real estate can increase or decrease. Lender hereby releases SERVICER from any liability whatsoever in connection with the determination of the value of the Secured Property.

9.  **Lender Indemnification of Servicer.** Lender agrees to hold harmless, indemnify and defend SERVICER from any and all claims, demands, judgments, actions, and liability [herein collectively "Claims"], including attorney's fees and costs incurred in responding to and/or defending against such Claims, arising from, or relating to in any way, the loan(s) and mortgages(s) which are the subject of this Agreement ("Indemnity").

10. **Survival.** The provisions of this Agreement relating to indemnity and all provisions relating to SERVICER'S fees, costs, and reimbursements for advances, shall survive the termination of this Agreement.

11. **Notice.** Notices pursuant to this Agreement shall be in writing and may be served by email with confirmation that the e-mail was delivered and read, facsimile with transmission and receipt verification; personal delivery; overnight delivery or certified mail, return receipt requested, at the SERVICER's addresses set forth at the beginning of this Agreement and at the Lender's address set forth below beneath the Lender's signature. Either party may change that party's address for notice by sending written notice to the other party. Notices pursuant to this paragraph shall be deemed received one business day after it was sent or transmitted as set forth herein or 2 business days after actual receipt, whichever is earlier.

12. **Venue**.  This Contract shall be governed in all respects by the laws of Puerto Rico. Any lawsuit or other action brought by or against either of the parties based upon or arising from this Contract shall be brought in a court or other forum of competent jurisdiction in Puerto Rico.

13. **Counterparts.** This Agreement may be executed in duplicate counterpart, and each such counterpart together shall constitute one document. This Agreement shall be considered fully executed as of the date last signed. This Agreement may be signed and the signatures may be transmitted by scan and email, and such faxed or scanned signatures shall be considered as original signatures.

**AGREED & ACCEPTED:**

**Benworth Capital Partners LLC,**
**a Florida limited liability company**

By: Bernardo Navarro

**Benworth Capital Partners PR,**
**a Company in formation under the laws of the Commonwealth of Puerto Rico**

By: Claudia P. Navarro