# EXHIBIT 9

# AMENDED LOAN SERVICING AGREEMENT

This Amended Loan Servicing Agreement (the "Agreement") is dated September 23, 2021, and is between Benworth Capital Partners PR LLC, a Puerto Rico limited liability company and Puerto Rico Mortgage Lender/Servicer, NMLS No. 2234263, License No. IH-253, having an address at Plaza 221, 221 Avenida Ponce de Leon, Suite 140, San Juan, Puerto Rico ("SERVICER") and Benworth Capital Partners LLC, a Florida limited liability company and Florida Mortgage Lender Servicer, NMLS No. 374363, License No. MLD359, having an address at 700 Biltmore Way, Suite C-1, Coral Gables, FL 33134 ("Lender"). The prior Loan Servicing Agreement signed May 31, 2021 is null and void. The parties agree as follows:

Benworth Capital Partners LLC is a commercial mortgage lender/servicer and is organized in the State of Florida under the rules of the National Mortgage Licensing System and the laws of the State of Florida, Office of Financial Regulation (OFR) under Chapter 494 of the Florida Statues.

Benworth Capital Partners PR LLC is a commercial mortgage lender/servicer and is organized in the Commonwealth of Puerto Rico under the rules of the National Mortgage Licensing System and the laws of Puerto Rico Oficina del Comisionado de Institutos Financieros (OCIF).

1. <u>Scope</u>.

    a. Lender retains SERVICER as Lender's agent to employ commercially reasonable efforts to collect all scheduled payments on various Loans originated by Lender ("Loan") which are evidenced by one or more promissory note(s) ("Note") and secured by one or more deed(s) of trust/mortgages ("Deed of Trust"), including the protection of the security for the Loan. SERVICER shall consult with and follow instructions from Lender on non-routine collection matters.

    b. Lender retains SERVICER as Lender's agent to assist with its portfolio of Paycheck Protection Program loans ("PPP loans"), mainly by assisting with obtaining Forgiveness for said loans, Servicing, administering Guaranteed Purchase, and to provide Fraud monitoring for said loans.

2. <u>Term and Termination</u>. This Agreement shall commence as of the date of this agreement and continue throughout as "SERVICER" receives all necessary documents to service loans and this Agreement executed by all parties. This Agreement shall terminate when any of these events occur: (a) payment in full of all Loans and reconveyance of the deed(s) of trust securing all the Loans; (b) 30-days written notice of termination by SERVICER to Lender; (c) 30-days written notice by Lender to SERVICER accompanied by instructions identifying the new person or entity to whom loan servicing shall be transferred; (d) issuance of a trustee's deed following a foreclosure of the Loan or final distribution of surplus proceeds whichever occurs last. Prior to the effectiveness of any termination, SERVICER shall deliver to Lender all of Lender's funds (less any amounts due Servicer), an appropriate accounting and all necessary documentation. At termination, Lender shall immediately reimburse SERVICER for any outstanding advances made pursuant to this agreement said funds cannot be intercepted as stated above.

3. <u>Specific Loan Servicing Functions</u>.

