# EXHIBIT 10

1

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT COURT DIVISION

CASE NO. 12-12858 CA 27


TOTAL BANK, a Florida corporation,

      Plaintiff,

vs.

BERNARDO ENRIQUE NAVARRO,
an individual,
      Defendant.

_____/


The above-entitled cause came on for hearing before the

Honorable Rosa Rodriguez, Judge of the above-styled court,

at the Dade County Courthouse, Miami, Florida, on the 29th

day of January, 2014, commencing at 11:30 a.m.


EDMEE PRATS COURT REPORTING SERVICES
(305) 324-5431



APPEARANCES


On behalf of the Plaintiff:

        SAPURSTEIN & BLOCH, P.A.
        9700 South Dixie Highway
        Suite 1000
        Miami, Florida 33156
        BY:  BURT SAPURSTEIN, ESQUIRE


On behalf of Benworth:

        LAW OFFICE OF ALEXIS GONZALEZ, P.A.
        3162 Commodore Plaza, Suite 3-E
        Coconut Grove, Florida 33133
        BY:  LAZARO VAZQUEZ, ESQUIRE

1          (Thereupon, the following proceedings
2     were had:)
3          THE COURT:  Total Bank versus Navarro,
4     is anybody here for this?
5          MR. VAZQUEZ:  Yes, Your Honor.  Lazaro
6     Vazquez on behalf of the Garnishee, Benworth
7     Capital Partners, LLC.
8          MR. SAPURSTEIN:  Burt Sapurstein on
9     behalf of Plaintiff, Total Bank.
10          Good morning, Your Honor.
11          MR. VAZQUEZ:  We have a court reporter
12     present here today.
13          THE COURT: Great.  Please announce your
14     appearances.
15          MR. VAZQUEZ:  Lazaro Vazquez on behalf
16     of Garnishee, Non-Party Benworth Capital
17     Partners, LLC.
18          MR. SAPURSTEIN:  And Burt Sapurstein on
19     behalf of Total Bank, the Plaintiff.
20          MR. VAZQUEZ:  Your Honor, before I begin
21     my argument, just two things.  If I may
22     approach with a copy of the motion, I have a
23     hard copy for the court.
24          THE COURT: Great.  I have a copy.  It's
25     NON-PARTY Benworth Capital Partners, LLC's

1    Motion for Protective Order and Objections to

2    Corporate Representative Subpoena...  just to

3    make sure that is the same copy.

4         MR. VAZQUEZ:  Yes, Your Honor, that is

5    what I just handed to the court.

6         THE COURT:  I have it.

7         MR. VAZQUEZ:  Your Honor, before I get

8    into the merits of the actual argument, and I

9    just want to make sure that the court is

10   aware that the garnishee's position is, it's

11   not objecting to any discovery being sought

12   in execution of the final judgment against

13   the individual Defendant who is Bernardo

14   Enrique Navarro.  Our objections are actually

15   as to particular points raised in the Notice

16   of Deposition Duces Tecum.  First of all,

17   Benworth is not a party, it is a garnishee,

18   and as a matter of fact, Benworth is a

19   competitor of Total Bank; Benworth issues

20   loans just like Total Bank issues loans, so

21   they're both in the same industry.

22        I also want to bring up to the court's

23   attention that the court has not ordered

24   Mr. Navarro to file a fact information sheet.

25   I have a copy here of the Final Judgment,

1    Default Final Judgment, which doesn't say

2    that the individual Defendant is ordered to

3    file a fact information sheet.  Now, the

4    issue is that they're seeking the discovery

5    as to the finances of Benworth, the actual

6    corporation and as to the finance of other

7    employees at Benworth, and that's the extent

8    of our objection.

9        If Your Honor goes to Page 2 of our

10   motion, it says that Benworth is -- excuse

11   me, that they're asking -- examination topic

12   number two, they're asking Benworth to

13   produce a representative regarding the

14   payments made to other employees of the

15   garnishee for the years 2012 to 2013.

16   They're also seeking any person reporting

17   self-employment income through garnishee for

18   the years 2012 through 2013, and they're

19   seeking Benworth produce a representative

20   regarding the financial records of garnishee

21   for the years 2012 through 2013.

22       Our entire position has been, they're

23   obviously entitled to seek discovery of

24   the -- any payments that are going towards

25   Bernardo Enrique Navarro, but everything else

1   is off limits because otherwise it turns into

2   a fishing expedition.

3           THE COURT: Let me interrupt.

4           MR. VAZQUEZ:  Yes.

5           THE COURT: The Defendant is Navarro, as

6   an individual only?

