# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

OTO ANALYTICS, LLC,

     Plaintiff,

          vs.

BENWORTH CAPITAL PARTNERS PR LLC,
BENWORTH CAPITAL PARTNERS LLC,
BERNARDO NAVARRO and CLAUDIA
NAVARRO,

     Defendants.

Civil No. 23-1034

## MOTION TO DISMISS OR STAY PROCEEDINGS
## PENDING THE OUTCOME OF ARBITRATION

TO THE HONORABLE COURT:

COMES NOW, Defendant Benworth Capital Partners PR LLC ("Benworth PR") specially appears without submitting to the Court's jurisdiction, through the undersigned counsel, and respectfully moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of ripeness and standing. In the alternative, Benworth PR moves to stay this case under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.

## I.     INTRODUCTION

Plaintiff Oto Analytics, LLC (f/k/a Oto Analytics, Inc., d/b/a Womply) ("Womply"), brought this action seeking to rescind what it alleges were fraudulent transfers made by Co-defendant Benworth Capital Partners LLC ("Benworth FL") to Benworth PR for the purpose of preventing Womply from collecting "nearly $200 million in fees and interest" that it is currently claiming against Benworth FL in an ongoing JAMS arbitration proceeding (the "Arbitration"). *See generally* D.E. 3 (Compl.) ¶¶ 1–2, 19. Womply alleges that Benworth FL made the purported

fraudulent transfer in the form of fee payments under the Original and Amended Loan Servicing Agreement executed between Benworth FL and Benworth PR, which is neither a party to the arbitration proceeding nor the contracts containing the arbitration clauses. *See id.* ¶¶ 92–93, 168–184, 256(a); *see also* D.E. 1-2 (Compl. Ex. 2) § 10; D.E. 1-3 (Compl. Ex. 3) § 4; D.E. 1-4, (Compl. Ex. 4) § 8.  Womply also contends that Benworth PR is a "sham" corporation and alter ego of Benworth FL that was created "for the fraudulent purpose of diverting assets from Benworth FL" so that it would be left "undercapitalized and unable to satisfy its debts to Womply" should Womply prevail in the Arbitration. *See* D.E. 3 ¶¶ 244, 246(c).

Taking Womply's allegations at face value for purposes of this motion only, the Court should dismiss the claims brought against Benworth PR for two reasons:

*First*, Womply's claims lack ripeness. Under Puerto Rico law, Womply's fraudulent transfer claims (Counts I and II) ripen only after—and if—Womply obtains an arbitration award against Benworth FL.  In other words, without an arbitration award, no debt exists, and Womply lacks any concrete interest that can be vindicated in this forum. The Court, moreover, is barred from side-stepping the Arbitration and adjudicating the merits of whether Benworth FL is indebted to Womply under the FAA and arbitration agreement between Womply and Benworth FL. The same ripeness concerns apply to Womply's corporate alter ego and veil-piercing claims (Counts III and IV) because they are contingent on the outcome of the Arbitration.

*Second*, absent an arbitration award in its favor, Womply cannot sufficiently allege an impending injury or substantial risk of injury to establish standing to bring the fraudulent transfer claims or the claim for declaratory judgment to pierce the corporate veils of either Benworth FL or Benworth PR.

In the alternative, Benworth PR requests a stay of these proceedings under the FAA until an award issues in the Arbitration. *See* 9 U.S.C. § 3.

## II.   STANDARD OF REVIEW

A motion to dismiss for lack of standing and ripeness falls under the "large umbrella" of Federal Rule of Civil Procedure 12(b)(1), which governs challenges to the court's subject matter jurisdiction. *see Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362–63 (1st Cir. 2001). To survive a motion to dismiss under this rule, based on the jurisdictionally significant facts pled in the complaint, "the court must credit the plaintiff's well-pleaded factual allegations . . . , draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly." *Id.* at 363. The allegations must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (applying "the plausibility standard under Rule 12(b)(6) to standing determinations at the pleading stage"). That is, "a complaint must contain enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claims." *Fantini v. Salem State College*, 557 F.3d 22, 26 (1st Cir. 2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

"The plaintiff has the burden of clearly alleging definite facts to demonstrate that jurisdiction is proper," which applies to both standing and ripeness. *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 25 (1st Cir. 2007).

### III.    ARGUMENT

#### A.  Womply's Claims Are Unripe.

The Court should dismiss Womply's claims because they are unripe, as the issue of whether Benworth FL is a creditor of Womply—and thus whether the transfer to Benworth PR was intended to evade a judgment—has yet to be determined in the Arbitration.

Ripeness is an aspect of justiciability rooted in the Article III case-or-controversy requirement. *Reddy v. Foster*, 845 F.3d 493, 500–01 (1st Cir. 2017). Questions of ripeness therefore turn on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" with "the most important consideration" being "the extent to which 'the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (quoting *Pacific Gas & Electric Co. v. State Energy Res. Conserv. and Dev. Comm'n*, 461 U.S. 190, 201 (1983) and 13A Wright and Miller, Federal Practice and Procedure § 3532.2, at 141 (1984)).

In this diversity case, the forum state's substantive law applies, and under Puerto Rico law, the Civil Code governs a claim to void or rescind a transaction based on allegations of fraudulent transfer. *See Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 4 (1st Cir. 1994). Articles 298 and 300 of the Civil Code, provide that a transaction executed "in fraud of creditors" may be rescinded, when a creditor cannot otherwise recover what it is due. P.R. Laws Ann. tit. 31, §§ 6231 & 6233.  The civil law action to rescind a transaction on this basis is known as a "Paulian action or action for revocation," and it is of an exceptional or subsidiary nature, as it can only proceed upon the insolvency of the debtor and the existence of fraud, and only to the extent required to satisfy the debt owed. *De Jesus Díaz v. Carrero*, 112 P.R. Dec. 631, 638, 12 P.R. Offic. Trans. 786, 794-796 (1982); *see* Art. 299 of the P.R. Civil Code of 2020, P.R. Laws Ann. tit. 31, § 6232

(defining the cause of action and the effects of a judgment of rescission on this basis).[1] Thus, a plaintiff asserting a claim for rescission of a legal transaction based on an alleged fraudulent transfer must adequately allege that (1) the defendant is a true debtor of the plaintiff, (2) the defendant transferred their assets in fraud of their creditors, (3) the plaintiff has been prejudiced by the transfer and (4) the plaintiff has no legal recourse to obtain reparation for the prejudice suffered other than requesting the rescission of the transfer. *Sucesión Almazán v. López*, 20 P.R. Dec. 537, *2 (1914).[2]

Here, the first element poses a jurisdictional hurdle for Womply because whether Benworth FL is a true debtor of Womply has yet to be determined at the Arbitration. *See* D.E. 3 ¶¶ 2, 19, 157–64. Womply has no claim against Benworth PR in this case for alleged fraudulent transfers unless and until there is a determination in Womply's favor at the Arbitration establishing the existence of the debt. *See, e.g., Lincoln House, Inc.*, 903 F.2d at 847 (holding that a RICO claim was unripe where the only injury alleged by the plaintiff was its hypothetical inability to recover from the defendant in a separately pending breach-of-contract action). As in *Lincoln House*, because Womply's alleged harm is "wholly contingent upon [its] success in a separate case in another [forum]"—here, the Arbitration—it is "at this point, purely speculative, and not ripe for resolution." 903 F.2d at 847.

And although *Sucesión Almazán* recognizes that a plaintiff can allege claims establishing their rights as a creditor—e.g., a breach-of-contract claim—in the same action as their claim for

---

[1] The official translations of the cited provisions of the Puerto Rico Civil Code of 2020 were requested to Office of Legislative Services of the Puerto Rico Legislature.  If not readily available, the undersigned will procure certified translations and submit them to the record within the briefing deadlines applicable to this motion.

[2] The official translation of this case was requested to the Library of the Puerto Rico Supreme Court. If not readily available, the undersigned will procure a certified translation and submit it to the record within the briefing deadlines applicable to this motion.

recession, *see* 20 P.R. Dec. 537, at *3, the FAA and the parties' arbitration agreement forbid Womply from doing so because the Court cannot make a parallel ruling on the merits of the claims at issue in the Arbitration. *See Di Mercurio v. Sphere Drakes, Ins PLC*, 202 F.3d 71, 77 (1st Cir. 2000) ("[A]rbitration agreements do not divest courts of jurisdiction, though they prevent courts from resolving the merits of arbitrable disputes[.]"); *see also* 9 U.S.C. § 2 (providing that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); 9 U.S.C. § 3 (providing that, if a suit or proceeding is brought in federal court involving "any issue referable to arbitration under an agreement in writing for such arbitration" the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). This also distinguishes Womply's claim from other scenarios where the First Circuit has set aside ripeness concerns in the context of fraudulent conveyance claims that depended on the outcome of parallel civil proceedings,[3] since those situations did not involve a legal bar to the court ruling on the merits of the same underlying controversies, other than the possibility of inconsistent results.

Likewise, Womply's claims for declaratory judgment under alter-ego and veil-piercing theories (Counts III and IV) are not ripe for adjudication. As with the claims to rescind the alleged fraudulent transfers, Counts III and IV are also premised on the proposition that "Benworth PR is liable for Benworth FL's debt to Womply." *Id.* at ¶¶ 243, 251 & 255. Counts III and IV are, thus,

---

[3] *Cf. Foisie v. Worcester Polytechnic Institute*, 967 F.3d 27, 36-37 (1st Cir. 2020) (noting as relevant to its standing analysis that "plaintiff's underlying civil claims [were] actively being litigated and, if she successfully prosecute[d] her fraudulent conveyance claims, various remedies could be crafted to redress her injury regardless of whether her civil claims ha[d] been reduced to judgment by that time").

wholly contingent on the result of the Arbitration, making them purely speculative and not ripe for resolution.

### B. Womply Lacks Standing.

The main concern in standing analysis is the requirement that the plaintiff establish an "injury in fact," to ensure that they have a "personal stake in the outcome of the controversy." *Reddy*, 845 F.3d at 500 (citations omitted).  Therefore, "to satisfy Article III, the injury must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). The authority conferred on the federal courts by the Declaratory Judgment Act, 28 U.S.C. § 2201, is similarly limited.  *In re Fin. Oversight and Mgmt Board of P.R.*, 633 B.R. 463, 469 (Sept. 27, 2021).  Federal courts are not empowered to issue advisory opinions, which occurs when a claim lacks "a real and substantial controversy admitting a specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" *Id.* (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937)).

The injury alleged by Womply is neither concrete nor "actual or imminent" because, as explained, it is contingent on the outcome of a pending Arbitration. Absent a declaration of the debt allegedly owed by Benworth FL to Womply in the Arbitration, the latter is not "currently facing a certainly impending injury," nor can it show that it faces a "substantial risk" of injury to establish standing to rescind the alleged fraudulent transfers between Benworth FL and Benworth PR, or to pursue alter ego, successor, or veil piercing claims as to those entities and their respective shareholders. *Reddy*, 845 F.3d at 501.  In addition, the facts alleged in the Complaint do not admit the specific relief sought through a conclusive decree, because this Court cannot rule on the merits of the underlying debt claimed by Womply, which is a prerequisite to all claims brought in the

Complaint. *See Di Mercurio*, 202 F.3d at 77.  Any such determinations made in this case would be advisory in nature.  *In re Fin. Oversight and Mgmt Board of P.R.*, 633 B.R. at 469.  All of which poses an issue of standing in addition to the ripeness concerns outlined above.

Unless and until the arbitrator issues an award establishing Womply's right to the monies it alleges are owed by Benworth FL and the amount of any such debt, the claims in this case are premature, unripe, and do not meet standing requirements, warranting a dismissal without prejudice under Federal Rule of Civil Procedure 12(b)(1).

### C.  Alternatively, a Stay Is Warranted Pending the Outcome of the Arbitration.

Under Section 3 of the FAA, when a court finds that a party has filed a suit involving an issue referable to arbitration under a written agreement, the court, upon request by a party, must compel arbitration and stay proceedings until the arbitration is completed. 9 U.S.C. § 3. Under the clear mandate of Section 3, where certain issues before a court are arbitrable, the court must stay the trial until such arbitration has been completed in accordance with the arbitration agreement. *Id.*; *see Santa Cruz v. Banco Santander P.R.*, No. Civ. 08-1225 (JAF), 2008 WL 5192347, at \*2 (D.P.R. Dec. 10, 2008) ("Where some claims are referred for arbitration," the district court has "discretion to stay litigation of the remaining non-arbitrable claims pending the outcome of the arbitration proceeding.") (citing *McCarthy v. Azure*, 22 F.3d 351, 354 (1st Cir. 1994)); *see also DJ Mfg. Corp. v. Tex-Shield, Inc.*, 998 F.Supp. 140, 145-146 (D.P.R. 1998) (applying Section 3 of the FAA to stay non-arbitrable claims brought by signatory of agreement containing arbitration clause).

As alleged, Womply's claims are entirely contingent on the outcome of the Arbitration, which Womply brought pursuant to arbitration clauses contained in various contracts executed between it and Benworth FL. *See* D.E. 3 ¶¶ 92–93, 168–184, 256(a); D.E. 1-2 § 10; D.E. 1-3 § 4; D.E. 1-4 § 8. Again, whether Benworth FL owes a debt to Womply is the controversy at the heart of the pending Arbitration. Accordingly, a stay of litigation would undoubtedly "clarify and

perhaps simplify the remaining issues which must be litigated," promote judicial economy, and avoid potentially inconsistent results. *Sevinor v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 20–21 (1st Cir. 1986) (explaining that "issue-narrowing" effect of arbitration is relevant to the exercise of discretion in granting a stay of proceedings pending the outcome of arbitration); *see also Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) ("Stay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim…"); *Melendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 939 F. Supp. 2d 88, 94 (D.P.R. 2013) (ordering stay as to non-arbitrable claims while arbitration proceeds as to arbitrable claims); *Jesús-Santos v. Morgan Stanley Dean Witter, Inc.*, No. Civ. 05-1336 (DRD), 2006 WL 752997, *9 (D.P.R. Mar. 22, 2006) (same). Additionally, a stay of proceedings in this case "would not work an undue hardship or prejudice against Plaintiffs" because Benworth FL and Womply are, as of the date of this filing, in the middle of the final hearing on the merits of the Arbitration. *Colon De Sanchez v. Morgan Stanley Dean Witter*, 376 F. Supp. 2d 132, 137 (D.P.R. 2005) (citation omitted).

Although it is not a signatory to the contracts at issue at the Arbitration, Benworth PR is entitled to the benefits of a stay because (1) its potential liability stems from the alleged liability of Benworth FL, and (2) the claims asserted against Benworth PR are the same as those asserted against Benworth FL and are thus "inherently inseparable" from one another. *Spencer Furniture, Inc. v. Media Arts Grp., Inc.*, 349 F. Supp. 2d 49, 52-54 (D. Mass. 2003). Moreover, Benworth PR may invoke the arbitration clauses as a defense against Womply based on a theory of equitable estoppel, since the latter is relying on its rights under those very agreements (i.e., by arguing violations to those agreements by signatory Benworth FL, for which it is contending that Benworth PR is liable) to make out its claims against Benworth PR in this case.  Equitable estoppel

"precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). This includes a signatory's reliance on a contract to make out its claims against a non-signatory. *See In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd on other grounds sub nom PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) ("The [signatory] plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel [against the plaintiff].").

**WHEREFORE**, Benworth PR requests that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of ripeness and standing. In the alternative, Benworth PR requests that the Court stay the proceedings in this case pursuant to Section 3 of the FAA, 9 U.S.C. § 3, until a final and conclusive award issues in the Arbitration between Womply and Benworth FL.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today March 27, 2023.

CERTIFICATION: The undersigned certify that this document was filed on this date with the Clerk of Court using the CM/ECF system, which will serve notice on all attorneys of record.

**CASELLAS ALCOVER & BURGOS PSC**
PO Box 364924
San Juan, PR 00936-4924
Tel. (787) 756-1400
Fax. (787) 756-1401
rcasellas@cabprlaw.com
cloubriel@cabprlaw.com

/s/ Ricardo F. Casellas
USDC-PR Bar No. 203114

/s/ Carla S. Loubriel Carrión
USDC-PR Bar No. 227509

-10-