IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| OTO ANALYTICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 23-01034 |
| | § | |
| BENWORTH CAPITAL PARTNERS PR | § | |
| LLC, BENWORTH CAPITAL PARTNERS | § | |
| LLC, BERNARDO NAVARRO and | § | |
| CLAUDIA NAVARRO, | § | |
| | § | |
| Defendants. | | |

**PLAINTIFF WOMPLY'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO BENWORTH CAPITAL PARTNERS PR LLC'S AND BENWORTH CAPITAL PARTNERS LLC'S MOTIONS TO DISMISS**

Alexander L. Cheney (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
acheney@willkie.com

Stuart R. Lombardi (*admitted pro hac vice*)
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
(212) 728-8000
slombardi@willkie.com

Joshua S. Levy (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

Alejandro J. Cepeda Diaz
USDC-PR 222110
McConnell Valdés LLC
270 Muñoz Rivera Ave.
Hato Rey PR 00918
Tel: (787) 250-5637
Email: ajc@mcvpr.com

*Attorneys for Plaintiff Oto Analytics, LLC*

April 24, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ................................................................................................4

    A.    Benworth FL Fraudulently Transfers ██████████████ To
Benworth PR ███████████████████████████
████████ ................................................................................4

    B.    Womply Commences This Proceeding To Obtain Prejudgment
Attachment And Other Equitable Relief. .............................................6

ARGUMENT ......................................................................................................7

I.    THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THIS
ACTION. ...................................................................................................7

    A.    This Action Involves An Actual Controversy That Is Ripe For
Adjudication.........................................................................................8

    B.    Womply Has Standing To Seek Prejudgment Equitable Relief. ...........12

II.    WOMPLY CONSENTS TO STAY THIS ACTION PENDING A DECISION ON
THE MERITS IN THE ARBITRATION. ...................................................13

CONCLUSION..................................................................................................14

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................3, 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................7

*Citibank v. ACBI,*
    200 P.R. Sent. 724 (2018) ........................................................................................9

*De Jesus Díaz v. Carrero,*
    112 P.R. Dec. 631 (1982) ........................................................................................11

*F.D. Rich Co. v. Super. Ct.,*
    99 P.R. 155 (1970) ....................................................................................................2

*Foisie v. Worcester Polytechnic Inst.,*
    967 F.3d 27 (1st Cir. 2020) .......................................................................... *passim*

*Goya Foods, Inc. v. Wallack Mgmt. Co.,*
    290 F.3d 63 (1st Cir. 2002) .......................................................................................2

*HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.,*
    847 F.2d 908 (1st Cir. 1988) .....................................................................................2

*Lincoln House, Inc. v. Dupre,*
    903 F.2d 845 (1st Cir. 1990) ...................................................................................10

*Nieto-Vincenty v. Valledor,*
    22 F. Supp. 3d 153 (D.P.R. 2014) ...........................................................................10

*Reddy v. Foster,*
    845 F.3d 493 (1st Cir. 2017) .....................................................................................8

*Reyes de Leon v. Coconut Prop., LLC,*
    546 F. Supp. 3d 116 (D.P.R. 2021) ...........................................................................4

*Roca-Buigas v. LM Waste Servs. Corp.,*
    2021 WL 4496467 (D.P.R. 2021) ..............................................................................8

*Santa Cruz v. Banco Santander P.R.,*
    2008 WL 5192347 (D.P.R. Dec. 10, 2008) .............................................................13

*Soto v. McHugh*,
  158 F. Supp. 3d 34 (D.P.R. 2016) ........................................................................ 7

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ....................................................................................... 12

*Sucesión Almazán v. López*,
  20 P.R. Dec. 537 (1914) ..................................................................................... 10

*In re Tyoc Int'l, Ltd.*,
  2003 WL 23112341 (D.N.H. Dec. 29, 2003) ...................................................... 11

**Statutes and Rules**

9 U.S.C. § 3 ................................................................................................................ 13

28 U.S.C. § 471 .......................................................................................................... 14

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 4, 7, 11

Fed. R. Civ. P. 64 ................................................................................................... 3, 8

JAMS R. 24(a) ........................................................................................................... 14

Plaintiff Oto Analytics, LLC (f/k/a Oto Analytics, Inc. d/b/a Womply) ("**Womply**") respectfully submits this consolidated memorandum of law in opposition to Defendant Benworth Capital Partners PR LLC's ("**Benworth PR**") Motion To Dismiss Or Stay Proceedings Pending The Outcome Of Arbitration ("**Motion**" or "**Mot.**"; ECF No. 34) and Defendant Benworth Capital Partners LLC's ("**Benworth FL**"; together with Benworth PR, "**Benworth**"; and collectively with Defendants Bernardo Navarro and Claudia Navarro (the "**Navarros**"), "**Defendants**") Motion For Joinder To Benworth PR's Motion ("**Joinder Mot.**"; ECF No. 35; together with the Motion, "**Motions to Dismiss**").

## PRELIMINARY STATEMENT

This case arises from Defendants' fraudulent scheme to prevent Womply from collecting nearly $200 million in fees and interest that Benworth FL is contractually obligated to pay Womply. Defendant Benworth FL is a Florida-based lender that made loans under the federal government's Paycheck Protection Program ("**PPP**"), and Womply is a technology company that provided PPP loan referral and technology services to PPP lenders. In 2021, Benworth FL contracted to use Womply's services, which allowed Benworth FL to efficiently process and manage a large volume of PPP loans. Using Womply's services, Benworth FL funded more than 300,000 Womply-referred PPP loans totaling more than $4 billion, for which it received more than $680 million in processing fees from the federal government. However, Benworth FL failed to pay Womply more than $153 million in fees due under their agreements.

In August 2021, Womply initiated a JAMS arbitration against Benworth FL (the "**Arbitration**") seeking those outstanding fees and contractual interest. At the outset of the Arbitration, Benworth FL represented to Womply and the arbitrator that it was holding Womply's fees "in trust" pending the resolution of the dispute. That was a lie. Womply learned through discovery in the Arbitration that Benworth FL had already transferred ███████████ to

Defendant Benworth PR in a sham transaction, ██████████████████████████████

██████.  Benworth FL is wholly owned and controlled by Defendant Bernardo Navarro ("**Mr. Navarro**"), and Benworth PR is wholly owned by both Mr. Navarro and his wife, Defendant Claudia Navarro ("**Ms. Navarro**").  The Navarros orchestrated the sham transaction to interfere with Womply's efforts to collect the fees it earned and to keep those fees for the benefit of the Navarro family.  With permission from the arbitrator, Womply filed this action seeking equitable relief to, among other things, unwind Benworth FL's fraudulent transfer of funds to Benworth PR and attach Defendants' assets.  Benworth moves to dismiss based on three meritless arguments.

     *First*, Benworth argues that, because the Arbitration is "ongoing," Womply is not yet owed a debt, and therefore its claims for fraudulent transfer and declaratory relief "lack ripeness."  (Mot. at 2; Joinder Mot. at 4.)  In other words, Benworth argues that Defendants are free to play a shell game with the funds at issue in the Arbitration and transfer them to any Navarro-controlled entity, ██████████████████████████████, and there is nothing Womply or this Court can do about it until the arbitrator issues an award.  That is not the law.  Under Benworth's own First Circuit precedent, where, as here, "[t]he plaintiff's underlying civil claims are actively being litigated" and the defendant "fraudulently concealed millions of dollars" that "rendered [it] insolvent," "the plaintiff's fraudulent conveyance claims" are "ripe for adjudication."  *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 35–36 (1st Cir. 2020).

     Moreover, both federal and Puerto Rico law permit prejudgment attachment to prevent unscrupulous litigants from moving assets to undermine "the effectiveness of the judgment which ***in due time may be rendered***."  *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 71 (1st Cir. 2002) (emphasis added) (quoting *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 913–14 (1st Cir. 1988) (quoting *F.D. Rich Co. v. Super. Ct.*, 99 P.R. 155, 173 (1970)));

*see also* Fed. R. Civ. P. 64.  Under Benworth's unfounded theory of justiciability, no party would ever be able to seek prejudgment attachment because the underlying litigation or arbitration is "ongoing."   In other words, according to Benworth, ***there is no such thing*** as prejudgment attachment.  Benworth's theory is inconsistent with the remedies afforded by both federal and Puerto Rico law and should therefore be rejected.

***Second***, Benworth argues that Womply has not suffered a concrete "injury to establish standing to bring the fraudulent transfers or the claim for declaratory judgment" because Womply has not yet received "an arbitration award in its favor."  (Mot. at 2; Joinder Mot. at 5.)  But Womply alleges in detail that Defendants have deprived Womply of nearly $200 million, and Benworth admits that Womply's allegations must be "accepted as true."  (Mot. at 3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).)  Therefore, Womply has "plausibly alleged a concrete economic injury" and "easily satisfies" the requirements "of Article III standing."  *Foisie*, 967 F.3d at 35.

***Finally***, Benworth "requests a stay" of this action "until an award issues in the Arbitration." (Mot. at 3; Joinder Mot. at 5.)  Womply agreed that the parties should jointly seek to stay this action pending a decision on the merits of the arbitration hearing; the fact hearing in the Arbitration was held on March 20–28, 2023, and closing arguments are scheduled for June 15, 2023. Defendants rejected Womply's proposal without explanation.  Because the parties agree that this action should be stayed, at least until the arbitrator issues a decision on the merits, this Court should exercise its discretion to enter such a stay.

Accordingly, this Court should deny the Motions to Dismiss in their entirety.

## BACKGROUND[1]

**A.    Benworth FL Fraudulently Transfers ████ ████ ████ ████ To Benworth PR ████████████████████████████████████████████ .**

Womply was founded in 2011 as a technology company that provided services to small businesses. (Complaint dated Jan. 24, 2023 ("**Complaint**" or "**Compl.**"; ECF No. 1) ¶ 63.) In 2020, during the height of the COVID-19 pandemic, Congress created the PPP to help small businesses obtain low-interest and potentially forgivable private loans to fund expenses such as payroll costs. (*Id.* ¶¶ 3, 36.) In 2021, Womply referred PPP loan applicants to PPP lenders and provided those lenders with technology services that allowed the lenders to efficiently process and manage a large volume of small-dollar PPP loans made to the smallest businesses. (*Id.* ¶¶ 5, 74–82.)

Benworth FL is a Florida mortgage lender owned and controlled by Mr. Navarro. (*Id.* ¶¶ 6, 84.) In April 2020, Benworth FL obtained authorization to make PPP loans. (*Id.* ¶¶ 6, 88.) In 2020, Benworth FL processed and funded approximately 700 PPP loans using a largely manual process. (*Id.* ¶¶ 6, 89.)

In 2021, Benworth FL contracted to use Womply's PPP loan referral services and technology services. (*Id.* ¶¶ 7, 91–94.) Using Womply's services, Benworth FL funded 305,790 Womply-referred PPP loans with a principal amount of more than $4 billion. (*Id.* ¶¶ 2, 124.) As a result, Benworth FL received more than $680 million in processing fees from the federal government, a government guarantee on the loans so it held no credit risk if a borrower defaulted, and 1% interest on the loans. (*Id.*) For the use of Womply's services, Benworth FL agreed to pay

---

[1] On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), "the pleadings are to be taken as true," and "the Court is not restricted to the face of the pleadings but may consider extra-pleading materials . . . ." *Reyes de Leon v. Coconut Prop., LLC*, 546 F. Supp. 3d 116, 121 (D.P.R. 2021) (cleaned up; collecting cases). All references to "Ex." refer to exhibits to the accompanying declaration of Alexander L. Cheney ("**Cheney Decl.**").

Womply certain fees for each Womply-referred loan that Benworth FL funded. (*Id.* ¶¶ 101, 108–21.) However, after Benworth FL received its fees from the federal government, Benworth FL reneged on its agreement to pay Womply. (*Id.* ¶¶ 2, 19, 125.)

In August 2021, Womply commenced the Arbitration to recover more than $153 million in fees due under its agreements with Benworth FL, more than $44 million in finance charges that have accrued on those unpaid fees under those agreements, plus its costs of collection. (*Id.* ¶¶ 2, 157–58.) In its October 2021 responsive pleading, Benworth FL represented that it was holding "any disputed fees in trust until its dispute with Womply . . . is resolved." (*Id.* ¶¶ 2, 159, 164.) That representation was false when it was made. (*Id.*) Instead, Defendants had already orchestrated a fraudulent transfer of those fees to Benworth PR in Puerto Rico. (*Id.* ¶¶ 9–10.)

In June 2021—at about the same time Benworth FL was refusing to pay Womply's fees—the Navarros formed Benworth PR under the laws of Puerto Rico. (*Id.* ¶¶ 10, 170.) ███████████ ████████████████████████████████████████████████████████ (*Id.* ¶¶ 24–25, 200.) Mr. Navarro owns 100% of Benworth FL. (*Id.* ¶¶ 23–24, 84.) Shortly after Benworth PR was formed, █████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████. (*Id.* ¶¶ 2, 165, 180–204.)

Despite Defendants' efforts to conceal this transaction, Womply learned about the fraudulent transfer through discovery in the Arbitration. (*Id.* ¶¶ 2, 9, 12, 166.) Womply promptly made a motion seeking the arbitrator's permission to disclose information about the transaction (which information was covered by the arbitrator's protective order) to a court of competent jurisdiction in order to obtain equitable and/or injunctive relief in connection with the fraudulent

transfer.  (*Id.* ¶¶ 14, 210.)  After extensive briefing, the arbitrator issued an order on January 17,

2023, finding that ████████████████████████████████████████████████

████████████████████████████████████████  (*Id.* ¶¶ 14, 211–12.)

The arbitrator also found that ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████  (*Id.*)  The

Arbitrator held that "[p]ursuant to the relevant agreements between the parties, either party may

seek equitable or injunctive relief concerning issues relevant to this Arbitration in a court of law,"

which "allow[s] Womply to seek equitable or injunctive relief in a court of competent jurisdiction

████████████████████████████████████████████████████

████  (*Id.* ¶¶ 29, 214.)  Accordingly, the arbitrator granted Womply's motion, finding that an

"extensive record has been developed ████████████████████████████████████

████████████████████████  and that, "[a]t the very least, that record raises a triable issue

regarding whether ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████  (*Id.* ¶¶ 15, 211, 213.)

**B.     Womply Commences This Proceeding To Obtain Prejudgment Attachment
         And Other Equitable Relief.**

On January 24, 2023, Womply filed this action bringing fraudulent transfer and declaratory

judgment claims seeking, among other things, rescission of the fraudulent transfer of funds from

Benworth FL to Benworth PR, attachment of Defendants' assets, and additional declaratory relief.

(*Id.* ¶¶ 215–56.)

On March 27, 2023, Benworth PR moved to dismiss or stay proceedings pending the outcome of the Arbitration.  (ECF No. 34.)  On March 29, 2023, Benworth FL moved to join Benworth PR's Motion.  (ECF No. 35.)  On April 4–5, 2023, counsel for Womply contacted both Puerto Rico and Florida counsel for Defendants by email and telephone to propose that "(1) all parties agree to stay the litigation pending an interim decision by the Arbitrator in the ongoing Arbitration (*i.e.*, a decision on the merits of the arbitration hearing, not a final determination of attorneys' fees and costs), (2) defendants withdraw their motions to dismiss without prejudice, and (3) counsel accept service for [Bernardo] and Claudia Navarro, which will avoid them having process servers serve them personally."  (Ex. 1.)  After delaying for over a week, Defendants' counsel responded that "Benworth, Benworth PR, and Mr. and Mrs. Navarro do not agree to any of the three parts of your proposal."  (*Id.*)

## ARGUMENT

### I.    THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THIS ACTION.

Benworth seeks to dismiss Womply's fraudulent transfer and declaratory judgment claims on ripeness and standing grounds under the "umbrella" of Rule 12(b)(1) because the Arbitration is "ongoing."  (Mot. at 2–3 (cleaned up); *see also* Joinder Mot. at 4–5.)  On a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "the court must take all of plaintiff's allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable to plaintiff."  *Soto v. McHugh*, 158 F. Supp. 3d 34, 46 (D.P.R. 2016) (cleaned up).  "[T]he standard applied to a 12(b)(1) motion is similar to the standard applied to a 12(b)(6) motion, namely," that "a complaint must contain sufficient factual matter 'to state a claim to relief that is plausible on its face.'"  *Id.* at 45–46 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up).

Benworth's arguments have no merit.  In fact, Benworth does not cite a single case in which a court has dismissed a claim for fraudulent transfer or declaratory judgment because the existence of a debt is disputed and the subject of ongoing litigation or arbitration.

**A.**    **This Action Involves An Actual Controversy That Is Ripe For Adjudication.**

"[A] case is ripe within the meaning of Article III" where there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of the judicial relief sought."  *Foisie*, 967 F.3d at 35 (quoting *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017)).  To determine ripeness, courts look to "whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal court," and "the harm to the parties seeking relief that would come to those parties from [the Court] withholding [] decision at this time."  *Reddy*, 845 F.3d at 501 (cleaned up).  These requirements are easily satisfied here.

Womply alleges that Benworth FL fraudulently transferred ███████████████████ ████████████████████████████████████████████████████████████████████████████. (Compl. ¶¶ 2, 10, 14–15, 165–204, 212–14.)  In this action, Womply seeks, among other relief, attachment of Defendants' assets, rescission of the fraudulent transfer, and declaratory relief.  (*Id.* ¶ 256.)  Under Benworth's own authority (*see* Mot. at 6 n.3), Womply's "fraudulent conveyance claims" that "are predicated on [its] underlying civil suit" are "ripe for adjudication."  *Foisie*, 967 F.3d at 36.  "The parties legal interests are unquestionably adverse," the "underlying civil claims are actively being litigated," and if Womply "successfully prosecutes [its] fraudulent conveyance claims, various remedies could be crafted to redress [its] injury *regardless of whether [its] civil claims have been reduced to judgment* by that time."  *Id.* (emphasis added).  Indeed, both federal and Puerto Rico law contemplate the remedy of *prejudgment* attachment.  *See* Fed. R. Civ. P. 64(b) (permitting prejudgment attachment); *Roca-Buigas v. LM Waste Servs. Corp.*, 2021 WL

4496467, at *2 (D.P.R. 2021) (Domínguez, J.) (granting "prejudgment attachment") (citing *Citibank v. ACBI*, 200 P.R. Sent. 724, 733 (2018)).

Contrary to Benworth's assertions, Womply's claims do not "ripen only after—and if—Womply obtains an arbitration award against Benworth FL." (Mot. at 2; *see also id.* at 5; Joinder Mot. at 4.) Under First Circuit precedent, fraudulent transfer claims are ripe while "underlying civil claims are actively being litigated." *Foisie*, 967 F.3d at 36. Prejudgment attachment would serve no purpose if claims seeking such relief were not ripe until a final determination, which would deprive litigants of any remedy should a party move or hide assets, like Defendants did here.

The First Circuit's decision in *Foisie* is instructive. There, Mr. Foisie "allegedly concealed millions of dollars in assets in order to shortchange his wife in the divorce settlement," by transferring those assets to Worcester Polytechnic Institute ("**WPI**"). *Id.* at 32–33. Ms. Foisie filed "a rash of litigation," including a "fraudulent transfer action" against WPI, which WPI argued was "unripe" because it was "predicated on her underlying civil suit" against Mr. Foisie. *Id.* at 34–36 & n.1. The First Circuit held that Ms. Foisie's claims against WPI were "ripe for adjudication," even though her "underlying civil claims are actively being litigated," because "she has plausibly alleged a concrete economic injury—that [Mr. Foisie] fraudulently concealed millions of dollars that were part and parcel of the marital estate, triggering his liability to her for various tort and contract claims; that he gratuitously transferred the concealed assets to WPI;" and that "WPI's alleged receipt of the transferred assets deprived the plaintiff of those assets and rendered [Mr. Foisie] insolvent." *Id.* at 35–36 (citations omitted). Womply likewise suffered a "concrete economic injury" when Benworth FL ████████████████████████████ to "shortchange" Womply in the Arbitration ████████████████████.

Benworth's reliance on *Lincoln House, Inc. v. Dupre*, 903 F.2d 845 (1st Cir. 1990), is misplaced. There, the plaintiff brought "a federal RICO action as a vehicle for attaching" property in dispute in state court. *Id.* at 848. The state court had "ample power to effect protective attachments" but twice denied petitions for attachment. *Id.* To avoid "plac[ing] the federal court in unseemly competition with the state court," the First Circuit declined to exercise jurisdiction. *Id.* Here, by contrast, the arbitrator determined that he lacked authority to issue equitable or injunctive relief, particularly against Benworth PR, which is not a party to the arbitration agreement, and "allow[ed] Womply to seek equitable or injunctive relief in a court of competent jurisdiction." (Compl. ¶¶ 29, 214.) Thus, unlike in *Lincoln House*, this action is Womply's only way to remedy Defendants' efforts to frustrate the Arbitration by moving assets.

Benworth raises three additional, meritless arguments. ***First***, Benworth ignores choice-of-law principles and assumes that "Puerto Rico law" governs Womply's claims, which, according to Benworth, requires that Womply be a "true debtor." (Mot. at 4–5; Joinder Mot. at 4.) But this is a diversity action by a Delaware limited liability company (Womply) against a Florida limited liability company (Benworth FL), a Puerto Rico limited liability company (Benworth PR), and two Puerto Rico residents (the Navarros) related to an Arbitration in California and arising out of contracts governed by California law. (Compl. ¶¶ 21–25, 27, 157.) At the appropriate stage, this Court will need to apply Puerto Rico's "most significant contacts" test to determine which jurisdiction's substantive law governs Womply's claims. *See Nieto-Vincenty v. Valledor*, 22 F. Supp. 3d 153, 161 (D.P.R. 2014) ("In a diversity case, the Court applies the choice-of-law rules of the forum state.") (cleaned up; collecting cases). At this stage, however, Benworth raises only federal constitutional issues about the justiciability of Womply's claims, which are governed by federal law. *Foisie*, 967 F.3d at 35. In any event, Benworth's own authority (*see* Mot. at 4–5)

recognizes that, for a fraudulent transfer claim, "[i]t is not necessary for the plaintiff to be a creditor with his credit recognized by judgment before starting the rescission lawsuit." *Sucesión Almazán v. López*, 20 P.R. Dec. 537, 1914 WL 5079, at *3 (1914); *see also De Jesus Díaz v. Carrero*, 112 P.R. Dec. 631, 12 P.R. Offic. Trans. 786, 801–02 (1982) (reversing dismissal of fraudulent transfer claims).[2]

**Second**, Benworth falsely asserts that this Court cannot adjudicate Womply's claims because they relate to the contract dispute in the Arbitration, so "the FAA [Federal Arbitration Act] and the parties' arbitration agreement forbid" this Court from making "a parallel ruling on the merits of the claims at issue in the Arbitration." (Mot. at 6; *see also* Joinder Mot. at 4.)  Not so.  As the arbitrator in the Arbitration already found, the arbitration agreement between Womply and Benworth FL (to which Benworth PR is not a party) expressly allows the parties to assert claim for "injunctive or other equitable relief" in court, which is all Womply is seeking in this action. (Compl. ¶¶ 27, 29.)

**Third**, Benworth argues that Womply "must adequately allege that [Benworth FL] is a true debtor of the plaintiff."  (Mot. at 5.)  Womply has alleged in detail that "Benworth FL owes Womply a debt of more than $153 million in fees due under the Agreements, plus more than $44 million in interest that continues to accrue."  (Compl. ¶¶ 216, 231; *see also id.* ¶¶ 125–39.)  Benworth may dispute those allegations, but the Complaint must be "accepted as true" on a Rule 12(b)(1) motion, as Benworth concedes.  (Mot. at 3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).)  The fact that the underlying debt will be addressed in the Arbitration does not foreclose this Court from adjudicating Womply's claims for equitable relief.  *See In re Tyoc Int'l, Ltd.*, 2003 WL 23112341, at *3 (D.N.H. Dec. 29, 2003) (compelling certain claims to arbitration

---

[2] Official or certified translations of these cases are appended as Exhibits 2 and 3, respectively.

and denying stay for non-arbitrable claims despite "evidentiary overlap").  Benworth admits that this Court has the power to adjudicate the "non-arbitrable claims" in this action, which is why it seeks a stay instead of dismissal under the FAA.  (Mot. at 8–9 (collecting cases); *see also infra* Section III.)

**B.**      **Womply Has Standing To Seek Prejudgment Equitable Relief.**

Article III standing requires that "a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Foisie*, 967 F.3d at 35 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).  "To establish an injury in fact, a plaintiff must demonstrate that 'she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'"  *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548) (cleaned up).  "The constitutional standing and ripeness inquiries are interrelated and often duplicative." *Id.* (collecting cases).

Womply "easily satisfies the three elements of Article III standing." *Id.  **First**,* Womply alleges that, because Defendants fraudulently transferred ████████████ from Benworth FL to Benworth PR, ████████████, Womply has been deprived of nearly $200 million it is owed by Benworth FL.  (Compl. ¶¶ 2, 19, 216–18, 231–233.)  Womply has thus "plausibly alleged a concrete economic injury" from Defendants "fraudulently conceal[ing] millions of dollars."  *Foisie*, 967 F.3d at 35–36.  Benworth argues that Womply's injury is "hypothetical" because "it is contingent on the outcome of a pending Arbitration."  (Mot. at 7–8 (cleaned up); *see also* Joinder Mot. at 3, 5.)  But, as discussed above, Womply alleges in detail that Benworth FL owes Womply a debt, which Benworth admits must be accepted as true. (*See supra* Section I.A.)

***Second***, Womply alleges that the Navarros negotiated a sham transaction in the summer of 2021 pursuant to which Benworth FL ███████████████████████████████ ███████████████████████████████. (Compl. ¶¶ 2, 10, 165; *see also id.* ¶¶ 166–84.)  Thus, Womply's "injury is fairly traceable to [Defendants'] role in the transfers," which "deprived the plaintiff of those assets." *Foisie*, 967 F.3d at 36.

***Third***, Womply seeks, among other things, rescission of the fraudulent transfer and attachment of Defendants' assets (Compl. ¶ 256) to "redress [its] alleged injury" from "transfer[ing] the concealed assets." *Foisie*, 967 F.3d at 36.

## II.   WOMPLY CONSENTS TO STAY THIS ACTION PENDING A DECISION ON THE MERITS IN THE ARBITRATION.

Benworth does not dispute that Womply is entitled to seek injunctive and other equitable relief in this Court under the operative agreements.  Instead, Benworth claims that a stay is mandatory under Section 3 of the FAA, 9 U.S.C. § 3, because Womply's claims are "contingent on the outcome of the Arbitration."  (Mot. at 8; *see also id.* at 9–10; Joinder Mot. at 5.)  As an initial matter, if this Court has the power to stay this action, as Benworth argues, then this Court has subject-matter jurisdiction over this action, contrary to Benworth's assertions in the Motions to Dismiss.

In any event, Womply's claims are not contingent.  As discussed above, Womply adequately alleges that Benworth FL owes Womply nearly $200 million, ███████████████ ███████████████████████████████.  (*See supra* Section I.A.)  Nor is a stay mandatory.  Benworth admits that "the district court has '***discretion*** to stay litigation of the remaining non-arbitrable claims pending the outcome of the arbitration proceeding.'" (Mot. at 8 (emphasis added) (quoting *Santa Cruz v. Banco Santander P.R.*, 2008 WL 5192347, at *2 (D.P.R.

Dec. 10, 2008)); *see also* Joinder Mot. at 5.)  Therefore, Benworth is wrong that it is entitled to a stay as a matter of right.

Nevertheless, Womply consents to a short stay in the interest of efficiency and judicial economy.  Closing arguments in the Arbitration are scheduled for June 15, 2023 (Cheney Decl. ¶ 3), and Womply anticipates that the arbitrator will issue a decision on the merits shortly thereafter. *See* JAMS R. 24(a) (requiring that "[t]he Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing").  If the arbitrator issues a decision on the merits in Womply's favor, it may be a Partial Final Award or an interim award, because the arbitrator will then have to resolve Womply's claim for costs of collecting the outstanding fees, including attorneys' fees.  Womply consents to a stay of this action pending the arbitrator's decision on the merits of the arbitration hearing—whether it is a Final Award, Partial Final Award, or interim award—and it does not consent to further delay this action while the arbitrator resolves Womply's claim for its costs of collecting outstanding fees.  Womply also reserves the right to seek to lift the stay if circumstances change or based on new information.[3]

## CONCLUSION

For the foregoing reasons, Womply respectfully requests that this Court (i) deny Defendants' Motions to Dismiss in their entirety; and (ii) stay this action pending an interim decision by the Arbitrator in the ongoing Arbitration (*i.e.*, a decision on the merits of the claims tried at the arbitration hearing, not a final determination of attorneys' fees and costs).

---

[3] This Court should deny Benworth FL's footnoted request to "administratively dismiss this case" (Joinder Mot. at 4 n.2), which is not supported by its citation to a statute requiring "each United States district court" to implement "a civil justice expense and delay reduction plan."  28 U.S.C. § 471.

Dated: April 24, 2023

*Of Counsel:*

Willkie Farr & Gallagher LLP                    Respectfully submitted,

By: */s/ Alexander L. Cheney*                    By: */s/ Alejandro J. Cepeda Diaz*

Alexander L. Cheney (admitted *pro hac vice*)    Alejandro J. Cepeda Diaz
One Front Street                                 USDC-PR 222110
San Francisco, CA 94111                          McConnell Valdés LLC
(415) 858-7400                                   270 Muñoz Rivera Ave.
acheney@willkie.com                              Hato Rey PR 00918
                                                 Tel: (787) 250-5637
Stuart R. Lombardi (admitted *pro hac vice*)     Email: ajc@mcvpr.com
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019                               *Attorneys for Plaintiff Oto Analytics, LLC*
(212) 728-8000
slombardi@willkie.com

Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 24, 2023, the foregoing document was filed with the Clerk of the Court using CM/ECF, which sent notices to all parties receiving notifications through the CM/ECF system.

Dated: April 24, 2023                    By: */s/ Alejandro J. Cepeda Diaz*

*Attorney for Plaintiff Oto Analytics, LLC*