IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| OTO ANALYTICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 23-01034 |
| | § | |
| BENWORTH CAPITAL PARTNERS PR | § | |
| LLC, BENWORTH CAPITAL PARTNERS | § | |
| LLC, BERNARDO NAVARRO and | § | |
| CLAUDIA NAVARRO, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF WOMPLY'S MOTION FOR LEAVE TO SERVE BY PUBLICATION DEFENDANTS BERNARDO NAVARRO AND CLAUDIA NAVARRO**

Alexander L. Cheney (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
acheney@willkie.com

Joshua S. Levy (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

Alejandro J. Cepeda Diaz
USDC-PR 222110
McConnell Valdés LLC
270 Muñoz Rivera Ave.
Hato Rey PR 00918
Tel: (787) 250-5637
Email: ajc@mcvpr.com

*Attorneys for Plaintiff Oto Analytics, LLC*

July 13, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT BACKGROUND ...................................................................................................2

      A.    Womply Commences This Action Because The Navarros Fraudulently Transferred Assets To Puerto Rico To Avoid Paying Womply. ............................2

      B.    The Navarros' Actual Knowledge Of This Action ..................................................4

      C.    The Navarros Refuse To Accept Service. ................................................................5

      D.    Womply's Diligent Efforts To Serve The Navarros In Puerto Rico And Florida .....................................................................................................................5

      E.    This Court Extends Womply's Time To Effect Service. .........................................6

      F.    Womply's Efforts To Identify The Navarros' Puerto Rico Home Address ............6

      G.    Womply's Continuing Efforts To Seek To Serve The Navarros In Puerto Rico And Florida ..................................................................................................8

ARGUMENT ............................................................................................................................11

I.    THIS COURT SHOULD GRANT PLAINTIFF WOMPLY LEAVE TO SERVE THE NAVARROS BY PUBLICATION. ............................................................................11

II.    THIS COURT SHOULD EXTEND WOMPLY'S TIME TO SERVE THE NAVARROS SO THAT SERVICE BY PUBLICATION CAN BE ACCOMPLISHED. .................................................................................................................14

III.    WOMPLY RESERVES THE RIGHT TO SEEK COSTS AND FEES ASSOCIATED WITH SERVICE BY PUBLICATION. ....................................................15

CONCLUSION .......................................................................................................................15

CERTIFICATE OF SERVICE ................................................................................................17

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Bautista Cayman Asset Co. v. Las Casitas Oasis, Inc.*,
2017 WL 7362732 (D.P.R. June 20, 2017)..............................................................12

*Calderón Serra v. Banco Santander P.R.*,
747 F.3d 1 (1st Cir. 2014)....................................................................2, 11, 12, 13

*Farb v. Perez-Riera*,
293 F.R.D. 77 (D.P.R. 2013) .................................................................................15

*Hasebrouck v. Great Lengths Int'l*,
2008 WL 11502476 (D.P.R. Mar. 27, 2008) ..........................................................12

*Lanzo Llanos v. Banco de la Vivienda*,
133 D.P.R. 507 (1993) ......................................................................................11, 12

*Live Well Fin., Inc. v. Estate of Santana Martinez*,
2020 WL 12188413 (D.P.R. Jan. 14, 2020)............................................................14

*Martinez-Alicea v. LT's Benjamin Records, Inc.*,
2012 WL 13170563 (D.P.R. Dec. 19, 2012) ...............................................11, 12, 13

*Moreno-Perez v. Toledo-Davila*,
266 F.R.D. 46 (D.P.R. 2010) .................................................................................14

*Pramco CV9, LLC v. Pesquera-Sanchez*,
2009 WL 1473713 (D.P.R. May 26, 2009)..............................................................12

*Senior Loiza Corp. v. Vento Dev. Corp.*,
760 F.2d 20 (1st Cir. 1985).....................................................................................13

**Rules**

Fed. R. Civ. P. 4(d) ...................................................................................................15

Fed. R. Civ. P. 4(e) .............................................................................................1, 2, 11

Fed. R. Civ. P. 4(m) ..............................................................................................1, 14

P.R. Law Ann. Tit. 32, app. III, R. 4.5.......................................................................13

P.R. Law Ann. Tit. 32, app. V, R. 4.6(a) ...........................................................1, 2, 11

iii

**Other Authorities**

4B Charles S. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1137
   (4th ed. 2023) .................................................................................................................14

Pursuant to Federal Rules of Civil Procedure 4(e)(1) and 4(m) and Puerto Rico Rule of Civil Procedure 4.6, Plaintiff Oto Analytics, LLC (f/k/a Oto Analytics, Inc. d/b/a Womply) ("**Womply**") respectfully requests that this Court (i) grant Womply leave to serve by publication Defendants Bernardo Navarro ("**Mr. Navarro**") and Claudia Navarro ("**Ms. Navarro**"; together with Mr. Navarro, the "**Navarros**"), and (ii) extend Womply's time to serve the Navarros by 30 days after this Court rules on this Motion.

## PRELIMINARY STATEMENT

Womply has been diligently trying to serve the Navarros for more than five months. Womply provided copies of the Complaint to the Navarros' counsel and requested that they accept or waive service, but they refuse to do so.  Womply has thus been forced to engage process servers and has attempted to serve the Navarros *16 times* at *five different addresses*—including three home addresses and two business addresses—but the Navarros are evading service.

After months of searching public records across three different jurisdictions, Womply finally tracked down the address for the Navarros' residence in Puerto Rico, which is owned by a generically named limited liability company.  The Navarros' home is located in an exclusive resort area in Dorado, Puerto Rico, which requires visitors to be escorted by security through three checkpoints to reach any specific address.  Security at the resort refuses to permit Womply's process servers to access the Navarros' home.  In addition, Mr. Navarro's father represented to one of Womply's process servers that the Navarros are in Europe through the end of July, which, if true, would make serving them personally in a timely manner impossible.  Womply has asked the Navarros' respective counsel to confirm whether the Navarros are in fact in Europe, but they refuse to respond.   In short, the Navarros are frustrating this Court's Orders by making it impossible to effect service "personally" or at their "dwelling or usual place of abode" during the applicable time period.  Fed. R. Civ. P. 4(e)(2).

Puerto Rico law, which applies under Federal Rule of Civil Procedure 4(e)(1), does not permit Defendants to avoid service in this way.  It expressly authorizes service by publication where, as here, "the person to be served is . . . in Puerto Rico [but] could not be located after reasonable diligence or is hiding to avoid being served."  P.R. Law Ann. Tit. 32, app. V, R. 4.6(a).  As the accompanying ***ten declarations*** and ***33 exhibits*** show in detail, Womply has undertaken extraordinary efforts to effect service and its claims have a strong factual foundation.  Courts routinely permit service by publication based on far less.  *See, e.g.*, *Calderón Serra v. Banco Santander P.R.*, 747 F.3d 1, 8–9 (1st Cir. 2014) (affirming service by publication based on a single affidavit).

Accordingly, this Court should grant Womply leave to serve the Navarros by publication and grant Womply an extension of time to effectuate such service.

## RELEVANT BACKGROUND[1]

**A.    Womply Commences This Action Because The Navarros Fraudulently Transferred Assets To Puerto Rico To Avoid Paying Womply.**

On January 24, 2023, Womply filed the Complaint ("**Complaint**" or "**Compl.**"; ECF No. 3) in the above-captioned action (the "**Action**") against the Navarros, Benworth Capital Partners PR LLC ("**Benworth PR**"), and Benworth Capital Partners LLC ("**Benworth FL**"; collectively, "**Defendants**"), bringing claims for actual fraudulent transfer, constructive fraudulent transfer, and declaratory relief.  Womply alleges that Benworth FL contracted to use Womply's services in connection with the Paycheck Protection Program ("**PPP**"), refused to pay for Womply's services, and then fraudulently transferred  money to Benworth PR to prevent Womply from collecting its fees.  (Compl. ¶¶ 2, 7, 9, 19, 91–94, 125, 165.)

---

[1] All references to "Ex." refer to exhibits to the accompanying declaration of Joshua S. Levy ("**Levy Decl.**").

In early 2021, Benworth FL contracted to use Womply's PPP loan referral and technology services, and agreed to pay Womply certain fees for each Womply-referred loan that Benworth FL funded. (*Id.* ¶¶ 7, 91–94, 101, 108–21.) Using Womply's services, Benworth FL funded more than 300,000 Womply-referred PPP loans with a principal amount of more than $4 billion. (*Id.* ¶¶ 2, 124.) As a result, Benworth received more than $680 million in processing fees from the federal government and 1% interest on the loan. (*Id.*) However, after Benworth FL received its fees from the federal government, Benworth FL reneged on its agreement to pay Womply. (*Id.* ¶¶ 2, 19, 125.)

In August 2021, Womply initiated a JAMS arbitration against Benworth FL (the "**Arbitration**") seeking to recover more than $153 million in fees due under its agreements with Benworth FL, more than $44 million in finance charges that have accrued (and continue to accrue) on those unpaid fees under those agreements, and its costs of collection. (*Id.* ¶¶ 2, 157–58.) Unbeknownst to Womply, the Navarros had already transferred ███████ from Benworth FL to Benworth PR in a sham transaction leaving Benworth FL unable to satisfy its debt to Womply. (*Id.* ¶¶ 2, 165, 180–204.)

Despite Defendants' efforts to conceal this transaction, Womply learned about the fraudulent transfer through discovery in the Arbitration. (*Id.* ¶¶ 2, 9, 12, 166.) Womply promptly made a motion seeking the arbitrator's permission to disclose information about the transaction (which information was covered by the arbitrator's protective order) to a court of competent jurisdiction in order to obtain equitable and/or injunctive relief in connection with the fraudulent transfer. (*Id.* ¶¶ 14, 210.) After extensive briefing, the arbitrator granted Womply's motion, finding that an ████████████████████████████████████████████ ████████████████████████████████ and that, ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ (*Id.* ¶¶ 15, 211, 213.)

The final evidentiary hearing in the Arbitration took place at the JAMS offices in San Francisco, California, from March 20, 2023 to March 28, 2023. (Levy Decl. ¶ 3.) The arbitrator held closing arguments in the Arbitration on June 29, 2023. (*Id.* ¶ 6.) During the June 29 argument, the arbitrator represented that he would issue a decision on the merits by September 15, 2023. (Ex. 3 (Arb. Hr'g Tr.) at 1761:11–25.)

## B.    The Navarros' Actual Knowledge Of This Action

The Navarros are aware of and have participated in this Action. Mr. Navarro owns 100% of and is the CEO of Benworth FL, which was validly served and moved to dismiss the Complaint. (Compl. ¶¶ 23–24, 84; ECF Nos. 21, 35, 55, 61.) Mr. Navarro is personally represented by the same counsel as Benworth FL. (ECF Nos. 18, 26, 41–44, 65.) Ms. Navarro ████████████ ████████████████████, which also was validly served and moved to dismiss the Complaint. (Compl. ¶¶ 24–25, 200; ECF Nos. 22, 34, 55, 61.) Ms. Navarro is personally represented by the same counsel as Benworth PR. (ECF Nos. 16, 25.) Mr. Navarro ████████████████ █████████████████████████████████. (Compl. ¶¶ 11, 24, 197, 200.) The Navarros have jointly moved to quash service of the Complaint. (ECF Nos. 37, 59, 64.) In support of their motion to quash, Mr. and Ms. Navarro each submitted a sworn declaration claiming detailed knowledge of docket filings in this Action and quoting from affidavits of service Womply filed in this Action. (ECF Nos. 37-1, 37-2.)

Mr. Navarro also is aware of this Action as a result of his participation in the Arbitration. Mr. Navarro attended every day of the Arbitration's March 2023 evidentiary hearing in person as well as closing arguments, and ██████████████████████████████████████

- 4 -

█████. (Levy Decl. ¶¶ 3–4; Ex. 1 (Joint Exhibit List) No. JX330.) ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ (Ex. 2 (Arb. Hr'g Tr.) at 1387:10–1388:12.)

## C.    The Navarros Refuse To Accept Service.

Womply repeatedly requested that the Navarros accept or waive service, but the Navarros'

respective counsel have either rejected Womply's requests or refused to respond:

- On January 26, 2023, Womply asked counsel for Benworth FL whether they would accept service. They never responded. (Levy Decl. ¶ 7; Ex. 4.)

- On April 3–5, 2023, counsel for Womply contacted both Puerto Rico and Florida counsel for Defendants by email and telephone to propose that, among other things, "counsel accept service for [Bernardo] and Claudio Navarro, which will avoid them having process servers serve them personally." (Levy Decl. ¶¶ 8–9; Ex. 5.) Defendants' counsel responded that "Benworth, Benworth PR, and Mr. and Mrs. Navarro do not agree to any of the three parts of your proposal," and did not return calls to discuss this issue. (Ex. 5.)

- On June 13, 2023, counsel for Womply sent counsel for Mr. Navarro and Ms. Navarro, respectively, by email and paper mail requests to waive service of process pursuant to Federal Rule of Civil Procedure 4(d). Neither counsel has responded. (Levy Decl. ¶¶ 12–13; Exs. 6–7.)

## D.    Womply's Diligent Efforts To Serve The Navarros In Puerto Rico And Florida

As Womply recounted in prior briefing (see Womply's Opp. to Mot. to Quash at 1–6, ECF

No. 54; Womply's Mot. for Extension of Time at 1–3, ECF No. 69), from January to April 2023,

Womply attempted to serve the Navarros *eight times* at *three different addresses*:

- **Benworth PR Office.** On February 2, February 3, February 7, April 20, and April 21, 2023, process servers for Womply delivered the Summonses and Complaint to Benworth PR's office located at 221 Avenida Ponce De Léon, Suite 1401, San Juan, Puerto Rico 00917, and inquired about the Navarros. (Ex. 8 (Pérez Decl.) ¶¶ 2–3, 5–7; Exs. 9–10; ECF Nos. 23–24.) During the February 7 service attempt, service was accepted by the Office Administrator who represented that she was "authorized to accept service on behalf of" Benworth PR, Mr. Navarro, and Ms. Navarro. (Ex. 9 (Torres Decl.); Ex. 10 (Torres Decl.); ECF Nos. 22–24.)

- **The Navarros' Listed Puerto Rico Address.** On April 19, 2023, a process server for Womply attempted to deliver the Summonses and Complaint to the "home address"

listed on the Navarros' drivers' licenses: ███████████████████████
███████████████████████. (Ex. 11; Ex. 8 (Pérez Decl.) ¶ 4.) He was unable to enter
the apartment building but spoke to a woman standing on the balcony of Apartment
101 who represented that she has lived in the apartment for the past 30 years and did
not know Mr. Navarro or Ms. Navarro. (*Id.*)

- **The Navarros' Florida Home.** Womply identified ███████████████████████
  ███████████ as the Navarros' last known Florida home address based on public
  records searches showing that the Navarros purchased the property in their own names
  in 2005 and, on May 12, 2021, transferred it to the Ocean Terrace Family Trust, which
  has the same address as Benworth FL. (Levy Decl. ¶ 18; Ex. 12.) On April 25 and 26,
  2023, a process server for Womply attempted to deliver the Summonses and Complaint
  to ███████████ (Ex. 13 (Brady Decl. B. Navarro) ¶¶ 4–6; Ex. 14 (Brady Decl.
  C. Navarro) ¶¶ 4–6.) The process server was unable to enter the house, which had a
  gated entrance, but recorded the license plate of the Range Rover in the driveway,
  which Womply identified as registered to Mr. Navarro's father. (Exs. 13–15.)

### E.    This Court Extends Womply's Time To Effect Service.

On March 30, 2023, the Navarros moved to quash Womply's service of process. (ECF
No. 37.) Womply opposed the motion and, in the alternative, requested additional time to serve
the Navarros and leave to serve the Navarros by publication. (ECF Nos. 54, 69.) On June 13,
2023, this Court granted the Navarros' motion in part, held that "dismissal is not necessarily
warranted," and ordered Womply "to re-serve the summons upon co-defendants Bernardo Navarro
and Claudia Navarro within thirty (30) days of the issuance of this order." (ECF No. 70 (the
"**Order**").)

### F.    Womply's Efforts To Identify The Navarros' Puerto Rico Home Address

Womply has identified the Navarros' home address as ███████████████████████
███████████████████████████████ following an extensive investigation that included
searching credit reports, Puerto Rico corporate records, Delaware corporate records, real estate
databases, vehicle registrations, and social media. (Levy Decl. ¶¶ 24–37.) The Navarros made
considerable efforts to conceal their ownership of ███████████████ The property is owned
by 11DBE Holdings LLC, a Puerto Rico limited liability company formed in December 2021. (*Id.*

- 6 -

¶ 27; Exs. 31–32.)  11DBE Holdings LLC acquired the property in January 2022 by merging with North 112, LLC, a Delaware limited liability company.   (Levy Decl. ¶ 27; Exs. 20–21.) Mr. Navarro and Carlos Lamoutte, a Puerto Rico attorney, are listed as managers for 11DBE Holdings LLC.  (Exs. 22–23.)  The company address for 11DBE Holdings LLC is 221 Avenida Ponce De Léon, Suite 1401, San Juan, Puerto Rico 00917, which is the same address listed for Benworth PR.  (*Id.*; Ex. 12.)

Public records confirm that the Navarros live at ███████████████.  Credit header searches for Mr. Navarro and Ms. Navarro list their March 2023 address as ████████ in Dorado, Puerto Rico.  (Exs. 17–18.)  In 2022 and 2023, Mr. Navarro registered four vehicles to ████████████████: a 1990 Mercedes-Benz, a 2023 Vespa scooter, a 2021 Cadillac Escalade, and 2021 Jeep Wrangler.  (Levy Decl. ¶¶ 33–34.)  Three of these vehicles' registrations were renewed to ████████████████ in March 2023. (*Id.*)  And, in March 2023, the Navarros filed sworn declarations in this Action representing that they were located in "Dorado, Puerto Rico." (ECF Nos. 37-1, 37-2.)

Postings on Mr. Navarro's social media accounts also suggest that the Navarros live at ████████████████.  In January 2022, Isaris Rosado Garcia charged Mr. Navarro on the mobile payment app Venmo for "Mantenimiento lote 11" from a telephone number associated with air conditioning installation and maintenance company Vazquez A/C.  (Levy Decl. ¶ 36; Ex. 24.)  Ms. Rosado Garcia lives in Vega Alta, Puerto Rico, which is approximately four miles from ████████████████.  (Levy Decl. ¶ 36.)  In February 2022, Mr. Navarro paid Milton Miranda, a physical trainer based in Dorado, Puerto Rico, by Venmo.  (*Id.*; Ex. 24.)   In March 2022, Mr. Navarro paid Arturo Diaz, a tennis coach based in Dorado, Puerto Rico, by

Venmo. (*Id.*)  In February 2023, Mr. Navarro geotagged a tweet in Dorado, Puerto Rico. (Levy Decl. ¶ 37; Ex. 25.)

**G.    Womply's Continuing Efforts To Seek To Serve The Navarros In Puerto Rico And Florida**

After this Court's June 13, 2023 Order, Womply again attempted to serve the Navarros an additional ***eight times*** at ***three different addresses***.

1.  Womply's Attempts To Personally Serve The Navarros At Their Address In Puerto Rico.

Womply sought to serve the Navarros at their Puerto Rico home address of ███████ ████████████████████████. Dorado Beach Estates is an exclusive resort area in Dorado, Puerto Rico, with direct access to the Dorado Beach Resort. (Ex. 26 (Figueroa Decl.) ¶ 3.)  Dorado Beach Estates has its own security and Dorado Beach Estates is under its own municipality. (*Id.*) Therefore, it is only possible to access Dorado Beach Estates via security escort and security can exclude anyone from the area. (*Id.*)  To access ████████████████, guests must leave their car, pass through three security checkpoints, and then be escorted by security to the address by golf cart. (*Id.*)

On June 20, 2023, after coordinating with security at Dorado Beach Estates, a process server for Womply delivered the Summonses and Complaint to ████████████████. (*Id.* ¶ 4.)  The process server knocked on the door and rang the doorbell for five minutes but no one answered and there was no movement inside the house. (*Id.*)  Security then escorted the process server out of Dorado Beach Estates. (*Id.*)

The next day, the process server returned to Dorado Beach Estates, but security refused to escort her to ████████████████. (*Id.* ¶ 5.)  Instead, security called both Mr. Navarro and Ms. Navarro but did not receive an answer. (*Id.*)  Security then called a handyman for the property who represented that the Navarros were not in Puerto Rico; he did not say where they were or

when they would return.  (*Id.*)  The Dorado Beach Estates administration and security refused to provide any additional information about the Navarros and would not permit Womply's process server to access ████████████████████.  (*Id.* ¶¶ 5–6.)

          2.  <u>Womply's Attempt To Personally Serve The Navarros At Their Last Known Address In Florida</u>

Womply continued to attempt to serve the Navarros at their last known address in Florida: ████████████████████████████████████████████████████████.

On June 16, 2023, a process server for Womply delivered the Summonses and Complaint to ████████████.  (Ex. 27 (July Brady Decl.) ¶ 3.)  The security gate was open, so the process server entered the property and knocked on the door.  (*Id.*)  Although a Range Rover registered to Gilberto Navarro, Mr. Navarro's father, was parked in the driveway, no one answered the door. (*Id.*; Ex. 15.)   The process server waited outside the house and continued to knock for approximately 30 minutes but no one answered.  (Ex. 27 (July Brady Decl.) ¶ 3.)

The next day, the process server returned to ████████████.  (*Id.* ¶ 4.)  Again, the security gate was open and Mr. Navarro's father's Range Rover was parked in the driveway, but no one answered when the process server knocked for approximately 30 minutes.  (*Id.*)

On June 19, 2023, the process server again delivered the Summonses and Complaint to ██ ████████.  (*Id.* ¶ 5.)  The security gate was open, so the process server entered the property and knocked on the door for approximately 30 minutes.  (*Id.*)  There was a white Toyota parked in the driveway with Florida license plates and a dog inside the house, but no one answered the door. (*Id.*)

On June 22, 2023, at 7:45 AM, the process server again went to ████████████.  (*Id.* ¶ 6.)  The security gate was closed so he was unable to enter the property.  (*Id.*)   Although

Mr. Navarro's father's Range Rover was parked in the driveway, no one answered when the process server paged the callbox for approximately 15 minutes. (*Id.*)

At 2:00 PM the same day, the process server returned to ▮▮▮▮▮▮▮. (*Id.* ¶ 7.) The security gate was open, and the process server entered the property, knocked on the door, and heard a dog barking inside the house. (*Id.*) A woman who appeared to be in her sixties answered the door. (*Id.*) She did not provide her name but said that the Navarros were not at the property; she called a man she identified as her husband and as Mr. Navarro's father. (*Id.*) The man identified as Mr. Navarro's father told the process server that the Navarros were traveling in Europe until the end of July. (*Id.*) He told the process server to bring the Summonses and Complaint to his office at 700 Biltmore Way, Suite C1, Coral Gables, FL 33134, and he would send copies to the Navarros. (*Id.*) This is the same address as Benworth FL. (Ex. 12.)

The next day, the process server delivered the Summonses and Complaint to the man identified as Mr. Navarro's father at Benworth FL, located at 700 Biltmore Way, Suite C1, Coral Gables, FL 33134. (Ex. 27 (July Brady Decl.) ¶ 8.) Mr. Navarro's father accepted the documents and represented that he would provide them to the Navarros. (*Id.*)

### 3. Womply's Attempt To Confirm If The Navarros Are In Europe

On July 10, 2023, counsel for Womply sent emails to counsel for Mr. Navarro and counsel for Ms. Navarro, respectively, asking them to confirm whether the Navarros were in fact "in Europe until the end of the July," as Mr. Navarro's father claimed. (Levy Decl. ¶¶ 12–13; Exs. 6–7.) Neither counsel responded. (*Id.*)

**ARGUMENT**

**I.    THIS COURT SHOULD GRANT PLAINTIFF WOMPLY LEAVE TO SERVE THE NAVARROS BY PUBLICATION.**

Under the Federal Rules of Civil Procedure, an individual is validly served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located where service is made."  Fed. R. Civ. P. 4(e)(1).  Puerto Rico law allows for service by publication "[w]hen the person to be served is . . . in Puerto Rico [but] could not be located after reasonable diligence or is hiding to avoid being served."  P.R. Law Ann. Tit. 32, app. V, R. 4.6(a).[2]  A motion for leave to serve by publication requires only (i) an "affidavit stating the efforts made to serve process," and (ii) an affidavit or verified complaint that "establishes the existence of a claim that warrants relief against the person upon whom service is to be effected."  *Id*.  Womply easily satisfies both requirements.

Womply has submitted ***ten sworn declarations*** detailing its extensive efforts to serve the Navarros, including attempting service ***16 times*** at ***five different addresses*** and untangling the Navarros' shell companies across three jurisdictions (Delaware, Florida, and Puerto Rico) to finally uncover their home address in Dorado, Puerto Rico.  But security is preventing Womply's process servers from accessing their home.  Womply even tracked down Mr. Navarro's father who represented that he would provide copies of the Summonses and Complaint to the Navarros who are somewhere in Europe through the end of July.  As the Puerto Rico Supreme Court has held, the "reasonableness of the steps taken will depend on the particular circumstances of each case."

---

[2] Puerto Rico law is considered "state law" for purposes of Rule 4(e)(1).  *See Calderón Serra*, 747 F.3d at 8; *Martinez-Alicea v. LT's Benjamin Records, Inc.*, 2012 WL 13170563, at *1 (D.P.R. Dec. 19, 2012).

*Lanzo Llanos v. Banco de la Vivienda*, 133 D.P.R. 507, 515 (1993).[3]  Here, Womply's detailed

declarations—which are based on first-hand knowledge, identify the date and time of each service

attempt at each address, record the number of minutes for each service attempt, and recount

conversations conducted in connection with attempts to effect service—are more than sufficient

to "demonstrate that the plaintiff has made effective efforts to try to locate the defendant[s] and

summon [them] personally, and that despite this diligence it has been impossible to locate [them]."

*Id.* at 514.  Courts routinely permit service by publication based on far less.[4]

For example, in *Calderón Serra*, "Plaintiffs sought service by publication for three

defendants" under federal and Puerto Rico law.  747 F.3d at 8.  "To show their efforts at personal

service, plaintiffs offered an affidavit from private investigator Andrés Amador."  *Id.*  As to two

defendants, "Amador averred that his efforts turned up a last known address but little current

information beyond suggestions that each had left Puerto Rico."  *Id.*  As to the third defendant,

José Álvarez, "[h]e reported that Álvarez's name was too common to produce workable leads, and

records checks had proved unavailing."  *Id.*  "The district court granted the motion" to serve by

publication based on this affidavit, and the First Circuit found no error in that decision.  *Id.*

Similarly, in *Martinez-Alicea*, the plaintiffs sought "service by publication pursuant to

Puerto Rico law, as authorized by the Federal Rules."  2012 WL 13170563, at *1 (citing Fed. R.

---

[3] Pursuant to Local Civil Rule 5(c), Womply has requested a certified translation of the *Lanzo Llanos* decision and will publicly file it with the Court as soon as it is available.

[4] *See, e.g.*, *Pramco CV9, LLC v. Pesquera-Sanchez*, 2009 WL 1473713, at *1 (D.P.R. May 26, 2009) ("Plaintiff's motion for service by publication was granted by this Court, and summons by publication were issued."); *Hasebrouck v. Great Lengths Int'l*, 2008 WL 11502476, at *1 (D.P.R. Mar. 27, 2008) ("The Puerto Rico court authorized service by publication . . . .").  Womply's efforts to serve the Navarros bear no resemblance to *Bautista Cayman Asset Co. v. Las Casitas Oasis, Inc.*, 2017 WL 7362732, at *1 (D.P.R. June 20, 2017), where the process server "does not provide the time when the visits were conducted," and "the process server does not state that he actually attempted to visit the residence."

Civ. P. 4(e)(1).)  The court held that such a motion required "an affidavit stating the steps taken" to locate defendants and a "verified complaint" or affidavit "justifying the granting of some relief against the person to be served."  *Id.* (quoting P.R. Law Ann. Tit. 32, app. III, R. 4.5).[5]  "The motion for service by publication include[d] affidavits meeting both of these requirements."  *Id.* Specifically, plaintiffs filed three brief declarations from process servers describing their efforts to serve defendants.  (Ex. 33.)  Based on these declarations, the court held that "the motion for service by publication is GRANTED."  2012 WL 13170563, at *1

Womply clearly has a claim against the Navarros that warrants relief.  Womply has verified its detailed Complaint through the sworn declaration of its CEO, Toby Scammell, which states: "I have read the complaint in the above-captioned action and believe that the facts alleged therein are true and correct based on my personal knowledge and information provided to me."  (Ex. 28 (July 2023 Scammell Decl.) ¶ 2.)  Because Mr. Scammell's "intent to incorporate" the Complaint is "clearly stated," his declaration verifies the Complaint as a matter of law.  *Senior Loiza Corp. v. Vento Dev. Corp.*, 760 F.2d 20, 25 (1st Cir. 1985) ("Verification of a complaint may indeed be accomplished by reference in the affidavit . . . .").  To further demonstrate the merits of its claims, Womply also submits the documents and testimony on which it relied to prepare and investigate the Complaint, including the sworn declaration of Womply's CEO (Ex. 29), sworn deposition testimony of Mr. Navarro (Exs. 16, 30), and agreements between Benworth FL and Benworth PR (Exs. 31–32).  *See Martinez-Alicea*, 2012 WL 13170563, at *1 (granting "service by publication" based on three brief declarations); (Ex. 33).  In addition, the arbitrator in the Arbitration concluded that an ██████████████████████████████████████████████

---

[5] "Puerto Rico amended its Rules of Civil Procedure in 2009" but "the new Rule 4.6 largely mirrors the former Rule 4.5."  *Calderón Serra*, 747 F.3d at 8 & n.7.

███████████████████████████ and that, ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████ (Compl. ¶¶ 15, 211, 213.)

## II. THIS COURT SHOULD EXTEND WOMPLY'S TIME TO SERVE THE NAVARROS SO THAT SERVICE BY PUBLICATION CAN BE ACCOMPLISHED.

Rule 4(m) requires service "within 90 days after the complaint is filed" and provides that, "if the plaintiff shows good cause for the failure [to serve defendant within 90 days], the court must extend the time for service for an appropriate period." Good cause exists where "the plaintiff has acted diligently in trying to effect service" or "the defendant has evaded service of the process or engaged in misleading conduct." *Moreno-Perez v. Toledo-Davila*, 266 F.R.D. 46, 49–50 (D.P.R. 2010) (cleaned up; collecting cases); *see also* 4B Charles S. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1137 (4th ed. 2023) ("**Wright & Miller**"). "Even if there is not good cause shown," the court may "in its discretion decide[] to grant the plaintiff more time to effect service." *Moreno-Perez*, 266 F.R.D. at 49 (cleaned up); *see also* 4B Wright & Miller § 1137 & n.13 ("the overwhelming majority of federal courts and dicta from the Supreme Court embrace the view" that "an extension of time is allowed without a showing of good cause") (collecting cases).

Womply easily satisfies the good-cause requirement. As discussed above, Womply has attempted to serve the Navarros 16 times at five different addresses, but the Navarros and their counsel refuse to accept service or even confirm their whereabouts. This Court has already granted Womply a 30-day extension to serve the Navarros in its June 13 Order. Courts in this District routinely grant plaintiffs additional time to serve process by publications. *See, e.g., Live Well Fin., Inc. v. Estate of Santana Martinez*, 2020 WL 12188413, at *1 (D.P.R. Jan. 14, 2020) (granting

- 14 -

plaintiff additional time "to serve process . . . by publication"); *Farb v. Perez-Riera*, 293 F.R.D. 77, 79 (D.P.R. 2013) ("grant[ing] Plaintiff an additional term of ten days to correctly serve Perez Riera through publication").

### III.   WOMPLY RESERVES THE RIGHT TO SEEK COSTS AND FEES ASSOCIATED WITH SERVICE BY PUBLICATION.

Rule 4(d) imposes "a duty to avoid unnecessary expenses of serving the summons" on defendants and encourages defendants to waive service. Fed. R. Civ. P. 4(d)(1); *see also* Fed. R. Civ. P. 4(d) advisory committee notes to 1993 amendment ("The aims of the provision are to eliminate the costs of service of a summons on many parties and to foster cooperation among adversaries and counsel."). If a defendant fails "to sign and return a waiver requested by a plaintiff," then "the court *must* impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. P. 4(d)(2) (emphasis added).

On June 13, 2023, Womply sent to waiver requests pursuant to Rule 4(d) to counsel for Mr. Navarro and Ms. Navarro, respectively. (Levy Decl. ¶¶ 12–13 Exs. 6–7.). Neither has responded. (*Id.*) Womply therefore reserves the right to seek all costs and fees associated with service by publication.

### CONCLUSION

For the foregoing reasons, Womply respectfully requests that this Court (i) grant Womply leave to serve the Navarros by publication, and (ii) extend Womply's time to serve the Navarros by 30 days after this Court rules on this Motion. If the Navarros do not agree to waive service, pursuant to Rule 4(d)(2), Womply reserves the right to seek all expenses incurred in connection with making service by publication.

Dated: July 13, 2023

*Of Counsel:*

Willkie Farr & Gallagher LLP                    Respectfully submitted,

By: *Alexander L. Cheney*___                    By: *Alejandro J. Cepeda Diaz*__

Alexander L. Cheney (admitted *pro hac vice*)   Alejandro J. Cepeda Diaz
One Front Street                                USDC-PR 222110
San Francisco, CA 94111                         McConnell Valdés LLC
(415) 858-7400                                  270 Muñoz Rivera Ave.
acheney@willkie.com                             Hato Rey PR 00918
                                                Tel: (787) 250-5637
Joshua S. Levy (admitted *pro hac vice*)        Email: ajc@mcvpr.com
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

*Attorneys for Plaintiff Oto Analytics, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 13, 2023, the foregoing document was filed with the Clerk of the Court using CM/ECF, which sent notices to all parties receiving notifications through the CM/ECF system.

Dated: July 13, 2023                    By: */s/ Alejandro J. Cepeda Diaz*

*Attorney for Plaintiff Oto Analytics, LLC*

- 17 -