**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Oto Analytics, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Benworth Capital Partners PR LLC,<br>Benworth Capital Partners LLC,<br>Bernardo Navarro and Claudia<br>Navarro,<br><br>Defendants | **Civil No. 23-1034(GMM)** |

<u>**OPINION AND ORDER**</u>

Pending before the Court is Benworth Capital Partners PR LLC's ("Benworth PR" or "co-Defendant") *Motion to Dismiss or Stay Proceedings Pending the Outcome of Arbitration*. (Docket No. 34). For the reasons stated herein, co-Defendant's request to dismiss for lack of jurisdiction is **DENIED** and request to stay pending arbitration is **GRANTED**.

## I.   RELEVANT PROCEDURAL HISTORY

On January 24, 2023, Plaintiff Oto Analytics, LLC (f/k/a Oto Analytics Inc., d/b/a Wombly) ("Wombly") filed this case against Benworth PR; Benworth Capital Partners LLC ("Benworth FL"); and Bernardo Navarro and Claudia Navarro (collectively the "Navarros"), for alleged fraudulent transfers between co-Defendants to avoid paying Plaintiffs nearly $200 million in fees and interest. (Docket No. 1).

Civil No. 23-1034 (GMM)
Page -2-

Wombly, a technology company, provided Benworth FL, a Florida lender wholly owned by Bernardo Navarro, with technology services that enabled it to efficiently manage loans made through the Federal Paycheck Protection Program ("PPP"). (Id. at 1-2.). Wombly alleges that under the technology services contract between itself and Benworth FL, Benworth FL owed it approximately $197 million in fees and accrued interest. (Id.).

In August 2021, Wombly initiated JAMS arbitration proceedings against Benworth FL to recover those costs. (Id.). During these proceedings, Wombly contends that it learned Benworth FL and the Navarros fraudulently transferred funds that they owed Wombly to Benworth PR. (Docket Nos. 1 ¶¶ 1-2, 19, 92-93, 168-184; 47 at 5-6). Wombly alleges that during arbitration proceedings the Arbitrator stated that "[p]ursuant to the relevant agreements between the parties, either party may seek equitable or injunctive relief concerning issues relevant to this Arbitration in a court of law," which "allow[s] Wombly to seek equitable or injunctive relief in a court of competent jurisdiction." (Docket Nos. 1 ¶¶ 29,214; 47 at 10). Wombly states that it accordingly received permission from the arbitrator to "unwind the Fraudulent Transfer and for other equitable relief." (Docket No. 1 at 1). Thus, on January 24, 2023, Wombly filed its complaint in this Court seeking to obtain a prejudgment attachment and other equitable relief for

Civil No. 23-1034 (GMM)
Page -3-

co-Defendants' alleged fraudulent transfer of funds from Benworth FL to Benworth PR. (Docket No. 47 at 10).

On March 27, 2023, Benworth PR filed its *Motion to Dismiss or Stay Proceedings Pending the Outcome of Arbitration*. (Docket No. 34). Benworth FL moved for joinder on this motion on March 29, 2023 and the Court granted that request on September 25, 2023. (Docket Nos. 35 and 92). Benworth PR argues (1) that until the parties' arbitration proceedings conclude and an award against Benworth FL is determined, Wombly's claims are not ripe for litigation and (2) Wombly lacks standing to bring a claim against co-Defendant because it cannot demonstrate that it has yet suffered an injury or faces substantial risk of an injury. (Docket No. 34 at 2). In alternative to co-Defendant's jurisdictional motions, it requests that the Court stay litigation pending arbitration. (Id. at 3).

## II.   LEGAL STANDARD

A.   Motion to Dismiss for lack of Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court should grant a motion to dismiss when it lacks subject matter jurisdiction over a complaint. Fed.R.Civ.P.12(b)(1). Rule 12(b)(1) motions are subject to the same standard of review as Rule 12(b)(6) motions. *See* Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994); Torres v. Bella Vista Hosp., Inc., 523 F.Supp.2d 123, 132 (D.P.R.

Civil No. 23-1034 (GMM)
Page -4-

2007). As such, in evaluating a 12(b)(1) motion, a court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir.1998). *See also* Rolón v. Rafael Rosario & Associates, Inc., et al.*,* 450 F.Supp.2d 153, 156 (D.P.R.2006). In doing so, a court must review the evidence in the record. Colon v. Diaz, 174 F. Supp. 3d 667, 669 (D.P.R. 2016). The party asserting jurisdiction bears the burden of establishing its existence. *See* Valentín v. Hospital Bella Vista, 254 F.3d 358, 62-63 (1st Cir. 2001).

B.   Ripeness

Article III of the United States Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. CONST. art. III, § 2, cl. 1. "An actual "case or controversy" exists when "the party seeking to invoke the court's jurisdiction (normally, the plaintiff) has a 'personal stake in the outcome' of the claim asserted." AES Puerto Rico, L.P. v. Trujillo-Panisse, 133 F. Supp. 3d 409, 416 (D.P.R. 2015)(*quoting* Pagan v. Calderon*,* 448 F.3d 16, 27 (1st Cir.2006).

To be a justiciable controversy, there must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion what the law would be upon a hypothetical state of facts." Aetna

Life Ins. Co. of Hartford, Conn. V. Haworth, 300 U.S. 227, 241 (1937). Ripeness is thus a key component of a justiciable controversy as it ensures that courts do not "entangl[e] themselves in abstract disagreements" by preventing the entertainment of "premature adjudication." Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir.2013) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).

Ripeness doctrine "seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (citing Texas v. United States, 523 U.S. 296, 300 (1998)). In determining whether a matter is ripe for litigation a court must evaluate "whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts." Id. at 501 (citing Roman Catholic Bishop of Springfield, 724 F.3d at 89). "There are two factors to consider in determining ripeness: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Roman Catholic Bishop, 724 F.3d at 89 (internal quotation omitted). See also Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 330 (1st Cir. 2016)). Critically, a court is tasked with determining if "[T]he facts alleged, under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of the judicial relief sought." Labor Relations Div. of Constr. Indus. of Mass., Inc., 844 F.3d at 326 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

C.  Standing

Standing is a related though independent justiciability doctrine. See Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 35 (1st Cir. 2020)("The constitutional standing and ripeness inquiries are interrelated and often duplicative."). A plaintiff invoking federal jurisdiction under Article III bears the burden of meeting the "irreducible constitutional minimum" of standing by establishing that they: (1) suffered an injury in fact; (2) the injury was fairly traceable to the defendants' challenged conduct; and (3) a favorable judicial decision can redress the plaintiff's claimed injury. See Spokeo, Inc. v. Robins, 578 U.S. 330 (2016), as revised (May 24, 2016); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). An injury in fact must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan, 504 U.S. at 560 (some internal question marks omitted). See also Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010). Allegations that an injury may occur in the future might be sufficient to qualify as an injury in fact if the threatened injury is "certainly impending" or there is a "realistic

Civil No. 23-1034 (GMM)
Page -7-

and impending threat of direct injury." *See* <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 401-402 (2013); <u>Davis v. Federal Election Com'n</u>, 554 U.S. 724, 734 (2008). "'The party invoking federal jurisdiction bears the burden of establishing' standing." <u>Clapper</u>, 568 U.S. at 411-412.

### III. DISCUSSION

A.   <u>Ripeness – Prejudgment attachment</u>

Benworth PR, joined by Benworth FL, argues that Wombly's claims are not yet ripe because the issue of whether Benworth FL is a creditor of Wombly, and thus if it owes Wombly anything, has not yet been determined through the arbitration. (Docket No. 43 at 4.). As such, Benworth PR maintains that no claim ripe for adjudication can be established until arbitration has concluded. (<u>Id</u>.). Conversely, Wombly argues that fraudulent transfer claims can be ripe for consideration even when the "underlying claims are actively being litigated." (Docket No. 47 at 13) (*citing* <u>Foisie</u>, 967 F.3d at 36). Wombly finds that the remedy of prejudgment attachment functions to make its claim against co-Defendants ripe in the instant cause of action. (<u>Id</u>.). Wombly admits that it has not yet moved for prejudgment attachment but claims that its cause of action is nevertheless ripe. (Docket No. 95 at 2).

First Circuit precedent holds that jurisdictional ripeness and a tribunal's liability determination under a particular statute are independent questions. In <u>Foisie</u>, the First Circuit

Civil No. 23-1034 (GMM)
Page -8-

reversed the district court's finding that a plaintiff lacked standing to bring a claim under the Uniform Fraudulent Transfer Act ("UFTA"). <u>Foisie</u>, 967 F.3d at 36. The Appellate Court determined that an ex-wife plaintiff seeking to recoup assets from the beneficiary of her deceased ex-husband ("WPI"), who allegedly defrauded such funds from her during divorce proceedings, had standing and a ripe cause of action against the beneficiary under Massachusetts law even when her "underlying civil claims are actively being litigated." <u>Id.</u> at 34-35. Critically, the First Circuit emphasized that a trial court's pending determination that Foisie was a creditor with a valid claim under the UFTA was irrelevant to the question of whether she possessed standing and a ripe cause of action that granted the court subject matter jurisdiction over the case. <u>Foisie</u>, 967 F.3d. at 35. *See also* <u>Enter. Fin. Grp. v. Podhorn</u>, 930 F.3d 946, 950 (8th Cir. 2019).

The First Circuit's differentiation between the jurisdictional and pending substantive statutory questions is informative in the present matter. This Court agrees that the ripeness of Wombly's case does not stand on the Arbitrator's final determination of whether Benworth PR is Wombly's creditor. As such, co-Defendant's core argument that this Court lacks subject matter jurisdiction over Wombly's claim until the conclusion of arbitration is unavailing. The Court will thus analyze the ripeness

Civil No. 23-1034 (GMM)
Page -9-

of Wombly's cause of action independent of the arbitrator's liability determination for co-Defendant.

As previously noted, the purpose of ripeness doctrine is to prevent the adjudication of causes of action relating to "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas, 523 U.S. at 300 (*quoting* Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580–81(1985)). In the instant matter, Wombly seeks equitable and injunctive relief from co-Defendant's alleged fraudulent transfer which was supposedly conducted as a means avoid payment for Wombly's services. This cause of action thus differs from the primary dispute being arbitrated regarding debt owed for services rendered by Wombly to Benworth FL. Wombly requests remedies including recission of the fraudulent transfer and attachment of Defendants' assets. (Docket No. 1 at 68).

In reviewing a 12(b)(1) motion, a court is instructed to construe the complaint liberally and take the pleadings as true "according plaintiff the benefit of all reasonable inferences." Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995). Applying such a standard here, the Court concludes that Wombly plausibly alleged that Benworth FL owed Wombly approximately $200 million for fees and services rendered and that Benworth FL transferred funds to Benworth PR a corporation wholly owned by the same owners of Benworth FL. Drawing on these facts and the associated reasonable

Civil No. 23-1034 (GMM)
Page -10-

inferences, the Court finds the existence of a substantial controversy between adverse parties regarding the occurrence of a fraudulent transfer to avoid repayment of debt owed. Moreover, should Wombly prevail in its fraudulent transfer claims, various remedies including prejudgment attachment could be invoked to redress its injury even pending the resolution of arbitration. *See* Fonsie, 967 F.3d at 36 ("The plaintiff's underlying civil claims are actively being litigated and, if she successfully prosecutes her fraudulent conveyance claims, <u>various remedies could be crafted</u> to redress her injury regardless of whether her civil claims have been reduced to judgment by that time."). (Emphasis supplied)

    Having established the existence of a substantial controversy, the Court considers the hardship element of a ripeness determination by evaluating "the extent to which withholding judgment will impose hardship — an inquiry that typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties." <u>Stern v. U.S. Dist. Court</u>, 214 F.3d 4, 10 (1st Cir. 2000). Again, based on reasonable inferences drawn from Wombly's pleadings, the Court's withholding of its decision at this time could enable the secondary disposal or conveyance of the allegedly fraudulently transferred funds, frustrating the satisfaction of any award or judgment arising from the pending arbitration proceedings or the instant civil case. As such, the

Civil No. 23-1034 (GMM)
Page -11-

Court finds that the hardship prong of the ripeness test is met and concludes that Wombly's claim is ripe for adjudication.

B.   Standing

The Court similarly concludes that Plaintiff's pleadings are sufficient to survive a 12(b)(1) standing challenge. Taking Wombly's well-pleaded facts as true and drawing inferences in its favor, the alleged fraudulent transfer of funds between co-Defendants, would prevent Benworth FL from paying Wombly millions of dollars for services rendered. This would qualify as a concrete injury that can be fairly traceable to co-Defendant's actions. The Court next considers the redressability of Wombly's claims.

Wombly emphasizes that its requested remedy of attachment of Defendants' assets supports the Court's finding that its cause of action as ripe. (Docket No. 47 at 8-9). However, Benworth PR noted in its reply to Wombly's opposition that Wombly had not yet properly requested this remedy. (Docket No. 61 at 2-4). *See* HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 913 (1st Cir. 1988) and Fed.R.Civ.P 64 (noting that pursuant to Rule 64 of the Federal Rules of Civil Procedure, a plaintiff seeking a provisional remedy must "be issued in a manner compatible with state law") (emphasis supplied); *see also* P.R. Laws Ann. Tit. 31, Ap. I, § 56.1 (official translation)(stating that the court may issue a provisional order "on motion of claimant.")In

Civil No. 23-1034 (GMM)
Page -12-

its surreply, Wombly admits that it has not yet moved for prejudgment attachment but argues that its claims are nevertheless justiciable. (Docket No. 95 at 2).

Wombly's complaint also requested additional remedies including: recission of the fraudulent transfer, declaratory judgments finding Benworth PR and the Navarros liable for any debts owed by Benworth FL to Wombly due to the alleged fraudulent transfer, costs and fees arising from the present action, and any other relief deemed proper by the Court. (Docket No. 1 at 68).

The Court concludes that should Wombly succeed in its fraudulent transfer claims, its requested remedies would provide redress for its claimed injury of being denied access to the transferred funds should it prevail in the adjudication proceedings. For instance, should Wombly succeed in its claims, it can still move for prejudgment attachment of co-Defendant's assets to support satisfaction of any award granted to it in arbitration. Moreover, Wombly's claimed injury could similarly be redressed through the recission or an equitable injunction against co-Defendant for disposing of the funds pending the resolution of parallel arbitration proceedings. Thus, the Court concludes that Plaintiff's pleadings are currently redressable and thus function to survive co-Defendant's 12(b)(1) standing challenge. *See analogously* Foisie, 967 F.3d at 36.

**Civil No. 23-1034 (GMM)**
**Page -13-**

C.    Arbitration

No party objects to a stay in proceedings pending arbitration. (Docket Nos. 47 at 13; 61 at 1, 95 at 2-3). Notably, in its most recent filing, Wombly stressed that it "agreed with Benworth's request for a short stay of this case pending a decision of the arbitrator." (Docket No. 95 at 2-3). The Court sees no reason to further analyze a matter over which there is no dispute.

**IV.   CONCLUSION**

The Court **DENIES** co-Defendant's request to dismiss for lack of jurisdiction and **GRANTS** the request to stay pending arbitration.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this October 12, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE