IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OTO ANALYTICS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BENWORTH CAPITAL PARTNERS PR LLC, BENWORTH CAPITAL PARTNERS LLC, BERNARDO NAVARRO and CLAUDIA NAVARRO, <br><br> Defendants. | Civil Action No. 23-01034 |

**PLAINTIFF OTO ANALYTICS, LLC'S RESPONSE TO FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO INTERVENE**

In accordance with this Court's July 10, 2024 Order (ECF No. 134), Plaintiff Womply, through its undersigned counsel, respectfully submits this Response to the Federal Reserve Bank of San Francisco's ("**Reserve Bank**") Motion to Intervene ("**Motion**" or "**Mot.**"; ECF No. 127).[1]

Womply does not oppose the Reserve Bank's Motion.  However, Womply submits this Response in order to provide the Court with important context and clarity regarding two issues raised in the Motion:  (i) the Reserve Bank's stated concern that "Womply is affirmatively seeking to attach and collect against" the Reserve Bank's collateral, which would "cripple the ability of Benworth to continue to service" PPP loans and "threaten to impair the Reserve Bank's preexisting secured interest" (Mot. at 2); and (ii) the Reserve Bank's impression that Benworth FL has failed to satisfy its debt to the Reserve Bank "either due to Womply's withholding of the appropriate documentation" related to certain PPP loans "or due to other problems internal to Benworth FL" (*id.* ¶ 18).

---

[1] Capitalized terms have the same meanings as in Womply's Amended Complaint ("**Am. Compl.**"; ECF No. 125), unless otherwise indicated.

***First***, Womply does not seek to interfere with the Reserve Bank's collateral. Understanding the scope of the relief that Womply seeks and the scope of the Reserve Bank's collateral requires some understanding of how the PPP worked and the fees Benworth FL received for making PPP loans.  As alleged in Womply's Amended Complaint, the PPP involved businesses receiving loans from private lenders that were both:  (i) potentially forgivable if the borrower complied with program rules and (ii) guaranteed by the SBA if the lender complied with program rules. (Am. Compl. ¶¶ 3, 36.)  In other words, as long as the lender complied with the rules of the PPP, it bore no risk for making the PPP loans.  (*Id.*)  In addition to the SBA guarantee, lender incentives for making PPP loans included lucrative "Lender Processing Fees" from the SBA, which lenders received upon funding a loan, and interest accruing on the loans, which lenders received when the principal on the loan was repaid by the borrower or the loan was repurchased by the SBA pursuant to the guarantee. *See* Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3,692, 3,706–09 (Jan. 14, 2021).

Benworth FL processed more than 300,000 PPP loans using Womply's PPP Fast Lane Technology in 2021. (Am. Compl. ¶ 124.)  Pursuant to its agreements with Womply, Benworth FL agreed that, promptly after it received its Lender Processing Fees from the SBA, Benworth FL would pay a portion of those fees to Womply. (*Id.* ¶ 120.)  However, instead of paying Womply the portion of the Lender Processing Fees to which it was entitled, Benworth FL fraudulently transferred the Lender Processing Fees to Benworth PR in the summer of 2021.  Based on agreements between Benworth FL and Benworth PR, as well as Defendant Bernardo Navarro's deposition testimony from the Arbitration, Womply understands that Benworth FL transferred to Benworth PR far more in Lender Processing Fees than the approximately $118 million that

Benworth FL now owes to Womply[2]—possibly as much as $170 million (or more). (Am. Compl. ¶¶ 183, 212–14.) The Reserve Bank does not have a lien on those Lender Processing Fees (nor does it claim to in its filings in this action).

As explained in the Motion, the Reserve Bank's "first-priority lien" is on (among other things) "all proceeds and products" of the PPP loans that Benworth FL funded, which includes principal and interest payments that Benworth FL receives. (Mot. ¶¶ 4–8 & n.4.) Benworth received those "proceeds and products" after it received the Lender Processing Fees that Womply is entitled to be paid from. In other words, the Reserve Bank does not have a lien on the money Womply is owed. Womply understands that any principal payments that Benworth FL has already received were paid to the Reserve Bank.[3] To the extent there are outstanding PPP loans for which Benworth FL has not received principal or interest payments, those loans (and any future principal and interest payments on those loans) are part of the Reserve Bank's collateral. The Reserve Bank's collateral also includes any interest payments that Benworth FL already received, the amount of which, Womply understands, likely is less than the approximately $67 million Benworth FL owes to the Reserve Bank.

Womply commenced this action in order to recover the portion of Benworth FL's Lender Processing Fees to which it is entitled. Womply does not seek to interfere with the Reserve Bank's

---

[2] That debt was confirmed in a final award issued by the arbitrator in the JAMS Arbitration between Womply and Benworth FL conducted in San Francisco, CA. Womply has filed a petition to confirm that final award in the United States District Court for the Northern District of California. *See* Petition to Confirm Arbitration Award and For Entry of Judgment, *Oto Analytics, LLC v. Benworth Capital Partners LLC*, No. 3:24-cv-03975 (N.D. Cal. July 1, 2024).

[3] *See* Motion at 7 n.6 (indicating that the Reserve Bank moved "Benworth FL to a 'direct pay' structure whereby the SBA remits payments associated with loan forgiveness reimbursement and loan guarantee amounts for the Pledged PPP Loans directly to the Reserve Bank instead of Benworth FL").

collateral, nor is it in Womply's interest to disrupt Benworth FL's servicing of PPP loans. If Benworth FL can continue servicing its outstanding PPP loans and obtain the SBA's guarantee repurchase of those loans, Benworth FL should be able to satisfy its debts to **both** Womply and the Reserve Bank. That is, of course, unless Defendants have improperly disposed of assets in further fraudulent transfers.

*Second*, Benworth FL's excuses for why the SBA has so far refused to repurchase certain PPP loans, leaving Benworth FL with an outstanding debt of approximately $67 million to the Reserve Bank, are not relevant to the claims and defenses in this action. Womply does not have visibility into Benworth FL's efforts to have the SBA repurchase its outstanding loans, including the extent to which the SBA is refusing to repurchase certain loans or the reasons why. However, according to the Reserve Bank's Motion, Benworth FL has claimed that the SBA is refusing to repurchase loans because Womply is refusing to provide Benworth FL with documentation regarding those loans (and because of certain unidentified "internal problems" at Benworth FL). (Mot. ¶ 18.) Womply will spare the Court the lengthy history of this issue, because it is irrelevant to the present action. Suffice it to say that, pursuant to an arbitration agreement, Benworth FL sought relief regarding this issue in the Arbitration, Womply *consented* to the declaratory relief Benworth FL sought,[4] and Womply provided Benworth FL with all of the documentation that Benworth FL requested. Indeed, on May 20, 2024, Benworth FL identified specific documentation that it claimed to need from Womply and, on June 13, 2024, Benworth FL's counsel confirmed

---

[4] *See* Ex. 1 at 4 (Arbitrator Brainerd's Feb. 20, 2024 Order) ("[I]n the January 29, 2024 joint statement, Womply consents to declaratory judgment being entered. Thus, the Arbitrator's December 21, 2023 Interim Award shall be amended to reflect that Benworth's Counterclaim 1, as it pertains to the transmission of loan records, is GRANTED and the Final Award will reflect this ruling.").

that it received "the package" from Womply containing those documents.  (Ex. 2.)[5]  Since June 13, 2024, Benworth FL has not indicated that that it needs any other documentation from Womply.

*    *    *

Womply does not oppose the Reserve Bank's Motion and, should this Court permit the Reserve Bank to intervene, intends to meet and confer with the Reserve Bank and Defendants regarding a stipulation to consolidate the Reserve Bank's separate lawsuit against Defendants into this action.  Womply looks forward to coordinating with the Reserve Bank on discovery efforts. Womply further reserves all of its rights, including to respond to the Reserve Bank's pleadings in this action.

---

[5] All references to "Exhibit" or "Ex." refer to exhibits to the accompanying declaration of Alexander L. Cheney.

Dated: July 24, 2024

*Of Counsel*

| | |
|---|---|
| Willkie Farr & Gallagher LLP | Respectfully submitted, |
| By: */s/ Alexander L. Cheney* | By: */s/Alejandro J. Cepeda Diaz* |
| Alexander L. Cheney (admitted *pro hac vice*)<br>333 Bush St<br>San Francisco, CA 94104<br>(415) 858-7400<br>acheney@willkie.com | Alejandro J. Cepeda Diaz<br>USDC-PR 222110<br>McConnell Valdés LLC<br>270 Muñoz Rivera Ave.<br>Hato Rey PR 00918<br>Tel: (787) 250-5637<br>Email: ajc@mcvpr.com |
| Stuart R. Lombardi (admitted *pro hac vice*)<br>Willkie Farr & Gallagher LLP<br>787 7th Avenue<br>New York, NY 10019<br>(212) 728-8000<br>slombardi@willkie.com | *Attorneys for Plaintiff Oto Analytics, LLC* |
| Joshua S. Levy (admitted *pro hac vice*)<br>1875 K Street, N.W.<br>Washington, D.C. 20006<br>(202) 303-1000<br>jlevy@willkie.com | |

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 24, 2024, the foregoing document was filed with the Clerk of the Court using CM/ECF, which sent notices to all parties receiving notifications through the CM/ECF system.

Dated: July 24, 2024                                          By: */s/ Alejandro J. Cepeda Diaz*

*Attorney for Plaintiff Oto Analytics, LLC*