**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| OTO ANALYTICS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>BENWORTH CAPITAL PARTNERS PR LLC, BENWORTH CAPITAL PARTNERS LLC, BERNARDO NAVARRO and CLAUDIA NAVARRO,<br><br>        Defendants.<br><br>FEDERAL RESERVE BANK OF SAN FRANCISCO,<br><br>        Plaintiff-Intervenor,<br><br>        v.<br><br>OTO ANALYTICS, LLC, BENWORTH CAPITAL PARTNERS PR LLC, BENWORTH CAPITAL PARTNERS LLC, BERNARDO NAVARRO and CLAUDIA NAVARRO,<br><br>        Defendants in Intervention. | Civil No. 23-01034 (GMM) |

<u>**COMPLAINT IN INTERVENTION**</u>

**TO THE HON. GINA MÉNDEZ MIRÓ
UNITED STATES DISTRICT COURT JUDGE:**

The Federal Reserve Bank of San Francisco (the "Reserve Bank" or "Intervenor"),

alleges:

## NATURE OF ACTION[1]

1)    Intervenor Federal Reserve Bank of San Francisco (the "Reserve Bank") seeks to intervene in this civil action filed by Plaintiff Oto Analytics, LLC (f/k/a Oto Analytics, Inc., d/b/a Womply) ("Womply") against Defendants Benworth Capital Partners PR LLC, a Puerto Rico limited liability company ("Benworth PR"), Benworth Capital Partners LLC, a Florida limited liability company ("Benworth FL" and, together with Benworth PR, "Benworth"), Bernardo Navarro ("Mr. Navarro"), and Claudia Navarro ("Ms. Navarro" and, together with Mr. Navarro, the "Navarros" and, collectively with Benworth, the "Defendants").

2)    As set out herein, the Reserve Bank seeks to intervene in this action to protect its properly perfected, valid first-priority security interests in assets held or transferred by Benworth FL, which secure nearly $70 million in defaulted debt obligations owed by Benworth FL to the Reserve Bank. Absent intervention, there is a material risk that the relief Womply seeks here would interfere with the Reserve Bank's senior security interest and/or interfere with Benworth's ability to continue to service the loan portfolio that comprises a central part of the Reserve Bank's collateral. That result would be particularly inequitable given the serious questions that have been raised regarding Womply's conduct as a service provider, and the allegations that Womply already has stymied Benworth's ability to effectively service its loan portfolio.

3)    In order to protect these interests, the Reserve Bank seeks two primary forms of relief in connection with its intervention: *First*, the Reserve Bank seeks to assert its lien over the Defendants' assets to the extent those assets constitute the Reserve Bank's collateral; and *second*, the Reserve Bank seeks a declaration confirming (i) that it holds a security interest in any such assets of the Defendants, (ii) that Womply may only collect against such assets that are not

---

[1] Terms used but not defined herein have the meanings assigned to them in the *Motion to Intervene Under Fed. R. Civ. P. 24* to which this *Complaint in Intervention* is attached.

collateral of the Reserve Bank, and (iii) that any recovery by Womply against the Defendants' assets that do not constitute Reserve Bank collateral shall be on at least a *pro rata* basis with the Reserve Bank's recovery against such assets.

## JURISDICTION AND VENUE

4)      This Court has already exercised jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and this *Complaint in Intervention* needs no additional jurisdictional basis.

5)      The Reserve Bank does not contest that venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims of the parties alleged in the *Complaint* filed by Womply in this action (ECF Nos. 1–3, as amended at ECF No. 123, the "Womply Complaint") occurred in this District.

## INTERVENOR

6)      The Reserve Bank is part of the U.S. central bank system known as the Federal Reserve System. Its principal place of business is San Francisco, California. It serves the Twelfth District of the Federal Reserve System, which comprises nine western states and three territories.

## FACTUAL BACKGROUND

### A.  The Reserve Bank and Benworth's Relationship Under the PPPLF

7)      In March of 2020, in response to the Coronavirus (COVID-19) pandemic, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") to provide fast and direct economic assistance for American workers, families, small businesses, and industries.

8)      The CARES Act established the Paycheck Protection Program (the "PPP"), which was implemented by the United States Small Business Administration (the "SBA") with support

from the Department of the Treasury. The PPP provided small businesses with funds to pay payroll costs and benefits, as well as interest on mortgages, rent, and utilities.

9)      In April of 2020, to support the effectiveness of the PPP and the flow of credit to households and businesses, the Board of Governors of the Federal Reserve System, with the approval of the Secretary of the Treasury, authorized the establishment of the Paycheck Protection Program Liquidity Facility (the "PPPLF"), which extended credit to eligible financial institutions that originated PPP loans.

10)     Benworth FL was one such PPP-eligible lender. It obtained PPPLF financing pursuant to the *Paycheck Protection Program Liquidity Facility Letters of Agreement* dated May 4, 2020, January 14, 2021, and January 30, 2023 (collectively, the "Letters of Agreement").

11)     The Letters of Agreement incorporate the *Reserve Bank's Operating Circular No. 10* (as amended and supplemented from time to time, the "Operating Circular" and, together with the Letters of Agreement, the "Program Agreements"), which together set forth the relevant terms and conditions that govern Benworth FL's relationship with the Reserve Bank. *See* the *Program Agreements* attached hereto as **Exhibit A–B**; *see also Federal Reserve Bank of San Francisco v. Benworth Capital Partners LLC et al.*, Case No. 24-01313 (the "Reserve Bank Complaint").

12)     Under the Program Agreements, Benworth FL was authorized to request credit advances ("Advances") from the Reserve Bank. Those Advances were secured by PPP loans pledged as collateral to the Reserve Bank (the "Pledged PPP Loans") and set to mature on the

maturity dates of the Pledged PPP Loans, subject to the terms of the Program Agreements. Reserve Bank Compl. ¶ 21.[2]

13)   The Reserve Bank filed a UCC Financing Statement in the state of Florida on May 11, 2020, to perfect its lien over the PPP Collateral (as defined below). *See* UCC Financing Statement attached hereto as **Exhibit C**; *see also* Reserve Bank Compl. ¶ 22.

14)   Notably, the PPP Collateral includes all "[p]roceeds and products" of the Pledged PPP Loans. This includes PPP borrower collections, payments received from the SBA for principal balances on account of loan forgiveness and guaranty purchase, and the interest paid by the PPP borrowers and SBA on the principal amount of the Pledged PPP Loans (which accrues at the rate of 1.00% per annum). *Id*. ¶ 23.

15)   Under the Program Agreements, upon the occurrence of an event of default, the maturity date of all Advances is accelerated and all Advances become due and owing. *Id*. ¶ 25.

16)   Unless otherwise provided under the Program Agreements, if a PPPLF borrower such as Benworth FL fails to pay an Advance on its maturity date, the Reserve Bank shall first seek repayment from realization on the PPP Collateral. To the extent of any deficiency of the collateral against the amount advanced, the Reserve Bank may thereafter pursue any other remedies available under the Program Agreements, including seeking payment directly from Benworth FL (i.e., the deficiency becomes a recourse obligation). *Id*. ¶ 26.

17)   However, if a PPPLF borrower such as Benworth FL "(i) has breached any of the representations, warranties, or covenants made under the [Program Agreements] or (ii) has

---

[2] Specifically, the Reserve Bank has properly perfected, valid, first-priority liens on (i) "all [Benworth FL's] rights, title, and interest in property (wherever located)" that is identified on a collateral schedule, identified on the Reserve Bank's books and records as pledged to, or subject to a security interest, or that is in the possession or control of the Reserve Bank, (ii) "all documents, books and records, including programs, tapes, and related electronic data processing software, evidencing or relating to" the foregoing, and (iii) "all proceeds and products" of the foregoing, "including but not limited to interest, dividends, insurance, rents and refunds" (collectively, the "PPP Collateral"). *Id*. at 5 n.2.

engaged in any fraud or misrepresentation in connection with any Advance or any request to obtain an Advance under the PPPLF," all Advances made to the PPPLF borrower immediately become recourse obligations, regardless of the value of the PPP Collateral. *Id*. ¶ 27.

18)    In addition, failure by a PPPLF borrower to meet any of the requirements of the Program Agreements, including if the PPP Collateral fails to satisfy the requirements for guaranty purchase of PPP loans by the SBA, may, at the sole discretion of the Reserve Bank, void the non-recourse provisions of the Program Agreements and any related provisions.[3] The Reserve Bank's rights therefore become full recourse with respect to the portion of any Advance equal to the amount of the valuation of the non-conforming PPP Collateral. *Id*. ¶ 28.

19)    When an obligation becomes recourse, the Reserve Bank may pursue various remedies "separately, successively, or concurrently," including debiting the account of the PPPLF borrower's correspondent, taking possession of its collateral, or "pursu[ing] any other remedy available to collect, enforce, or satisfy" any unpaid obligation against any of the borrower's assets. *Id*. ¶ 29.

20)    On or about December 27, 2023, Benworth FL informed the Reserve Bank of certain developments impacting its financial position, including with respect to litigation proceedings it is involved in with Oto Analytics, LLC (d/b/a Womply) ("Womply"). Benworth FL acknowledged to the Reserve Bank at that time that it did not have access to sufficient funds to pay the Interim Award (as defined and discussed below), or any commensurate or larger final award that may be awarded. *Id*. ¶ 30.

---

[3] Under the PPP, the SBA agrees to guaranty PPP loans (through an agreement to purchase the loans) that have not been forgiven by the SBA or paid in full by the borrower, provided the lender has complied with SBA requirements and required lending practices.

21)     As a result of the foregoing and other facts disclosed by Benworth FL to the Reserve Bank, the Reserve Bank determined that various events of default had occurred under the Program Agreements. *Id*. ¶ 31.

22)     Events of default included, but were not limited to, (i) that the Reserve Bank "deem[ed] itself insecure with respect to the financial condition of" Benworth FL and Benworth FL's ability to perform its obligations under the Program Agreements as provided for under the Operating Circular, and (ii) Benworth FL's Insolvency (as defined under the Operating Circular), in each case, based on Benworth FL's inability to pay the Final Award and financial statements, reports, and other information disclosed by Benworth FL to the Reserve Bank. As a consequence of these events of default, the entire amount outstanding on Benworth FL's Advances from the PPPLF has become due and owing. *Id*. ¶ 32.

23)     In addition, the Reserve Bank determined that Benworth FL had breached multiple representations, warranties, or covenants it made under the Program Agreements, causing the Advances to Benworth FL to become recourse obligations. These breaches included, but were not limited to, a breach of the representation that no event of default had occurred or was continuing, and a breach of the covenant to promptly notify the Reserve Bank when events of default occurred. As a result of these breaches, the amounts outstanding on all of Benworth FL's Advances have become recourse obligations. *Id*. ¶ 33.

24)     Moreover, the Reserve Bank has become aware that Benworth FL has failed to comply with the terms of the PPP for at least some portion of the outstanding Pledged PPP Loans, which has caused Benworth FL's outstanding Advances to become recourse obligations, independent of the aforementioned breaches of the Program Agreements representations, warranties, and covenants. In particular, the SBA has already denied over $60 million of Benworth

FL's requests for guaranty purchase of Pledged PPP Loans. Benworth FL has represented to the Reserve Bank that for a period of years, it did not have appropriate documentation to support its requests for guaranty purchases for all of the relevant PPP loans, either due to Womply's withholding of the appropriate documentation, discussed below, or due to other problems internal to Benworth FL. These facts have caused the Reserve Bank to determine that Benworth FL has failed to comply with the terms of the PPP for at least some portion of its PPP portfolio, causing the Advance amounts to become recourse. *Id*. ¶ 34.

25)      On February 27, 2024, the Reserve Bank memorialized and provided notice of the events of default and breached covenants that caused the Advances to become immediately due and payable and the obligations to become full recourse in a letter sent to Benworth FL (the "Default Notice").[4] *See Default Notice* attached hereto as **Exhibit D**; *see also* Reserve Bank Compl. ¶ 35.

26)      Pursuant to the Program Agreements, Benworth FL received Advances from the Reserve Bank from time to time in an aggregate principal amount of approximately $4.3 billion, secured by approximately 300,000 Pledged PPP Loans and the other PPP Collateral. Upon information and belief, Benworth FL processed, funded, and managed this loan portfolio, earning accrued interest income and various other fees in relation to those loans. Reserve Bank Compl. ¶ 36.

---

[4] Additionally, on or around June 14, 2024, to further protect its collateral and upon notice to Benworth FL, the Reserve Bank exercised its right to move Benworth FL to a "direct pay" structure whereby the SBA remits payments associated with loan forgiveness reimbursement and loan guarantee amounts for the Pledged PPP Loans directly to the Reserve Bank instead of Benworth FL. Payments made on the Pledged PPP Loans by PPP borrowers continue to be remitted to Benworth FL.

27)    As of July 10, 2024, the amount outstanding under the Program Agreements consists of an aggregate principal amount of $66,980,967.08, plus interest, and other fees, costs and reimbursable amounts under the Program Agreements. *Id*. ¶ 37.

28)    Benworth FL owns the Pledged PPP Loans. Upon information and belief, pursuant to Loan Servicing Agreements ("LSAs") executed in 2021, Benworth PR services Benworth FL's loans and provides other services such as fraud monitoring and loan forgiveness. *Id*. ¶ 54.

29)    Upon information and belief, Womply's failure to provide Benworth FL with certain requested loan files, as discussed below, has disrupted Benworth PR's ability to effectively service the Pledged PPP Loans, and has impaired Benworth FL's ability to promptly pay the amount currently due and owing to the Reserve Bank under the Program Agreements.

### B.  Benworth's Relationship with Womply

#### i.    *Womply's Provision of Services to Benworth and Allegations of Misconduct*

30)    As alleged in the Womply Complaint, starting in February 2021, Benworth FL contracted to use Womply's services related to the PPP loans originated by Benworth FL. Under the parties' agreements, Benworth FL was to pay Womply certain fees for these services. Womply alleges it is owed approximately $200 million in unpaid fees and interest from Benworth FL.

31)    Womply has been publicly criticized in the past for failing to provide information to the federal government and has faced fraud allegations. As detailed in a December 2022 report by the Select Subcommittee on the Coronavirus Crisis,[5] starting in May 2021, Womply refused to provide requested information to a lender, Fountainhead, and the SBA Office of Inspector General (the "SBA OIG") to aid an investigation into potential fraud related to a group of Womply-referred loans. House Report at 52.

---

[5] Select Subcommittee on the Coronavirus Crisis, *"We Are Not the Fraud Police": How Fintechs Facilitated Fraud in the Paycheck Protection Program* (Dec. 2022) (the "House Report").

32)    The same report notes that "Womply also resisted providing data to Benworth to assist an SBA OIG investigation" in April of 2021. *Id*. at 54. When asked directly by the SBA OIG to provide the requested files, Womply "declined to provide the information to Benworth and directed the SBA OIG to fill out a web form on the 'Contact Us' section of Womply's website." *Id*.

33)    More recently, Womply agreed to pay $26 million to the Federal Trade Commission to settle charges related to deceptive acts or practices in connection with Womply's advertising of PPP services to small business consumers.[6]

34)    According to Benworth, Womply has threatened the Reserve Bank's secured interest by, for years, refusing to provide Benworth FL access to certain loan files that are necessary for the servicing of its PPP loan portfolio. Additionally, Womply seeks an attachment of the Defendants' assets in its prayer for relief, which would directly impact the Reserve Bank's secured interest in its collateral and also could directly interfere with Benworth's ability to continue servicing the Pledged PPP Loans, further imperiling the value of the Reserve Bank's collateral.

### ii.    *The Arbitration*

35)    As set out in the Womply Complaint, on August 25, 2021, Womply commenced JAMS arbitration against Benworth FL in San Francisco, California (the "Arbitration"), seeking payment of unpaid fees that Benworth FL allegedly owes Womply under the parties' agreements.

36)    On December 21, 2023, the arbitrator overseeing the Arbitration issued an interim award (the "Interim Award") that, if finalized and not set aside, would require Benworth FL to pay Womply over $86 million on account of unpaid fees, plus contractual interest and Womply's costs of collection of the debt. *See* ECF Nos. 99-1 and 100. The arbitrator concluded that Womply proved all elements of its breach of contract claims related to the payment of referral fees, Application

---

[6] *Federal Trade Commission v. Oto Analytics, Inc. and Toby Scammell*, Stipulated Order for Permanent Injunction and Monetary Judgment, Case No. 24-CV-1661 (N.D. Cal. April 3, 2024).

Programming Interface ("API") fees, and technology fees related to the services provided for the processing, management, and tracking of the large volume of PPP loans issued by Benworth FL to small businesses. Furthermore, the arbitrator concluded that Benworth FL did not prove any of its defenses. The arbitrator did not consider any arguments related to criticisms by the SBA of Womply's conduct in referring PPP loan applications to lenders such as Benworth FL, *see supra* note 5.

37)    Benworth FL informed the Reserve Bank that Womply has been in possession of numerous loan files related to Benworth FL's PPP loan portfolio that it has failed to turn over to Benworth for a number of years (with requests for these documents dating back to 2021). Benworth FL informed the Reserve Bank that it requires these loan files in order to continue servicing loans. Benworth FL also stated that these files are necessary to process guaranty purchase applications that are pending or are on appeal with the SBA with respect to the Pledged PPP Loans, and to make new guaranty purchase requests.

38)    The prompt resolution of the guaranty purchase applications before the SBA is of particular importance, as the SBA will only provide payment to Benworth on a given PPP loan that is not eligible for forgiveness once the corresponding guaranty purchase application is approved. If the application is not approved, Benworth may not receive any payment on the loan. Therefore, upon information and belief, the fate of these applications before the SBA directly and materially impacts Benworth FL's ability to repay its creditors, including the Reserve Bank.

39)    On March 20, 2024, Womply filed a motion in the Arbitration captioned *Womply's Motion for Benworth to Deposit Funds into an Escrow Account*, requesting that the arbitrator order Benworth FL to deposit approximately $86 million—the amount of the Interim Award—into an escrow account pending confirmation of a final award. In its motion, Womply argued that

Benworth FL is pursuing a strategy to delay payment of any final award, which will give it time to transfer or hide assets out of Womply's reach. Womply asserted that the escrow order was necessary to ensure that Benworth FL does not render any final award in the Arbitration meaningless. On or about April 11, 2024, the arbitrator denied Womply's motion.

40)     On June 11, 2024, the arbitrator issued a final award requiring Benworth FL to pay Womply nearly $118 million in unpaid fees, interest, and costs.[7] Pursuant to the Final Award, Womply is required to promptly transmit the requested loan files to Benworth FL or reinstate Benworth FL's access to those files via Womply's technology platform, to the extent it has not yet done so.

### iii.    The Current Litigation Between Benworth and Womply

41)     Based on information gained through discovery in the Arbitration, Womply filed the instant case to, among other things, "unwind" a transfer of approximately $171 million (the "Fraudulent Transfer") from Benworth FL to Benworth PR, which the Navarros own and control. *See* Womply Compl. ⁋ 2. Womply further seeks the attachment of the Defendants' assets including funds that were fraudulently transferred to Benworth PR and/or the Navarros. *Id.*

42)     On March 27, 2023, Benworth PR filed its *Motion to Dismiss or Stay Proceedings Pending the Outcome of Arbitration* ("Motion to Stay") because the parties agreed to submit certain controversies to the Arbitration. *See* ECF No. 34.

43)     On March 29, 2023, Benworth FL filed its *Motion for Joinder to the "Motion to Dismiss or Stay Proceedings Pending Outcome of Arbitration"* and on August 31, 2023, the

---

[7] Benworth FL subsequently moved to correct the final award to clarify that the arbitrator was not deciding whether Womply would be entitled to post-award interest. Womply agreed to the clarification and the arbitrator entered a corrected final award on June 26, 2024 reflecting that change (the "Final Award"). On July 1, 2024, Womply filed a petition in the United States District Court for the Northern District of California to confirm the Final Award and enter judgment in conformity. *See* Petition to Confirm Arbitration Award and For Entry of Judgment, *Oto Analytics, LLC v. Benworth Capital Partners LLC*, No. 3:24-cv-03975 (N.D. Cal. July 1, 2024).

Navarros filed their *Motion for Joinder to the "Motion to Dismiss or Stay Proceedings Pending Outcome of Arbitration" [D.E. 34] and the "Joint Reply Brief in Support of Motion to Dismiss [D.E. 61]* requesting the Court to allow them to join Benworth PR's *Motion to Stay. See* ECF Nos. 35 and 90.

44)    On October 12, 2023, this Court stayed the case pending the outcome of the Arbitration. *See* ECF No. 96.

45)    On December 26, 2023, Womply filed *Plaintiff Oto Analytics, LLC's Motion to Lift Stay* ("*Motion to Lift Stay*") requesting that this Court lift the stay because the arbitrator had issued the Interim Award. *See* ECF Nos. 99 and 100.

46)    On January 8, 2024, the Defendants filed their *Opposition to Plaintiffs' Motion to Lift Stay (D.E. 100)*, and on January 11, 2024, this Court entered an order denying Womply's *Motion to Lift Stay* until the Arbitration proceedings had concluded and a final award was issued. *See* ECF Nos. 104 and 106.

47)    On June 12, 2024, Womply filed *Plaintiff Oto Analytics, LLC's Notice of Conclusion of Arbitration and Motion to Lift Stay*, requesting that this Court lift the stay of this action given the conclusion of the Arbitration and the issuance of the Final Award. *See* ECF No. 107.

48)    On June 13, 2024, the Defendants filed their *Joint Opposition to Plaintiff's Notice of Conclusion of Arbitration and Motion to Lift Stay. See* ECF No. 111.

49)    On June 20, 2024, Womply filed *Plaintiff Oto Analytics, LLC's Motion to Inform the Court of Recent Events. See* ECF No. 117. Among other things, Womply's motion notified this Court that the Final Award "rendered Benworth FL's debt to Womply a 'fixed liability' that is 'a contractual equivalent of a judgment,'" and that the case should proceed to discovery.

50)     On June 24, 2024, the Court granted Womply's request to lift the stay and ordered the parties to jointly file a proposed scheduling/case management order. *See* ECF No. 119. Benworth moved for reconsideration of the decision, *see* ECF No. 120, which this Court subsequently denied, *see* ECF No. 121.

51)     As discussed above, the Reserve Bank's collateral includes, without limitation, all "proceeds and products" (including both principal and interest) Benworth FL has collected in respect of the Pledged PPP Loans, a portion of which has, upon information and belief, been transferred to Benworth PR pursuant to the LSAs between Benworth FL and Benworth PR or otherwise, *see* Womply Compl. ¶¶ 167-81; Reserve Bank Compl. ¶¶ 54-57, and also to the Navarros as shareholders of Benworth FL, Benworth PR or otherwise, *see* Womply Compl. ¶¶ 201–04; Reserve Bank Compl. ¶¶ 58-59. Therefore, the Reserve Bank's first-priority lien extends to and includes the Fraudulent Transfer that Womply seeks to unwind and attach through the Womply Complaint.

52)     To the extent that any property or assets transferred from Benworth FL to Benworth PR and the Navarros comprise PPP Collateral, such property or assets must be made available to satisfy any obligations under the Program Agreements, including any unpaid Advances, on a first-priority basis, ahead of the rights of Womply or any other party.

### C.  The Reserve Bank's Complaint Against Benworth and the Navarros

53)     In addition to seeking intervention, on July 10, 2024, the Reserve Bank filed its own *Complaint* against Benworth PR, Benworth FL, and the Navarros.[8] In the Reserve Bank Complaint, the Reserve Bank alleges that under the Program Agreements, Benworth FL owes it approximately $66,980,967.08 in principal, plus interest and other fees and costs, and that the

---

[8] *Federal Reserve Bank of San Francisco v. Benworth Capital Partners LLC et al.*, Case No. 24-01313.

Navarros caused Benworth FL to fraudulently transfer assets to Benworth PR and themselves to prevent the Reserve Bank from collecting Benworth FL's debt.

54) Accordingly, the Reserve Bank Complaint requests: (1) rescission of various fraudulent transfers; (2) a declaration that Benworth PR is the alter ego of and/or the successor to Benworth FL, and Benworth PR is liable to the Reserve Bank; (3) a declaration that the Navarros are personally liable for satisfying Benworth FL's and Benworth PR's obligations to the Reserve Bank as a result of the piercing of the corporate veil; and (4) an award of costs in the Reserve Bank's favor consisting of unpaid principal and accrued interest including, as applicable, default interest, as well as additional costs owing under the Program Agreements.[9]

### FIRST CAUSE OF ACTION: DECLARATORY RELIEF

55) The Reserve Bank repeats and incorporates by reference all the preceding paragraphs as if fully set forth herein.

56) This is a claim for declaratory relief brought under the provisions of 28 U.S.C. §§ 2201 and 2202.

57) The *Declaratory Judgment Act* authorizes all United States courts to issue declaratory relief in cases within their jurisdiction. This act specifically provides that:

> (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under Section 7428 of the Internal Revenue Code of 1986, a proceeding under Section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in Section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering

---

[9] The applicable non-default interest rate under the Program Agreements is thirty-five (35) basis points. In the ordinary course, Benworth FL receives the payments associated with the Pledged PPP Loans, including the principal plus the one hundred (100) basis points of interest, and remits the principal plus thirty-five (35) basis points to the Reserve Bank in accordance with and subject to the terms of the PPPLF. Under the Program Agreements, all interest, including the sixty-five (65) basis points retained by the PPPLF borrower, is property and collateral of the Reserve Bank until all Advances are repaid in full. Additionally, interest on any Advance that is not repaid when due (whether by acceleration or otherwise) is calculated at a rate five hundred (500) basis points higher than the otherwise applicable interest rate. Reserve Bank Compl. ¶ 24.

authority, any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

58)    An actual controversy exists among the Reserve Bank, Womply and the Defendants as to their legal rights.

59)    Womply seeks an attachment of the Defendants' assets, including those transferred through the Fraudulent Transfer. The Reserve Bank's first-priority security interest extends to assets held by Benworth FL, assets transferred through the Fraudulent Transfer or any other transfers later discovered, and to assets otherwise traceable to Benworth FL or available to its creditors, to the extent any such assets constitute PPP Collateral.

60)    Womply's requested relief threatens to adversely affect the Reserve Bank's security interest in the PPP Collateral and Benworth's ability to service the Pledged PPP Loans (further diminishing the value of the PPP Collateral).

61)    The Reserve Bank is entitled to a declaration by the Court that it has a first-priority security interest in the assets Womply seeks to unwind and attach through the Womply Complaint, to the extent such assets constitute PPP Collateral.

62)    To the extent that Womply has any right to collect from the Defendants, Womply should only be allowed to collect from the Defendants' assets consistent with and subject to the Reserve Bank's pre-existing security interest.

### PRAYER FOR RELIEF

**WHEREFORE**, based on the allegations contained in paragraphs 1 through 62 above, Intervenor respectfully requests the following:

16

(i)    A declaration that the Reserve Bank has a properly perfected first-priority lien and security interest in the Defendants' assets to the extent such assets constitute, in whole or in part, PPP Collateral;

(ii)   A declaration that Womply may only collect from the Defendants' assets to the extent such assets are not PPP Collateral;

(iii)  A declaration that as to any non-PPP Collateral assets, the Reserve Bank may recover at least *pro rata* with Womply; and

(iv)   Such other relief as this Court may deem just and proper.

Dated: August 2, 2024                    Respectfully submitted,

Lisa M. Schweitzer (admitted *pro hac vice*)
lschweitzer@cgsh.com

Thomas S. Kessler (admitted *pro hac vice*)
tkessler@cgsh.com

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Attorneys for the Federal Reserve Bank of San Francisco*

s/ *Antonio L. Roig Lorenzo*
Antonio L. Roig Lorenzo
antonio.roig@oneillborges.com
USDC-PR No. 207712

s/ *Salvador J. Antonetti Stutts*
Salvador J. Antonetti Stutts
salvador.antonetti@oneillborges.com
USDC-PR No. 215002

s/ *Ubaldo M. Fernández Barrera*
Ubaldo M. Fernández Barrera
ubaldo.fernandez@oneillborges.com
USDC-PR No. 224807

s/ *Aníbal A. Román Medina*
Aníbal A. Román Medina
anibal.roman@oneillborges.com
USDC-PR No. 308410

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Attorneys for the Federal Reserve Bank of San Francisco*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 2, 2024, I filed a copy of the foregoing document using the Court's CM/ECF system, which will automatically generate a Notice of Electronic Filing to all counsel of record in this matter.

*s/ Aníbal A. Román Medina*
Aníbal A. Román Medina
