IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| OTO ANALYTICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO, | § § § § § | Civil No. 23-01034 (GMM) *cons.* Civil No. 24-01313 (GMM) |
| Defendants. | § | |
| | § | |
| FEDERAL RESERVE BANK OF SAN FRANCISCO, | § § § | |
| | § | |
| Plaintiff-Intervenor, | § | |
| | § | |
| v. | § | |
| | § | |
| OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO, | § § § § § § | |
| Defendants in Intervention. | § | |

**PLAINTIFF OTO ANALYTICS, LLC'S MOTION TO STRIKE DEFENDANTS'
AFFIRMATIVE DEFENSES OF UNCLEAN HANDS, SET OFF, AND PUBLIC POLICY**

Alexander L. Cheney (admitted *pro hac vice*)
333 Bush St
San Francisco, CA 94104
(415) 858-7400
acheney@willkie.com

Stuart R. Lombardi (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
(212) 728-8000
slombardi@willkie.com

Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

Dated: September 9, 2024

Alejandro J. Cepeda Diaz
USDC-PR 222110
McConnell Valdés LLC
270 Muñoz Rivera Ave.
Hato Rey PR 00918
Tel: (787) 250-5637
Email: ajc@mcvpr.com

*Attorneys for Plaintiff and Defendant in
Intervention Oto Analytics, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................3

      A.     The Agreements .................................................................................................3

      B.     The Arbitration ..................................................................................................4

      C.     Defendants' Affirmative Defenses ....................................................................7

LEGAL STANDARD ..........................................................................................................8

ARGUMENT ......................................................................................................................9

I.      Benworth FL And Mr. Navarro Are Barred And Precluded From Asserting The
Affirmative Defenses. ......................................................................................................9

      A.     Benworth FL And Mr. Navarro's Affirmative Defenses Are Barred Because
They Are Subject To A Binding Arbitration Agreement .......................................9

      B.     Benworth FL And Mr. Navarro Are Estopped From Asserting The
Affirmative Defenses. ......................................................................................11

II.     Benworth PR and Mrs. Navarro Lack Standing To Assert The Affirmative Defenses.....13

III.    Defendants' Affirmative Defenses Fail As A Matter Of Law. .........................................15

CONCLUSION..................................................................................................................16

CERTIFICATE OF SERVICE ...........................................................................................18

i

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*ACEMLA de P.R., Inc. v. Banco Popular de P.R., Inc.*,
2015 WL 10037151 (D.P.R. Oct. 30, 2015) ...........................................................................13

*Álvarez-Maurás v. Banco Popular of P.R.*,
919 F.3d 617 (1st Cir. 2019) ...............................................................................................2, 9

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ................................................................................................................14

*Barnstable Cnty. v. 3M Co.*,
2017 WL 6452245 (D. Mass. Dec. 18, 2017) ...........................................................................4

*Bleavins v. Demarest*,
196 Cal. App. 4th 1533 (2011) .........................................................................................13, 14

*Bryan Corp. v. Chemwerth, Inc.*,
2013 WL 6489785 (D. Mass. Dec. 9, 2013) ..................................................................8, 15, 16

*Citizens Bank v. Strumpf*,
516 U.S. 16 (1995)...................................................................................................................16

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
748 F.3d 1 (1st Cir. 2014)............................................................................................10, 11, 14

*Kalkey v. Euromodas, Inc.*,
706 F. Supp. 3d 305 (D.P.R. 2023)..........................................................................................13

*Manganella v. Evanston Ins. Co.*,
700 F.3d 585 (1st Cir. 2012)...............................................................................................11, 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ..................................................................................................................9

*Merigan v. Liberty Life Assur. Co. of Boston*,
839 F. Supp. 2d 445 (D. Mass. 2012) ......................................................................................16

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945).................................................................................................................15

*Ray v. Austin Indus., Inc.*,
2018 WL 4701375 (D.S.C. Sept. 29, 2018)..............................................................................10

*Rodríguez-García v. Miranda-Marín*,
  610 F.3d 756 (1st Cir. 2010) ..............................................................................2, 13

*Safeguard Props. Mgmt., LLC v. MidFirst Bank*,
  2017 WL 4541592 (N.D. Ohio Oct. 11, 2017) .......................................................10

*Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*,
  526 F.3d 38 (1st Cir. 2008)...................................................................................10

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)..............................................................................................15

**Rule**

Fed. R. Civ. P. 12(f)................................................................................................1, 4, 8

**Other Authority**

5C Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure
  § 1381 (3d ed. 2024) ..............................................................................................8

Pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff Oto Analytics, LLC (f/k/a Oto Analytics, Inc. d/b/a Womply) ("**Womply**"), by and through its undersigned counsel, respectfully requests that this Court strike Defendants Benworth Capital Partners PR, LLC ("**Benworth PR**"), Benworth Capital Partners, LLC ("**Benworth FL**"), Bernardo Navarro ("**Mr. Navarro**"), and Claudia Navarro's ("**Mrs. Navarro**"; collectively "**Defendants**") affirmative defenses of unclean hands, set off, and public policy (collectively, the "**Affirmative Defenses**").

## PRELIMINARY STATEMENT

This case is about Defendants' fraudulent transfer of more than $171 million from Benworth FL to Benworth PR (and likely into the pockets of Mr. and Mrs. Navarro) to keep those funds from Benworth FL's creditors.  Benworth FL owes Womply approximately $118 million under a final arbitration award (the "**Final Award**") and owes the Federal Reserve Bank of San Francisco ("**Federal Reserve**") approximately $67 million under its Paycheck Protection Program ("**PPP**") lending facility.  Womply and the Federal Reserve are seeking to recover those funds and bring claims for actual fraudulent transfer, constructive fraudulent transfer, and additional declaratory and equitable relief, which turn on Benworth FL's fraudulent intent, Benworth FL's solvency, and whether Benworth FL received reasonably equivalent value.

In response to Womply's claims, and to distract from their own fraudulent conduct, Defendants assert Affirmative Defenses of unclean hands, set off, and public policy that are completely irrelevant to Womply's claims.  Defendants' unclean hands/set off defense alleges that Womply did not sufficiently screen out fraudulent loan applications it referred to Benworth FL and has not provided unspecified "loan files" to Benworth FL.  Defendants' second set off defense speculates that the U.S. Small Business Administration ("**SBA**") could find in the future that Womply's fees to Benworth FL violated SBA regulations.  And Defendants' public policy defense

1

asserts that Womply's fees to Benworth FL violate SBA regulations. These purported Affirmative Defenses are irrelevant to the issues in this case: whether Benworth FL fraudulently transferred funds to Benworth PR to avoid creditors, whether Benworth PR is the alter ego of Benworth FL, and whether Mr. and Mrs. Navarro should be held responsible for Benworth FL's and Benworth PR's debts. Worse, the issues raised by the Affirmative Defenses are subject to a binding arbitration agreement. Indeed, many of them were already rejected by the arbitrator in the arbitration between Womply and Benworth FL (the "**Arbitration**") that led to this action.

This Court should strike the Affirmative Defenses for at least three reasons.

***First***, Benworth FL and Mr. Navarro are barred and precluded from asserting the Affirmative Defenses in this action because they agreed to arbitrate those issues. All of the Affirmative Defenses are based on agreements between Womply and Benworth FL, which contain a broad arbitration provision covering "any dispute between parties to the subject matter" of the agreements. Because the Affirmative Defenses "fall within the expansive ambit of this arbitration provision," they cannot "be pursued outside the arbitration framework" and must be stricken. *Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 624 (1st Cir. 2019). In fact, Benworth FL and Mr. Navarro already "litigated and lost" on many of the same issues they now raise in their Affirmative Defenses, so they are precluded from "relitigating [these] issues that have been previously adjudicated." *Rodríguez-García v. Miranda-Marín*, 610 F.3d 756, 770–71 (1st Cir. 2010) (cleaned up; collecting cases).

***Second***, Benworth PR and Mrs. Navarro lack standing to assert the Affirmative Defenses. The Affirmative Defenses are based on agreements between Womply and Benworth FL, a nonparty to an agreement lacks standing to assert claims based on those agreements, and Benworth PR and Mrs. Navarro admit that each "was not a party to" these agreements. To the extent

Benworth PR and Mrs. Navarro try to obtain the benefits of these agreements in their Affirmative Defenses, this helps proves Womply's alter ego, successor liability, and piercing the corporate veil claims that Benworth FL and Benworth PR are not separate entities.

**Finally**, should this Court reach the merits of the Affirmative Defenses, they all fail as a matter of law. Accordingly, the Affirmative Defenses should be stricken.

## BACKGROUND

### A.    The Agreements

On April 14, 2021, Benworth FL and Womply entered into an Amended and Restated PPP Loan Referral Agreement (the "**Referral Agreement**") and a Womply Developer Order Form (the "**Order Form**"; together with the Referral Agreement, the "**Agreements**"). (Amended Complaint ("**Am. Compl.**"; ECF No. 125) ¶ 92 & Exs. 2–3; Benworth FL's Answer ¶ 92, ECF No. 150; Mr. Navarro's Answer ¶ 92, ECF No. 152.) Mr. Navarro, Benworth FL's sole member, founder, President, and CEO, signed the Agreements. (*Id.*; Am. Compl. ¶ 24; Benworth FL's Answer ¶ 24; Mr. Navarro's Answer ¶ 24; Referral Agreement at 4; Order Form at 1.)

Under the Agreements, Womply agreed to provide certain referral and technology services to Benworth FL in connection with PPP loans and loan applications, and Benworth FL agreed to pay Womply certain fees for these services. (Am. Compl. ¶¶ 95–119; Benworth FL's Answer ¶¶ 96, 98–99, 106, 109, 111–12, 119; Mr. Navarro's Answer ¶¶ 96, 98–99, 106, 109, 111–12, 119; Referral Agreement §§ 2.1–2.3; Order Form §§ 2.1–2.3.) The Agreements provide that "Womply shall return any portion of the [] Fees paid that the SBA or other governmental agency determines were not in compliance with applicable SBA and/or PPP Loan Program Requirements." (Referral Agreement § 2.3; Order Form § 2.3.) After termination of the Agreements, Benworth FL "may request from Womply, and Womply shall reasonably provide to [Benworth FL], a plan for transmitting to [Benworth FL] electronic copies of loan files in its possession that related to the

Referred Loans, to the extent not otherwise in the possession of [Benworth FL]." (Referral Agreement § 4.3.)

The Agreements contain a broad arbitration provision (the "**Arbitration Provision**"), which provides that:

> Without limiting a party's right to seek injunctive or other equitable relief in court, ***any dispute between the parties related to the subject matter of this Agreement will be resolved by binding arbitration*** in the English language in San Francisco County, California under the rules of JAMS; the decision of the arbitrator will be enforceable in any court. The prevailing party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees.

(Am. Compl. ¶ 27 (emphasis added); Benworth FL's Answer ¶ 27; Mr. Navarro's Answer ¶ 27; Referral Agreement § 10; Order Form § 4.) The Agreements also contain a choice-of-law provision, which states that they "shall be governed by and construed in accordance with the laws of the State of California." (Referral Agreement § 9; Order Form § 4.)

## B.    The Arbitration

On August 25, 2021, Womply commenced JAMS arbitration proceedings against Benworth FL alleging that Benworth FL breached the Agreements by failing to pay Womply its fees. (Am. Compl. ¶¶ 2, 157–58; Benworth FL's Answer ¶¶ 2, 157–58; Mr. Navarro's Answer ¶¶ 2, 157–58; Declaration of Joshua S. Levy ("Levy Decl.") ¶ 3 Ex. A ("Final Award") at 4–5, 29–30.)[1] In response, Benworth FL asserted "two affirmative defenses (illegality and set off) and four counterclaims (declaratory relief, breach of contract, severance and enforcement, and money had and received), all alleging that Womply's fees under the Agreements are 'unlawful,' 'illegal,' and

---

[1] On a motion to strike, like on a Rule 12(b)(6) motion to dismiss, this Court "may take judicial notice of proceedings in other courts," including "an arbitration award," to "establish the existence of the related litigation, what claims were asserted, and what issues were argued and decided." *Barnstable Cnty. v. 3M Co.*, 2017 WL 6452245, at *4 (D. Mass. Dec. 18, 2017) (cleaned up; collecting cases).

'not in compliance with SBA Regulations' because they exceed the limits established by the SBA Administrator in the Interim Final Rule" (the "**Fee Cap Argument**").  (Final Award at 33 (quoting Benworth's Arbitration Answer at 6–11).)  Benworth FL also argued that "the parties' Agreements are not valid under SBA regulations because Womply was a Lender Service Provider and failed to submit the Agreements to the SBA" (the "**Lender Service Provider Argument**").  (*Id.* at 41.)  After a "seven-day in-person evidentiary hearing" (the "**Hearing**") with six live witnesses, more than 350 documents "introduced and admitted into evidence," and extensive pre- and post-Hearing briefing, the Arbitrator rejected all of Benworth FL's affirmative defenses and counterclaims and awarded Womply approximately $118 million.  (*Id.* at 7–8, 72–73.)[2]

Benworth FL also asserted a counterclaim "for declaratory relief" under "Section 4.3 of the Referral Agreement" seeking "a declaration that Womply is obligated to promptly reinstate Benworth's access to Womply technology platform or in the alternative to transmit electronic copies of borrowers' loan files" (the "**Loan File Claim**").  (*Id.* at 6 & n.4, 52, 58.)  Benworth FL "abandoned" its "request for declaratory relief concerning its delivery of borrower files" during "the Hearing" and "previous proceedings."  (*Id.* at 58.)  Benworth FL then "sought reconsideration" of this claim, arguing that "because of missing loan files, the SBA has denied the guaranteed purchase of thousands of Womply-referred loans," and, "if the SBA ultimately does not buyback these loans, Benworth will have to refund the principal loan amounts that the Federal Reserve advanced to Benworth for funding PPP loans," and "Womply's recovery should therefore

---

[2] (*See also* Final Award at 41 ("[T]he Technology Services provided by Womply to Benworth were not subject to the SBA's 1% Agent Fee Cap . . . .  The Technology Fees are not illegal and therefore, they need not be severed from the Order Form."); *id.* at 44–45 ("Womply was not an LSP"); *id.* at 47 ("Benworth has failed to prove that, even if Womply was an LSP, the parties' failure to submit the Agreements to the SBA would have rendered the Agreements invalid or void."); *id.* at 53 & n.15 ("[T]he Technology Fee provision in the Order Form and the parties' Agreements as a whole are not void, illegal, or unenforceable").)

be offset by the amount that Benworth is ultimately required to repay, if anything." (*Id.*; Levy Decl. ¶ 4 Ex. B ("Feb. 20, 2024 Arbitration Order") at 3–4 & n.1.)  "Womply consent[ed] to declaratory judgment being entered," the Arbitrator ordered Womply to "transmit copies of borrowers' loan files to Benworth," and Womply promptly did so.  (Feb. 20, 2024 Arbitration Order at 4.)

Benworth FL initially asserted an affirmative defense of "Promissory Fraud: arguing that Womply is barred, in whole or in part, from recovering outstanding Referral Fees because Womply promised Benworth that it would materially improve its technology platform to reduce the risk of loss" from fraudulent PPP loan applications "but did not, in fact, intend to honor that promise when it was made" (the "**Fraudulent Loan Argument**") (Final Award at 5.)  However, Benworth FL refused to comply with the Arbitrator's discovery order to produce "its list of fraudulent loans to Womply," and Benworth FL instead "voluntarily dismissed its Promissory Fraud affirmative defense." (*Id.*)

On July 1, 2024, Womply filed a Petition To Confirm Arbitration Award And For Entry Of Judgment in federal courts in the Northern District of California.  *Oto Analytics, LLC v. Benworth Capital Partners LLC*, No. 3:24-cv-03975 (N.D. Cal. July 1, 2024), ECF No. 1.  In response, Benworth FL filed a separate Petition to Vacate Final Arbitration, which argued, among other things, that "the Final Award is unenforceable because it compels Benworth to violate public policy," because "SBA Regulations and interpretations of those regulations [] require agents, lender service providers, and lenders to submit compensation agreements for review by the SBA." (Levy Decl. ¶ 5 Ex. C at 62–63 (capitalization omitted).)  On September 6, 2024, Benworth FL filed an opposition to Womply's Petition raising the same arguments.  (*Id.* ¶ 6 Ex. D at 24.)

### C.    Defendants' Affirmative Defenses

On August 19, 2024, each Defendant filed an Answer raising the same sixteen affirmative defenses.  (ECF Nos. 149–52.)  As relevant to this Motion, Defendants assert defenses of "unclean hands" (Second Affirmative Defense), "set off" (Fourteenth and Fifteenth Affirmative Defenses), and "public policy" (Sixteenth Affirmative Defense) that seek to re-litigate the same Fee Cap Argument, Lender Service Provider Argument, Loan File Claim, and Fraudulent Loan Argument that that were the subject of the Arbitration.  (*Id.*)  For their unclean hands and set off defenses, Defendants allege that:

> The fees Womply seeks from Benworth FL include fees gained through missing loan files and fraudulent applications for PPP loans that Womply referred.  The SBA has denied the guaranteed purchase of thousands of Womply-referred loans totaling more than $51 million, and it may deny an additional $68 million more.  Thus, if the SBA ultimately does not buyback these loans, Benworth FL will have to refund the principal loan amounts that the Federal Reserve advanced to Benworth FL for funding these Womply-referred fraudulent PPP loans.

(Benworth FL's Answer at 37, 39–40; Mr. Navarro's Answer at 35–36, 38–39; Benworth PR's Answer at 40–41, 44, ECF No. 149; Mrs. Navarro's Answer at 42, 45–46, ECF No. 151.)  For their second set off defense, Defendants allege that:

> Section 2.3 of the Referral Agreement and Section 2.3 of the Order Form provide that Womply shall return any fees paid by Benworth FL that the SBA or other governmental agency determines were not in compliance with applicable SBA and/or PPP Loan Program Requirements.  Benworth FL has paid Womply approximately $465 million in fees and those fees are currently the subject of an investigation by the SBA and/or other governmental agencies.  If the SBA and/or another governmental agency determines that the fees Benworth FL paid Womply, in whole or in part, were not in compliance with applicable SBA and/or PPP Loan Program Requirements, Womply must return those fees to Benworth FL and any damages awarded to Womply here should therefore be set off by the amount of fees that Womply is required to return to Benworth FL

7

(Benworth FL's Answer at 40; Mr. Navarro's Answer at 39; Benworth PR's Answer at 44; Mrs. Navarro's Answer at 46.)  And for their public policy defense, Defendants allege that:

> [C]ompelling Benworth FL to pay Womply fees would require Benworth FL to violate public policy.  The SBA has an explicit, well-defined policy that specifically militates against the relief Womply seeks here.  That public policy expressly provides that agents, including lender service providers, like Womply, are only entitled to fees from lenders in connection with SBA loans that are owed under agreements that were submitted to and approved by the SBA.  *See* 13 C.F.R. §§ 103.5(a), (c); Small Business Administration, Office of Capital Access, *SOP 50 10 6: Lender and Development Company Loan Programs* at p. 185 (Oct. 1, 2020).  Womply acted as an agent and lender service provider under the Parties' Agreements.  The relief Womply seeks here is the payment of fees under agreements that indisputably were never submitted to or approved by the SBA.  Ordering Benworth FL to pay Womply those fees as damages here would thus require Benworth FL to violate the SBA's explicit, well-defined policy.  Accordingly, Womply is barred from recovering damages in this action from Benworth FL.

(Benworth FL's Answer at 40–41; Mr. Navarro's Answer at 39–40; Benworth PR's Answer at 45; Mrs. Navarro's Answer at 46–47.)  These defenses should be stricken.

## LEGAL STANDARD

Under Rule 12(f), this "[C]ourt may strike from a pleading an insufficient defense."  "A motion to strike offers the primary opportunity for a plaintiff to object to affirmative defenses and is governed by the same standards as a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6)."  *Bryan Corp. v. Chemwerth, Inc.*, 2013 WL 6489785, at *1, *7 (D. Mass. Dec. 9, 2013) (cleaned up; collecting cases) (striking "affirmative defense of unclean hands").  Courts permit "the successful use of motion to strike in connection with insufficient affirmative defenses" in "a wide range of different factual and substantive contexts."  5C Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1381 (3d ed. 2024) (collecting cases).

8

## ARGUMENT

I.    **Benworth FL And Mr. Navarro Are Barred And Precluded From Asserting The Affirmative Defenses.**

    A. **Benworth FL And Mr. Navarro's Affirmative Defenses Are Barred Because They Are Subject To A Binding Arbitration Agreement.**

The Federal Arbitration Act ("**FAA**") reflects "a strong federal policy favoring arbitration," such that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Álvarez-Maurás*, 919 F.3d at 624 n.9 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).  Benworth FL admits that it agreed that "***any dispute*** between the parties related to the ***subject matter of this Agreement*** will be resolved by ***binding arbitration***."  (*See supra* at 4 (emphasis added).)  Benworth FL's Affirmative Defenses "fall within the expansive ambit of this arbitration provision," and therefore cannot "be pursued outside the arbitration framework." *Álvarez-Maurás.*, 919 F.3d at 624 (citing *Mitsubishi*, 473 U.S. at 628).

There can be no serious dispute that the Affirmative Defenses are related to the subject matter of the Agreements.  Benworth FL's unclean hands/set off defense (Second and Fourteenth Affirmative Defenses) is based on purportedly "missing loan files and fraudulent applications for PPP loans that Womply referred" to Benworth FL.  (Benworth FL's Answer at 37, 39–40.)  This defense is therefore based on Section 1.1 of the Referral Agreement pursuant to which Womply referred PPP loan applications to Benworth FL; Section 4.3 of the Referral Agreement under which Womply is obligated to provide Benworth FL with borrowers' loan files; and the "API Package" in the Order Form, including "Business Fraud Analytics" and "Account Verification."  (Referral Agreement §§ 1.1, 4.3; Order Form at 1.)  It also implicates Section 1.2 of the Referral Agreement and Section 1.1 of the Order Form in which Womply disclaimed the "accuracy, lawfulness, or completeness of any information accompanying a referral."  (Referral Agreement § 1.2

9

(capitalization omitted); Order Form § 1.1 (same); *see also id.* § 1.2 (disclaiming "responsibility for the action, errors, or omissions of the third party providers") (capitalization omitted).)

Benworth's FL's second set off defense (Fifteenth Affirmative Defense) is explicitly based on "Section 2.3 of the Referral Agreement and Section 2.3 of the Order Form." (Benworth FL's Answer at 40.) Thus, even if the SBA were to make some determination regarding Womply's fees, the extent to which Benworth FL would have any cause of action against Womply would have to be resolved in arbitration. And Benworth FL's public policy defense (Sixteenth Affirmative Defense) challenges the legality of "the payment of fees under [the] [A]greements." (*Id.* at 40–41.) Because all of Benworth FL's Affirmative Defenses are "related to the subject matter of th[e] Agreement[s]," they are subject to the Arbitration Provision and Benworth FL cannot pursue them in court. *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 4, 8–9 (1st Cir. 2014) (compelling arbitration based on "broadly worded" arbitration provision governing "any controversy or claim arising out of or relating to this agreement") (cleaned up; collecting cases); *see also Ray v. Austin Indus., Inc.*, 2018 WL 4701375, at *4 (D.S.C. Sept. 29, 2018) (holding that "unclean hands" defense must "be decided by the arbitrator rather than the court"); *Safeguard Props. Mgmt., LLC v. MidFirst Bank*, 2017 WL 4541592, at *1–2 (N.D. Ohio Oct. 11, 2017) (dismissing claims where defendants raised "affirmative defenses" regarding "a right of setoff" that "are subject to mandatory arbitration").

Mr. Navarro is likewise bound by the Arbitration Provision, which bars his Affirmative Defenses. Mr. Navarro admits that he signed the Agreements and that he is Benworth FL's sole member. (*See supra* at 3.) Federal courts routinely "estop a signatory from avoiding arbitration" where, as here, "the subject matter of the suit is intertwined with the subject matter within the scope of the arbitration clause." *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 47

10

(1st Cir. 2008) (cleaned up; collecting cases).  At a minimum, Mr. Navarro signed the Agreements in his capacity as President and/or CEO of Benworth FL.  (*See supra* at 3.)  Because a company can "operate only through the actions of its employees," it is settled law "founded on general state law principles of agency," that "when a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Grand Wireless*, 748 F.3d at 11 (cleaned up; collecting cases).

### B.  Benworth FL And Mr. Navarro Are Estopped From Asserting The Affirmative Defenses.

"Issue preclusion (also called collateral estoppel) prevents a party from relitigating issues that have been previously adjudicated." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012) (cleaned up; collecting cases).  The doctrine "bar[s] relitigation of an issue decided in an earlier action where:  (1) the issues raised in the two actions are the same; (2) the issue was actually litigated in the earlier action; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was necessary to that judgment." *Id.* (collecting cases).  It applies "where the subsequent proceeding involves a cause of action different from the first" so long as the "issues presented in the two actions are in substance the same." *Id.* (cleaned up; collecting cases).  "[F]inal arbitral awards are afforded the same preclusive effects as are prior court judgments." *Id.* (collecting cases).  "Under modern preclusion doctrine, the central question is whether a party has had a full and fair opportunity for judicial resolution of the same issue." *Id.* (cleaned up; collecting cases).  All of these requirements are satisfied for each of Benworth FL's Affirmative Defenses, which are therefore precluded.

Benworth FL's unclean hands/set off defense asserts that "the fees Womply seeks from Benworth FL include fees gained through missing loan files and fraudulent applications for PPP loans that Womply referred," for which the SBA may "not buyback these loans," and "Benworth

11

FL will have to refund the principal loan amounts that the Federal Reserve advanced to Benworth FL." (Benworth FL's Answer at 37, 39–40.)  Benworth FL made the same Loan File Claim and Fraudulent Loan Argument in the Arbitration.  There, Benworth FL sought a declaratory judgment requiring Womply to produce borrowers' loan files, arguing that "if the SBA ultimately does not buyback these loans, Benworth will have to refund the principal loan amounts that the Federal Reserve advanced to Benworth for funding PPP loans." (*See supra* at 5.)  Womply consented to the declaratory judgment, the Arbitrator ordered Womply to produce such loan files, and Womply did so. (*Id.*)  Benworth FL also alleged in the Arbitration that Womply referred to Benworth FL fraudulent applications for PPP loans and this claim was dismissed. (*Id.*)

Benworth FL's public policy defense asserts that SBA regulations "provide[] that agents, including lender service providers, like Womply, are only entitled to fees from lenders in connection with SBA loans that are owed under agreements that were submitted to and approved by the SBA," "Womply acted as an agent and lender service provider under the Parties' Agreements," and "[t]he relief Womply seeks here is the payment of fees under agreements that indisputably were never submitted to or approved by the SBA." (Benworth FL's Answer at 40–41.)  Benworth FL made the same Lender Service Provider Argument in the Arbitration.  There, Benworth FL likewise argued that "the parties' Agreements are not valid under SBA regulations because Womply was a Lender Service Provider and failed to submit the Agreements to the SBA." (Final Award at 41.)  The Arbitrator rejected this argument, holding that "Womply was not an LSP," and "Benworth has failed to prove that, even if Womply was an LSP, the parties' failure to submit the Agreements to the SBA would have rendered the Agreements invalid or void." (*Id.* at 44–45, 47.)

12

Mr. Navarro is also precluded from asserting the Affirmative Defenses. As discussed above (*see supra* Section I.A), Mr. Navarro is the sole member, President, and CEO of Benworth FL. He is therefore "bound by a judgment in a previous case," because he is Benworth FL's "privy" or agent. *Rodríguez García*, 610 F.3d at 770–71 (cleaned up; collecting cases). In fact, Mr. Navarro attended every day of the Hearing and was a key witness. (*See* Final Award at 24, 29, 37, 39, 48, 50–51 (citing Mr. Navarro's testimony).) In any event, "[t]here is no longer a strict mutuality requirement for collateral estoppel," which precludes Mr. Navarro from relitigating the same issues that Benworth FL "litigated and lost" in the Arbitration. *ACEMLA de P.R., Inc. v. Banco Popular de P.R., Inc.*, 2015 WL 10037151, at *4 (D.P.R. Oct. 30, 2015) (citing *Rodríguez García*, 610 F.3d at 771).

In sum, "the arbitration presented" Benworth FL and Mr. Navarro with "the full and fair opportunity for adjudication of the issue[s] at hand," and "allowing [them] to contest these questions now would contravene the twin goals of issue preclusion: protecting litigants from the burden of relitigating settled issues and promoting judicial economy by preventing needless litigation." *Manganella*, 700 F.3d at 594–95 (cleaned up; collecting cases).

## II.    Benworth PR and Mrs. Navarro Lack Standing To Assert The Affirmative Defenses.

Under California law, which governs the Agreements, "[s]omeone who is not a party to a contract has no standing" to "assert any claim concerning the contractual relationship." *Bleavins v. Demarest*, 196 Cal. App. 4th 1533, 1542 (2011) (cleaned up; collecting cases); *see also Kalkey v. Euromodas, Inc.*, 706 F. Supp. 3d 305, 321 (D.P.R. 2023) ("In general, *ex contractu* actions can only be brought by one contracting party against the other. A stranger to the contractual relationship . . . may demand the fulfillment of a contract successfully only if the contract contains a stipulation in his favor.") (cleaned up; collecting cases). Benworth PR and Mrs. Navarro assert repeatedly that each "was not a party to the Referral Agreement or Order Form" and "was not a

13

party to the arbitration." (*See, e.g.*, Benworth PR's Answer ¶¶ 14–15, 19, 29, 92, 94–123; Mrs. Navarro's Answer ¶¶ 14–15, 19, 29, 92, 94–123.)   Accordingly, they "have no standing to challenge the performance" or legality of the Agreements in their Affirmative Defenses. *Bleavins*, 196 Cal. App. 4th at 1542–43 (cleaned up; collecting cases).

Benworth PR and Mrs. Navarro are trying to have it both ways.  They insist that they are separate from Benworth FL and are not parties to the Agreements (*see* Benworth PR's Answer ¶¶ 11, 185–99, 241–55; Mrs. Navarro's Answer ¶¶ 11, 185–99, 241–55), but also want the benefits of the Agreements, including "loan files" from Womply pursuant to Section 4.3 of the Referral Agreement and fee reductions under "Section 2.3 of the Referral Agreement and Section 2.3 of the Order Form" (Benworth PR's Answer at 44; Mrs. Navarro's Answer at 45–46).  By seeking to obtain the benefits of the Agreements, Benworth PR and Mrs. Navarro effectively admit that "[t]he separation of Benworth FL and Benworth PR as distinct corporate entities is an illusion—they are effectively the same company," and Benworth PR and Mrs. Navarro can be held liable under alter ego, successor liability, and piercing the corporate veil principles.  (Am. Compl. ¶¶ 11, 185–99, 241–55.)  Thus, even if Benworth PR and Mrs. Navarro have standing to assert the Affirmative Defenses, those defenses are barred by the Arbitration Provision, which can be "enforced by or against nonparties to the contracts through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."  *Grand Wireless*, 748 F.3d at 12 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). For the same reasons, Benworth PR and Mrs. Navarro's Affirmative Defenses are also precluded by the Arbitration.  *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (holding that "nonparty preclusion may be justified on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment") (cleaned up; collecting authority).

14

### III.    Defendants' Affirmative Defenses Fail As A Matter Of Law.

Should this Court reach the merits of the Affirmative Defenses (which it should not) they all fail as a matter of law because they are not valid defenses or they are inadequately pleaded.

*First*, "the doctrine of unclean hands" is "an equitable remedy that allows a court to refuse to aid 'one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" *Bryan*, 2013 WL 6489785, at *2 (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). "In order to deny relief to a party because of inequitable conduct, the conduct at issue must directly affect the claim being brought." *Id.* (cleaned up; collecting cases). Defendants fail to allege that Womply engaged in any "inequitable conduct," let alone conduct directly relevant to this action. Rather, Defendants allege that *borrowers* submitted "fraudulent applications for PPP loans that Womply referred." (*See supra* at 7.) Defendants also allege that Womply is "missing loan files," which is at most a breach-of-contract claim under the Agreements, not "inequitable conduct."

Moreover, none of Defendants' allegations "relate[] to the conduct at issue in this litigation." *Bryan*, 2013 WL 6489785, at *3. Womply alleges that Benworth FL fraudulently transferred funds to Benworth PR to render Benworth FL judgment-proof so Womply could not collect the Final Award from Benworth FL. (*See* Am. Compl. ¶¶ 165–204.) The fact that the SBA may "not buyback" certain Womply-referred loans and Benworth FL may "have to refund the principal loan amounts that the Federal Reserve advanced to Benworth FL" (*see supra* at 5) is "unrelated to the events raised in this case," so "the unclean hands defense sh[ould] be stricken." *Bryan*, 2013 WL 6489785, at *3.

*Second*, Defendants cannot repackage the same flawed unclean hands defense as a set off defense. "The right of setoff (also called 'offset') allows parties that owe each other money to apply their mutual debts against each other thereby avoiding the absurdity of making A pay B

15

when B owes A." *Merigan v. Liberty Life Assur. Co. of Boston*, 839 F. Supp. 2d 445, 448 (D. Mass. 2012) (quoting *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995)). This defense is inapplicable here because Womply does not owe Defendants any debts. Defendants seek to reduce the debts Benworth FL owes to Womply based on the additional debts Benworth FL owes to the Federal Reserve. (*See supra* at 7.) This is not a valid set off defense; it is a refusal to pay debts.

**Third**, Defendants' second set off defense similarly fails because there are no offsetting debts. Defendants speculate that "*[i]f* the SBA and/or another governmental agency determines that the fees Benworth FL paid Womply, in whole or in part, were not in compliance with applicable SBA and/or PPP Loan Program Requirements, Womply must return those fees to Benworth FL and any damages awarded to Womply here should therefore be set off by the amount of fees that Womply is required to return to Benworth FL." (*Id.* (emphasis added).) Thus, Defendants implicitly admit that the SBA has *not* made any such determination, Womply currently has no obligation to return any fees to Benworth FL, and therefore there are no offsetting debts.

**Finally**, Defendants vaguely allege "public policy" (*see supra* at 8), which is not a valid defense to any of Womply's claims. Defendants have simply relabeled Benworth FL's "illegality" contract defense from the Arbitration as "public policy," and copied Benworth FL's "public policy" arguments for vacating the Final Award into theirs Answers. (*See* Final Award at 5, 32–33, 46; Levy Decl. Ex. C at 62–63; *id.* Ex. D at 24.) None of this is relevant to whether Benworth FL fraudulently transferred funds to Benworth PR.

## CONCLUSION

For the foregoing reasons, Womply respectfully requests that this Court strike Defendants' affirmative defenses of unclean hands, set off, and public policy.

16

Dated: September 9, 2024

*Of Counsel*

Willkie Farr & Gallagher LLP                    Respectfully submitted,

By: */s/ Alexander L. Cheney*                    By: */s/ Alejandro J. Cepeda Diaz*

Alexander L. Cheney (admitted *pro hac vice*)    Alejandro J. Cepeda Diaz
333 Bush St                                       USDC-PR 222110
San Francisco, CA 94104                           McConnell Valdés LLC
(415) 858-7400                                    270 Muñoz Rivera Ave.
acheney@willkie.com                               Hato Rey PR 00918
                                                  Tel: (787) 250-5637
Stuart R. Lombardi (admitted *pro hac vice*)      Email: ajc@mcvpr.com
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019                                *Attorneys for Plaintiff and Defendant in*
(212) 728-8000                                    *Intervention Oto Analytics, LLC*
slombardi@willkie.com


Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

17

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 9, 2024 the foregoing document was filed with the Clerk of the Court using CM/ECF, which sent notices to all parties receiving notifications through the CM/ECF system.


Dated: September 9, 2024                                      By: */s/ Alejandro J. Cepeda Diaz*

*Attorney for Plaintiff Oto Analytics, LLC*

18