## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **OTO ANALYTICS, LLC,** | |
| Plaintiff, | |
| v. | |
| **BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,** | Civil No. 23-01034 (GMM) *cons.* |
| Defendants. | Civil No. 24-01313 (GMM) |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,** | |
| Plaintiff-Intervenor | |
| v. | |
| **OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC, *et al.*,** | |
| Defendants in Intervention. | |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,** | |
| Consolidated Plaintiff, | |
| v. | |
| **BENWORTH CAPITAL PARTNERS PR, LLC, *et al.*,** | |
| Consolidated Defendants. | |

## DEFENDANT BENWORTH CAPITAL PARTNERS, LLC'S MOTION TO DISMISS THE FEDERAL RESERVE'S COMPLAINT AND COMPLAINT IN INTERVENTION

**TO THE HONORABLE COURT:**

**COMES NOW** Defendant Benworth Capital Partners, LLC ("Benworth FL"), through the

undersigned counsel, respectfully requests the dismissal of the Federal Reserve Bank of San

Francisco's ("Federal Reserve") Complaint [Case No. 24-cv-01313, D.E. 1] ("Complaint" or "Compl.") and Complaint in Intervention [Case No. 23-cv-01034, D.E. 146] ("Complaint in Intervention" or "Compl. Int.") (collectively, the "Complaints")[1] and as grounds therefore **STATES** and **PRAYS** as follows:

<u>**BACKGROUND**</u>

To facilitate the Paycheck Protection Program ("PPP") that was implemented by the United States Small Business Administration ("SBA"), the Federal Reserve extended credit to eligible financial institutions—like Benworth FL—that originated loans under the PPP Liquid Facility. *See* Compl. ¶¶ 18–19; Compl. Int. ¶¶ 9–10. To that end, Benworth FL and the Federal Reserve executed the PPP Liquid Facility Letters of Agreement on May 4, 2020, January 14, 2021, and January 30, 2023 ("LOA"), each of which contained substantially the same language and incorporated the *Reserve Bank's Operating Circular No. 10* ("Operating Circular") (the LOA and Operating Circular, together, the "Agreements"). *See* Compl. ¶¶ 19–20 & Ex. A–B; Compl. Int. ¶¶ 10–11 & Ex. A–B.

Beginning in February 2021, Benworth FL contracted with Oto Analytics ("Womply") to use its services to collect loan files from borrowers to originate PPP loans. *See* Compl. ¶¶ 39, 42; Compl. Int. ¶¶ 29, 32. Retrieving a borrower's loan files from Womply was of "particular importance, as the SBA will only provide payment to Benworth [FL] on a given PPP loan that is not eligible for forgiveness once the corresponding guaranty application is approved." *See* Compl. ¶ 43; Compl. Int. ¶ 38. If the SBA rejected the application to guaranty a PPP loan—say, because Womply failed to provide Benworth FL with a borrower's complete loan file or if Womply provided Benworth FL a fraudulent loan file—then Benworth FL would not receive any

---

[1]     This Court granted the Federal Reserve's request to consolidate Case Numbers 24-cv-01313 and 23-cv-01034. [Case No. 23-cv-01034, D.E. 155].

payment on the loan from the SBA for the advances the Federal Reserve provided. *See* Compl. ¶¶ 42–43; Compl. Int. ¶¶ 37–38. Throughout the PPP, the Federal Reserve provided Benworth FL approximately $4.3 billion in advances under the Agreements. *See* Compl. ¶ 36; Compl. Int. ¶ 26. Benworth FL used these advances to fund over 300,000 PPP Loans. *Id.*

In August 2021, Womply commenced arbitration proceedings against Benworth FL, seeking payment of unpaid fees that Benworth FL purportedly owed it under their services agreements. *See* Compl. ¶ 40; Compl. Int. ¶ 35. At the arbitration, Benworth FL raised, among other things, that Womply was withholding loan files it needed to provide to the SBA to guaranty certain PPP loans so that it could pay back the Federal Reserve. *See* Compl. ¶¶ 42, 44; Compl. Int. ¶¶ 37, 40. This is typical of Womply, as it has been publicly criticized in the past for failing to provide information to lenders and the federal government and has faced fraud allegations.[2] *See* Compl. Int. ¶ 31. Indeed, "[a]s detailed in a December 2022 report by the Select Subcommittee on the Coronavirus Crisis, starting in May 2021, Womply refused to provide requested information to a lender, Fountainhead, and the SBA Office of Inspector General (the "SBA OIG") to aid an investigation into potential fraud related to a group of Womply-referred loans." *Id.* The report also noted that Womply (1) "also resisted providing data to Benworth [FL] to assist an SBA OIG investigation" and (2) "declined to provide the information to Benworth [FL] and directed the SBA OIG to fill out a web form on the 'Contact Us' section of Womply's website." *Id.* ¶ 32.

During the arbitration, but before an arbitration award was entered, Womply brought the instant action (Case No. 23-cv-01034) seeking to unwind transfers of approximately $171 million between Benworth FL and Benworth Capital Partners PR, LLC ("Benworth PR") that it

suggests were fraudulent. *See* Compl. ¶ 45; Compl. Int. ¶ 41. On October 12, 2023, this Court stayed this case pending a final award in the arbitration. *See* Compl. Int. ¶ 44; [Case No. 23-cv-01034, D.E. 96]. On June 11, 2024, the arbitrator entered a final award requiring "Benworth FL to pay Womply nearly $118 million in unpaid fees, interest, and costs" and Womply "to promptly transmit these loan files to Benworth FL or reinstate Benworth FL's access to those files via Womply's technology platform, to the extent it has not yet done so." *See* Compl. ¶¶ 41, 44; Compl. Int. ¶ 40. This Court lifted the stay two weeks later. *See* Compl. Int. ¶ 50; [DE 119].[3]

On July 10, 2024, the Federal Reserve filed its own action against Benworth FL, Benworth PR, Bernardo Navarro ("Mr. Navarro"), and Claudia Navarro ("Mrs. Navarro, and together with Mr. Navarro, the "Navarros") (Case No. 24-cv-01313). *See generally* Compl. It then moved to intervene in Womply's action, which this Court granted, and filed the Complaint in Intervention on August 2, 2024, against Benworth FL, Benworth PR, the Navarros, and Womply. *See generally* Compl. Int.

In the Complaints, the Federal Reserve alleges that Benworth FL breached the Agreements because: **(1)** the Federal Reserve "'deem[s] itself insecure with respect to the financial condition of' Benworth FL and Benworth FL's ability to perform its obligations," *see* Compl. ¶ 32; Compl. Int. ¶ 22, **(2)** "Benworth FL's Insolvency (as defined under the Operating Circular)," *id.*, **(3)** Benworth FL purportedly "breached multiple representations, warranties, or covenants it made under the . . . Agreements," *see* Compl. ¶ 33; Compl. Int. ¶ 23, and **(4)** "Benworth FL has failed to comply with the terms of the PPP for at least some portion of the

---

[2]    On April 3, 2024, "Womply agreed to pay $26 million to the Federal Trade Commission to settle charges related to deceptive acts or practices in connection with Womply's advertising of PPP services to small business consumers." Compl. Int. ¶ 33 n.6.

[3]    Womply has petitioned to confirm the award in the Northern District of California while Benworth FL has petitioned to vacate it. *See* Compl. ¶ 41 n.7; Compl. Int. ¶ 40 n.7. Those petitions are still pending, and thus, the challenged arbitration award is not enforceable until a federal court confirms it.

outstanding Pledged PPP loans," *see* Compl. ¶ 34; Compl. Int. ¶ 24. Despite alleging that Benworth FL's breaches are "not limited to" these four, *see* Compl. ¶¶ 32–33; Compl. Int. ¶¶ 22–23, the Federal Reserve identifies no other breaches in the Complaints. As of the filing of the Complaints, the aggregate principal amount outstanding was approximately $67 million, less than 2% of the total advances. *Id.*

As to the first two breaches, the Federal Reserve maintains that it has deemed itself financially insecure and Benworth FL insolvent "based on Benworth FL's inability to pay the [arbitration award] and financial statements, reports, and other information disclosed by Benworth FL to the Reserve Bank." *See* Compl. ¶ 32; Compl. Int. ¶ 22. The Federal Reserve does not specify which financial statements, reports, or "other information" form the basis for Benworth FL's alleged breach, nor does it attach any of these documents or "other information" to the Complaints. *See generally id.*

As to the third breach, the Federal Reserve alleges Benworth FL "[mis]represent[ed] that no event of default had occurred or was continuing" and failed to "promptly notify the [Federal Reserve] when events of default occurred." *See* Compl. ¶ 33; Compl. Int. ¶ 23. The Federal Reserve does not identify when Benworth FL purportedly made these misrepresentations, who made them, or what events of default had occurred or were continuing when the misrepresentations were made. *See generally id.* Nor does the Federal Reserve address which events of default Benworth FL failed to provide it prompt notice of. *See generally id.*

As to the fourth breach, the Federal Reserve alleges that "the SBA has denied over $60 million of Benworth FL's requests for guaranty purchase of Pledged PPP Loans" because Benworth FL "did not have appropriate documentation to support its request for guaranty purchases for all of the relevant PPP loans, either due to Womply's withholding of the

appropriate documentation . . . or due to other problems internal to Benworth FL." *See* Compl. ¶ 34; Compl. Int. ¶ 24.

In the Complaint, the Federal Reserve brings a claim for "breach of contract and collection of money" based on these allegations (Count I). *See* Compl. ¶¶ 64–67. Moreover, the Reserve Bank brings fraudulent transfer, alter ego, and veil piercing claims (Counts II through VII) that hinge on the Federal Reserve's ability to accelerate Benworth FL's debt because it has allegedly breached the Agreements. *See id.* ¶¶ 68–105. Finally, the Federal Reserve claims that Benworth FL converted the "PPP Collateral" when it transferred funds to Benworth PR and the Navarros. *See id.* ¶¶ 106–110.[4] The Federal Reserve does not identify which claim is against which defendant in any of its causes of action. *See id.* ¶¶ 64–110.

In the Complaint in Intervention, the Federal Reserve brings a single claim for declaratory relief, seeking declarations that (1) "the Reserve Bank has a properly perfected first-priority lien and security interest in the Defendants' assets to the extent such assets constitute, in whole or in part, PPP Collateral"; (2) "Womply may only collect from the Defendants' assets to the extent such assets are not PPP Collateral"; and "(3) as to any non-PPP Collateral assets, the Reserve Bank may recover at least pro rata with Womply." and. *See* Compl. Int. ¶¶ 55–62 & Prayer for Relief. Because the Federal Reserve is hoping to "recover at least pro rata with Womply," the declarations it requests depend, in part, on the Federal Reserve's ability to accelerate Benworth FL's debt as a result of its alleged defaults under the Agreements. *See id.*

---

[4] While the Federal Reserve's allegation that Benworth FL inappropriately transferred collateral must be taken as true for the purposes of this motion, Benworth FL disputes the claim. The collateral, defined as loans Benworth FL provided to borrowers, *see* Compl. Ex. B § 2.1, has not been transferred to Benworth PR or the Navarros. Benworth FL still retains ownership of the collateral (the loans) and simply services the loans through Benworth PR. *See id.* ¶¶ 56, 62. All proceeds from these loans are still being remitted to the Federal Reserve in accordance with the Agreements.

## LEGAL STANDARD

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The facts alleged in the Complaints "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2005); *Lozada v. Dejoy*, No. 20-1674, 2023 WL 2433860, at *8 (D.P.R. Mar. 9, 2023) (quotation omitted). A court should grant a motion to dismiss when the complaint provides "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or the complaint "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Betancourt-Colon v. Kimco PR Mgmt. Corp.*, No. CV 22-1055 (DRD), 2023 WL 6393065, at *3 (D.P.R. Sept. 30, 2023) (citation omitted). "When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013).

## ARGUMENT

### I.    The Court Should Dismiss the Federal Reserve's Breach of Contract Claim for Failure to State a Claim.

The Court should dismiss the Federal Reserve's breach of contract claim, *see* Compl. ¶¶ 64–67, because it fails to state a claim upon which relief can be granted. Under California law,[5]

---

[5]    The Agreements are "governed by the law of the State in which the Bank's head office is located"—here, California. *See* Compl. Ex. B § 18.0.

"the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Here, each of the four breaches that the Federal Reserve alleges is conclusory and lacks the necessary specificity to meet the pleading standard. *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 288–89 (D. Mass. 2009) (noting that it is insufficient "to allege, in a conclusory fashion, that the facts demonstrate a breach of contract" and a pleading "must explain what obligations the alleged contract imposed on each of the parties to avoid dismissal under Rule 12(b)(6)"). Although it generally references four purported breaches in its "Relevant Facts," *see id.* ¶¶ 32–34, the Federal Reserve fails to sufficiently identify specific conduct by Benworth FL that constitutes a breach and uses vague and indefinite language, such as "including but not limited to," that is inherently ambiguous and leaves the door open to unpled breaches. Benworth FL addresses each of the Federal Reserve's alleged breaches in turn.

### A. Breaches #1 and #2: The Federal Reserve "deem[s] itself insecure with respect to the financial condition of Benworth FL and Benworth FL's ability to perform its obligations," and Benworth FL's insolvency.

The Federal Reserve alleges that "various events of default ha[ve] occurred under the . . . Agreements." *See* Compl. ¶ 31. "Events of Default" under the Operating Circular has a specific meaning:

(i)     the Borrower fails to repay or satisfy any Obligation when due;

(ii)    the Borrower fails to perform or observe any of its obligations or agreements under the Lending Agreement or under any other instrument or agreement delivered or executed in connection with the Lending Agreement or under any other agreement with the Bank or another Reserve Bank;

(iii)   any representation or warranty made or deemed to be made by the Borrower under or in connection with the Lending Agreement, or that is

contained in any certificate, document or financial or other statement delivered by it or in connection with the Lending Agreement, is inaccurate in any material respect on or as of the date made or deemed made;

(iv)    *the Insolvency of the Borrower;*

(v)    the Lending Agreement or any other agreement delivered or executed in connection with the Lending Agreement ceases, for any reason, to be in full force and effect, or any person so asserts or any security interest or lien created hereby ceases to be enforceable or have the same effect and priority purported to be created hereby;

(vi)    the creation of an encumbrance upon Collateral, or placement of a levy, judicial seizure of, or an attachment upon Collateral;

(vii)   *whenever the Bank deems itself insecure with respect to the financial condition of the Borrower or the Borrower's ability to perform its Obligations.*

*Id.* at Ex. B § 2.1 (emphasis added). While the Federal Reserve specifically identifies its alleged financial insecurity (subsection (vii)) and Benworth FL's insolvency (subsection (iv)) as the only events of default in its Complaint, the Federal Reserve nonetheless alleges that this is a non-exhaustive list of defaults. *See id.* ¶ 32 (providing that these "[e]vents of default *include, but were not limited to*," events (iv) and (vii) (emphasis added)). If this is a reference to the purported defaults under subsections (ii) and (iii) identified by the Federal Reserve in its letter dated February 27, 2024, *see id.* at Ex. D pg. 1, the Federal Reserve did not allege how Benworth FL has failed to perform or observe any of its contractual obligations (subsection (ii)) nor which representation or warranty made by Benworth FL was materially inaccurate as of the date made (subsection (iii)). In any event, the Federal Reserve failed to plead such events of default in its Complaint.

As to Benworth FL's alleged insolvency, the Operating Circular defines "Insolvency" as:

(i)    the condition of insolvency;

(ii)     that a proceeding relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to adjudicate an entity bankrupt or insolvent or seeking reorganization, adjustment, dissolution, liquidation or other relief with respect to the Borrower or the Borrower's debt is commenced;

(iii)    that an assignment for the benefit of the Borrower's creditors occurs;

(iv)    that a receiver, custodian, conservator, or the like is appointed for the Borrower or for any of its United States or foreign branches or agencies;

(v)     that the Borrower has been closed by order of its supervisory authorities, or a public officer has been appointed to take over such entity;

(vi)    that the Borrower ceases or refuses to make payments in the ordinary course of business, or admits in a record its inability to pay its debt as they become due;

(vii)   the Borrower's business is suspended, or any party has presented or filed a petition for winding-up or liquidating the Borrower; or

(viii)  any other circumstances that evince the Borrower's inability to pay its debts when due.

*Id.* at Ex. B § 2.1. The Federal Reserve does not specify which, if any, of the eight possible meanings of "Insolvency" applies to Benworth FL.

Instead, the only reasoning the Federal Reserve has alleged for deeming itself financially insecure or Benworth FL insolvent is that (1) Benworth FL does not have sufficient funds to pay the arbitration award, and (2) "financial statements, reports, and other information disclosed by Benworth FL to the Reserve Bank." *Id.* ¶¶ 30, 32. Because of these events of default, the Federal Reserve posits that it can accelerate the entire amount outstanding, over $66 million. *Id.* ¶ 32 ("As a consequence of these events of default, the entire amount outstanding on Benworth FL's Advances from the PPPLF has become due and owing.").

The Federal Reserve's allegations are hardly enough to satisfy the federal pleading standard. The Complaint fails in many respects to provide any specific facts or details explaining

precisely which of the definitions of "Insolvency" Benworth FL falls into or how the Federal Reserve's financial position has been compromised. *Levy v. State Farm Mut. Auto. Ins. Co*., 150 Cal. App. 4th 1, 5 (2007) ("Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity."); *see also Block Sci. Inc. v. True Diagnostics, Inc.*, No. 21-cv-1118 JLS (JLB), 2022 WL 485010 (S.D. Cal. Feb. 16, 2022) (dismissing a portion of a breach of contract claim because plaintiff did not precisely allege how the defendants "failed to use commercially reasonable efforts" in making a delivery). Notably, the Operating Circular provides eight distinct definitions for "Insolvency," yet the Federal Reserve does not identify which of these apply to Benworth FL. Instead, it generally asserts insolvency and financial insecurity as an event of default without any factual or legal foundation as to how Benworth FL meets any of the criteria under the Agreements. The Federal Reserve does not even allege that Benworth FL, for instance, has missed any payments or failed to timely pay down its debt to the Federal Reserve in the ordinary course of business (as opposed to on an accelerated basis). *See id.* at Ex. B § 2.1 (defining Insolvency in subsection (vi) as "the Borrower ceases or refuses to make payments in the ordinary course of business, or admits in a record its inability to pay its debt as they become due"). Without more detailed allegations, the Federal Reserve has not sufficiently alleged that Benworth FL is, in fact, insolvent pursuant to the Operating Circular or that the Federal Reserve's financial insecurity is objectively reasonable.

In its attempt to justify that events of default have occurred, the Federal Reserve relies on Womply's unconfirmed arbitration award. *Id.* ¶ 30. To be precise, the Federal Reserve contends that it is financially insecure and Benworth FL is insolvent because, in December 2023, Benworth FL "acknowledged to the [Federal Reserve] . . . that it did not have access to sufficient funds" to pay a potential arbitration award in the hundreds of millions of dollars. *Id.* But

Benworth FL's inability to pay an unconfirmed arbitration award does not necessarily mean that it cannot satisfy its obligation to the Federal Reserve under the Agreements—payment of the advanced amounts as PPP loan borrowers pay down their debt in the ordinary course of business, as opposed to when the Federal Reserve accelerates the entire debt—particularly given the Federal Reserve's position as a first-priority creditor. *See id.* ¶ 61. Indeed, the Federal Reserve has not affirmatively alleged that Benworth FL cannot or has not paid down the debt in the ordinary course of business. *See generally id.* In addition, a challenged arbitration award does not constitute a finalized debt that would render Benworth FL insolvent because it lacks the finality required to be considered a current liability for purposes of insolvency. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) ("Because arbitration awards are not self-enforcing, they must be given force and effect by being converted to judicial orders by courts . . . ."). The Federal Reserve's *sole* basis for deeming itself financially insecure and Benworth FL insolvent is the unconfirmed arbitration award, but without further facts showing how this award—which is still in contention—affects Benworth FL's ability to meet its obligations to the Federal Reserve, the claim remains speculative and insufficient under the pleading standard.

The Federal Reserve also vaguely references that it reviewed "financial statements, reports, and other information" that Benworth FL provided to it, but fails to specify which documents in particular were reviewed or how those documents establish the Federal Reserve's financial insecurity or Benworth FL's insolvency. *See id.* ¶ 32. Without identifying the specific documents or "other information" relied upon, the Federal Reserve has insufficiently pled the basis for the claimed events of default.

Finally, the Federal Reserve avers that the events of default "includ[e], but [are] not limited to," the two that are alleged. *Id.* ¶ 32. Such an open-ended allegation fails to notify

Benworth FL of its breaches and leaves it without sufficient information to respond to the Complaint or raise proper affirmative defenses and would expand discovery to subjects beyond what the Federal Reserve has specifically alleged. In other words, allowing the Federal Reserve's breach claim to go forward as is, would require Benworth FL to guess which other "events of default" apply and then raise and prove affirmative defenses that may ultimately not apply at trial.

### B.  Breach #3: Benworth FL "breached multiple representations, warranties or covenants it made under the . . . Agreements."

The Federal Reserve alleges the advances it made to Benworth FL have become recourse obligations because it has "determined that Benworth FL had breached multiple representations, warranties, or covenants it made under the . . . Agreements." *See* Compl*.* ¶ 33. While the Agreements reference twenty-four different representations, warranties, and covenants Benworth FL made to the Federal Reserve, *see id.* at Ex. B §§ 9.1(a)–(h), 10.0 (a)–(o), the Federal Reserve alleges that Benworth FL's breaches "included, but were not limited to," just two of them: (1) "a breach of the representation that no event of default had occurred or was continuing," *id.* ¶ 33; *see also id.* at Ex. B § 9.1(i), and (2) "a breach of the covenant to promptly notify the [Federal Reserve] when events of default occurred," *id.* ¶ 33; *see also id.* at Ex. B § 10.0(n). These allegations are insufficient for three reasons.

*First*, the Federal Reserve does not identify which events of default had occurred or were continuing at the time Benworth FL made these representations. If this is a reference to the events of default above, *see supra* § I.A., then the Federal Reserve has not alleged that Benworth FL was "Insolvent," as defined by the Operating Circular, or that it was financially insecure at the time Benworth FL made the representation. *See generally id.* ¶ 33. Nor can it. Benworth FL made this representation when it executed the Agreements on January 30, 2023, *see id.* at Ex. A,

at 8, but the Federal Reserve alleges that Benworth FL informed it "of certain developments impacting its financial position" on December 27, 2023, almost a year after the representation, *see id.* ¶ 30. Likewise, the arbitrator did not enter an interim award until December 21, 2023, and a final award until June 11, 2024. *See id.* ¶ 41. If it is referring to some other event of default, the Federal Reserve has not alleged it.

*Second*, the Federal Reserve also does not allege which event of default Benworth FL failed to promptly notify it about. If the Federal Reserve is referring to the same ones above, then its allegations are inconsistent, as it alleges that Benworth FL *did* promptly notify it of the arbitration award and its finances just six days after the interim award. *Id.* ¶ 30. If it is referring to some other event of default, the Federal Reserve has, again, not alleged it.

*And third*, the Federal Reserve uses the same "including but not limited to" language to identify Benworth FL's breaches of the representations, warranties, and covenant provisions. *Id.* ¶ 33. By identifying just two out of the twenty-four representations, warranties, and covenants but including this expansive language, the Federal Reserve prevents Benworth FL from identifying applicable defenses and enlarges the scope of discovery beyond what has been pled.

### C. Breach #4: Benworth FL "has failed to comply with the terms of the PPP for at least some portion of the outstanding Pledged PPP loans."

The Federal Reserve claims that all outstanding advances have become recourse obligations because it "has become aware that Benworth FL has failed to comply with the terms of the PPP for at least some portion of the outstanding Pledged PPP Loans." *Id.* ¶ 34. The Federal Reserve alleges that the "SBA has already denied over $60 million of Benworth FL's requests for guaranty purchase of Pledged PPP loans" because of either "Womply's withholding of the appropriate documentation" or "other problems internal to Benworth FL."

These allegations suffer from some of the same deficiencies as the other alleged breaches.

The Federal Reserve does not allege (1) which specific terms of the PPP Benworth FL has failed to comply with, (2) what actions by Benworth FL amount to a violation of the PPP, (3) which portion of Benworth FL's PPP portfolio was denied because of Benworth FL's violation of the PPP as opposed to Womply's actions, and (4) which "problems internal to Benworth FL" have caused violations of the PPP.

For these reasons, the Court should dismiss the Federal Reserve's breach of contract claim or, at a minimum, require that it cure the above defects in its Complaint.

II.    **If the Court Dismisses the Breach of Contract Claim, then the Federal Reserve's Fraudulent Transfer Claims and Declaratory Judgment Are Not Ripe and Fail to State a Claim.**

Based on the Court's prior ruling on Benworth FL's motion to dismiss Womply's fraudulent transfer claims, [*see* D.E. 96], the ripeness and ability of the Federal Reserve to state fraudulent transfer and declaratory judgment claims in the Complaints hinges on it sufficiently alleging that Benworth FL has an accelerated debt that is due because it breached the Agreements. *See* Compl. ¶¶ 71 (alleging that defendants made fraudulent transfers to defraud the Federal Reserve of a debt that is due in Count II), 75–77 (alleging "constructive fraudulent transfer" because Benworth FL transferred money so that the Federal Reserve would be "unable to collect . . . the amounts currently due and owing under the Program Agreements" in Count III); 82 (alleging in its rescissory claim that "the [Federal Reserve] has no other recourse for payment of the amounts due and owing under the Program Agreements" in Count IV); 91–92 (seeking a declaration in Count V that Benworth PR is an alter ego of Benworth FL because "Benworth FL owes the [Federal Reserve] a debt of at least $66,980,967.08" and that "[a]n actual controversy exists regarding whether Benworth PR is liable for Benworth FL's debt to the [Federal Reserve]"), 103–104 (same but seeking a declaration in Count VI that the Federal

Reserve can pierce the corporate veil and collect from the Navarros); *see also* Compl. Int. ¶¶ 52–62 (seeking a declaration that it has a first-priority security interest over Womply in the assets it seeks to unwind and attach to the extent such assets constitute PPP Collateral, and alleging that an actual controversy exists with the defendants because Benworth FL has a debt that is due and the defendants have assets that "must be made available to satisfy any obligations under the Program Agreements, including any unpaid Advances, on a first-priority basis"). All such claims inextricably depend on a well-pled breach of contract claim allowing the acceleration of Benworth FL's debt, which the Federal Reserve has failed to do. The Court should thus dismiss these claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Under Puerto Rico law a transaction executed "in fraud of creditors"—i.e., a fraudulent transfer—may be rescinded, when a creditor cannot otherwise recover a debt that is due. P.R. Laws Ann. tit. 31, §§ 6231 & 6233. One of the elements of such a claim is that the defendant be a true debtor of the plaintiff. *See Sucesión Almazán v. López*, 20 P.R. Dec. 537, *2 (1914). Ripeness, for its part, is a component of justiciability under Article III that turns on whether issues are ready for judicial decision and the hardship of delaying court review. *Reddy v. Foster*, 845 F.3d 493, 500-01 (1st Cir. 2017). The key factor is whether the claim depends on uncertain or contingent events that may never happen. *See Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990).

Previously in this case, the Court considered whether Womply's fraudulent transfer claims were ripe in the absence of a final award establishing that Benworth FL was indebted to Womply. [D.E. 96]. The Court found that Womply's claims were ripe because "Womply plausibly alleged that Benworth FL owed Womply approximately $200 million for fees and services rendered and that Benworth FL transferred funds to Benworth PR a corporation wholly

owned by the same owners of Benworth FL." [*Id.* at 9]. As demonstrated above, however, the Federal Reserve has failed to establish that Benworth FL breached the Agreements and thus that Benworth FL owes it an accelerated debt of over $66 million. The Court should thus find that these claims are not ripe. *See, e.g.*, *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (RICO claim premised on alleged pattern of racketeering activity "to divert assets of [defendant] so that those assets might not be reached by the [plaintiff]," found as unripe for judicial resolution where "the only injury alleged by [the plaintiff] is its hypothetical inability to recover from [defendant], if [plaintiff] obtains judgment, in some amount, in the pending state court breach of contract action"). Similarly, if the Court finds that the Federal Reserve has failed to allege a breach of contract claim, then there is no actual controversy existing between the Federal Reserve and Benworth FL because Benworth FL's debt to the Federal Reserve will not be due on an accelerated basis. *See id.* These claims, too, warrant dismissal.

### III.    The Federal Reserve Fails to State a Claim for Conversion.

In Count VII, the Federal Reserve alleges that a portion of what Benworth FL transferred to Benworth PR included the "PPP Collateral," as defined by the Agreements, "over which the [Federal Reserve] holds a first-priority lien and, therefore, is the rightful property of the [Federal Reserve]." *See* Compl. ¶¶ 106–110. The Court should dismiss this claim because the Federal Reserve fails to allege an essential element of a conversion claim under Puerto Rico law and attempts to improperly disguise its breach of contract claim as a conversion claim.

*Montalvo v. LT's Benjamin Records*, 56 F. Supp. 3d 121 (D.P.R. 2014) is instructive on this issue. There, the plaintiff sought royalties pursuant to an agreement with the defendant. *See id.* at 127. When the defendant refused to pay plaintiff these royalties, the plaintiff sued for breach of contract and conversion, among other claims. *See id.* at 127–28. On defendant's

motion, the Court dismissed the conversion claim for two reasons, both of which are applicable here: first, the plaintiff failed to allege that the defendant's acquisition of plaintiff's property was "malicious and wrongful," a necessary element for a conversion claim under Puerto Rico law, and second, that "Plaintiffs' allegations [were] sound in contract, rather than tort." *Id.* at 139.

The same is true here. The Federal Reserve has not alleged that Benworth FL (or any of the other defendants) maliciously and wrongfully acquired its property or transferred any of the PPP Collateral (the borrowers' loans), which it has not, *see supra* n.4. *See generally* Compl. ¶¶ 106–110; *see also Fed. Ins. Co. v. Banco de Ponce*, 582 F. Supp. 1388, 1393 (D.P.R. 1984) (noting that the Puerto Rico Supreme Court has held that "the intentional tort of conversion is not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and enjoyment." (citations and internal quotation marks omitted)). In addition, the Federal Reserve, as a remedy, seeks the "PPP Collateral" under the Agreements, rendering its cause of actions "sound in contract, rather than tort." *Montalvo*, 56 F. Supp. 3d at 139.

## IV.    The Court Should Dismiss the Complaints Because It Is a Shotgun Pleading that Improperly Groups Defendants.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 10(b),

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

"A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure Rule 8(a)(2) or Rule 10(b), or both." *Sanchez-Sifonte v. Fonseca*, CV 22-1444 (RAM), 2023 WL

5753677, at *2 (D.P.R. Sept. 6, 2023) (quoting *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021)). Guided by the Eleventh Circuit, this Court has noted that there are four types of shotgun pleadings: (1) "*a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint[;]*" (2) "a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action[;]" (3) "a complaint that does not separate each cause of action or claim for relief into a different count[;]" and (4) "*a complaint that assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against*." *Id.* (quoting *Barmapov*, 986 F.3d at 1324 (internal quotation marks omitted)).

The Complaint falls victim to the first and fourth definitions of a shotgun pleading. As to the first, the Federal Reserve incorporates by reference in each claim the allegations in every claim that came before it. *See* Compl. ¶¶ 64, 68, 72, 78, 88, 100, 106; Compl. Int. ¶ 55. As to the fourth, the Federal Reserve improperly uses "group pleading" to allege claims against all the defendants without identifying which claims concern each of them separately. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (holding that the trial court "must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." (emphasis in original)); *Betancourt-Colon v. Kimco PR Management Corp.,* No. 22-1055 (DRD), 2023 WL 6393065, at *5 (D.P.R. Sept. 30, 2023) ("[A] complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." (citations and quotations omitted)); *see also Hardwick v. 3M Co.*, 87 F.4th 315, 320 (6th Cir. 2023) ("[A] plaintiff cannot sue ten defendants—by lumping them all together in his

allegations—when the more particular facts would allow him to proceed against only one. (Much less none.) For even a plaintiff who meets the 'actual-injury requirement' . . . does not thereby obtain a license to sue anyone over anything." (citations omitted)). As a result, the Court should dismiss the Complaint.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on this 1st day of October, 2024.

**Ferraiuoli**

PO Box 195168
San Juan, PR 00919-5168
Tel.: 787.766.7000
Fax: 787.766.7001

*s/ Roberto A. Cámara-Fuertes*
Roberto A. Cámara-Fuertes
USDC-PR 219002
rcamara@ferraiuoli.com

*s/ Jaime A. Torrens-Dávila*
Jaime A. Torrens-Dávila
USDC-PR 223810
jtorrens@ferraiuoli.com

*s/ Mónica Ramos Benítez*
Mónica Ramos-Benítez
USDC-PR 308405
mramos@ferraiuoli.com

*Counsel for Benworth Capital Partners, LLC*