IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **OTO ANALYTICS, LLC,**<br>Plaintiff,<br><br>v.<br><br>**BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br>Defendants. | Civil No. 23-01034 (GMM) *cons*.<br>Civil No. 24-01313 (GMM) |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br>Plaintiff-Intervenor,<br><br>v.<br><br>**OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br>Defendants in Intervention. | |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br>Consolidated Plaintiff,<br><br>v.<br><br>**BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br>Consolidated Defendants. | |

**FEDERAL RESERVE BANK OF SAN FRANCISCO'S OPPOSITION TO DEFENDANT BENWORTH CAPITAL PARTNERS, LLC'S MOTION TO DISMISS THE FEDERAL RESERVE'S COMPLAINT AND COMPLAINT IN INTERVENTION**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL BACKGROUND .............................................................................. 2

    I.  The PPPLF and Benworth's Participation ............................................. 2

    II. Benworth and Womply ........................................................................ 3

    III.The Reserve Bank's Filing of the Actions ............................................ 4

LEGAL STANDARD......................................................................................... 5

ARGUMENT...................................................................................................... 6

    I.  The Complaint Adequately Alleges a Claim for Breach of Contract ..................... 6

        A.      Defendants Cannot Dispute the Reserve Bank's Assertion of Financial Insecurity................................................... 6

        B.      The Complaint Adequately Alleges Breach of the Program Agreements Based on Benworth FL's Insolvency..................................... 7

            a.      The Complaint Adequately Pleads Benworth FL is Insolvent................................................. 8

            b.      Defendants Have Fair Notice of the Basis of the Reserve Bank's Determination of Insolvency .............................. 9

        C.      The Complaint Provides a Clear Basis for Recourse Under the Program Agreements............................................ 11

            a.      Misrepresentations as to Events of Default ................................. 12

            b.      Misrepresentation as to PPP Compliance ....................................... 13

    II. The Reserve Bank's Fraudulent Transfer, Alter Ego, and Veil Piercing Claims Are Ripe. ........................................................ 14

    III.The Complaint Adequately Alleges a Claim for Conversion................................ 16

    IV.The Complaint is Not a Shotgun Pleading.............................................. 18

        A.      The Complaint's Use of Incorporation is Not Improper........................... 18

**Page**

B.      Defendants' "Group Pleading" Arguments Fail. ........................................    19

CONCLUSION..................................................................................................    20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Beddall v. State St. Bank & Tr. Co.*,
  137 F.3d 12 (1st Cir. 1998) .................................................................................... 5

*Block Sci. Inc. v. True Diagnostics, Inc.*,
  2022 WL 485010 (S.D. Cal. Feb. 16, 2022). ......................................................... 11

*BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*,
  669 F. Supp. 3d 204 (S.D.N.Y. 2023).................................................................... 6

*Capitol Radiology v. Sandy Spring Bank*,
  2010 WL 610785 (D. Md. Feb. 17, 2010), *aff'd*, 439 F. App'x 222
  (4th Cir. 2011)....................................................................................................... 7

*Carrero–Ojeda v. Autoridad de Energía Eléctrica*,
  755 F.3d 711 (1st Cir. 2014) ................................................................................. 5

*Castellon v. Padin*,
  60 D.P.R. 378 (1942) ........................................................................................... 16

*Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*,
  29 Cal. 4th 189 (2002), *as modified* (Nov. 14, 2002) ............................................ 8

*Constructor Maza, Inc. v. Banco de Ponce*,
  616 F.2d 573 (1st Cir. 1980).................................................................................. 8

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) ............................................................... 8, 9

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
  720 F.3d 33 (1st Cir. 2013)................................................................................... 13

*F.T.C. v. LeanSpa, LLC*,
  920 F. Supp. 2d 270 (D. Conn. 2013)................................................................... 17

*Fleet Nat. Bank v. Liuzzo*,
  766 F. Supp. 61 (D.R.I. 1991)............................................................................... 6

**Page(s)**

*Flores v. OneWest Bank, F.S.B.*,
    886 F.3d 160 (1st Cir. 2018) .................................................................... 5

*García-Catalán v. United States*,
    734 F.3d 100 (1st Cir. 2013) .................................................................... 5

*In re Gruber Bottling Works, Inc.*,
    16 B.R. 348 (Bankr. E.D. Pa. 1982) ........................................................ 8

*In re Vazquez Vazquez*,
    549 B.R. 304 (Bankr. D.P.R. 2016) .......................................................... 8

*IRR Gas Station Corp. v. PUMA Energy Caribe, LLC*,
    2020 WL 4209297 (D.P.R. July 22, 2020) ............................................. 14

*Kyle K. v. Chapman*,
    208 F.3d 940 (11th Cir. 2000) ............................................................... 20

*Levy v. State Farm Mut. Auto. Ins. Co.*,
    58 Cal. Rptr. 3d 54 (Cal. Ct. App. 2007) ............................................... 11

*Medina-Velázquez v. Hernández-Gregorat*,
    767 F.3d 103 (1st Cir. 2014) .................................................................... 5

*Montalvo v. LT's Benjamin Records*,
    56 F. Supp. 3d 121 (D.P.R. 2014) ..................................................... 17, 18

*Nieto-Vincenty v. Valledor*,
    22 F. Supp. 3d 153 (D.P.R. 2014) ......................................................... 17

*Ocasio-Hernández v. Fortuño-Burset*,
    640 F.3d 1 (1st Cir. 2011) .................................................................. 9, 10

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013) ............................................................................... 10

*Rivera v. Kress Stores of P.R., Inc.*,
    30 F.4th 98 (1st Cir. 2022) ...................................................................... 5

*Roosevelt Cayman Asset Co., II v. Cruz-Rivera*,
    2018 WL 3357430 (D.P.R. July 6, 2018) ................................................ 6

*Sanchez-Sifonte v. Fonseca*,
    2023 WL 5753677 (D.P.R. Sept. 6, 2023) ................................... 18, 19, 20

**Page(s)**

*Serracante-Gierbolini v. Esso Standard Oil Co. P.R.*,
    2022 WL 716823 (D.P.R. Mar. 10, 2022) ................................................................ 9

*Sucesión Almazán v. López*,
    20 D.P.R. 537 (2019) .............................................................................................. 16

*United States v. GZ Constr. St, Inc.*,
    155 F. Supp. 3d 147 (D.P.R. 2015).................................................................... 17, 18

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) .................................................................................... 5, 8

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ............................................................................. 19

**Regulations**

13 C.F.R. §§ 120.520(c), 120.524..................................................................................... 13

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff-Intervenor and Consolidated Plaintiff Federal Reserve Bank of San Francisco (the "Reserve Bank"), through the undersigned counsel, and respectfully submits this opposition to the motion to dismiss filed by Benworth Capital Partners, LLC ("Benworth FL"), ECF No. 169, and states and requests as follows:

## PRELIMINARY STATEMENT

The facts of this case are straightforward. As alleged in the Complaint, the Reserve Bank lent Benworth FL more than $4.3 billion dollars in connection with the Paycheck Protection Program (the "PPP"), part of the national response to the COVID-19 pandemic. The Complaint alleges that Benworth FL breached its Program Agreements with the Reserve Bank in multiple ways, including by being insolvent, by failing to comply with regulations concerning PPP loans, and as a result of the Reserve Banks's duly noticed determination that it was insecure about Benworth FL's ability to perform. The Complaint also identifies three representations, warranties or covenants that Benworth FL breached. These claims are rooted in documents and information provided to the Reserve Bank by Benworth FL and the plain text of the Program Agreements, all of which are clearly laid out in the 32-page Complaint. The Reserve Bank has also alleged, similar to Plaintiff Womply, that Benworth FL has taken actions to fraudulently transfer and convert millions of dollars to its Puerto Rican affiliate and the individuals who run the Florida and Puerto Rican enterprises. These claims are all subject to ongoing discovery, and the Reserve Bank is confident that the factual record will substantiate each of its allegations.

Defendants, however, seek an end-run around this orderly process of litigation. By their Motion, Defendants attempt to heighten the pleading standard (and, in at least one instance, create a standard that does not exist) in order to claim that the Reserve Bank has not adequately explained its claims or, in some cases, its grounds for asserting them. But nothing is further from the

truth.  The Complaint alleges breaches tied to specific provisions of the Program Agreements and predicated on specific facts.  At best, the Motion reveals Defendants' ambitions to capitalize on factual disputes once discovery is complete.  The Reserve Bank is confident it will prevail based on the ultimate factual record, but Defendants cannot leapfrog the discovery process and claim now, at the outset of litigation, that the Reserve Bank must establish every fact that supports its claims.  Because the Complaint amply satisfies the well-known pleading standard imposed by the Federal Rules of Civil Procedure, the Motion should be denied.

## FACTUAL BACKGROUND

### I.  The PPPLF and Benworth's Participation

In March 2020, in response to the COVID-19 pandemic, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act, which established the PPP.  Compl. ¶¶ 16-17.[1]  The PPP provided funds to small businesses and was implemented by the United States Small Business Administration (the "SBA") with support from the Department of the Treasury.  *Id*. ¶ 17.  In April 2020, to support the effectiveness of the PPP, the Board of Governors of the Federal Reserve System authorized the establishment of the Paycheck Protection Program Liquidity Facility (the "PPPLF"), which extended credit to eligible financial institutions that originated PPP loans.  *Id*. ¶ 18.

Benworth FL obtained PPPLF financing pursuant to the *Paycheck Protection Program Liquidity Facility Letters of Agreement* dated May 4, 2020, January 14, 2021, and January 30, 2023 (collectively, the "Letters of Agreement").  *Id*. ¶ 19.  The Letters of Agreement incorporate the *Reserve Bank's Operating Circular No. 10* (as amended and supplemented from time to time, the "Operating Circular" and, together with the Letters of Agreement, the "Program Agreements"),

---

[1] "Complaint" refers to the Complaint filed by the Reserve Bank in Civil No. 24-01313 (the "Reserve Bank Action").

which together set forth the relevant terms and conditions that govern Benworth FL's relationship with the Reserve Bank. *Id*. ¶ 20.

In 2020 and 2021, Benworth FL requested and the Reserve Bank provided a series of credit advances ("Advances") totaling approximately $4.3 billion under the Program Agreements. Compl. ¶¶ 2, 21. Those Advances were secured by, among other things, PPP loans pledged as collateral to the Reserve Bank (the "Pledged PPP Loans"), as well as all "[p]roceeds and products" of the Pledged PPP Loans (together with all collateral pledged, the "PPP Collateral"). *Id*. ¶¶ 21, 23. The Advances were set to mature on the maturity dates of the Pledged PPP Loans, subject to the terms of the Program Agreements. *Id*. ¶ 2. The Reserve Bank filed a UCC Financing Statement in the state of Florida on May 11, 2020, to perfect its lien over the PPP Collateral. *Id*. ¶ 22.

## II. Benworth and Womply

As a PPP lender, Benworth FL contracted to use certain technology and related services, including referral of borrowers, related to the Pledged PPP Loans from Oto Analytics, LLC (d/b/a Womply) ("Womply"). Compl. ¶ 39. On or about December 27, 2023, Benworth FL informed the Reserve Bank of certain developments impacting its financial position, including with respect to the litigation proceedings with Womply pending in this Court[2] and JAMS arbitration proceedings with Womply regarding unpaid fees under the parties' agreements. *Id*. ¶ 30. At that time, Benworth FL acknowledged to the Reserve Bank that it did not have access to sufficient funds to pay an $86 million interim arbitral award to Womply or any commensurate or larger final award. *Id*. Benworth FL also provided the Reserve Bank with financial statements for fiscal year 2023, including a balance sheet demonstrating that Benworth FL had negative shareholder equity as of December 29, 2023, and that Mr. Navarro had received significant shareholder dividends.

---

[2] Civil No. 23-01034 (the "Womply Action").

*Id.* ¶ 32.  Benworth FL subsequently also informed the Reserve Bank that the SBA had denied Benworth FL's guaranty purchase applications for thousands of Pledged PPP Loans.  *Id.* ¶ 34.  On February 27, 2024, the Reserve Bank sent a letter to Benworth FL (the "Default Notice") providing notice of the occurrence of certain events of default ("Events of Default") and the breach of certain representations, warranties, or covenants under the Program Agreements that caused the Advances to become immediately due and payable and resulted in Benworth FL's Obligations under the Program Agreements becoming full recourse, meaning  the Reserve Bank could  pursue assets of Benworth FL to satisfy the outstanding debt.  *Id*. ¶ 35.

In June 2024, the arbitrator issued a final award requiring Benworth FL to pay Womply nearly $118 million, *id*. ¶ 41,[3] and this Court lifted the stay on the Womply Action against Benworth FL, Benworth Capital Partners PR LLC ("Benworth PR"), Bernardo Navarro, and Claudia Navarro (together with Bernardo Navarro, the "Navarros"), which alleges claims for fraudulent transfer, alter ego or successor liability, and veil piercing.  ECF Nos. 119, 121.

### III. The Reserve Bank's Filing of the Actions

On July 10, 2024, the Reserve Bank filed the Complaint against Benworth PR, Benworth FL, and the Navarros (together, the "Defendants").  The Complaint alleges that under the Program Agreements, Benworth FL owes the Reserve Bank approximately $66,980,967.08 in principal, plus interest and other fees and costs and, similarly to the Womply Action, that the Navarros caused Benworth FL to fraudulently transfer assets to Benworth PR and to themselves.  *See* Compl. ¶¶ 64-110.  The Reserve Bank also filed a complaint in intervention, ECF No. 146 ("Complaint in Intervention"), after the Court granted its motion to intervene in the Womply Action.  *See* ECF

---

[3] Womply has since filed a petition in the United States District Court for the Northern District of California to confirm the final award, case no. 3:24-cv-03975, and Benworth FL filed its own petition to vacate the final award in the same court, case no. 3:24-cv-4840.  Those proceedings remain pending.

Nos. 127, 145, 146.  On October 1, 2024, Benworth FL moved to dismiss both the Complaint and Complaint in Intervention (the "Motion").[4]  ECF No. 169.  Benworth PR and the Navarros have joined in the Motion to Dismiss.  ECF No. 170.

## **LEGAL STANDARD**

In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court is to determine "whether the operative complaint states a claim for which relief can be granted when . . . constru[ing] the well-pleaded facts in the light most favorable to plaintiffs, accepting their truth and drawing all reasonable inferences in plaintiffs' favor." *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citation omitted).  To achieve plausibility, a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial.  *Carrero–Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717–18 (1st Cir. 2014).  "[T]he plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case," and "some latitude" is appropriate where a "material part of the information needed is likely to be within the defendant's control." *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013).

On a motion to dismiss, the court may properly take into account four types of documents outside the complaint: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).[5]

---

[4] Because the Complaint and Complaint in Intervention are substantially the same, this Opposition addresses only the Complaint.  All arguments set forth in this Opposition shall also apply to Defendants' request to dismiss the Complaint in Intervention.

[5] *See also Rivera v. Kress Stores of P.R., Inc.*, 30 F.4th 98, 102 (1st Cir. 2022); *Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (when the "complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

## ARGUMENT

### I.   The Complaint Adequately Alleges a Claim for Breach of Contract

A.   Defendants Cannot Dispute the Reserve Bank's Assertion of Financial Insecurity

The Complaint alleges that an Event of Default occurred under Section 2.1, *Event of Default*, clause (vii) of the Operating Circular.  This clause states that an Event of Default occurs "whenever the [Reserve] Bank *deems itself insecure* with respect to the financial condition of the Borrower or the Borrower's ability to performing its Obligations."   Operating Circular at 3 (emphasis added).  The Complaint further alleges that the Reserve Bank *did* deem itself insecure as to Benworth FL's ability to perform its Obligations, and that it notified Benworth FL of that determination on February 27, 2024.  *See* Compl. ¶ 32.  This factual allegation alone, which must be accepted on a motion to dismiss (and which Defendants, in any event, do not contest) squarely pleads a cause of action for breach of the Program Agreements.[6]

While Defendants instead claim that the Reserve Bank has not provided a sufficient basis for its determination, this assertion is both factually incorrect and legally irrelevant.  First, while not required under the Program Agreements, the Reserve Bank articulated to Benworth FL the basis for its deemed financial insecurity.  As the Reserve Bank explained in the Default Notice:

> Benworth has provided various facts to the Reserve Bank regarding the concerning state of Benworth's financial condition. On December 27, 2023, Benworth informed the Reserve Bank that it is in arbitration proceedings with [Womply], and that the arbitrator issued an interim award that would require Benworth to pay Womply over $86 million. Benworth acknowledged to the Reserve Bank that it may not have access to sufficient funds to pay Womply

---

[6] An event of default is widely understood to constitute a breach of contract.  *See, e.g.*, *Roosevelt Cayman Asset Co., II v. Cruz-Rivera*, 2018 WL 3357430, at *4 (D.P.R. July 6, 2018) (crediting "defendants['] conce[ssion] that they defaulted on the promissory note" and thus finding "no issue of material fact exists regarding [Defendants'] breach of the promissory note"); *BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 669 F. Supp. 3d 204, 221-222, 238 (S.D.N.Y. 2023) (finding that multiple events of default occurred under the parties' lease agreements, and that as a result defendants breached the contract); *Fleet Nat. Bank v. Liuzzo*, 766 F. Supp. 61, 66 (D.R.I. 1991) (granting summary judgment upon finding that defendant "indisputably committed an event of default under the loan agreement" and that the "event of default constituted a breach of contract").

the amount of the interim award or any larger amount that may be finally awarded, which assertion is supported by Benworth's financial statements provided to the Reserve Bank.[7]

Defendants' second attack—that the Reserve Bank's asserted basis does not demonstrate "objective reasonabl[ness]"—fares no better. *See* Motion at 11. Defendants tellingly offer no contractual source for their purported standard. *Id.* Of course, none exists. The Event of Default is triggered if the Reserve Bank deems itself insecure about Benworth FL's ability to repay the Advances, which it did. That fact alone establishes a breach of the Program Agreements and requires a denial of Defendants' attempt to dismiss the Complaint due to the absence of a breach.[8]

B. <u>The Complaint Adequately Alleges Breach of the Program Agreements Based on Benworth FL's Insolvency</u>

The Complaint also identifies Benworth FL's insolvency as a ground for breach of contract, pointing to the Program Agreements' definition of "Insolvency." *See* Compl. ¶ 32. The Reserve Bank also pled specific facts providing a basis for its claim that Benworth FL is "Insolven[t]." For example, Benworth FL has acknowledged to the Reserve Bank "that it d[oes] not have access to sufficient funds" to pay a final arbitral award to Womply. Compl. ¶ 30. The Reserve Bank also received financial statements from Benworth FL that call into question its ability to pay its liabilities and indicate that Benworth FL has negative equity. *See* Compl. ¶ 32; **Exhibit A** *attached*

---

[7] Default Notice at 1. The veracity of the Reserve Bank's deemed financial insecurity is further evidenced by it choosing to move to a "direct pay" structure whereby the SBA remits payments associated with loan forgiveness reimbursement and loan guarantee amounts for the Pledged PPP Loans directly to the Reserve Bank instead of Benworth FL. *See* Compl. at 9 n.4.

[8] And, of course, even if Defendants *could* identify some cognizable contractual basis for challenging the Reserve Bank's determination of its own insecurity, this would only raise a factual question to be developed through discovery. *Cf. Capitol Radiology v. Sandy Spring Bank*, 2010 WL 610785, at *6 (D. Md. Feb. 17, 2010), *aff'd*, 439 F. App'x 222 (4th Cir. 2011) (granting summary judgment for Defendant where "the contract states in unambiguous terms that the loans could be held in default upon an adverse change in the borrower's financial health or when the lender *in good faith believes* itself insecure," and finding that "Defendant validly held Plaintiff in default" after it learned of, *inter alia*, a judgment against Plaintiff that Plaintiff claimed it could satisfy) (emphasis added).

*hereto*;[9] *infra* at 3.[10]    Faced with clear allegations grounded in the parties' own exchange of information, Defendants seek to impermissibly raise the pleading bar beyond what the law requires while simultaneously feigning ignorance of their own financial records and data, as well their own statements to the Reserve Bank.  These attempts to undermine the Complaint fail.

> a.  The Complaint Adequately Pleads Benworth FL is Insolvent

As explained above, the Complaint squarely alleges that Benworth FL is "Insolven[t]" as defined by the Program Agreements and identifies specific facts that led to the Reserve Bank's conclusion.  *See supra* at 7.

Defendants' primary attack on this allegation centers on their view that the Reserve Bank was required to identify "precisely which of the definitions of 'Insolvency' Benworth FL falls into." Motion at 10-12.  The law requires no such thing.  *See Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 198-99 (2002), *as modified* (Nov. 14, 2002) ("In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language.").  Courts recognize that a plaintiff is not required to exhaustively map out every provision relevant to the alleged breach.  *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 860 (N.D. Cal. 2023) ("While Plaintiffs do not identify the specific subsections of each suggested license that correspond to each of these requirements, the Court finds that Plaintiffs have sufficiently identified

---

[9] The Reserve Bank relied on "financial statements, reports, and other information disclosed by Benworth FL to the Reserve Bank," in determining that "events of default had occurred under the Program Agreements."  Compl. ¶¶ 31-32.  Benworth FL's financial statements for fiscal year 2023, included as Exhibit A attached hereto, are therefore central to the Reserve Bank's claim, sufficiently referred to in the Complaint, and their authenticity cannot credibly be disputed by Defendants.  Accordingly, they may be considered in resolving the Motion.  *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[10] Although insolvency can be established in a variety of ways—and is ultimately a question of fact, *see Constructor Maza, Inc. v. Banco de Ponce*, 616 F.2d 573, 576 (1st Cir. 1980)—the existence of negative equity is a clear indicator. *Cf. In re Gruber Bottling Works, Inc*., 16 B.R. 348, 352 (Bankr. E.D. Pa. 1982) (determining a debtor was insolvent where "[t]he debtor's balance sheet showed a negative equity and a continuous operation at a loss"); *In re Vazquez Vazquez*, 549 B.R. 304, 312 (Bankr. D.P.R. 2016) (applying the "balance sheet test" to determine insolvency in a preference action: "the debtor is insolvent when its liabilities exceed the fair value of its nonexempt assets") (citing 5 *Collier on Bankruptcy* ¶ 547.03 (16th ed. 2015)).

the contractual obligations allegedly breached, as required to plead a breach of contract claim.") (citation omitted).

Even a cursory review of the Program Agreements' definition of "Insolvency" reveals that only clauses (i) and (viii) could currently be applicable. *See* Operating Circular at 3. Benworth FL is not in bankruptcy or other insolvency proceedings; there has been no assignment for the benefit of Benworth FL's creditors; there has been no receiver, custodian, or conservator appointed; Benworth FL has not been closed by order of its supervisory authorities or been taken over by a public officer; Benworth FL's business is not suspended or the subject of a petition to wind-up or liquidate its business; and (as Defendants trumpet) there is no claim that prior to the Default Notice Benworth FL had "missed any payments or failed to timely pay down its debt to the Federal Reserve in the ordinary course of business."[11] The alleged Insolvency is based on the remaining prongs: "the condition of insolvency" and "any other circumstances that evince the Borrower's inability to pay its debts when due." Operating Circular at 3-4, *Insolvency*, clauses (i), (viii).

It is only by feigning ignorance of their own business affairs and the context of the Program Agreements that Defendants could claim they lack "fair notice" of the Complaint's "facially plausible legal claim[s]." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).[12]

      b. <u>Defendants Have Fair Notice of the Basis of the Reserve Bank's Determination of Insolvency</u>

---

[11] *See id.*, "Insolvency," clauses (ii)-(vii), respectively.

[12] Defendants' argument that the Reserve Bank's breach of contract claim is deficient because the Complaint uses phrases such as "including but not limited to" fails for the same reasons. *See* Motion at 8-9, 12, 14. Defendants provide no authority in support of their claim, and existing law rebuts their position. *Compare Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 860 (N.D. Cal. 2023) (denying motion to dismiss despite that "Plaintiffs do not identify the specific subsections of each suggested license" containing the obligations allegedly breached) *with Serracante-Gierbolini v. Esso Standard Oil Co. P.R.*, 2022 WL 716823, at *3 (D.P.R. Mar. 10, 2022) (dismissal appropriate where plaintiff "failed to identify a *single obligation* under the settlement agreement that ha[d] been breached by defendant") (emphasis added).

The Defendants' quibbles regarding the Complaint's factual support fare no better. Defendants first suggest that Womply's $118 million arbitral award is an insufficient basis to allege Benworth FL's "Insolvency" because it has not yet been confirmed. Motion at 11-12. This claim fails for several reasons.

First, as mentioned, Defendants themselves admitted they did not have confidence in their ability to pay an award of $86 million, much less the $118 that was ultimately levied. Compl. ¶ 30. Additionally, clause (viii) of the definition of Insolvency does not require that the Borrower be unable to pay a debt *currently* due. *See* Operating Circular at 3-4 (defining Insolvency as "any other circumstances that evince the Borrower's inability to pay its debts when due"). Thus, although Defendants are correct that an arbitral award can only be enforced through a court order, *see* Motion at 12, the status of Womply's award does not affect the allegation that Benworth FL is "Insolven[t]" in violation of the Program Agreements.[13] At best, Defendants raise factual disputes that will be addressed in the course of the case.

Next, Defendants suggest that references to the receipt of "financial statements, reports and other information" are insufficient because the Complaint fails to identify "which documents in particular were reviewed." *See* Motion at 12. But Benworth FL knows which financial statements the Reserve Bank reviewed because *they provided* those statements to the Reserve Bank. Compl. ¶ 32.[14] And the Default Notice made clear that "Benworth [FL] has provided various facts to the Reserve Bank regarding the concerning state of Benworth [FL]'s financial condition." Default

---

[13] Notably, a party seeking to vacate an arbitral award "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

[14] And, of course, Defendants may further explore these issues in discovery, not through a motion to dismiss. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 19 (1st Cir. 2011) ("Although discovery may reveal facts that belie the plaintiffs' claim, that possibility does not negate its plausibility.")

Notice at 1; *see also* Compl ¶ 35. In this light, Defendants' complaint regarding their inability to assess what Benworth FL-provided information the Reserve Bank reviewed rings hollow.

Finally, Defendants' cited authority does not help them. Defendants first point to a California state court case for the proposition that "[f]acts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." Motion at 11 (citing *Levy v. State Farm Mut. Auto. Ins. Co.*, 58 Cal. Rptr. 3d 54, 57 (Cal. Ct. App. 2007)).[15] But in *Levy*, the plaintiff complained that the insurer breached the policy's requirement to provide estimates "based upon the prevailing competitive price" when it provided estimates that were "below industry standards," and the Court of Appeal found plaintiff had "ma[de] no connection" between the contract term and defendant's alleged conduct. *Id.* at 59. By contrast, the Reserve Bank specifically alleged that, due to Benworth FL's financial condition, as evidenced by records provided and statements made by Benworth FL, the Reserve Bank determined that Benworth FL was "Insolven[t]" in breach of the Program Agreements. Compl. ¶ 32. *Block Sci. Inc. v. True Diagnostics, Inc.* is similarly distinguishable. *Compare* 2022 WL 485010, at *8 (S.D. Cal. Feb. 16, 2022) (dismissing claim where plaintiff generally alleged that defendant "did not use commercially reasonable efforts to timely deliver" a product without specifying what commercially reasonable efforts are or how Defendants failed to use them) *with* Compl. ¶¶ 32, 65 (alleging default based on Benworth FL being "Insolven[t]" under the Program Agreements).

C.  The Complaint Provides a Clear Basis for Recourse Under the Program Agreements

Under the Program Agreements, all Advances made to Benworth FL pursuant to the PPPLF become recourse obligations "if, *in the sole discretion of the Reserve Bank*," Benworth FL is

---

[15] Notably, *Levy* applies California pleading standards, not the Rule 8 analysis required of this Court on a motion to dismiss. *See* 58 Cal. Rptr. 3d at 57. As argued above, Defendants' motion fails under federal law, but—as *Levy* makes clear—applying state law would not deliver Defendants a better outcome.

determined to have "breached any of the representations, warranties, or covenants made under the Program Agreements." Letters of Agreement at 4 (emphasis added).

The Complaint specifically identifies three representations or covenants that have been breached and the basis for the Reserve Bank's determination as to each. As with the remainder of the Motion, Defendants' attempt to create a pleading deficiency as to each claim falls flat.

    a.   Misrepresentations as to Events of Default

After recounting which Events of Default occurred, the Complaint identifies "a breach of the representation that no event of default had occurred or was continuing, and a breach of the covenant to promptly notify the Reserve Bank when events of default occurred." Compl. ¶ 33. Plainly, the Complaint refers to those Events of Default that, as discussed above, were adequately alleged, and their very existence breaches the representation. *See supra* at 6-11.

Defendants argue that there is no breach of a representation because, in their view, that representation was made only as of the date Benworth FL executed the Program Agreements, *i.e.*, January 30, 2023.[16] *See* Motion at 13-14. As with their other arguments, this again ignores the plain terms of the Program Agreements:

> Each time the Borrower requests an Advance, incurs any Indebtedness, or grants a security interest in any Collateral to a Reserve Bank, the Borrower is deemed to make all of the foregoing representations and warranties on and as of the date such Advance or Indebtedness is incurred or security granted. *Such representations and warranties shall be true on and as of such date and shall remain true and correct so long as the Lending Agreement remains in effect, any Obligation remains outstanding, or any other amount is owing to the Bank.*

Operating Circular § 9.2 (emphasis added); *see also* Letters of Agreement at 3 (noting that the maturity date of all Advances shall be accelerated upon occurrence of an Event of Default,

---

[16] Defendants omit that they also signed Letters of Agreement dated May 4, 2020, and January 12, 2021. *See* Compl. Exhibit A.

including where "any representation, warranty, or covenant of the Borrower under the [Program Agreements] is inaccurate on or as of the date it is deemed to be made *or on any date on which an Advance remains outstanding*") (emphasis added). As outlined in the Complaint, Benworth FL's Obligations under the Program Agreements remain outstanding and, as a result, the (failed) requirement to maintain the truth of the representation remains as well. *See* Compl. ¶ 37.[17]

b. Misrepresentation as to PPP Compliance

The Complaint next alleges that Benworth FL failed to comply with the terms of the PPP with regards to  the millions of dollars of Pledged PPP Loans that have been denied guaranty purchase by the SBA. *See* Compl. ¶ 34. Because a loan must comply with the PPP requirements to be approved for guaranty purchase, the SBA's denials support the Reserve Bank's claim. *See* 13 C.F.R. §§ 120.520(c), 120.524. And the Program Agreements state that failure to comply with the terms of the PPP is both a breach of a representation, warranty, and covenant and an independent basis for recourse. *See* Letters of Agreement at 2, 4-5.

Despite these clear terms, Defendants claim that the Complaint is deficient for failing to allege "(1) which specific terms of the PPP Benworth FL has failed to comply with, (2) what actions by Benworth FL amount to a violation of the PPP, (3) which portion of Benworth FL's PPP portfolio was denied because of Benworth FL's violation of the PPP as opposed to Womply's actions, and (4) which 'problems internal to Benworth FL' have caused violations of the PPP." Motion at 14-15.

---

[17] Defendants' alternative argument that the Reserve Bank's allegations are inconsistent because "Benworth FL *did* promptly notify it of the arbitration award and its finances just six days after the interim award," Motion at 14, does not help their cause. Whether Benworth FL complied with the notice requirement and avoided breaching the Program Agreements is a clear factual issue. Defendants are free to assert as much in a responsive pleading and attempt to prove it at trial, but they cannot attempt to inject a factual dispute into a motion to dismiss. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013) ("It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder."). Further, if such a contention were true and the Court were inclined to credit it, Defendants would have conceded that an Event of Default did occur, and their Motion must be denied.

It defies logic that Benworth FL is unaware of the portion of its PPP portfolio that has been denied guaranty purchase by the SBA. These claims are based on Benworth FL's own reporting of SBA guaranty purchase denials to the Reserve Bank. *See* Compl. ¶ 34; Default Notice at 1 ("Benworth informed the Reserve Bank that the [SBA] has denied guaranty purchase applications for over 3,600 PPP Loans pledged as PPPLF Collateral which could result in these PPP Loans not being fully guaranteed by the SBA."). While these matters will be further developed through discovery, one indisputable fact has already been alleged: The SBA, after analyzing compliance with PPP requirements (among other things), has denied guaranty purchase for a significant portion of Benworth FL's PPP loan portfolio.[18] This is sufficient to plausibly allege a breach of the representation that the pledged loans comply with the requirements of the PPP and have been duly approved for guaranty by the SBA. *See* Letters of Agreement at 2. The specific terms of the PPP that have been violated and the causes of such violations—whether by Defendants or Womply—is a question of fact that can be appropriately borne out through the discovery process. *See IRR Gas Station Corp. v. PUMA Energy Caribe, LLC*, 2020 WL 4209297, at *5 (D.P.R. July 22, 2020) (breach of contract claims were adequately pled where the claims were "sufficient to raise a reasonable expectation that discovery will reveal evidence" about the party responsible for the breach).[19]

## II. The Reserve Bank's Fraudulent Transfer, Alter Ego, and Veil Piercing Claims Are Ripe.

---

[18] Indeed, the SBA website states that the SBA reviews guaranty purchase requests "to determine if lenders have complied with the SBA loan authorization, SBA requirements, and prudent lending practices." U.S. Small Business Administration, Guaranty Purchase Process, https://www.sba.gov/about-sba/sba-locations/loan-guaranty-centers/national-guaranty-purchase-center-herndon-va/guaranty-purchase-process (last visited Oct. 22, 2024).

[19] Womply has denied the allegations in the Complaint in Intervention regarding its "failure to provide Benworth FL with certain requested loan files," resulting in SBA guaranty purchase denials, indicating that this is a disputed factual issue where further discovery is needed. *See* ECF 166 ¶ 29. Even if Defendants could successfully argue that Womply's failures have any bearing on Benworth FL's liability under the Program Agreements, they cannot rely on disputed factual assertions to support dismissal under Rule 12(b)(6).

Defendants next argue that the Complaint should be dismissed because the "ripeness and ability" of the Reserve Bank to assert claims for fraudulent transfer, alter ego, and veil piercing "hinges on it sufficiently alleging that Benworth FL has an accelerated debt that is due because it breached the [Program] Agreements." Motion at 15.

As alleged in the Complaint, the Program Agreements unambiguously provide for acceleration of the debt upon occurrence of an Event of Default. *See* Compl. ¶ 25; Operating Circular § 5.1 ("An Advance Repayment Amount is immediately due and payable . . . upon the occurrence of an Event of Default described in clause (iv), (v) or (vii) of the definition of such term" or "at the [Reserve] Bank's option, upon the occurrence of any other Event of Default"); Letters of Agreement at 3 ("The Maturity Date of all Advances made pursuant to the PPPLF to a Borrower shall be accelerated upon the occurrence of an Event of Default by the Borrower"). As discussed in Section I *supra*, the Reserve Bank adequately alleged the occurrence of multiple Events of Default, including under clause (vii) (the Reserve Bank's deemed financial insecurity).[20]

At minimum, the Complaint sets forth facts sufficient to plausibly allege that Benworth FL owes the Reserve Bank millions of dollars in unpaid Advances and that there is a significant controversy regarding the fraudulent transfer of funds from Benworth FL to the other Defendants.

This Court's *Opinion and Order Denying Benworth PR's Motion to Dismiss or Stay Proceedings Pending the Outcome of Arbitration* is instructive. ECF No. 96 (the "MTD Order").

---

[20] Defendants' argument that the Reserve Bank "has not affirmatively alleged that Benworth FL cannot or has not paid down the debt in the ordinary course of business," "as opposed to when the Federal Reserve accelerates the entire debt," Motion at 12, is irrelevant to the claims at issue. Benworth FL's ability to pay down its debt through ordinary-course loan servicing has no bearing on whether the debt has been accelerated under the Program Agreements. Nor is the Reserve Bank required to seize its collateral or pursue another avenue to collect its debt just because it has become due and owing. *See* Operating Circular § 12.1 (listing remedies the Reserve Bank "*may* pursue" upon occurrence of an Event of Default) (emphasis added). As it has made clear to Defendants, the Reserve Bank has a continued interest in allowing Benworth FL and Benworth PR to continue the servicing of the Pledged PPP Loans. *See, e.g.* Mot. to Intervene Under Fed. R. Civ. P. 24, at 16, ECF No. 127 ("Given Womply's efforts to attach assets that . . . are necessary to allow Benworth to continue servicing the Pledged PPP Loans in the ordinary course, the Reserve Bank determined its interests were at risk and filed this request to intervene.").

In the MTD Order, the Court rejected Defendants' argument that Womply's fraudulent claims were not yet ripe because the arbitration proceedings had not concluded and found that Womply plausibly alleged the existence of a debt and occurrence of a fraudulent transfer to avoid repayment of that debt.  This Court recognized that "jurisdictional ripeness and a tribunal's liability determination under a particular statute are independent questions."  MTD Order at 7 (citing *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 36 (1st Cir. 2020)).  As a result, despite the arbitrator's pending decision on Benworth FL's liability to Womply, this Court found "the existence of a substantial controversy between adverse parties regarding the occurrence of a fraudulent transfer to avoid repayment of debt owed."  MTD Order at 10.

The same logic applies to the Reserve Bank's claims, with the difference that the Reserve Bank asks this Court (and not an arbitrator) to make the liability determination.  Although Defendants suggest Benworth FL is somehow not the Reserve Bank's "true debtor," Motion at 16, their own authority recognizes that "[i]t is not necessary for the plaintiff to be a creditor with his credit recognized by judgment before starting the rescission lawsuit." *Sucesión Almazán v. López*, 20 D.P.R. 537, at *3 (1914) (translation ours); *see also Castellon v. Padin*, 60 D.P.R. 378, 382 (1942) (recounting the "almost unanimous . . . view that it is not a prerequisite for bringing an action for rescission that the obligation in favour of the claimant was due or payable on the date of the fraudulent transfer") (translation ours).  Consistent with this standard, the Complaint adequately alleges fraudulent transfer, alter ego, and veil piercing claims because the Reserve Bank has alleged Benworth FL owes it a debt, Benworth FL fraudulently transferred funds to avoid paying that debt, and this Court can order relief to redress the Reserve Bank's injury.

**III. The Complaint Adequately Alleges a Claim for Conversion.**

The Complaint alleges that Benworth FL's transfers to the other Defendants constitute an unlawful conversion of the Reserve Bank's property, i.e., the PPP Collateral. *See* Letters of

Agreement at 3 ("The Borrower agrees that any payments or other amounts received by the Borrower or any other person . . . arising from or in connection with PPP[] Collateral *are the property of the Reserve Bank . . . .*") (emphasis added).

Defendants argue the Complaint fails to allege conversion under Puerto Rico law. Motion at 17. As an initial matter, it is not clear at this stage of the litigation whether Puerto Rico law applies to the Reserve Bank's conversion claim (or any of the other claims in the Complaint).[21] However, even if Puerto Rico were to apply, the Complaint adequately alleges a claim for conversion based on the fact that Benworth FL transferred millions of dollars to the other Defendants during the time it was servicing the Pledged PPP Loans (in which the Reserve Bank has a valid first-priority security interest, which includes the proceeds of those loans). *See* Compl. ¶¶ 21-23, 107-110.[22] These facts suffice to allege conversion under Puerto Rico law. *See United States v. GZ Constr. St, Inc.*, 155 F. Supp. 3d 147, 152 (D.P.R. 2015) (government sufficiently pled a claim for conversion under Puerto Rico law where the defendant sold property subject to a federal tax lien with "knowledge of [defendant's] preexisting obligation to the United States and the federal tax liens that arose upon" the property).[23]

Defendants rely on *Montalvo v. LT's Benjamin Records*, 56 F. Supp. 3d 121 (D.P.R. 2014), to argue that the Reserve Bank's conversion claim is deficient. *See* Motion at 17-18. In *Montalvo*,

---

[21] For tort cases in particular, Puerto Rico follows the "most significant contacts" test, which considers "the corporation's place of incorporation and business, the place where the tortious conduct occurred, and the place where the relationship between the parties existed," among other factors. *Nieto-Vincenty v. Valledor*, 22 F. Supp. 3d 153, 161 (D.P.R. 2014).

[22] Defendants assert that the Reserve Bank's collateral is "defined as loans Benworth FL provided to borrowers," and argues that the Reserve Bank has not alleged that Defendants "transferred any of the PPP Collateral (the borrowers' loans)." Motion at 6 n.4, 18. This characterization ignores the broad definition of "Collateral" under the Program Agreements, which includes, among other things, the proceeds and products of the Pledged PPP Loans.

[23] At this stage in the proceedings, further discovery will be needed to trace the proceeds of the Pledged PPP Loans to specific transfers from Benworth FL. *See F.T.C. v. LeanSpa, LLC*, 920 F. Supp. 2d 270, 281 (D. Conn. 2013) (noting that on a motion to dismiss, the "question is whether plaintiffs have plausibly alleged that [defendant] received ill-gotten funds to which she does not have a legitimate claim . . . not whether plaintiffs have alleged facts tracing particular funds to [defendant]").

plaintiffs brought a claim for conversion based on defendants' alleged failure to pay plaintiffs royalties under the parties' agreements.  56 F. Supp. 3d at 139.  The Court dismissed the conversion claim because plaintiffs failed to allege "malicious or wrongful intent . . . to deprive Plaintiffs of the royalties owed" and their claims "sound[ed] in contract, rather than tort."  *Id.*

But the conversion claim in *Montalvo* was based on the simple "fail[ure] and/or refus[al] to pay [P]laintiffs their royalties."  *Id.*  While Defendants may mischaracterize the Complaint as seeking "as a remedy. . . the 'PPP Collateral' under the [Program] Agreements,"  Motion at 18, the Reserve Bank's conversion claim is in fact premised on "Benworth FL's transfers to Benworth PR and the Navarros," which are "[s]eparate and independent from Benworth FL's defaults on its obligations to the Reserve Bank under the Program Agreements" and "indicate its intent to unlawfully exercise or assert dominion over property" belonging to the Reserve Bank. Compl. ¶ 109.  The Complaint thus alleges wrongful intent by the Defendants in converting PPP Collateral. *See* Compl. at 32 (requesting a finding that "Benworth FL and Benworth PR converted the collateral of the Reserve Bank and continue to exercise dominion and control over the Reserve Bank's collateral, including the Pledged PPP Loans and the proceeds generated therefrom").  This sufficiently alleges conversion under Puerto Rico law.  *GZ Constr. St, Inc.*, 155 F. Supp. 3d at 152.

### IV. The Complaint is Not a Shotgun Pleading

#### A.  The Complaint's Use of Incorporation is Not Improper.

Defendants argue that the Complaint should be dismissed as a "shotgun pleading" because it "incorporates by reference in each claim the allegations in every claim that came before it." Motion at 19.  Not so.

As Defendants' own cases explain, courts' rejection of shotgun pleadings is based upon the pleading's failure "to give [d]efendants fair notice of the claims against them and the facts upon which those claims were based."  *Sanchez-Sifonte v. Fonseca*, 2023 WL 5753677 at *3

18

(D.P.R. Sept. 6, 2023).  In *Sanchez-Sifonte*—the only case Defendants cite on this point—plaintiffs were given leave to amend their complaint where the complaint included "seven counts incorporating by reference 290 paragraphs of factual allegations regarding over 100 alleged defamatory statements across twenty-five publications without any indication as to which defendants were responsible for each publication." *Id*.  In contrast, the Complaint contains 110 paragraphs in total, and the claims all relate to the same basic events: Benworth FL's breach of the Program Agreements and the transfer of funds from Benworth FL to the other Defendants.  As a result, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1324 (11th Cir. 2015).  In fact, Defendants do not even attempt to argue that the incorporation by reference has deprived them of fair notice of the Reserve Bank's claims.[24]  The Reserve Bank's use of incorporation by reference is standard practice, and the allegations are clearly outlined with specific references to supporting documents, giving Defendants ample opportunity to respond meaningfully.  Their silence as to any lack of notice only underscores the Complaint's adequacy.

    B.  Defendants' "Group Pleading" Arguments Fail.

Defendants also claim that the Complaint should be dismissed as a shotgun pleading because it "improperly uses 'group pleading' to allege claims against all the defendants without identifying which claims concern each of them separately." Motion at 19.

Defendants' objection lacks merit.  All four Defendants are entities or officers involved in the origination and/or servicing of the same Pledged PPP Loans.  *See* Compl. ¶¶ 6-10.  And

---

[24] It is also telling that Defendants did not challenge the same incorporation-by-reference method used by Womply in its much longer Amended Complaint.  *See* ECF No. 123 ¶¶ 215, 240, 241, 249.  The fact that the Womply Action and its substantially similar fraudulent transfer, alter ego, and veil piercing claims will proceed regardless of the disposition of the Motion further undercuts any claim of prejudice by Defendants.

contrary to Defendants' assertions, the Complaint provides sufficient information regarding which claim is applicable to each Defendant. *See id*. ¶¶ 65-67 (Benworth FL liable for breach of contract); ¶¶ 92-99 (Benworth PR liable under *alter ego* or successor liability); ¶¶ 104-105 (Mr. and Mrs. Navarro liable under theory of veil piercing). As for the claims of actual and constructive fraudulent transfer, rescission, and conversion, it is plausible that all four Defendants are responsible. Indeed, the Complaint squarely asserts that Benworth FL's transfer of assets to Benworth PR, Mr. Navarro, or Mrs. Navarro (either directly or indirectly) are recoverable fraudulent transfers. *Id.* ¶¶ 68-71. This collective pleading—particularly where Defendants alone are in possession of the detailed transfer records required to specifically identify transfers for recovery—is hardly novel, much less harmful to the sufficiency of the Complaint. *See Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct."). And again, Defendants do not assert that they have been denied fair notice of the claims against them, which is the purpose behind the prohibition on shotgun pleadings. *See Sanchez-Sifonte v. Fonseca*, 2023 WL 5753677, at *3. In short, Defendants raise no prejudice due to the asserted pleading deficiencies, and in any case the Complaint plausibly alleges that all four Defendants are liable for the claims asserted.

## CONCLUSION

For the foregoing reasons, the Reserve Bank respectfully requests that the Motion to Dismiss be denied in its entirety. In the alternative, if the Court is inclined to grant the Motion in whole or in part, the Reserve Bank respectfully requests leave to amend to the Complaint.

[SIGNATURE PAGE FOLLOWS]

20

Respectfully submitted in San Juan, Puerto Rico on October 29, 2024.

Lisa M. Schweitzer (admitted *pro hac vice*)
lschweitzer@cgsh.com

Thomas S. Kessler (admitted *pro hac vice*)
tkessler@cgsh.com

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Attorneys for the Federal Reserve Bank of
San Francisco*

*s/ Antonio L. Roig Lorenzo*
Antonio L. Roig Lorenzo
antonio.roig@oneillborges.com
USDC-PR No. 207712

*s/ Salvador J. Antonetti Stutts*
Salvador J. Antonetti Stutts
salvador.antonetti@oneillborges.com
USDC-PR No. 215002

*s/ Ubaldo M. Fernández Barrera*
Ubaldo M. Fernández Barrera
ubaldo.fernandez@oneillborges.com
USDC-PR No. 224807

*s/ Aníbal A. Román Medina*
Aníbal A. Román Medina
anibal.roman@oneillborges.com
USDC-PR No. 308410

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Attorneys for the Federal Reserve Bank of
San Francisco*

21

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 29, 2024, I filed a copy of the foregoing document using the Court's CM/ECF system, which will automatically generate a Notice of Electronic Filing to all counsel of record in this matter.


*<u>s/ Aníbal A. Román Medina</u>*
Aníbal A. Román Medina
