## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **OTO ANALYTICS, LLC,** | |
| Plaintiff, | |
| v. | |
| **BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,** | Civil No. 23-01034 (GMM) *cons.* |
| Defendants. | Civil No. 24-01313 (GMM) |
| | |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,** | |
| Plaintiff-Intervenor | |
| v. | |
| **OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,** | |
| Defendants in Intervention. | |
| | |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,** | |
| Consolidated Plaintiff, | |
| v. | |
| **BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,** | |
| Consolidated Defendants. | |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE FEDERAL RESERVE'S COMPLAINT AND COMPLAINT IN INTERVENTION

**COME NOW** Defendants Benworth Capital Partners, LLC ("Benworth FL"), Benworth Capital Partners PR, LLC ("Benworth PR"), and Bernardo and Claudia Navarro (the "Navarros" and, jointly with Benworth PR and Benworth FL, the "Defendants") through the undersigned counsel, and respectfully submit this reply in support of Benworth FL's Motion to Dismiss [D.E. 169] (the "Motion") the Federal Reserve Bank of San Francisco's ("Federal Reserve") Complaint [Case No. 24-cv-01313, D.E. 1] ("Complaint" or "Compl.") and Complaint in Intervention [Case No. 23-cv-01034, D.E. 146] ("Complaint in Intervention" or "Compl. Int.") (collectively, the "Complaints")[1], as joined by Benworth PR and the Navarros [D.E. 170], and as grounds therefore **STATE** and **PRAY** as follows:

<u>**ARGUMENT**</u>

I.      <u>**The Complaints Fail to State a Claim for Breach of Contract.**</u>

      **A. Breaches #1 and #2: The Federal Reserve "deem[s] itself insecure with respect to the financial condition of Benworth FL and Benworth FL's ability to perform its obligations," and Benworth FL is insolvent.**

The Opposition confirms that the Complaints are based on only two possible Events of Default: (1) the Federal Reserve deemed itself insecure with respect to the financial condition of Benworth FL or Benworth FL's ability to perform its Obligations under the Agreements and (2) Benworth FL's Insolvency. (Opp. §§ I.A, B.) According to the Federal Reserve, the sole basis for these purported Events of Default is "Benworth FL's inability to pay the Final Award and financial statements, reports, and other information" Benworth FL disclosed to the Federal Reserve. Compl. ¶ 32. This allegation is insufficient to state a claim that an Event of Default has occurred based on the financial condition of Benworth FL.

As to Insolvency, the Motion pointed out that the Operating Circular contains eight

---

[1] This Court granted the Federal Reserve's request to consolidate Case Numbers 24-cv-01313

definitions for Insolvency, but the Federal Reserve failed to allege which definitions apply to Benworth FL. (Motion at 11.) For example, subsection (vi) of the Operating Circular defines Insolvency to include when "the Borrower ceases or refuses to make payments in the ordinary course of business, or admits in a record its inability to pay its debt as they become due[.]" In its Opposition, the Federal Reserve concedes that are no allegations in the Complaints that this subsection applies to Benworth FL. (Opp. at 9.) Put differently, the Federal Reserve has disclaimed that Benworth FL failed to pay its debts to the Federal Reserve in the ordinary course of business or that Benworth FL admitted to the Federal Reserve that it is unable to pay its debts as they become due. Thus, the Complaints must contain allegations that allege Benworth FL's Insolvency is based on the condition of insolvency or that other circumstances exist that evince Benworth FL is unable to pay its debts when due. They do not.

Pointing to paragraph 30 of the Complaint, the Federal Reserve contends that its allegation that Benworth FL admitted it could not pay the unconfirmed arbitration award is sufficient to establish Insolvency. (Opp. at 10.) However, Benworth FL never concretely admitted that it could not pay the unconfirmed arbitration award. As Exhibit D to the Complaint reflects, Benworth FL only told the Federal Reserve that, as of December 2023, it "may not have access to sufficient funds" to pay the award. This statement in Exhibit D controls over the conflicting allegation in paragraph 30 of the Complaint that states Benworth FL represented "it did not have access to sufficient funds . . . ." *Clorox Co. v. Procter & Gamble Commercial Co*., 228 F.3d 24, 32 (1st Cir. 2000) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations").

---

and 23-cv-01034. [Case No. 23-cv-01034, D.E. 155].

Notwithstanding, Benworth FL argued that an unconfirmed arbitration award does not constitute a finalized debt that would render Benworth FL insolvent because it lacks the finality required to be considered a current liability for purposes of insolvency. (Motion at 12.) The Federal Reserve does not dispute this point. Instead, the Federal Reserve argues that the definition of Insolvency under subsection (viii) does not require a debt to be currently due. (Opp. at 10.) But the Federal Reserve is ignoring that the arbitration award may be vacated and never become due. So, the Federal Reserve is asking the Court to stack the speculative inference that Benworth FL *may* not have funds to pay an arbitration award on top of the speculative inference that the award *may* become a finalized debt. Such stacking of inferences "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2005).

The Federal Reserve also argues that Benworth FL provided it with financial statements, which are attached as Exhibit A to the Opposition, "that call into question its ability to pay its liabilities and indicate that Benworth FL has negative equity." (Opp. at 7.) As a threshold matter, the Court should not consider the financial records attached to the Opposition. The financial records were not attached to the Complaint, the allegations in the Complaint do not sufficiently identify them, and they are not central to the Federal Reserve's claims. Indeed, as reflected in the Default Notice, the Federal Reserve only noted that the financial statements "support" Benworth FL's disclosure that it *may* not have sufficient funds to pay the award. *See*, Compl., Ex. D at 1 ("Benworth acknowledged to the Reserve Bank that it may not have access to sufficient funds to pay the amount of the interim award or any larger amount that may be finally awarded, which assertion is supported by Benworth's financial statements provided to the Reserve Bank."). In its Opposition, however, the Federal Reserve characterizes the financial statements as "call[ing] into

question [Benworth FL's] ability to pay its liabilities and indicate that Benworth FL has negative equity." (Opp. at 7.) No such allegations are present in the Complaints. The Complaints and their exhibits are entirely devoid of any mention of "negative equity" or any liability other than the unconfirmed arbitration award. This Court should reject the Federal Reserve's attempt to amend its Complaints through the Opposition. *See Diaz-Zayas v. Municipality of Guaynabo*, 600 F. Supp. 3d 184, 195 (D.P.R. 2022) ("As an initial matter, it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation omitted).

For the same reasons, the Complaints fail to allege sufficient facts to support the Federal Reserve's conclusory allegation that it deemed itself insecure. According to the Federal Reserve, the Complaint alleges that it deemed "itself ***insecure as to Benworth FL's ability to perform its Obligations***[.]" (Opp. at 6 (citing Compl. ¶ 32) (emphasis added).) Notably, "Obligations" is a contractually defined term under the Operating Circular:

(i)     Advance Repayment Amounts;

(ii)    Indebtedness;

(iii)   any other liabilities of the Borrower to the Bank or any other Reserve Bank, including without limitation, any services fees, whether due or to become due; and

(iv)    any expense the Bank or its designee(s) may incur to:

   a.  obtain, preserve and/or enforce the Lending Agreement or the Bank's security interest in Collateral and the Borrower's Obligations under the Lending Agreement,

   b.  collect any or all of the foregoing, or

   c.  assemble, transport, maintain or preserve Collateral (including, without limitation, taxes, assessments, insurance premiums, repairs, reasonable attorneys' fees, rent, transportation, storage costs, and expenses of sale.

Compl., Ex. B at § 2.1. "Advance Repayment Amounts" and "Indebtedness" both refer to

liabilities owed to the Federal Reserve, *see id.*, not to a third-party with whom the borrower had a business relationship. But, as the Federal Reserve admits, its insecurity is based solely on the speculative inability of Benworth FL to pay the unconfirmed arbitration award. The Complaints thus should be dismissed for failure to allege any "Obligations" under the Agreements that the Federal Reserve feels insecure about Benworth FL performing.

### B. The Complaint Fails to Sufficiently Allege Benworth FL Breached Representations, Warranties or Covenants it Made under the Agreements.

The Federal Reserve next argues it stated a breach of contract claim because the Complaints allege that Benworth FL breached three representations, warranties, or covenants under the Agreements: two misrepresentations as to Events of Default and one misrepresentation as to PPP compliance. (*See* Opp. at § I.C.) Because the Complaints fail to sufficiently allege the Events of Default, *see supra* § I.A, they fail to allege breaches of any representation as to Events of Default for the same reasons. And Benworth FL's purported misrepresentation as to PPP compliance fares no better.

The Federal Reserve asserts that the SBA's denial of guarantee purchase applications on 3,600 PPP loans (out of more the more than 300,000 PPP loans Benworth FL funded) "is sufficient to plausibly allege a breach of the representation that the pledged loans comply with the requirements of PPP and have been duly approved for guaranty by the SBA." (Opp. at 14.) But as the Federal Reserve knows and stated in the Default Notice, denial of guarantee purchase applications is only something that "***could*** result in these PPP Loans not being fully guaranteed by the SBA." Compl., Ex. D at 1 (emphasis added). In fact, since the Complaints were filed, the SBA has reversed its denial of many guarantee purchase applications and the outstanding amount of Advances has been significantly reduced. Thus, denying the application is not a determination that Benworth FL failed to comply with PPP requirements or that the PPP loans will not be duly

approved for guaranty by the SBA. Simply put, there is no factual basis in the Complaints or legal authority to support the inference that Benworth FL has misrepresented its compliance with PPP requirements. The Federal Reserve has accordingly failed to state a breach of contract claim.

**II.    If the Court Dismisses the Breach of Contract Claim, then the Federal Reserve's Fraudulent Transfer Claims and Declaratory Judgment Are Not Ripe and Fail to State a Claim.**

In the Motion, Benworth FL argued that if the Court agrees that the Federal Reserve has failed to state a claim for breach of contract, then its fraudulent transfer and declaratory judgment claims are not ripe and subject to dismissal. (Motion at § II.) The Federal Reserve does not dispute that its fraudulent transfer and declaratory judgment claims hinge on a properly alleged breach of contract claim. Thus, the fraudulent transfer and declaratory judgment claims must fall with the breach of contract claims.

**III.   The Federal Reserve Fails to State a Claim for Conversion.**

The Motion established that the conversion claim is subject to dismissal because the Complaints fail to allege that Defendants maliciously and wrongfully acquired the Federal Reserve's property and the claim sounds in contract, not tort. (Motion at § III.) The Federal Reserve counters that the simple transfer of the PPP Collateral is enough to state a conversion claim that is independent of the Agreements. The Federal Reserve is wrong.

The Opposition does not meaningfully respond to Benworth FL's argument that the Federal Reserve must allege malicious and wrongful acquisition of its property to state a claim for conversion under Puerto Rico law. Rather, the Federal Reserve cites to *United States v. GZ Construction St, Inc.*, 1555 F. Supp. 3d 147 (D.P.R. 2015) for the proposition that all Defendants are liable for conversion because Benworth FL transferred funds to the other Defendants while it was servicing the PPP loans. But in that case, the court found that the allegations surrounding the

timing of the transfer of property at issue were sufficient to infer the defendant's "intent, maliciousness, and desire to defraud." *Id*. at 152. The Federal Reserve has not identified any allegations in its Complaints that reflect Benworth PR or the Navarros had a malicious or wrongful intent to deprive the Federal Reserve of its property. Nor could it; none exist. Indeed, the Complaint attributes wrongful intent only to Benworth FL. *See* Compl. ¶ 109. The conversion claim must be dismissed against Benworth PR and the Navarros for this reason alone.

As to Benworth FL, even if the Court infers malicious and wrongful intent (it should not), the conversion claim still must be dismissed because it is not independent of the claim for breach of the Agreements. *See Montalvo v. LT's Benjamin Records*, 56 F. Supp. 3d 121, 139 (D.P.R. 2014) (dismissing conversion claim because the "Plaintiffs' allegations sound in contract, rather than tort"). Benworth FL's duty to maintain the PPP Collateral arises solely out of the Agreements. Absent the Agreements, Benworth FL would have no obligation to maintain the PPP Collateral for the Federal Reserve. The Federal Reserve admits as much by incorporating its breach of contract claim into the conversion claim. *See* Compl. ¶ 106 (incorporating by reference all proceeding paragraphs). Thus, like in *Montalvo*, the Federal Reserve's conversion claim sounds in contract, rather than tort, and must be dismissed.

## IV.    <u>The Court Should Dismiss the Complaints Because It Is a Shotgun Pleading that Improperly Groups Defendants.</u>

The Federal Reserve argues its Complaints should not be dismissed for violating the rules against shotgun pleadings because Defendants have not argued any prejudice and the Complaints plausibly allege that all four Defendants are liable for all the claims. (Opp. at § IV.) Here, too, the Federal Reserve is wrong. For one, the Federal Reserve has not identified any authority requiring Benworth FL or the other Defendants to show prejudice before a complaint is dismissed for violating the rules against shotgun pleadings.

Moreover, the Federal Reserve's incorporation by reference of all counts into subsequent counts while grouping the Defendants together renders the Complaint confusing. For example, the conversion claim lumps all Defendants together, but the Prayer for Relief seeks a finding that only Benworth FL and Benworth PR converted the PPP Collateral. *See* Compl. At 32. Yet, in the Opposition, the Federal Reserve argues that the conversion claim also applies to the Navarros. (Opp. at §§ III, IV.) This alone demonstrates that the Complaints should be dismissed for violating the rules against shotgun pleadings.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on November 12, 2024.

## Ferraiuoli

PO Box 195168
San Juan, PR 00919-5168
Tel.: 787.766.7000
Fax: 787.766.7001

*s/ Roberto A. Cámara-Fuertes*
Roberto A. Cámara-Fuertes
USDC-PR 219002
rcamara@ferraiuoli.com

*s/ Jaime A. Torrens-Dávila*
Jaime A. Torrens-Dávila
USDC-PR 223810
jtorrens@ferraiuoli.com

*s/ Mónica Ramos Benítez*
Mónica Ramos-Benítez
USDC-PR 308405
mramos@ferraiuoli.com

*Counsel for Benworth Capital Partners, LLC and Bernardo Navarro*

**CASELLAS ALCOVER & BURGOS PSC**
PO Box 364924
San Juan, PR 00936-4924
Tel. (787) 756-1400
Fax. (787) 756-1401
/s/ Ricardo F. Casellas
USDC-PR Bar No. 203114
rcasellas@cabprlaw.com

/s/ Carla S. Loubriel Carrión
USDC-PR Bar No. 227509
cloubriel@cabprlaw.com

*Counsel for Benworth Capital Partners PR, LLC and Claudia Navarro*