IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| OTO ANALYTICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BENWORTH CAPITAL PARTNERS PR | § | |
| LLC; BENWORTH CAPITAL PARTNERS, | § | |
| LLC; BERNARDO NAVARRO and | § | |
| CLAUDIA NAVARRO, | § | Civil No. 23-01034 (GMM) *cons.* Civil |
| | § | No. 24-01313 (GMM) |
| Defendants. | § | |
| | § | |
| FEDERAL RESERVE BANK OF SAN | § | |
| FRANCISCO, | § | |
| | § | |
| Plaintiff-Intervenor, | § | |
| | § | |
| v. | § | |
| | § | |
| OTO ANALYTICS, LLC; BENWORTH | § | |
| CAPITAL PARTNERS PR, LLC; | § | |
| BENWORTH CAPITAL PARTNERS, LLC; | § | |
| BERNARDO NAVARRO and CLAUDIA | § | |
| NAVARRO, | § | |
| | § | |
| Defendants in Intervention. | § | |

**PLAINTIFF OTO ANALYTICS, LLC'S MOTION TO COMPEL (1) RESPONSES
TO INTERROGATORY NOS. 1, 2, AND 4 TO THE NAVARROS; (2) DOCUMENTS
RESPONSIVE TO DOCUMENT REQUESTS NOS. 6, 7, 11, AND 12 TO THE
NAVARROS; AND (3) DOCUMENTS RESPONSIVE TO DOCUMENT REQUEST
NO. 18 TO BENWORTH FL AND BENWORTH PR**

Alexander L. Cheney (admitted *pro hac vice*)
333 Bush St
San Francisco, CA 94104
(415) 858-7400
acheney@willkie.com

Stuart R. Lombardi (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
(212) 728-8000
slombardi@willkie.com

Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

Dated: December 6, 2024

Alejandro J. Cepeda Diaz
USDC-PR 222110
McConnell Valdés LLC
270 Muñoz Rivera Ave.
Hato Rey PR 00918
Tel: (787) 250-5637
Email: ajc@mcvpr.com

*Attorneys for Plaintiff and Defendant in Intervention Oto Analytics, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 2

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ........................................................................................................... 8

CONCLUSION ...................................................................................................... 14

CERTIFICATE OF SERVICE ................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                   *Page(s)*

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.,*
    319 F.R.D. 422 (D.P.R. 2016) ....................................................................................7, 8

*In re Best Prod. Co.,*
    157 B.R. 222 (Bankr. S.D.N.Y. 1993) ................................................................................11

*Boyer v. Crown Stock Dist., Inc.,*
    587 F.3d 787 (7th Cir. 2009) ............................................................................................11

*Foisie v. Worcester Polytechnic Inst.,*
    967 F.3d 27 (1st Cir. 2020)..........................................................................................9, 12

*In re Ginn-La St. Lucie, Ltd., LLP,*
    2010 WL 8756756 (Bankr. S.D. Fla. Dec. 10, 2010)....................................................10, 11

*HBE Leasing Corp. v. Frank,*
    48 F.3d 623 (2d Cir. 1995) ................................................................................................11

*Industrias Avícolas de P.R., Inc. v. Granjas Cupey, Inc.,*
    2002 WL 1040182 (P.R. Cir. Apr. 8, 2002) .......................................................................13

*In re Joy Recovery Tech. Corp.,*
    286 B.R. 54 (Bankr. N.D. Ill. 2002)....................................................................................11

*Mane FL Corp. v. Beckman,*
    355 So.3d 418 (Fla. 3d DCA 2008) .....................................................................................9

*Marshall v. Comm'r of Internal Revenue,*
    782 F. App'x 565 (9th Cir. 2019) ......................................................................................11

*In re Mervyn's Holdings, LLC,*
    426 B.R. 488 (Bankr. D. Del. 2010) ...................................................................................11

*Nagel v. Westen,*
    59 Cal. App. 5th 740 (2021) ...............................................................................................9

*Nieto-Vincenty v. Valledor,*
    22 F. Supp. 3d 153 (D.P.R. 2014)........................................................................................9

*Orr v. Kinderhill Corp.,*
    991 F.2d 31 (2d Cir. 1993) ................................................................................................11

*Parker Waichman LLP v. Salas LC,*
    328 F.R.D. 24 (D.P.R. 2018) ...............................................................................................7

*Slone v. Comm'r*,
  896 F.3d 1083 (9th Cir. 2018) ..................................................................................11

*Torres-Román v. Martínez-Ocascio*,
  2023 WL 8372045 (D.P.R. Dec. 1, 2023) ...................................................................7

*United States v. JG-24, Inc.*,
  331 F. Supp. 2d 14 (D.P.R. 2004) .............................................................................13

*United States v. Planes*,
  656 F. Supp. 3d 1302 (M.D. Fla. 2023) ....................................................................13

*United States v. Tabor Ct. Realty Corp.*,
  803 F.2d 1288 (3d Cir. 1986) ....................................................................................11

*VeroBlue Farms USA, Inc. v. Wulf*,
  2019 WL 12043593 (N.D. Tex. Sept. 10, 2019) ....................................................9, 10

*VeroBlue Farms USA, Inc. v. Wulf*,
  465 F. Supp. 3d 633 (N.D. Tex. 2020) ......................................................................10

**Statutes and Rule**

31 P.R. Laws Ann. § 9631 ....................................................................................................9

Cal Civ. Code § 3439 ............................................................................................................9

Cal. Civ. Code § 3439.04(a)(2) ...........................................................................................11

Cal. Civ. Code § 3439.04(b)(2) ...........................................................................................12

Cal. Civ. Code § 3439.04(b)(3) ...........................................................................................12

Cal. Civ. Code § 3439.04(b)(11) .........................................................................................12

Cal Civ. Code § 3439.10(b) ...................................................................................................9

Fed. R. Civ. P. 65(d)(1) .......................................................................................................14

Fla. Stat. § 726 .......................................................................................................................9

Fla. Stat. § 726.105(1)(b) ....................................................................................................11

Fla. Stat. § 726.105(2)(b) ....................................................................................................12

Fla. Stat. § 726.105(2)(c) ....................................................................................................12

Fla. Stat. § 726.105(2)(k) ....................................................................................................12

**Other Authority**

8 Charles A. Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 2008
(3d ed. 2024) ................................................................................................................. 7, 12

Pursuant to Federal Rules of Civil Procedure 26(b)(1), 33(a)(2), 34(a), and 37(a), Plaintiff Oto Analytics, LLC (f/k/a Oto Analytics, Inc. d/b/a Womply) ("**Womply**"), by and through its undersigned counsel, respectfully requests that this Court compel (1) Defendants Bernardo Navarro ("**Mr. Navarro**") and Claudia Navarro ("**Mrs. Navarro**"; together, the "**Navarros**") to respond to Interrogatory Nos. 1, 2, and 4 in Womply's First Sets of Interrogatories to the Navarros dated July 19, 2024; (2) the Navarros to produce documents responsive to Requests Nos. 6, 7, 11, and 12 in Womply's First Sets of Requests for Production to the Navarros dated July 19, 2024; and (3) Defendants Benworth Capital Partners, LLC ("**Benworth FL**") and Benworth Capital Partners PR LLC ("**Benworth PR**; together with Benworth FL and the Navarros, **"Defendants"**) to respond to Request No. 18 in Womply's First Sets of Requests for Production to Benworth FL and Benworth PR dated July 19, 2024.

## PRELIMINARY STATEMENT

Womply won an approximately $118 million arbitration award against Benworth FL, which is owned and controlled by Mr. Navarro. Womply is unable to collect that award from Benworth FL because it transferred more than $100 million to Benworth PR, which is owned and controlled by the Navarros, leaving Benworth FL judgment proof. In discovery, Womply learned that the Navarros have done it again and transferred funds out of Benworth FL and Benworth PR into other entities they own and control (the "**Navarro Entities**") to further frustrate Womply's debt collection efforts. To trace where Defendants have transferred the funds owed to Womply, Womply sought discovery regarding the payments to the Navarro Entities, but Defendants refuse to provide even the names of the Navarro Entities. This basic information is plainly relevant to Womply's fraudulent transfer claims (and, as discussed below, to Womply's alter ego claim, veil piercing claim, and requested relief), including because transferring the same funds owed to

Womply to another entity the Navarros control is part of the same fraudulent transfer Womply is seeking to unwind through this action.

Defendants assert that the Navarro Entities are not relevant to this action because Womply did not identify specific transfers to those entities or the names of those entities in the Amended Complaint. This is exactly backwards. Womply has no way of knowing about Defendants' secret transfers of funds or which entities the Navarros own and control without discovery. Womply is not required to amend its complaint each time it learns about a new fraudulent transfer in order to justify further discovery; such a requirement would cause only delay and enable Defendants to endlessly transfer funds to escape collection in perpetuity. There is no valid basis for Defendants to withhold information concerning Benworth FL's and Benworth PR's payments to other Navarro Entities, which is the type of the information that is routinely produced in fraudulent transfer actions. Accordingly, and for the reasons below, this Court should order Defendants to produce this information immediately.

## BACKGROUND

In August 2021, Womply commenced arbitration (the "**Arbitration**") against Benworth FL seeking nearly $153 million in unpaid fees plus millions more in contractual interest. (Amended Complaint dated July 1, 2024 ("Am. Compl."; ECF No. 125) ¶¶ 157–58; Benworth FL's Answer (ECF No. 150) ¶¶ 157–58.) Benworth FL is wholly owned and controlled by its Chief Executive Officer and founder Mr. Navarro. (Am. Compl. ¶ 2; Benworth FL's Answer ¶ 2.) On June 26, 2024, the arbitrator entered a corrected final award in the Arbitration ordering Benworth FL to pay Womply approximately $118 million. (ECF No. 162-2 at 73.) Benworth FL has not paid any portion of this award but has instead transferred funds out of the company to prevent Womply from recovering the funds it is owed.

In October 2022, during the deposition of Mr. Navarro in the Arbitration, Womply learned that Benworth FL had transferred more than $100 million to Benworth PR, which is 99% owned by Mrs. Navarro (Mr. Navarro's wife) and 1% owned by Mr. Navarro, leaving Benworth FL unable to satisfy an award for Womply in the Arbitration.  (Am. Compl. ¶¶ 10–11, 166; Benworth PR's Answer (ECF No.149) ¶¶ 2, 10, 12.)  On January 24, 2023, Womply filed this action against Defendants Benworth PR, Benworth FL, and the Navarros to recover the funds Defendants transferred out of Benworth FL.  Womply brings claims for actual and constructive fraudulent transfer, declaratory judgment that Benworth PR is the alter ego of and/or successor to Benworth FL, and declaratory judgment seeking to pierce the corporate veil and hold the Navarros (and the entities they control) liable for Benworth PR's obligations.  (Am. Compl. ¶¶ 215–55).

In discovery in this case, Womply received information confirming that ███████ ████████████████████████████████████████████████.  (Ex. 1 (Defendants_00226904) at -6912 ("█████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████"); Ex. 2 (Defendants_00227701) at -7713 ("█████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████ ████████")[.])[1]  In addition, Womply has discovered that the Navarros made additional transfers of funds to frustrate Womply's debt collection efforts.  Indeed, since 2021, ████████████ ███████████████████████████████████████, (Ex. 3 (Defendants_00227698)), and ████ ███████████████████████████████████████████████████ and to one or more unidentified "Related Part[ies]."  (Ex. 4 (Defendants_00240127).)

---

[1] All references to "Ex." refer to exhibits to the accompanying declaration of Joshua S. Levy.

In order to further trace where the Navarros have transferred Womply's funds, Womply sought discovery into payments to Defendants' related entities. On July 19, 2024, Womply served discovery requests regarding "Navarro Entities," which are defined as "(i) any entity in which [Mr. or Mrs.] Navarro has or had voting or operational control during the Relevant Time Period; (ii) any entity in which [Mr. or Mrs.] Navarro holds or held a majority ownership or equity interest, either directly or indirectly, during the Relevant Time Period; or (iii) any trust or similar entity for which [Mr. or Mrs.] Navarro is or was a beneficiary or beneficial owner during the Relevant Time Period." (Ex. 5 at 2; Ex. 6 at 2; Ex. 7 at 2; Ex. 8 at 2.) Womply's First Set of Interrogatories to each of Mr. and Mrs. Navarro requested that, among other things, the Navarros:

> 1.    Identify all payments or transfers received by You or a [] Navarro Entity from Benworth FL, and for each payment or transfer, list the amount of the payment or transfer; the date of the payments or transfer; and the reason for the payment or transfer.
>
> 2.    Identify all payments or transfers received by You or a [] Navarro Entity from Benworth PR, including, for each payment or transfer, the amount of the payment or transfer; the date of the payments or transfer; and the reason for the payment or transfer.
>
> 4.    Identify the entities (including trusts) in which You are, directly or indirectly, a owner, shareholder, equityholder, partner, member, beneficiary, or beneficial owner for each year from 2021 to present, including for each entity in each year, Your ownership percentage

(Ex. 5 at 5–6; Ex. 6 at 5–6.) Womply's First Set of Requests for Production to each of Mr. and Mrs. Navarro requested, among other things:

> 6.    All Documents and Communications Concerning any payments or transfers made to a [] Navarro Entity by Benworth FL.
>
> 7.    All Documents and Communications Concerning any payments or transfers made to a [] Navarro Entity by Benworth PR.
>
> 11.   All contracts and agreements between a [] Navarro Entity and Benworth FL.

>       12.     All contracts and agreements between a [] Navarro Entity and Benworth
> PR.

(Ex. 7 at 7-8; Ex. 8 at 7.)

Womply similarly requested that Benworth FL and Benworth PR each produce "[a]ll Documents and Communications Concerning payments or distributions from You to Mr. Navarro, any B. Navarro Entity, or any C. Navarro Entity." (Ex. 9 at 9; Ex. 10 at 8.) This Court ordered Defendants to respond to Womply's discovery requests by October 7, 2024. (ECF No. 161.)

On October 7, the Navarros served partial Answers and Objections to Womply's First Set of Interrogatories and, on October 11 (four days after the Court-ordered deadline), the Navarros served "supplementary" answers and objections. (Exs. 11–14.) The Navarros objected to Interrogatory Nos. 1, 2, and 4 on relevance grounds, refused to identify any Navarro Entities, and refused to provide any information about payments or transfers to any Navarro Entities. (Ex. 11 at 5–8; Ex. 12 at 4–7; Ex. 13 at 3–4; Ex. 14 at 2–3.) The Navarros also served Answers and Objections to Womply's First Set of Requests for Production of Document that likewise objected to Request Nos. 6, 7, 10, and 11 on relevance grounds and refused to produce any documents or information regarding any Navarro Entities. (Ex. 15 at 10–13; Ex. 16 at 10–13.) Benworth FL and Benworth PR likewise objected to Womply's requests on relevance grounds and refused to produce any documents or information concerning any Navarro Entity. (Ex. 17 at 17–18; Ex. 18 at 18–19.)

On October 10, 2024, the parties met and conferred by videoconference about Defendants' discovery responses. (Ex. 19 at 17–21.) During the meet-and-confer call, Womply and the Federal Reserve Bank of San Francisco ("**Reserve Bank**"; together with Womply, "**Plaintiffs**") "stated that any payments from Benworth FL or Benworth PR to any B. Navarro and C. Navarro entities are highly relevant because they show Benworth FL and Benworth PR paying the Navarros

through entities they control." (*Id.* at 5.)  They also explained that they "have no way of knowing which entities are being used to channel funds and that Defendants must provide that information." (*Id.*)  As a compromise, "Defendants represented that, in response to Womply's interrogatories, Defendants will produce a full list of all B. Navarro and C. Navarro entities as defined by the RFPs by Friday, October 11." (*Id.*)  Defendants did not do so.

On October 17, 2024, the parties met and conferred again.  (*Id.* at 10–13.)  During the meet-and-confer call, "Defendants withdrew their representation from the October 10 meet-and-confer call that they would produce a list of names of all entities controlled by Mr. and/or Mrs. Navarro. Defendants now state that they are standing on their relevance objection and will not produce such information." (*Id.* at 3.)  "Womply and the Reserve Bank responded that Benworth FL and Benworth PR transferring money to the Navarros through entities they control is directly relevant to their fraudulent transfer claims and that Plaintiffs would not know the names of these entities, which are in Defendants' possession, custody, and control.  Womply further responded that such information is relevant to its alter ego/successor liability claims and veil piercing claim by showing how the Navarros moved and controlled funds and undercapitalized Benworth FL." (*Id.*) Defendants did not respond to any of these arguments and, instead, claimed "they are willing to reconsider their position if Plaintiffs provide case law on this issue." (*Id.*)

On October 21, 2024, two business days later, Womply emailed Defendants case law in which a court ordered "defendants in [a] fraudulent transfer action to respond to interrogatories seeking to identify 'all of Defendants' Affiliated Entities, including the identity of all shareholders, owners, managers, and/or directors.'" (*Id.* at 10 (quoting *VeroBlue Farms USA, Inc. v. Wulf*, 2019 WL 12043593, at *2–4 (N.D. Tex. Sept. 10, 2019)).)  Defendants then ignored Womply for weeks. On October 29, 2024, Defendants abruptly cancelled a scheduled meet-and-confer call minutes

beforehand and did not reschedule.  (*Id.* at 6.)  On November 8, 2024, 18 days after Womply sent

the requested case law, Defendants belatedly responded without any authority that "[w]e still don't

understand how the Navarro-controlled entities information is relevant."  (*Id.* at 2.)  Because

Defendants are withholding highly relevant information about the entities to which they have

fraudulently transferred funds owed to Womply, Womply declared impasse and files this Motion.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 26(b)(1) permits a party to obtain discovery that is

'relevant to any party's claim or defense.'"  *Torres-Román v. Martínez-Ocascio*, 2023 WL

8372045, at *4 (D.P.R. Dec. 1, 2023) (Méndez-Miró, J.) (quoting Fed. R. Civ. P. 26(b)(1)).

"Because 'discovery itself is designed to help define and clarify the issues, the limits set forth in

Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could

lead to other matters that could bear on, any issue that is or may be in the case.'"  *Id.* (quoting

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (cleaned up); *see also Parker

Waichman LLP v. Salas LC*, 328 F.R.D. 24, 26 (D.P.R. 2018) ("In the context of pretrial discovery,

'relevance' is broadly and liberally interpreted.") (cleaned up); 8 Charles A. Wright, Arthur R.

Miller, et al., Federal Practice & Procedure § 2008 (3d ed. 2024) ("Discovery is not limited to the

issues raised by the pleadings, for discovery itself is designed to help define and clarify the

issues.") (citing *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998)).

"When a party resists the production of evidence, it bears the burden of establishing lack

of relevancy," and "[t]he objecting party must show specifically how each interrogatory or request

for production is not relevant."  *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*,

319 F.R.D. 422, 427 (D.P.R. 2016) (cleaned up).  "If a party fails to answer an interrogatory

submitted under Rule 33 or fails to produce documents as requested under Rule 34, the opposing

party may move for an order compelling discovery." *Id.* (cleaned up) (quoting Fed. R. Civ. P. 37(a)(3)(B)).

## ARGUMENT

The Navarros object to providing the names of the Navarro Entities solely on relevance grounds. The Navarros do not—and cannot—argue that producing a list of names is unduly burdensome or disproportionate to the needs of this more than $100 million action. The Navarros also do not argue that producing documents, communications, contracts, or agreements between Navarro Entities and the Benworth FL and Benworth PR is unduly burdensome or disproportionate to the needs of this case. Thus, to obtain the requested discovery, Womply need only point to a single theory of relevance. The names of the Navarro Entities are independently relevant to *each* of Womply's claims and requested relief, any one of which is sufficient to satisfy the low bar of relevance at the discovery stage.

*First*, the Navarro Entities are relevant to trace funds for Womply's fraudulent transfer claims. Womply alleges that "Benworth FL transferred $171 million, and possibly much more," to entities the Navarros own and control, including Benworth PR, "with the actual intent to hinder or delay Womply's efforts to collect its fees from Benworth FL, or to defraud Womply." (Am. Compl. ¶¶ 218–21.) Defendants' limited document production in this action shows that Benworth FL and Benworth PR both also transferred funds to other entities the Navarros own and/or control, which would likewise hinder or delay Womply's efforts to collect the fees it is owed. (*See supra* at 2–3.) Because the funds Womply seeks to recover have now been transferred to Navarro Entities, Womply will not be able to recover on its fraudulent transfer claims without learning the names of these Navarro Entities. Discovery regarding such additional or subsequent fraudulent transfers—which a plaintiff would have no way of knowing about without discovery—is so self-

evidently relevant that it is routinely produced without any litigation. *See, e.g.*, *Nagel v. Westen*, 59 Cal. App. 5th 740, 744–46 (2021) (reversing dismissal of fraudulent transfer action because plaintiffs did not need to "identify[] a third party transferree who received their assets"); *Mane FL Corp. v. Beckman*, 355 So.3d 418, 422–23 (Fla. 3d DCA 2008) (granting summary judgment for plaintiff in fraudulent transfer action where discovery showed that (1) limited liability company owned by husband and wife used fraudulently obtained funds to purchase real property, (2) company transferred that property to the company owners who sold the property, (3) the owners used the sale proceeds to buy a condominium unit, and (4) the owners transferred the condominium unit to a new company they controlled).[2]

In the rare fraudulent transfer cases in which defendants tried to withhold information about entities they own or control to which they transferred funds, the court ordered defendants to produce this information. *See, e.g.*, *VeroBlue*, 2019 WL 12043593, at *2–4. In *VeroBlue*, for example, a bankrupt company brought fraudulent transfer claims against its founders alleging that

---

[2] Womply does not address choice-of-law issues at this stage because all the relevant jurisdictions recognize "fraudulent conveyance actions [that] are both remedial in nature and auxiliary to underlying actions to recover debts (which can sound in tort, contract, or some admixture of the two)." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41 (1st Cir. 2020); *see, e.g.*, Cal Civ. Code § 3439; Fla. Stat. § 726; 31 P.R. Laws Ann. § 9631. Womply cites California law because this case arises from contractual debts Benworth FL owes to Womply, which are governed by California law. (Am. Compl. Ex. 2 § 9; *id.* Ex. 3 § 4.) Womply also cites Florida law because Florida has the "most significant relationship" to this action, *Nieto-Vincenty v. Valledor*, 22 F. Supp. 3d 153, 161 (D.P.R. 2014), because, *inter alia*, (1) Womply contracted with Benworth FL, a Florida limited liability company located in Florida and owned by a Florida citizen, and therefore expected to deal with a Florida entity; (2) the funds at issue were transferred from Florida and, should Plaintiffs prevail, the funds will be returned to Florida; and (3) California law provides that fraudulent transfer claims are "governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred," which is Florida. Cal Civ. Code § 3439.10(b). Should this Court seek to conduct a choice-of-law analysis at this stage, Womply respectfully requests leave to fully brief this issue. *See Foisie*, 967 F.3d at 42 ("emphasiz[ing] that the optimal timing for a choice-of-law determination is case-specific," and reversing because "the district court's choice-of-law determination was premature").

they "transferred 1.25 million shares of stock to another company they owned and controlled" that "benefitted them personally and not VeroBlue." 465 F. Supp. 3d 633, 644 (N.D. Tex. 2020). The plaintiff served interrogatories and document requests seeking to "[i]dentify all of Defendants' Affiliated Entities, including the identity of all shareholders, owners, managers, and/or directors," "[i]dentify any and all entities (including trusts) in which any of the Defendants, any of the Defendants' Affiliated Entities, and/or any member of Defendants' Family has owned a beneficial or equitable interest or has or is serving as a trustee or beneficiary," and obtain "financial information" regarding these entities. 2019 WL 12043593, at *4–5. The defendants objected to these interrogatories and document requests as irrelevant and overbroad and the court overruled defendants' objections, holding that "the information that [plaintiff] seeks through these [] interrogatories are relevant to the claims in, and proportional to the needs of this case." *Id.* at *5. So too here, the names and "financial information" regarding the Navarros' "related entities" are relevant to Womply's fraudulent transfer claims. *Id.* at *3. The fact that *VeroBlue* "was brought by a company against its insiders" who transferred funds "for the benefit of the insiders' affiliates entities" while Womply brings this action as a judgment creditor against the Navarros as insiders of Benworth FL and Benworth PR who transferred funds to entities they control for to benefit themselves does not affect the relevance analysis. (Ex. 19 at 2.)

**Second**, Defendants' transfers to the Navarro Entities are relevant to the merits of Womply's actual and constructive fraudulent transfer claims. It is settled law in fraudulent transfer actions that "the court must 'look beyond the particular transfers in question to the entire circumstance of the transactions'" to "arrive at the substance of the transactions." *In re Ginn-La St. Lucie, Ltd., LLP*, 2010 WL 8756756, at *4 (Bankr. S.D. Fla. Dec. 10, 2010) (quoting *In re*

*Chase & Sanborn Corp.*, 848 F.2d 1196, 1199 (11th Cir. 1988)).[3]  When a defendant transfers

funds through multiple transactions, courts routinely "collapse[] transactions" where "a transfer is

only a step in a general plan." *Id.* (quoting *Orr*, 991 F.2d at 35) (cleaned up).[4]  Here, Defendants

transferred the funds Benworth FL owes to Womply first to Benworth PR and then to the Navarro

Entities.  Discovery regarding the Navarro Entities is therefore directly relevant to "the economic

realities of the transaction" and "'the knowledge or intent of the parties involved in the

transaction.'"  *Id.* (quoting *Best Prod.*, 157 B.R. at 229).   Such discovery is also relevant to

Womply's constructive fraudulent transfer claim because, should discovery show that the funds

merely passed through Benworth PR on the way to the Navarro Entities, this demonstrates that

Benworth FL transferred funds to Benworth PR "[w]ithout receiving a reasonably equivalent value

in exchange for the transfer."  Cal. Civ. Code § 3439.04(a)(2); Fla. Stat. § 726.105(1)(b).

Contrary to these principles, Benworth seeks to withhold all discovery regarding the

Navarro Entities because "[t]he fraudulent transfer claim" alleged in the Amended Complaint

"seeks to unwind only transfers between Benworth FL and Benworth PR."  (Ex. 19 at 2.)  But

"[d]iscovery is not limited to the issues raised by the pleadings, for discovery itself is designed to

---

[3] *See also Boyer v. Crown Stock Dist., Inc.*, 587 F.3d 787, 793 (7th Cir. 2009) ("[F]raudulent conveyance doctrine . . . is a flexible principle that looks to substance, rather than form."); *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) ("An allegedly fraudulent conveyance must be evaluated in context[.]") (cleaned up); *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635–36 (2d Cir. 1995); *United States v. Tabor Ct. Realty Corp.*, 803 F.2d 1288, 1302–03 (3d Cir. 1986); *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 497 (Bankr. D. Del. 2010); *In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 74 (Bankr. N.D. Ill. 2002) ("Courts will eschew appeals to form which obscure the substance of a transaction.").

[4] *See also Marshall v. Comm'r of Internal Revenue*, 782 F. App'x 565, 567 (9th Cir. 2019) (affirming that "the multiple steps in the transaction through which the Marshalls sold their MAC stock could be 'collapsed' and deemed a 'transfer'"); *Slone v. Comm'r*, 896 F.3d 1083, 1085–88 (9th Cir. 2018) (holding that stock sale could be collapsed in fraudulent transfer action); *In re Best Prod. Co.*, 157 B.R. 222, 229 (Bankr. S.D.N.Y. 1993) ("In reality, collapsing transactions is little more than an effort on the part of the court to focus not on the formal structure of a transaction, but rather on the knowledge or intent of the parties involved in the transaction.").

help define and clarify the issues."  8 Wright & Miller § 2008 (citing *Klonoski*, 156 F.3d 255).

Indeed, Womply would have no way of knowing about the transfers to the Navarro Entities without

the benefit of discovery.  Defendants thus seek to place Womply in a Catch-22 in which Womply

cannot learn about Defendants' efforts to transfer funds owed to Womply unless Womply already

knows about such transfers.  This turns discovery law on its head.  Womply is not required to

amend its complaint each time it learns about yet another transfer by Defendants, which will result

only in delay that will enable Defendants to endlessly transfer funds without paying Womply.

**Third**, Defendants' transfers to the Navarro Entities are relevant to show intent for

Womply's actual fraudulent transfer claims.  "[T]he party pleading fraudulent intent is customarily

permitted to rely on certain badges of fraud," which are "circumstances so commonly associated

with fraudulent transfers that their presence gives rise to an inference of intent."  *Foisie*, 967 F.3d

at 51 (cleaned up; collecting cases).  For example, it is a badge of fraud if "[t]he debtor retained

possession or control of the property transferred after the transfer," "[t]he debtor removed or

concealed assets," or "[t]he debtor transferred the essential assets of the business to a lienor who

transferred the assets to an insider of the debtor."  Cal. Civ. Code §§ 3439.04(b)(2)–(3), (11); Fla.

Stat. §§ 726.105(2)(b)–(c), (k).  Evidence showing that Benworth FL and/or Benworth PR

transferred funds to entities controlled by the Navarros is directly relevant to each of these badges

of fraud.  Without knowing the names of such entities or having access to their underlying

documentation, Womply will be unable to determine which transfers were fraudulent.

**Fourth**, the Navarro Entities are relevant to Womply's alter ego and veil piercing claims.

Womply alleges that "Benworth PR should be held liable for Benworth FL's debt to Womply,

because Benworth PR is the alter ego of Benworth FL," because, among other reasons,

"Mr. Navarro has control over the assets of both Benworth PR and Benworth FL."  (Am. Comp.

¶¶ 241–48.)  Womply also alleges that "Mr. and Ms. Navarro should be held personally liable for satisfying Benworth PR's obligations because, among other reasons, the Navarros have "extensive or pervasive control over Benworth PR," and "Mr. Navarro has control over the assets of both Benworth PR and Benworth FL."  (*Id.* ¶¶ 249– 53.)  Under both Puerto Rico and Florida law, "the alter ego is the person in control" of the entity.  *United States v. JG-24, Inc.*, 331 F. Supp. 2d 14, 63 (D.P.R. 2004) (collecting cases); *see also United States v. Planes*, 656 F. Supp. 3d 1302, 1331 (M.D. Fla. 2023) (holding that "[a]lter ego liability applies" to "a corporate officer who is in control of a corporation") (citing *Walton v. Tomax Corp.*, 632 So.2d 178, 181 n.2 (Fla. 5th DCA 1994)).  This Court can also "disregard the corporate entity" to hold "the individual[s] behind the corporate veil . . . personally liable" based on "undercapitalization."  *JG-24*, 331 F. Supp. 2d at 63 (collecting cases).  Discovery into Benworth FL and Benworth PR's transfers to the Navarro Entities is therefore relevant to show the Navarros' control over and undercapitalization of Benworth FL and Benworth PR, which is directly relevant to Womply's alter ego and veil piercing claims.

Defendants appear to concede that Mr. Navarro has "[c]ontrol over assets" of Benworth FL and Benworth PR, and do not dispute that the Navarros "undercapitalized Benworth FL" and Benworth PR.  (Ex. 19 at 2.)  Instead, Defendants assert that, under Womply's alter ego and veil piercing claims, "it would be the Navarros in their personal capacity, not any Navarro-controlled entity, who would be held liable."  (*Id.*)  Not so.  Once the corporate veil has been pierced, whether by the alter ego doctrine or otherwise, "the fiction of the separate corporate entity may be property disregarded" and all assets over which the Navarros exercise "domination and control" are subject to attachment.  *Industrias Avícolas de P.R., Inc. v. Granjas Cupey, Inc.*, 2002 WL 1040182, at *8 (P.R. Cir. Apr. 8, 2002) (quoting 1 Fletcher Cyclopedia of the Law of Corporations § 41.35).

**Finally**, the Navarro Entities are relevant to the remedies Womply and the Reserve Bank are seeking.  Womply is seeking, among other things, "[r]escission of the Fraudulent Transfer" from Benworth FL to Benworth PR.  The Reserve Bank is seeking "(i) [a] declaration that the Reserve Bank has a first-priority lien and security interest in the Defendants' assets to the extent such assets constitute, in whole or in part, PPP Collateral; (ii) [a] declaration that Womply may only from the Defendants' assets to the extent such assets are not PPP Collateral; [and] (iii) [a] declaration that as to any non-PPP Collateral assets, the Reserve Bank may recover at least *pro rata* with  Womply."  (Reserve Bank Complaint in Intervention dated Aug. 2, 2024 ("Reserve Bank Compl."; ECF No. 146) at 17.)[5]  To determine which funds are "PPP Collateral" subject to the Reserve Bank's lien and which are not, Plaintiffs must trace the flow of funds from Benworth FL to Benworth PR and the Navarro Entities.  Discovery regarding the Navarro Entities is therefore relevant to the remedies Womply and the Reserve Bank are seeking, and necessary to draft sufficiently particularized declaratory and/or injunctive relief.  *See* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction" must "describe in reasonable detail . . . the act or acts restrained or required.").

## CONCLUSION

For the foregoing reasons, Womply respectfully requests that this Court (1) order the Navarros to respond to Womply's Interrogatory Nos. 1, 2, and 4 to the Navarros, including identifying the names of all Navarro Entities, within one week; (2) order the Navarros to produce

---

[5] The Reserve Bank defines "PPP Collateral" as "(i) all [Benworth FL's] rights, title, and interest in property (wherever located) that is identified on a collateral schedule, identified on the Reserve Bank's books and records as pledged to, or subject to a security interest, or that is in the possession or control of the Reserve Bank, (ii) all documents, books and records, including programs, tapes, and related electronic data processing software, evidencing or relating to the foregoing, and (iii) all proceeds and products of the foregoing, including but not limited to interest, dividends, insurance, rents and refunds."  (Reserve Bank Compl. ¶ 12 n.2.)

all documents responsive to Womply's Requests for Production Nos. 6, 7, 11, and 12 to the Navarros within 14 days; and (3) order Benworth FL and Benworth PR to produce all documents responsive to Womply's Request for Production No. 18 to Benworth FL and Benworth PR within 14 days.

Dated: December 6, 2024

*Of Counsel*

Willkie Farr & Gallagher LLP                      Respectfully submitted,

By: */s/ Alexander L. Cheney*                      By: */s/ Alejandro J. Cepeda Diaz*

Alexander L. Cheney (admitted *pro hac vice*)     Alejandro J. Cepeda Diaz
333 Bush St                                       USDC-PR 222110
San Francisco, CA 94104                           McConnell Valdés LLC
(415) 858-7400                                    270 Muñoz Rivera Ave.
acheney@willkie.com                               Hato Rey PR 00918
                                                  Tel: (787) 250-5637
Stuart R. Lombardi (admitted *pro hac vice*)      Email: ajc@mcvpr.com
Willkie Farr & Gallagher LLP
787 7th Avenue                                    *Attorneys for Plaintiff and Defendant in*
New York, NY 10019                                *Intervention Oto Analytics, LLC*
(212) 728-8000
slombardi@willkie.com

Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
jlevy@willkie.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 6, 2024 the foregoing document was filed with the Clerk of the Court using CM/ECF, which sent notices to all parties receiving notifications through the CM/ECF system.

Dated: December 6, 2024              By: */s/ Alejandro J. Cepeda Diaz*

*Attorney for Plaintiff Oto Analytics, LLC*