# EXHIBIT 4

Case 3:23-cv-01034-GMM    Document 188-4    Filed 12/13/24    Page 1 of 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FEDERAL RESERVE BANK OF SAN FRANCISCO,<br><br>    Plaintiff,<br><br>v.<br><br>BENWORTH CAPITAL PARTNERS PR LLC, BENWORTH CAPITAL PARTNERS LLC, BERNARDO NAVARRO and CLAUDIA NAVARRO,<br><br>    Defendants. | Civil No. 24-01313 (GMM) |
| OTO ANALYTICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BENWORTH CAPITAL PARTNERS PR LLC, BENWORTH CAPITAL PARTNERS LLC, BERNARDO NAVARRO and CLAUDIA NAVARRO,<br><br>Defendants. | Civil No. 23-01034 (GMM) |
| FEDERAL RESERVE BANK OF SAN FRANCISCO,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>OTO ANALYTICS, LLC, BENWORTH CAPITAL PARTNERS PR LLC, BENWORTH CAPITAL PARTNERS LLC, BERNARDO NAVARRO and CLAUDIA NAVARRO,<br><br>Defendants in Intervention. | |

**PLAINTIFF FEDERAL RESERVE BANK OF SAN FRANCISCO'S
FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT CLAUDIA
NAVARRO**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local

Rule 26, plaintiff Federal Reserve Bank of San Francisco (the "Reserve Bank"), by and through

its counsel, requests that defendant Claudia Navarro ("Ms. Navarro") produce for examination,

inspection and copying, within thirty (30) days of the service hereof, all documents,

electronically stored information, and tangible things described below (the "Requests") at the

offices of O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Ste. 800, San Juan, PR 00918-1813,

or at such other place or time, or in such other manner, as the parties mutually agree. The

following Requests are to be read in accordance with the Definitions and Instructions below. The

Reserve Bank reserves the right to serve additional Requests.

## DEFINITIONS

The following Definitions apply throughout these Requests without regard to

capitalization.

1.    "2021 Transfer" refers to the transfer or transfers of approximately $171 million

from Benworth FL to Benworth PR in 2021, as referenced in Paragraph 2 of the Womply

Complaint.

2.    "ALSA" means the Amended Loan Servicing Agreement, dated September 23,

2021, by and between Benworth FL and Benworth PR.

3.    "B. Navarro Deposition" refers to the deposition of Mr. Navarro in the JAMS

Arbitration styled, *Oto Analytics, Inc. (d/b/a Womply) v. Benworth Capital Partners LLC, Ref.*

*No. 1210038203*, on October 26, 2022, and December 16, 2022, including without limitation as

referenced in Paragraph 166 of the Womply Complaint.

2

4.      "B. Navarro Entity" refers to (i) any entity in which Mr. Navarro has or had voting or operational Control, or shares or has shared such Control on a co-equal basis with another, during the Relevant Time Period; (ii) any entity in which Mr. Navarro holds or held a majority or co-equal ownership or equity interest, either directly or indirectly, during the Relevant Time Period; or (iii) any trust or similar entity for which Mr. Navarro is or was a trustee, beneficiary, or beneficial owner during the Relevant Time Period.

5.      "BDO Business" refers to the "business" with the accounting firm "BDO," as referenced in the B. Navarro Deposition at 348:15–349:23.

6.      "Benworth FL" refers to Benworth Capital Partners LLC and its members, managers, agents, partners, owners, associates, employees, representatives, consultants, predecessors in interest, successors, subsidiaries, assignees, licensees, or other persons acting or purporting to act on their behalf, and all of their present or former subsidiaries, divisions, and/or affiliates.

7.      "Benworth PR" refers to Benworth Capital Partners PR LLC and its members, managers agents, partners, owners, associates, employees, representatives, consultants, predecessors in interest, successors, subsidiaries, assignees, licensees, or other persons acting or purporting to act on their behalf, and all of their present or former subsidiaries, divisions, and/or affiliates.

8.      "C. Navarro Entity" refers to (i) any entity in which Ms. Navarro has or had voting or operational Control, or shares or has shared such Control on a co-equal basis with another, during the Relevant Time Period; (ii) any entity in which Ms. Navarro holds or held a majority or co-equal ownership or equity interest, either directly or indirectly, during the

Relevant Time Period; or (iii) any trust or similar entity for which Ms. Navarro is or was a trustee, beneficiary, or beneficial owner during the Relevant Time Period.

9. "Communication(s)" includes every manner or method of disclosure or transfer or exchange of information however made. This includes without limitation statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings and meetings, regardless of whether such communications are or were conducted in person, by telephone, mail, email, text message, chat, instant message, facsimile, personal delivery, or otherwise.

10. "Concern," "evidence," "refer, "relate to, "concerning," "evidencing," "referring," or "relating to" any given subject means all documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, or refer or relate, directly or indirectly, in any way, to the subject matter identified.

11. "Control" means (i) ownership, control, or power to vote 25 percent or more of the outstanding shares of any class of voting securities of the entity, directly or indirectly or acting through one or more other persons; (ii) control in any manner over the election of a majority of the directors, trustees, or general partners (or individuals exercising similar functions) of the entity; (iii) the power to exercise, directly or indirectly, a controlling influence (as that term is used in 12 U.S.C. § 1841(a)(2)(C)) over the management or policies of the entity; or (iv) conditioning in any manner the transfer of 25 percent or more of the outstanding shares of any class of voting securities of an entity upon the transfer of 25 percent or more of the outstanding shares of any class of voting securities of another entity. For purposes of these Requests, an entity is deemed to control voting securities or assets owned, controlled, or held, directly or indirectly: (i) by the entity, or by any subsidiary of the entity; (ii) that the entity has

4

power to vote or to dispose of; (iii) in a fiduciary capacity for the benefit of the entity or any of its subsidiaries; (iv) in a fiduciary capacity (including by pension and profit-sharing trusts) for the benefit of the shareholders, members, or employees (or individuals serving in similar capacities) of the entity or any of its subsidiaries.

12.    "Dividend Payments" refers to the Payment of any dividend by Benworth FL, including without limitation to Mr. Navarro of "at least $48,240,502.75, a portion of which was paid between 2021 and 2023" and dividends paid to Mr. Navarro of "at least $804,860.89 between January 1, 2024 and May 23, 2024," as described in Paragraph 58 of the Reserve Bank Complaint.

13.    "Document(s)" includes without limitation any Communications, writings, drawings, graphs, charts, photographs, phone records, tape recordings, notes, diaries, calendars, checkbooks, books, papers, accounts, audio, electronic or videotape recordings, emails, text messages, and any computer-generated, computer-stored, or electronically-stored matter, and other data compilations from which information can be obtained and translated, if necessary, into reasonably useable form, including documents stored on laptop computers, personal digital assistants (PDAs), Blackberrys, iPhones, iPads, and other similar devices.

14.    "Financial Statements" refers to, without limitation, the following, whether audited or unaudited and whether final, interim, pro forma, complete or partial:  consolidated, consolidating or unconsolidated balance sheets, statements of earnings, revenues, profits and losses, budgets, additional paid-in capital, retained earnings or source of application of funds, cash flow statements, notes to each of such statements, and any and all other statements and notes that relate to such Person's past or present financial condition, including on a cash and accrual basis.

15.    "LSA" refers to the Loan Servicing Agreement, dated May 31, 2021, by and between Benworth FL and Benworth PR.

16.    "Mr. Navarro" refers to Defendant Bernardo Navarro.

17.    "Ms. Navarro" refers to Defendant Claudia Navarro.

18.    "Payment" means any and all exchanges of funds that may also be referred to as a payment, coupon payment, special coupon payment, redemption payment, interest payment, dividend payment, distribution payment, extraordinary interest payment, partial redemption payment, principal repayment, rebate, loan, wire transfer and or fund transfer payment.

19.    "Person" or "Persons" or "Entity" or "Entities" includes without limitation all natural persons, associations, businesses, groups, organizations, corporations, partnerships, or other business associations and all other legal or governmental entities or associations.

20.    "Pre-Payment" means any Payment by Benworth FL to Benworth PR prior to Benworth PR's completion of services Concerning PPP loans, including without limitation as alleged in Paragraph 57 of the Reserve Bank Complaint.

21.    "Reserve Bank Complaint" means the Complaint filed by the Reserve Bank in this action dated July 10, 2024.

22.    "SBA" refers to the United States Small Business Administration.

23.    "Solicitation Process" refers to the process by which Benworth FL solicited proposals for the services ultimately performed by Benworth PR under the LSA and/or the ALSA, including without limitation from "Professional Bank, Lendio, Lenders Cooperative and . . . BDO," as discussed in the B. Navarro Deposition at 285:4–287:16, 348:3–349:15.

24.    "Transfer Pricing Study" means the 2021 and 2022 Transfer Price Analyses prepared by Forvis Mazars and identified in Benworth FL's Rule 26(a) Initial Disclosures, as well as any other transfer pricing studies or analyses sought or obtained by Benworth FL.

25.    "Womply Action" means the action styled Oto Analytics, LLC v. Benworth Capital Partners PR LLC et al., Civil No. 23-01034 (D.P.R.).

26.    "Womply Complaint" means the Amended Complaint filed by Oto Analytics, LLC (d/b/a Womply) on July 1, 2024 in the Womply Action.

27.    "You," "Your," or "Yours" refers to Ms. Navarro, as well as any attorney, accountant, representative, or other person(s) purporting to act on Your behalf.

28.    To bring within the scope of these Requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply: (i) the use of masculine, feminine, or neuter pronouns shall not exclude other genders; (ii) the word "including" shall be read to mean including without limitation; (iii) the present tense shall be construed to include the past tense and vice versa; (iv) references to members, managers, employees, officers, directors, owners, agents, or representatives shall include both current and former members, managers, employees, officers, directors, owners, agents, and representatives; (v) the words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive; (vi) the words "any" and "all" are interchangeable; (vii) the use of the singular form of any word includes the plural and vice versa.

29.    Any other capitalized terms are used as defined in the Reserve Bank Complaint.

30.    All words and phrases not otherwise defined herein shall be construed in accordance with their plain and ordinary meaning.

7

**INSTRUCTIONS**

1.      For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation.

2.      Unless instructed otherwise, each Request shall be construed independently and not by reference to any other Request for the purpose of limitation or exclusion, except that each Request shall not be construed to call for Documents that are called for by previous Requests.

3.      You must respond to each Request separately and fully, unless it is objected to. If You object to any Request, or to any Definition or Instruction applicable thereto, state with specificity the objection and legal basis for such objection with citations to appropriate legal foundations for such objection. If You object to only a portion of the Request, or to any Definition or Instruction applicable thereto, answer the portion of the Request to which You do not object.

4.      If, in responding to these Requests, You claim any ambiguity in interpreting a Request, or in a Definition or Instruction applicable thereto, You should not use that claim as a basis for refusing to respond, but You shall set forth as part of Your response to such Request the language deemed to be ambiguous and the interpretation used in responding to the Request.

5.      In responding to these Requests, You are required to produce all requested Documents in Your possession, custody, or control, including without limitation all requested Documents in the possession, custody, or control of any of Your predecessors, successors, assignees, principals, owners, employees, agents, attorneys, or other Persons acting or purporting to act on Your behalf, regardless of location.

6.      If any portion of a Document is responsive to any Request, the entire Document shall be produced.

7.     The Documents shall be produced as they are kept in the ordinary course of business. A request for a Document shall be deemed to include a request for any and all file folders or binders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

8.     All documents requested herein shall be produced in their entirety, along with any attachments, drafts, and non-identical copies, including copies that differ due to handwritten notes or other notes or markings.

9.     In the event that a copy of a Requested Document is not identical to any other copy of the same Document in Your possession, custody, or control, all non-identical copies shall be produced. A Document shall be deemed to be within Your control if You have the right to secure the Document or a copy of the Document from another person having possession or custody of the Document.

10.    The fact that a Document is produced by another party does not relieve You of Your obligation to produce Your copy of the same Document, even if the two Documents are identical.

11.    If any of these Documents cannot be produced in full, produce them to the extent possible, specifying the reasons for Your inability to produce the remainder and stating whatever information, knowledge, or belief You have concerning the unproduced portion.

12.    If You withhold any of the requested Documents or portions of Documents under a claim of privilege, immunity, or protection, including the attorney-client privilege or work-product doctrine, You shall provide a written privilege log that sets forth the following information: (i) each document withheld; (ii) the type of document withheld (memorandum, letter, report, e-mail, etc.); (iii) the date of its creation, (iv) its subject matter; (v) its author; (vi)

9

all individuals who drafted, sent, received or were to receive any copy or version of it; and (vii) the basis for withholding the document.

13.    If information is redacted or otherwise withheld from a Document produced in response to a Request, You shall identify the redaction or otherwise withheld information by stamping the word "Redacted" on the Document at each place from which information has been redacted or otherwise withheld, and separately log each such redaction on the privilege log.

14.    Documents, including but not limited to electronically stored information, shall be produced as TIFF image files and document-level extracted text or optical character recognition (OCR) text files for scanned documents and redacted documents, and shall be accompanied by an image load file (OPT file) and a metadata load file (DAT file). Documents shall be delivered on CD, DVD, USB, or hard drive media, or by file transfer protocol, with clearly marked Bates ranges. The Reserve Bank is available to confer about a stipulation regarding electronically stored information and a protective order and confidentiality agreement pursuant to Rule 26(c) of the Federal Rules.

15.    Unless otherwise specified, these Requests pertain to the period January 1, 2020 to the present (the "Relevant Time Period"). A request for a Document shall be deemed a Request for all non-identical versions created, implemented, in place, or under consideration during the Relevant Time Period.

16.    If there are no documents responsive to any particular request, the response shall state so in writing.

17.    In the event that any document called for by these Requests has been destroyed or discarded, You shall provide a written document identifying the document so lost, discarded, or destroyed as completely as possible, providing at least the following information: (i) the type of

document withheld; (ii) any addressor and addressee; (ii) any indicated or blind copy recipients; (iii) the document's date, subject matter, number of pages, and attachments or appendices; (iv) all Persons to whom the document was distributed, shown, or explained; (v) the document's date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; and (vi) the persons authorizing and carrying out such destruction or discard.

18.     These Requests are continuing in nature. If You discover further or different information, You are required to serve supplementary and amended responses relevant to any of these Request and/or produce additional Documents.

## REQUESTS FOR PRODUCTION

1.     All Documents and Communications Concerning the drafting and negotiation of the LSA.

2.     All Documents and Communications Concerning the drafting and negotiation of the ALSA.

3.     All Documents and Communications Concerning the 2021 Transfer, any Dividend Payments, or any Pre-Payment.

4.     All Documents and Communications Concerning any Payments, dividends, distributions, or transfers made by or on behalf of Benworth FL, whether directly or indirectly, to You or for Your benefit.

5.     All Documents and Communications Concerning any Payments, dividends, distributions, or transfers made by or on behalf of Benworth PR, whether directly or indirectly, to You or for Your benefit.

11

6.      All Documents and Communications Concerning any Payments, dividends, distributions, or transfers made by or on behalf of Benworth FL, whether directly or indirectly, to or for the benefit of a C. Navarro Entity.

7.      All Documents and Communications Concerning any Payments, dividends, distributions, or transfers made by or on behalf of Benworth PR, whether directly or indirectly, to or for the benefit of a C. Navarro Entity.

8.      All Documents and Communications Concerning any Payments, dividends, distributions, or transfers made by or on behalf of You or a C. Navarro Entity, whether directly or indirectly, to or for the benefit of Mr. Navarro or a B. Navarro Entity.

9.      All Documents and Communications Concerning any Payments, dividends, distributions, or transfers made by or on behalf of Mr. Navarro or a B. Navarro Entity, whether directly or indirectly, to or for the benefit of You or a C. Navarro Entity.

10.      All Documents and Communications Concerning any Payments, distributions, dividends, or transfers to any immediate or mediate transferee of any recipient described in Requests 3 through 9.

11.      All Documents and Communications Concerning the Transfer Pricing Study.

12.      All Documents and Communications Concerning the Solicitation Process.

13.      All Documents and Communications Concerning the BDO Business.

14.      All contracts and agreements between You and Benworth FL, including without limitation all employment agreements, consulting agreements, services agreements, ownership agreements, and voting agreements.

12

15.     All contracts and agreements between You and Benworth PR, including without limitation all employment agreements, consulting agreements, services agreements, ownership agreements, and voting agreements.

16.     All contracts and agreements between a C. Navarro Entity and Benworth FL.

17.     All contracts and agreements between a C. Navarro Entity and Benworth PR.

18.     All Documents and Communications Concerning the formation of Benworth PR.

19.     All Documents and Communications Concerning the financial condition or solvency of Benworth FL or Benworth PR.

20.     All Documents and Communications Concerning the services performed by Benworth PR, including without limitation all Documents and Communications between You and any members or employees of the SBA, the United States Congress, or the Reserve Bank.

21.     All of Ms. Navarro's Financial Statements and tax returns, including without limitation all federal, state, municipal, and territorial tax returns, for the years (or partial years) 2020, 2021, 2022, 2023, and 2024.

22.     Documents sufficient to show Ms. Navarro's home address and any real property owned, in whole or in part, by Ms. Navarro or any C. Navarro Entity.

23.     All Documents You intend to rely on in support of any defenses in this action.

24.     To the extent not produced in response to the above, all materials exchanged between the parties in this action or the Womply Action, in each case the unredacted versions of such materials, subject only to redactions permitted by these Requests.

Respectfully submitted in San Juan, Puerto Rico on August 23, 2024.

Lisa M. Schweitzer (admitted *pro hac vice*)
lschweitzer@cgsh.com

Thomas S. Kessler (admitted *pro hac vice*)
tkessler@cgsh.com

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Attorneys for the Federal Reserve Bank of*
*San Francisco*

s/ *Antonio L. Roig Lorenzo*
Antonio L. Roig Lorenzo
antonio.roig@oneillborges.com
USDC-PR No. 207712

s/ *Salvador J. Antonetti Stutts*
Salvador J. Antonetti Stutts
salvador.antonetti@oneillborges.com
USDC-PR No. 215002

s/ *Ubaldo M. Fernández Barrera*
Ubaldo M. Fernández Barrera
ubaldo.fernandez@oneillborges.com
USDC-PR No. 224807

s/ *Aníbal A. Román Medina*
Aníbal A. Román Medina
anibal.roman@oneillborges.com
USDC-PR No. 308410

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Attorneys for the Federal Reserve Bank of*
*San Francisco*

14