- As to mortgage loans, SERVICER shall: (a) issue payment coupons or monthly statements to the borrower directing Loan repayment to SERVICER; (b) issue payoff demands, beneficiary statements and verifications of mortgage; (c) demand, receive and collect all Loan payments and Loan payoff funds, and/or partial paydowns and deposit them immediately to SERVICER'S trust account and pay any such funds received to Lender within 25-days of receipt by the SERVICER; (d) issue annual income tax statements to the borrower and Lender; (e) answer borrower inquiries, demands and requests; (f) grant appropriate payment deferrals; however, the SERVICER shall not extend the Loan's maturity date without Lender approval, (g) maintain adequate insurance coverage which means that the SERVICER will monitor the continued effectiveness and claims on any property insurance listed in the Loan escrow instructions. Should borrower not pay for renewal of insurance, SERVICER may pay said premium or bind or obtain coverage for the Lender through its carrier, if said product is available; should property be impounded for insurance and federal or state law requires that servicer maintain the insurance when there is an impound account, thus requiring servicer to advance insurance payment, Servicer to be reimbursed for advance, (h) receive notices of property tax delinquencies, should a tax service be ordered through escrow or thereafter. SERVICER shall not be responsible should tax service fail to send timely notice; (i) execute and deliver on behalf of Lender and in Lender's name any documents necessary or convenient for the exercise of any rights or duties which Lender may have under the Loan; (j) endorse to SERVICER'S Trust Account any checks or money orders payable to Lender and to immediately deposit them into SERVICER'S trust account; (k) intentionally deleted; (l) notify Lender in writing within 5-days of the recording of any of Notice of Default or Notice of Trustee Sale on any senior liens about which Lender has informed SERVICER and on serviced loans; (m) notify Lender in writing within 5 days of the recording of any notice of default on their own loan (n) notify Lender within 5 days of the receipt of any payment constituting an amount greater than or equal to five monthly payments, together with a request for partial or total satisfaction of the mortgage, in which case the notice shall also indicate any further transfer or delivery instructions; (o) promptly forward to Lender a copy of any Notice of Sale or of any request for satisfaction on the Loan; (p) Lender within 15- days of any installments which becomes delinquent over 30-days; (q) provide a year-end accounting if required by statute or regulation; (r) promptly communicate to Lender any material information about collection of the Loan; and, (s) have the trust accounts of the SERVICER and of any affiliate, if any, inspected by an independent certified public accountant at no less than three-month intervals.

- As to PPP loans, on a daily basis SERVICER shall diligently communicate with borrowers to encourage them to apply for Forgiveness. This shall occur through phone communication, text, voice mail and emails.

  As to PPP loans, SERVICER shall monitor all fraudulent loan applications and submit SBA OIG investigations. SERVICER will also submit Suspicious Activity Reports to FINCEN of the United States Treasury Department.

  As to PPP loans, SERVICER shall facilitate the response to all subpoenas and request for information from any and all governmental agency.

  As to PPP loans, SERVICER shall submit fraudulent or non-performing loans to the United States Small Business Administration (SBA) for Guaranteed Purchase.

As to PPP loans, SERVICER shall administer servicing functions for the Lender.

As to PPP loans, SERVICER shall monitor any PPP loan Bankruptcy filings and submit appropriate documentation to Bankruptcy court if needed.

As to PPP loans, SERVICER shall work with Lender's customers who have submitted a Forgiveness Application to the SBA and are required by the SBA to provide additional information needed to the SBA to process the Forgiveness Application (each customer shall be referred to as an "Audited Applicant"). Specifically, SERVICER shall assist all Lender's Audited Applications which receive a request under the SBA's requests for "lender additional information needed" or "all docs request" (each application shall be referred to as an "Audited Application").

   a. SERVICER shall check the SBA's forgiveness portal on a daily basis for any new Audited Applications.
   b. Upon receipt from the SBA of an Audited Application, SERVICER shall send the required notification, along with a request for additional documents, to the Audited Applicant within five (5) days.
   c. SERVICER shall attempt to contact the Audited Applicant for thirty (30) days by telephone and email.
   d. SERVICER shall assist Audited Applicants to perform all necessary steps to ensure the initial responsive submission of an Audited Application to the SBA.
   e. SERVICER cannot guarantee that the Audited Applicant will be responsive to SERVICER's request for documentation, and compensation to SERVICER shall not be contingent upon completed Audited Applications, but rather on SERVICER making attempts to contact the Forgiveness Applicant no less than four (4) times after SERVICER communicates the initial request from the SBA to the Forgiveness Applicant.
   f. SERVICER shall be responsible for submitting the notice of SBA decision on the Audited Application to the Audit Applicant, and work with the borrower on any appeals.
   g. SERVICER shall notify Lender if information is needed from Lender, who shall provide the requested information to SERVICER within five (5) days from the date of the request for timely submission to the SBA.
   h. The SBA may also request an explanation as to Lender's proposed forgiveness amount. As to these requests, Lender shall be solely responsible to provide responses to the SBA.
   i. Lender shall designate a contact to which SERVICER can direct all requests for information, as well as status updates regarding the forgiveness files.

4. **Handling of Funds and Notices.** Payments received by SERVICER pursuant to this agreement shall not be commingled with the assets of the SERVICER or used for any transaction other than the transaction for which the funds are received (unless directed by Lender or Lender's agent). If the source for the payment is not the maker of the note, the SERVICER shall inform the Lenders in writing of the source for payment. If the SERVICER transmits to Lenders the SERVICER'S own funds to cover payments due from the borrower but

unpaid as a result of a dishonored check, the SERVICER may recover the amount of the advances from the trust fund when the past due payment is received or within 10 days of billing lender. Neither SERVICER nor any other person, is authorized by this Agreement or by law to issue, or to engage in any practice constituting, any guarantee or to engage in the practice of advancing payments on behalf of the borrower.

5. **SERVICER Reliance of Information and Lender Representations.** The undersigned Lender represents that Lender, or its assignees, if any, owns the entire beneficial interest in the Loan. Lender agrees that SERVICER may rely on all prior servicing records and information provided to SERVICER by Lender or by a predecessor loan servicer and that SERVICER has no obligation or duty to research or verify such prior servicing records and information.

6. **Authority of SERVICER.** Without further authorization, Lender expressly authorizes SERVICER to take any actions set forth in this Agreement including, but not by way of limitation, those necessary to engage in loss mitigation, forbearance agreements, loan modifications, to initiate, conduct and conclude a non-judicial or judicial foreclosure or to exercise, on behalf of Lender, any remedies Lender may have. **Lender understands that SERVICER does not have a propriety modification or forbearance plan available to offer borrowers. Lender represents that the Loan does not currently fall under any mandated government programs for payment assistance should the borrower default. Unless the Lender provides SERVICER with a written copy of Lender's proprietary loan modification or forbearance plan, Lender represents to SERVICER that Lender has no such plans. SERVICER is not authorized to enter into any forbearance plan or loan modification without the written consent of Lender unless mandated by statute or regulation. Lender authorization shall be on a loan-by-loan basis and shall be considered a "non-routine" matter. Upon Lender's consent, SERVICER may enter, on Lender's, or its assignee's behalf, a loan modification or forbearance plan.**

Lender authorizes SERVICER to employ outside services ("Contractors") reasonably necessary in the SERVICER sole discretion to protect Lender's interest in the Loan. These Contractors may include, but are not limited to, appraisers, attorneys, accountants, foreclosure agents/trustees, and services provided by SERVICER or by affiliated firms that are not within the scope of this Agreement (e.g., foreclosure agent or trustee when a foreclosure must be commenced). Whether Contractor's fees and costs have been incurred or whether they are yet to be incurred, upon SERVICER'S demand, Lender shall pay said Contractor fees and costs as directed by SERVICER. SERVICER may produce a copy of this Agreement as evidence of its authority. Should property be located in a city or county in which an ordinance exists where registration fees, inspection fees, etc. exist, Lender understands that Lender is responsible for payment of said fees, either directly by request of SERVICER or reimbursement to SERVICER.

7.     **Default of Borrower.** Upon borrower's default under the Loan Documents and after receiving instructions of Lender, SERVICER, or its designated Contractor (e.g., trustee, substitute trustee, or foreclosure agent) are each authorized by Lender to take any and all reasonable or necessary actions on behalf of Lender to: (1) satisfy or complete any conditions precedent to initiating, processing and concluding a non-judicial or judicial foreclosure, including, but not limited to, taking any actions required or permitted by the Loan Documents or pursuant to State law; and (2) to initiate, process, and conclude a non-judicial foreclosure including, but not limited to, taking any actions required or permitted by the Loan Documents or pursuant to State law. The authority granted by the Lender under this Agreement includes, but is not limited to, SERVICER and a Contractor selected by SERVICER (e.g., trustee, substitute trustee, or foreclosure agent) each of whom is authorized to take all actions on behalf of Lender relating to executing and processing a Notice(s) of Default; a Declaration of Mortgage SERVICER included in the Notice(s) of Default; using a title company or vendor of SERVICER'S choice for recording documents on behalf of Lender, SERVICER or its Contractor; to prepare and

record a Substitution of Trustee, if needed; to order a Trustee's Sale Guarantee or litigation guaranty; to mail "Post-Notice of Default Solicitation Letter" if necessary; to post, publish and take any and all other action regarding a Notice of Foreclosure Sale; to request a bid or postponement information; to send required postponement letters under Lender's or SERVICER'S name; to conduct and/or continue a Foreclosure Sale; to distribute all funds received whether reinstatement, payoff, or trustee sale proceeds. For each default of borrower, Lender authorizes SERVICER, in its sole discretion, to direct any and all foreclosure actions through foreclosure sale (which includes final distribution of any surplus proceeds), reinstatement, redemption or other legal satisfaction or extinguishment of the Deed of Trust/Mortgage. Lender understands that SERVICER may "underbid" to commence bidding, but SERVICER shall not accept less than full credit bid at Foreclosure sale without Lender's approval. Additionally, SERVICER has authority to quote payoff/reinstatements, or redemption figures to borrower and to collect all funds on Lender's behalf and release to lenders. While having the authority to do so, Lender agrees that SERVICER may refuse to take any action to initiate, process or conclude a non-judicial or a judicial foreclosure: (1) without an instruction from Lender; and, (2) until Lender has deposited any fees, costs, instructions, and documents required by SERVICER or by Contractor (e.g., trustee, substitute trustee or foreclosure agent).

**8. Protective Advances.** Lender shall make such advances that are necessary and prudent to protect and to collect Lender's interest in the Loan. SERVICER, in its absolute discretion, may, but is not obligated to, advance its own funds to protect the security of Lender's Loan, including making advances to cure senior liens, property insurance, foreclosure expenses, repairs, advertising, litigation expenses, and similar items, but not Loan payments. SERVICER shall be reimbursed such advances within 10 days after the SERVICER'S written demand on Lender. SERVICER may be entitled to fees for these advances. To secure SERVICER's advances, Lender hereby irrevocably assigns to SERVICER, to the extent of advances owed to SERVICER, the next Loan payments or portion of loan payoff received after a SERVICER advance is made. Should Lender not reimburse SERVICER upon SERVICER'S demand for any fees or advances due SERVICER, SERVICER has the right to deduct said amount from any funds due Lender (including funds from other loans serviced by SERVICER to the extent of said Lender's interest in said other loans being serviced by SERVICER).

**9. Loan Documents.** SERVICER shall retain custody as agent for Lender of the original note, deed of trust, mortgage, and any other document SERVICER feels is necessary to properly service the Loan. Lender is to receive notice of receipt of original documents at time of receipt by SERVICER. On assigned investor loans, the custody of documents shall be agreed upon by all parties.

**10. Compensation.** For its services, SERVICER shall be paid the following amounts, broken down as follows:

| TYPE OF SERVICE | to SERVICER | | to Lender |
|---|---|---|---|
| Mortgage Loan Servicing Fee | 75% of the differential fee | | 25% of the differential fee |
| Mortgage Late Charge (10%) | 50% | | 50% |
| Mortgage loan preparation and recording of each Request for Notice | $50.00 | | 0 |
| Mortgage loan Set Up Fee – Should all | $125.00 | | 0 |

5 of 7

| | | | |
|---|---|---|---|
| documentation not be received at the onset or additional work must be performed to set up this file, an additional fee in the amount of "$75.00-$150.00" shall be charged to Lender | | | |
| Mortgage Default Interest | If default interest is 25%, 25% If default interest is 18%, 25% | | 75% 75% |
| Mortgage Prepayment Penalty | 50% | | 50% |
| PPP loan forgiveness Fee | $500.00 per file | | 0 |
| PPP loan Fraud Monitoring Fees and Guaranteed Purchase | $50.00 per file | | 0 |
| PPP loan Servicing | 65 bps | | 0 |

In addition, all payoff demand/reinstatement fees, verification of mortgage fees, wire fees, NSF fees, overnight charges, forbearance agreement/modification fees, and bankruptcy administration fees are 100% due to SERVICER-- SERVICER'S compensation is subject to change upon 30-days written notice to Lender; Lender may avoid changes by terminating this Agreement in writing within the 30-day period. Should Lender cancel servicing, a $50.00 fee **per file cancelled** shall apply in addition to the minimum servicing fee charge per file. Should SERVICER be required or requested to perform additional services outside the scope of this Agreement (e.g., trial testimony, deposition testimony, travel and waiting time in litigation matters), an hourly rate of $75.00 to $250.00 per hour may apply, depending upon the type of personnel needed to perform said duty. This does include SERVICER'S testimony time in court or in deposition. To secure SERVICER'S COMPENSATION, Lender hereby irrevocably assigns to SERVICER, to the extent of compensation owed to SERVICER, the next Loan payments or portion of loan payoff received from this loan or any other loan which may be owned by Lender after SERVICER'S compensation has not been paid.

11. **Value of Real Estate Security**. Lender further understands and agrees that the security for any Note and Deed of Trust/Mortgage is directly related to the equity in the security real estate ("Secured Property"). Lender understands that the value or saleability of real estate can change at any time and, therefore, that equity in the security real estate can increase or decrease. Lender hereby releases SERVICER from any liability whatsoever in connection with the determination of the value of the Secured Property.

12. **Lender Indemnification of Servicer.** Lender agrees to hold harmless, indemnify and defend SERVICER from any and all claims, demands, judgments, actions, and liability [herein collectively "Claims"], including attorney's fees and costs incurred in responding to and/or defending against such Claims, arising from, or relating to in any way, the loan(s) and mortgages(s) which are the subject of this Agreement ("Indemnity").

Indemnity under this Agreement shall also apply to Claims arising from, or related to: (1) the SERVICER'S conduct under this Agreement except for conduct of the SERVICER that is adjudicated to be the direct result of SERVICER'S gross negligence or willful misconduct; (2) the conduct of Lender's Brokers who originated the Loan for either the original lender or for the borrower; (3) Any conduct of any predecessor or successor loan servicer; (4) the trustee, substitute trustees, foreclosure agents and vendors providing foreclosure related services; and, SERVICER'S agents, employees, managing members, officers and directors.

13. **Survival.** The provisions of this Agreement relating to indemnity and all provisions relating to SERVICER'S fees, costs, and reimbursements for advances, shall survive the termination of this Agreement.

14. **Notice.** Notices pursuant to this Agreement shall be in writing and may be served by email with confirmation that the e-mail was delivered and read, facsimile with transmission and receipt verification; personal delivery; overnight delivery or certified mail, return receipt requested, at the SERVICER's addresses set forth at the beginning of this Agreement and at the Lender's address set forth below beneath the Lender's signature. Either party may change that party's address for notice by sending written notice to the other party. Notices pursuant to this paragraph shall be deemed received one business day after it was sent or transmitted as set forth herein or 2 business days after actual receipt, whichever is earlier.

15. **Venue.** This Contract shall be governed in all respects by the laws of Puerto Rico. Any lawsuit or other action brought by or against either of the parties based upon or arising from this Contract shall be brought in a court or other forum of competent jurisdiction in Puerto Rico.

16. **Counterparts.** This Agreement may be executed in duplicate counterpart, and each such counterpart together shall constitute one document. This Agreement shall be considered fully executed as of the date last signed. This Agreement may be signed and the signatures may be transmitted by scan and email, and such faxed or scanned signatures shall be considered as original signatures.

**AGREED & ACCEPTED:**

Benworth Capital Partners LLC,
a Florida limited liability company

_[signature]_
By: Bernardo Navarro
NMLS #329578


Benworth Capital Partners PR LLC,
a Puerto Rico limited liability company

_[signature]_
By: Claudia P. Navarro
NMLS #341277