7           MR. VAZQUEZ:  Yes, Your Honor.

8           THE COURT:  And the judgement is as to

9   Navarro as an individual only?

10          MR. VAZQUEZ:  Yes, Your Honor.

11          THE COURT: I just want to make sure.  Go

12  ahead.

13          MR. VAZQUEZ:  And going forward -- I

14  have a copy of the --

15          THE COURT: I'm sorry to interrupt you

16  again.  You don't have an objection to any of

17  this as it pertains to Mr. Navarro

18  individually, your objection is as to other

19  parties; is that correct?

20          MR. VAZQUEZ:  Yes, Your Honor.

21          THE COURT: Okay.  So the employees

22  namely are the only other parties that

23  there's an interest in?

24          MR. VAZQUEZ:  Yes.

25          THE COURT: Okay.

1       MR. VAZQUEZ:  Yes, Your Honor.

2       THE COURT: Okay.

3       MR. VAZQUEZ:  And I have here about

4   seven or so employees that are employed by

5   Benworth.

6       THE COURT: Okay.  Let me just cut to the

7   chase here -- I'll get back to you.

8       Mr. Sapurstein, that has a certain

9   visceral appeal right away, that if he's the

10   garnishee and if he's an individual.  So

11   explain.

12       MR. SAPURSTEIN: Happy to, Your Honor.

13       THE COURT: Okay.

14       MR. SAPURSTEIN:  If I may, I'd like to

15   show the court the Florida Department of

16   State, Division of Corporation information on

17   Benworth.

18       THE COURT:  Okay.

19       MR. SAPURSTEIN:  So that Your Honor can

20   see that the manager of Benworth is

21   Mr. Navarro.  I also have the deposition in

22   aid of execution of Mr. Navarro that we took

23   a little over a year ago, Your Honor.  This

24   is the original, if I may.

25       And, Your Honor, this is not a situation

1       where we're dealing with a third party

2       unrelated to our debtor, this is a

3       corporation owned and controlled by our

4       debtor.

5              In the deposition, Your Honor, Page 9,

6       Line 18, I ask Mr. Navarro:  "Are you

7       employed, sir?"

8              "Yes."

9              "By whom?"

10             "Benworth Capital Partners."

11             "And what position do you hold?"

12             "President."

13             Well, actually he's the manager, Your

14      Honor.

15             THE COURT: Okay.

16             MR. SAPURSTEIN: And so I said:  "Are you

17      paid a salary?"

18             And he said:  "No."

19             I said:  "How are you paid?"

20             And his answer was, moving to Page 10.

21      "Year end, I get paid at the end of the

22      year."

23             And I said:  "Do you get one check?"

24             He said:  "Yes."

25             "And did you receive a check in December

1        of '12?"

2            "No."

3            "Why not?"

4            "My accountant hasn't done it yet."

5            "Are you expecting a check in a

6        particular amount?"

7            "I don't know."

8            "You don't know if you're expecting to

9        get paid?"

10           "I don't know when I'm expecting it."

11           "How much is the check going to be?"

12           "I don't know."

13           So we go on to Page 12, and I'm asking

14       him how do you explain how much money you're

15       going to get, you're the president?

16           I said:  "Are you also the owner of

17       Benworth?"

18           "I'm an owner."

19           "Are you a shareholder?"

20           "Yes."

21           Then he says his percentage of the

22       shares is nine percent and his wife's

23       percentage is 91 percent, Your Honor.

24           So when we start talking about other

25       employees specifically, I want to know about

1     his wife who he said -- moving to Page 13,

2     Your Honor:  "Is your wife employed by

3     Benworth?"

4          "Yes."

5          "What does she do?"

6          "She helps with the office."

7          "She's an office worker?"

8          "Yes."

9          "And does she receive a salary?"

10         "Yes."

11         "How much does your wife receive?"

12         And he says that he has no idea.

13         THE COURT: Let me ask you, are you

14    seeking only Mr. Navarro and Mrs. Navarro or

15    are there others?

16         MR. SAPURSTEIN:  Well, in his deposition

17    he says he has two or three --

18         THE COURT: I'll let you respond.

19         MR. SAPURSTEIN:  He says he has two or

20    three other employees, Your Honor.  I don't

21    care about the other unrelated employees.

22         THE COURT: Okay.  So you're interested

23    in the wife?

24         MR. SAPURSTEIN:  I'm interested in the

25    wife.

1          THE COURT:  Okay.

2          MR. SAPURSTEIN:  I'm interested in

3     Mr. Navarro.  It doesn't sound to me like

4     somebody who says he gets one check at the

5     end of the year, is the manager of the LLC,

6     is the member of the LLC and suddenly say, "I

7     don't know how much money I'm getting," et

8     cetera et cetera.

9          THE COURT: I didn't know what this

10     business -- I just didn't know the scenario.

11          MR. SAPURSTEIN:  No, of course not.

12          THE COURT:  I didn't know any of these

13     facts.

14          MR. SAPURSTEIN:  He does go on to say

15     that his wife gets paid $70,000 on Page 19 of

16     the, of the deposition.

17          And I would also point out that he was

18     subpoenaed to bring his tax return and he

19     brought only two pages and never brought the

20     schedules including the K1 which would tell

21     us the theoretically how much he earned from

22     Benworth.  So there's that issue as well,

23     Your Honor.

24          THE COURT:  I understand.

25          MR. SAPURSTEIN:  Thank you.

1          THE COURT: Thank you.  Okay.  Got the
2      picture somewhat.
3          Let me hear from you again.
4          MR. VAZQUEZ:  Just briefly, Your Honor.
5      Again, it's very important to note that
6      Benworth is a direct competitor of Total Bank
7      so there -- if you take a look at their
8      specific request, and I attached a copy of
9      the Notice of Deposition.
10          THE COURT: I have it here.
11          MR. VAZQUEZ:  It's not requesting what
12      he's saying he wants here today in court,
13      it's actually very, very ambiguous.
14          THE COURT: Where are you reading?  I
15      have Page 1 or -- where --
16          MR. VAZQUEZ:  Exhibit A.
17          THE COURT: Hold on.  Number 1 -- you
18      mean you're going to be asking about payments
19      to him or just like, you know, like, when he
20      was employed and how much he's been paid?
21          MR. VAZQUEZ:  I don't have an objection
22      to Number 1, Your Honor.
23          THE COURT: Okay.
24          Number 2 is going to be only other
25      employees, but that's really going to be just

1    to the wife, correct, Mr. Sapurstein?

2         MR. SAPURSTEIN:  Yes, Your Honor.

3         THE COURT: Wife only?

4         MR. SAPURSTEIN:  Yes.

5         THE COURT: And then 3, any person

6    reporting self-employment income -- I don't

7    understand that.

8         MR. SAPURSTEIN:  Well, Your Honor,

9    again, they didn't bring their entire tax

10   return, notwithstanding the fact that they

11   were subpoenaed to do so.  So, we're not sure

12   whether he pays himself a 1099 and he does

13   self-employment tax, or whether he get a W-2

14   from Benworth.

15        THE COURT:  Okay.

16        MR. SAPURSTEIN:  We'd like to see the

17   W-2's of both Mr. Navarro and his spouse so

18   we can determine if they're paid.  He claims

19   he gets one check at the end of the year.

20   We'd like to see the payroll, we'd like to

21   see if that's correct.

22        THE COURT:  Okay.

23        MR. SAPURSTEIN:  And they can redact it

24   as to any other employee, other than

25   Mr. Navarro and his spouse.

1        THE COURT: So basically you want the

2    W-2, any payroll records or documentation

3    reflecting payments to Mr. and Mrs., whether

4    they're as employees or 1099's or whatever.

5        MR. SAPURSTEIN:  Exactly, Your Honor,

6    that's correct.

7        THE COURT: Okay, I understand.  And then

8    financial records of the garnishee for the

9    years 2012 and 2013.

10        MR. VAZQUEZ:  That's overly ambiguous,

11    Your Honor.

12        THE COURT:  Hold on.

13        MR. VAZQUEZ:  That's our issue.

14        MR. SAPURSTEIN:  Again, Your Honor,

15    since Mr. Navarro is the member/owner of the

16    company, along with his wife, they appear to

17    own 100 percent of the company, we'd like to

18    see the balance sheet, we'd like to see the

19    assets, we'd like to see what monies are

20    being earned by that company because that

21    bares directly on the ability we believe of

22    Mr. Navarro to pay this judgment.

23        THE COURT: Okay.  I understand.

24        Let me hear -- let's start with two.

25    This goes to the wife considering that she

1    owns 91 percent.

2        MR. VAZQUEZ:  Your Honor, just cutting

3    to the chase.  The bottom line is what he's

4    requesting is.... he wants the wife's

5    information.  The wife has a private

6    financial interest in this information that's

7    separate and apart from her husband.  The

8    judgement was entered personally against

9    Bernardo Enrique Navarro, it was not entered

10   against his wife, that's the whole reason why

11   we're objecting today.  I feel that the

12   wife's private financial information is off

13   limits as well and I have case law to support

14   that.  They haven't shown -- there has to be

15   some kind of good faith predicate to show

16   that there's something going on where it

17   would alert them to the fact that they have

18   to have discovery as to this person.

19        THE COURT: Let me see your case.

20        MR. VAZQUEZ:  Yes.

21        THE COURT:  Let me see it.

22        And then really four goes hand in hand

23   because that's related to the wife also.

24        In light of Mr. Navarro seeming to be in

25   control of the company but with the wife

1       actually owning the stock, you know, I

2       understand the concern.

3            MR. SAPURSTEIN:  Your Honor, also in the

4       deposition, I said:  "What does your wife do,

5       she has three children at the time six and

6       under?"

7            He said:  "She works from the home."

8            I said:  "Well, what does she do?

9            And his answer was:  "Well everything,

10      she washes the floor, she types."  This is

11      the response I got.

12           THE COURT: At the business?

13           MR. SAPURSTEIN:  Yes, notwithstanding

14      the fact that she's allegedly the 91 percent

15      owner of the company.

16           THE COURT: Give those to the bailiff,

17      please.

18           Let me see the cases that you have.

19           So you've given me this Rappaport case,

20      and in this case they were just going after

21      discovery of the wife, there was no company

22      in the middle like we have here.

23           MR. VAZQUEZ:  Correct, Your Honor.

24           THE COURT: I'm just glancing at it, so

25      I'm going to rely on you if I've

1     misapprehended it.

2          MR. VAZQUEZ:  I'm sorry, Your Honor.  If

3     I could direct the court to this one

4     particular case out of the Third D.C.A.

5          THE COURT:  Yes.

6          MR. VAZQUEZ:  It's a law firm -- you

7     have the copy in front of Your Honor.

8          THE COURT:  Yes.

9          MR. VAZQUEZ:  It's Pyszka Kessler

10    Massey.  It's the Law Firm's move for a

11    protective order in a dissolution of marriage

12    proceeding to limit discovery of financial

13    documents by non-equity partner's wife.

14         This is the same scenario, where the

15    wife is a partner in Benworth and she has no

16    stake in this judgment, the judgement is

17    entered against her husband, and now they're

18    trying to backdoor in and reach the wife, but

19    they haven't laid that predicate.

20         THE COURT: Well, they're not really

21    trying to reach the wife, from what I

22    understand, they're trying to reach his

23    interest in this Benworth company and whether

24    any of his interests in that or assets,

25    either assets, interest in the company or

1   income is, I guess, being diverted to the

2   wife.  It's not a situation, as I see it,

3   where they're just, you know, going to the

4   wife just because she's the wife.

5       MR. SAPURSTEIN:  Exactly.

6       MR. VAZQUEZ:  And the court has hit on

7   the point.  They're trying to see if he's

8   diverting monies to the wife, but they

9   haven't established anything.  There has --

10  he has to lay some kind of predicate.  He

11  took the man's deposition, man referring to

12  Navarro, and Navarro, in full candor, said

13  this is my wife's interest, this is what she

14  does for a living.  But that's not a showing

15  to the court that it's sufficient to invade

16  the wife's privacy interest as a partner of

17  Benworth.

18      MR. SAPURSTEIN:  Your Honor, it takes a

19  lot of temerity to stand before the court,

20  when your client comes to a deposition and

21  says that he's the nine percent owner, his

22  wife's 91, she gets 70,000, he may or may not

23  get a check, yet the documents with Secretary

24  of State reflect that he's the manager of the

25  company, it's his company.  What does she do?

1    She washes the floor and types.

2         It's clear that this Defendant is

3    attempting to hide income and assets, and I

4    think it's very reasonable to take a look and

5    see the extent to which that is happening.

6         THE COURT: I've heard enough.  I'm going

7    to deny the Motion for Protective Order

8    regarding the wife, you know, matters related

9    to her and this company, given that

10   Benworth --

11        MR. VAZQUEZ:  Benworth Capital Partners.

12        THE COURT:  -- is a competitor, if

13   there's some kind of confidentiality

14   agreement that you all want to include or --

15   you know, certainly I would, you know, be

16   willing because I understand, but I don't

17   know that any proprietary issues, you know,

18   would come up, but you could consider that.

19        But I think that as to the wife's

20   finances, just as to this one company, his

21   interest in this one company, is not

22   inappropriate.

23        MR. VAZQUEZ:  Your Honor, if I could

24   just make a record.

25        THE COURT:  Sure.

1    MR. VAZQUEZ:  We've cited to the 3rd

2 D.C.A.'s opinion at 602 So.2d  955, Pyszka,

3 Kessler, Massey, Weldon, Catri, Holton, &

4 Douberley v. Mullin.

5    It's our position that, "Disclosure of

6 information delineating the partners'

7 financial situation unnecessarily violates

8 their privacy rights."  And we're relaying on

9 this opinion.  And here the order would

10 violate the privacy rights of the wife.

11    The next opinion that we're relying on

12 would be Bradstreet v.  Taraschi, it's at 529

13 So.2d 809.  "In a dissolution of marriage

14 action, a third party's financial records may

15 discoverable if an issue arises as to

16 improper financial dealings between the third

17 parties and one of the spouses.  However, it

18 is improper to require a third party to

19 disclose financial records which are not

20 relevant to any economic issues in the

21 action.  Trial courts must perform a delicate

22 balancing act, an inquiry which is too

23 limited may prevent a spouse from obtaining

24 evidence necessary to show the misconduct

25 alleged, while an overwrought inquiry becomes

1   an unfettered fishing expedition."  And

2   that's our position here.

3       If the court would allow us to have

4   maybe an evidentiary hearing, we also have

5   case law that says that the showing must be

6   made at an evidentiary hearing as far as

7   demonstrating the need to take a third party

8   deposition and invade their private finances;

9   I don't know if the court would be amenable

10  to that.

11      THE COURT: Well, I've already had a

12  hearing and I've ruled so I'm not sure what

13  you're asking.  Now you want an evidentiary

14  hearing?  I'm not sure where that fits into

15  this picture.

16      MR. VAZQUEZ:  In other words, it's our

17  position that the case law mandates that the

18  party requesting the discovery has to request

19  an evidentiary hearing and prove to the court

20  and make detailed findings of fact as to

21  whether or not there is something -- some

22  deceit or something devious going on as far

23  as moving the finances between the wife and

24  husband, and it's our position that they have

25  not shown that.

1          THE COURT: Well, that's a different

2     issue because I've ruled and you're making

3     that argument after I've given a ruling, so I

4     think you've waived that, as far as I'm

5     concerned.

6          MR. SAPURSTEIN:  Your Honor --

7          THE COURT:  So that's my ruling.

8          MR. SAPURSTEIN:  Your Honor, from a

9     timing standpoint, how long for them to

10    produce and to appear at a deposition?  It's

11    been several months because they requested a

12    special hearing.

13         THE COURT: I don't know.  I mean, was it

14    because you wanted to wait for this?

15         MR. VAZQUEZ:  Yes, Your Honor.

16         THE COURT:  Okay, so --

17         MR. VAZQUEZ:  We'll cooperate.  We'll

18    prepare a proposed agreed order -- proposed

19    order based on the court's ruling.

20         THE COURT: I don't know.  Within what?

21    A couple of weeks, a week, ten days?  I mean,

22    I don't know if you're going to take it up.

23         MR. VAZQUEZ:  Twenty days.

24         MR. SAPURSTEIN:  Twenty days is fine

25    with me, Your Honor, if they'll produce

1    within 20 days.  And how long to appear for a

2    deposition, Your Honor, a corporate

3    representative, to appear for a deposition?

4    Thirty days, an agreed time within 30 days?

5        MR. VAZQUEZ:  I don't know whether my

6    client is available or not, but 30 days is --

7        THE COURT: That sounds more than

8    reasonable.  I'll tell you what, let's make

9    it 30 days and if there's some extreme

10   hardship or some problem that -- Mr.

11   Sapurstein is reasonable as far as I know --

12   no, you've always been pretty reasonable, so

13   I can't imagine that if there's is some

14   legitimate scheduling issue that you wouldn't

15   be able to work it out, but, you know, I'm

16   here in case you can't.

17       MR. SAPURSTEIN:  Thank you, Your Honor.

18       THE COURT: Thank you.  Nice to see you

19   all.  Have a nice day.

20

21       (Thereupon, at 12:00 the hearing was

22   concluded for the day.)

23                   -   -   -

24

25

## CERTIFICATE

STATE OF FLORIDA        )
COUNTY OF MIAMI-DADE  )

I, JOANNE CAUDILL, Court Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that I reported in shorthand the proceedings in the above-styled cause before the Honorable Rosa Rodriguez at the time and place herein set forth and that the foregoing transcript constitutes a true and complete record thereof.

I further certify that I am not an attorney or counsel to any of the parties, nor financially interested in said cause.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this 29th day of January, 2014.


_____
JOANNE CAUDILL, COURT REPORTER
NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires: