**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **OTO ANALYTICS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br><br>Defendants. | Civil No. 23-01034 (GMM) *cons*.<br><br>Civil No. 24-01313 (GMM) |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br><br>Plaintiff-Intervenor<br><br>v.<br><br>**OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC;** *et al.*,<br><br>Defendants in Intervention. | |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br><br>Consolidated Plaintiff,<br><br>v.<br><br>**BENWORTH CAPITAL PARTNERS PR, LLC,** *et al.*,<br><br>Consolidated Defendants. | |

**JOINT OPPOSITION TO PLAINTIFF OTO ANALYTICS, LLC'S
MOTION TO COMPEL (1) RESPONSES TO INTERROGATORY NOS. 1, 2, AND 4
TO THE NAVARROS; (2) DOCUMENTS RESPONSIVE TO DOCUMENT REQUESTS
NOS. 6, 7, 11, AND 12 TO THE NAVARROS; AND (3) DOCUMENTS RESPONSIVE TO
<u>DOCUMENT REQUEST NO. 18 TO BENWORTH FL AND BENWORTH PR</u>**

**TO THE HONORABLE COURT:**

**COME NOW** defendants Benworth Capital Partners PR, LLC ("Benworth PR"), Benworth Capital Partners, LLC ("Benworth FL"), and Bernardo and Claudia Navarro ("Mr. and Mrs. Navarro" and, jointly with Benworth PR and Benworth FL, the "Defendants"), through the undersigned counsel, and very respectfully file this opposition to the Motion to Compel (1) Responses to Interrogatory Nos. 1, 2, and 4 to the Navarros; (2) Documents Responsive to Document Requests Nos. 6, 7, 11, and 12 to the Navarros; and (3) Documents Responsive to Document Request No. 18 to Benworth FL and Benworth PR  (the "Motion") (D.E. 184) filed by Plaintiff Oto Analytics, LLC ("Womply").[1]

## PRELIMINARY STATEMENT

This action arises out of Benworth FL engaging Benworth PR to service its PPP loan portfolio and Benworth FL paying Benworth PR the reasonable value of those services. Plaintiffs allege this transaction—and ***only*** this transaction—was a fraudulent transfer because Benworth FL paid Benworth PR the bulk of the funds required by their loan servicing agreement while an arbitration was pending between Benworth FL and Womply. Although Womply alleges entitlement to more than $150 million in the Amended Complaint, the arbitration resulted in only an approximately $118 million award in favor of Womply. However, the award has not been confirmed (and, therefore, is not an enforceable judgment) and Benworth FL has petitioned to vacate the award.

Despite putting at issue in the pleadings only transfers between Benworth FL and Benworth PR, Plaintiffs move this Court for an order compelling Defendants to disclose information concerning any entity owned or controlled by the Navarros, the so-called "Navarro Entities,"

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as in the Motion.

2

including information concerning any transfer of assets from either Benworth FL or Benworth PR to any of the Navarro Entities. Based on the pleadings, discovery concerning the Navarro Entities is facially irrelevant and not designed to elicit evidence in support of the claims brought by Plaintiffs. Indeed, the Motion makes clear that Womply seeks this information to develop new fraudulent transfer claims against unnamed third parties based on speculation and to evaluate the collectability of any judgment that may be awarded in its favor. Those are improper purposes that remove discovery concerning the Navarro Entities from the scope of relevancy. The Motion should be denied for this reason alone.

Even if Womply sought the discovery for a proper purpose (it does not), the Motion should still be denied. Discovery concerning the Navarro Entities is not relevant to any of the claims or defenses in the pleadings, which is the governing standard for relevancy, not the outdated, broader standard of relevancy relied upon by Plaintiffs. Womply has manufactured several arguments to force information concerning the Navarro Entities into the concept of relevancy, including misrepresenting what it has learned from the documents Defendants produced to date and characterizing itself as a "judgment creditor" despite having no enforceable judgment against any of the Defendants. For the reasons detailed below, each of those arguments fail.

Defendants accordingly ask this Court to deny the Motion.

## **LEGAL STANDARD**

The current version of Rule 26(b)(1) limits the scope of discovery to matters that are "relevant to any party's claim or defense." *See also Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 491 (D.P.R. 2011) (explaining parties "are not entitled to discovery of information that is irrelevant to their claim"). Womply asks this Court to broaden the scope of relevant discovery to any information that may be relevant to the general subject matter of the action, rather

than the issues raised by the pleadings as limited by Rule 26(b)(1), citing cases and a secondary source that ultimately rely on *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). *See* Motion at 7. Continued reliance on *Oppenheimer*, however, is misplaced.

"The Supreme Court in *Oppenheimer*, did not construe just the term 'relevant;' rather, the Supreme Court construed the phrase 'relevant to the subject matter involved in the pending action,' which is a phrase that no longer appears in amended Rule 26(b)(1)." *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 823 (W.D. Pa. 2016). Indeed, in the notes to the 2000 amendment to Rule 26(b)(1), the Advisory Committee explained that it modified the "subject matter" language so "that the parties and the court focus on the actual claims and defenses involved in the action." Rule 26(b)(1) 2000 Amendment Advisory Cmt. Notes. Further, the rule change "signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Id*. Thus, in evaluating the discovery Womply seeks, the Court must construe relevance in the context of the issues raised by the pleadings. None of the information Womply seeks is at issue in the pleadings.

## ARGUMENT

### I.     Womply Seeks Information Concerning the Navarro Entities for Improper Purposes.

To determine whether information is relevant and discoverable, courts look to the requesting party's purpose in seeking the information. Even when the concept of relevancy was broader under the pre-2000 Amendment version of Rule 26(b)(1), a party could not discover information unless it was intended to be used in support of a claim or defense. In *Oppenheimer*, for example, the Supreme Court held that a request for "class members' names and addresses" could not be "forced into the concept of 'relevancy'" because the requesting parties did "not seek this information for any bearing that it might have on issues in the case." 437 U.S. at 352. Instead, they "desired this information to enable them to send the class notice, and not for any other

4

purpose." *Id*. at 353. Thus, the information was "not within the scope of Rule 26(b)(1)." *Id*.

Since *Oppenheimer*, courts have identified other improper purposes that remove information from the scope of relevancy. Two are relevant here. One bars discovery of information for the purpose of developing new unpled claims or to substantiate that party's speculation. *See, e.g.*, *Williams v. Ehlenz*, 2004 WL 742076, at *2 (D. Minn. Mar. 30, 2004) (explaining "parties are not entitled to use the discovery process to develop new claims or defenses not reasonably identified in the pleadings"); *Emhart Indus., Inc. v. New England Container Co.*, 2013 WL 6001076, at *4 (D.R.I. Nov. 12, 2013) ("'Requested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation.'") (quoting *Sirota v. Penske Truck Leasing Corp.*, 2006 WL 708910 at *1 (N.D. Cal. Mar. 17, 2006)); *see also Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) ("In other words, in cases in which *fraud lies at the core of the action*, the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action.") (cleaned up; emphasis in original). The second improper purpose bars discovery when it is sought "to evaluate the likelihood of being able to collect an award" or judgment. *See Oriental Com. & Shipping Co. v. Rosseel, N.V.*, 125 F.R.D. 398, 401 (S.D.N.Y. 1989).

Womply seeks information concerning the Navarro Entities for both improper purposes noted above. At this time, Womply only speculates that Benworth FL and Benworth PR transferred assets to Navarro Entities. Although Womply represents that it has discovered that Benworth FL and Benworth PR transferred funds "to one or more unidentified 'Related Part[ies],'" (Motion at 3), that is a knowingly false representation. The document Womply relies on is a report titled "Benworth Capital Partners PR LLC, Bank Transfers to Claudia and Bernie Navarro" and certain transfers are described as "Note Payable to Related Party." *Id*. Ex. 4. But "Related Party" simply

5

refers to either Mr. or Mrs. Navarro. And Womply knows this because counsel for Defendants explicitly told this to counsel for Plaintiffs during a meet and confer call and will be producing the promissory notes to Plaintiffs. Indeed, if Womply truly believed that the document reflected transfers to Navarro Entities (and even if that were the case, it would only apply to Benworth PR, not Benworth FL), then the Motion would have included a waiver or similar argument based on disclosure of the information. It did not. Hence, Womply seeks information concerning the Navarro Entities to substantiate its speculation. *See* Motion at 12 ("Indeed, Womply would have no way of knowing about the transfers to the Navarro Entities without the benefit of discovery. Defendants thus seek to place Womply in a Catch-22 in which Womply cannot learn about Defendants' efforts to transfer funds owed to Womply unless Womply already knows about such transfers.").

It is also clear from the Motion that Womply seeks information concerning the Navarro Entities to evaluate the collectability of any judgment the Court may enter in its favor. For example, Womply contends that, "[b]ecause the funds Womply seeks to recover have now been transferred to Navarro Entities,"—again, this is Womply's speculation, not an established fact—"Womply will ***not be able to recover*** on its fraudulent transfer claims without learning the names of these Navarro Entities." Motion at 8 (emphasis added). Womply also claims it "is not required to amend its complaint each time it learns about yet another transfer by Defendants, which will result only in delay that will enable Defendants to endlessly transfer funds ***without paying Womply***." *Id*. at 12 (emphasis added).

Because Womply seeks information concerning the Navarro Entities for improper purposes, such information is not within the scope of Rule 26(b)(1). But even if Womply did advance a proper purpose for obtaining the information, it is not relevant to the issues framed by

the pleadings.

## II.    Information Concerning the Navarro Entities is Irrelevant to Womply's Fraudulent Transfer Claims.

Womply asserts one claim for actual fraudulent transfer and one claim for constructive fraudulent transfer against Benworth FL and Benworth PR. The basis for both claims is a transfer of funds from Benworth FL to Benworth PR. *See* Am. Compl. ¶¶ 216-229; 231-240. Put differently, Womply does not allege that any transfer from Benworth FL or Benworth PR to any *other* entity was fraudulent. Yet Womply asks this Court to compel Defendants to disclose information concerning such hypothetical transfers. But none of the relevance arguments raised by Womply have merit.

Womply first argues that information concerning the Navarro Entities is relevant to "trace funds" because the Amended Complaint purportedly alleges that Benworth FL transferred funds "to entities the Navarros own and control, including Benworth PR," citing paragraphs 218 through 221 of the Amended Complaint. Motion at 8. That statement is, at best, misleading. Those paragraphs reference only Benworth PR and do not contain any allegation concerning other entities owned and controlled by the Navarros. The Court should recognize this linguistic sleight of hand for what it is: an implicit admission by Womply that transfers to Navarro Entities are not at issue in the pleadings. And that critical fact is what distinguishes this matter from the cases cited by Womply. In each of the cases Womply relies on, the plaintiff alleged that transfers were made to entities owned and controlled by the defendants, even if such entities were not identified by name in the complaint. Here, Womply put at issue only transfers between Benworth FL and Benworth PR. Transfers to any other Navarro Entity are not at issue and therefore irrelevant.

Womply also argues that information concerning the Navarro Entities is relevant to the merits of its fraudulent transfer claims for three reasons. First, Womply contends that the

information it seeks is relevant because courts "collapse transactions" in fraudulent transfer actions to determine the economic realities, relying on *In re Ginn-La St. Lucie, Ltd., LLP*, 2010 WL 8756756 (Bankr. S.D. Fla. Dec. 10, 2010). *See Motion* at 11. However, *In re Ginn-La St. Lucie* proves Defendants' point that discovery on the Navarro Entities is irrelevant. That case involved a complex, multi-tiered transaction involving more than 300 entities, all of whom were named defendants in the case. 2010 WL 8756756 at *1. Although the court observed that some cases have recognized the "collapsing transactions" theory of fraudulent transfers (mostly involving failed leveraged buyouts), the court dismissed the Complaint because, "[i]f the Trustee wishes to pursue a theory of fraudulent transfer that requires collapsing the transaction to determine its economic reality, the theory must be pled in the Complaint." *Id*. at *5. Here, Womply failed to allege such a theory of fraudulent transfer and cannot rely on it now to bolster its argument that unpled transfers involving the Navarro Entities are relevant.

Second, Womply claims discovery on the Navarro Entities is relevant to its constructive fraudulent transfer claim. *See* Motion at 11. According to Womply, "should discovery show that the funds merely passed through Benworth PR on the way to the Navarro Entities, this demonstrates that Benworth FL transferred funds to Benworth PR without receiving a reasonably equivalent value in exchange for the transfer." *Id*. This argument defies common sense. As explained by Womply's own authority, *see* Motion at 9, the "analysis of reasonably equivalent value focuses on the benefit actually obtained by the debtor in the transaction." *Mane FL Corp. v. Beckman*, 355 So. 3d 418, 428 (Fla. 4th DCA 2023). Any subsequent transfer by Benworth PR of the funds it received from Benworth FL has no bearing on the benefit of the services Benworth FL obtained from Benworth PR. Information concerning the Navarro Entities thus does not tend to prove or disprove that Benworth FL received reasonably equivalent value from Benworth PR in

exchange for the transfers, and is irrelevant to Womply's constructive fraudulent transfer claim.

Third, Womply argues that it seeks discovery relevant to the intent element of its actual fraudulent transfer claim. *See* Motion at 12. Specifically, Womply asserts that information concerning the Navarro Entities is relevant to three statutory badges of fraud: (1) "the debtor retained possession or control of the property transferred after the transfer," (2) "the debtor removed or concealed assets," and (3) "the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." *Id.* (internal citations and alterations omitted). Womply did not (and cannot) explain how discovery on the Navarro Entities is relevant to any of these badges of fraud. On "the debtor retaining possession or control," the "transferred property" here is the funds Benworth FL transferred to Benworth PR. Any other funds Benworth FL may have transferred to Navarro Entities are outside the scope of this badge of fraud. And any funds from Benworth FL that Benworth PR subsequently transferred to Navarro Entities does not tend to prove that Benworth FL still possess or controls the transferred property. Womply would instead need to plead and prove that the Navarro Entities are the alter ego of Benworth FL. Womply has not done so, and this Court has no jurisdiction to adjudicate the rights and obligations of the non-party Navarro Entities.  As to "the debtor removing or concealing assets," Benworth FL (the alleged debtor) transferring funds to Navarro Entities in separate transactions does not tend to prove or disprove that Benworth FL intended to defraud Womply when it transferred funds to Benworth PR. The same is true for any subsequent transfers by Benworth PR to any Navarro Entities. With respect to the third badge of fraud, it simply does not apply here. In neither the Amended Complaint nor the Motion does Womply assert that either Benworth PR or any of the Navarro Entities are a "lienor" or "insider" of Benworth FL.

Far from defining or clarifying the issues in this action—one of Womply's stated purposes

for filing the Motion, *see* Motion at 11-12—the above analysis shows that discovery on the Navarro Entities will only further complicate this action and inject multiple unpled issues into the case. For example, as Womply concedes, it will need to determine which (unpled) transfers to the Navarro Entities are fraudulent, *see id.* at 12, which, in turn, will require a trial on the propriety of those transfers. By way of further example, Womply would also need to establish that the Navarro Entities are the alter egos of the Defendants. Again, there is no claim in the Amended Complaint seeking such a declaration and this Court cannot make such a determination without obtaining jurisdiction over the Navarro Entities.

Accordingly, discovery concerning the Navarro Entities is irrelevant to Womply's fraudulent transfer claims.

### III.    Information Concerning the Navarro Entities is Irrelevant to Womply's Alter Ego and Veil Piercing Claims.

Womply also argues that discovery concerning the "Navarro Entities is relevant to show the Navarros' control over and undercapitalization of Benworth FL and Benworth PR, which is directly relevant to Womply's alter ego and veil piercing claims." Motion at 12. As Defendants explained during the meet and confer process, Benworth FL and Benworth PR are closely-held companies owned by only the Navarros and control over assets is inherent in such ownership. *Id*. Ex. 19 at 2. Control over Benworth FL's and Benworth PR's assets is thus not a disputed issue that requires discovery of the private financial information of third parties not before the Court.

Womply's reliance on undercapitalization is also misguided.[2] As to its alter ego claim,

---

[2] Similar to its misrepresentation about receiving confirmation that Benworth FL and Benworth PR transferred assets to Navarro Entities, *see* supra pp. 5-6, Womply represents that Defendants "do not dispute that the Navarros 'undercapitalized Benworth FL' and Benworth PR." Motion at 13 (citing Ex. 19 at 2). Not so. Rather, counsel for Defendants simply asked counsel for Womply to clarify, "[w]ith respect to the veil piercing claim, which is limited to the Navarros being held liable for any debt imputed to Benworth PR, how would information showing the Navarros 'undercapitalized Benworth FL' be relevant?" Motion, Ex. 19 at 2. That is clearly not a concession

Womply asks the Court to declare only that Benworth PR is the alter ego of Benworth FL. *See* Am. Compl. ¶¶ 242-248. Womply did not (and cannot) explain how information concerning any transfers Benworth FL or Benworth PR may have made to the Navarros Entities tends to prove that Benworth PR is the alter ego of Benworth FL. The same is true with respect to the veil piercing claim, which seeks to pierce the veil of only Benworth PR to impute its debts to only the Navarros. *See* Am. Compl. ¶¶ 250-255.

Womply appears to argue that the information is relevant because if Benworth PR's corporate veil is pierced, all assets over which the Navarros exercise "domination and control" are subject to attachment. *See* Motion at 13. But any funds transferred to the Navarro Entities are assets of the Navarro Entities, not the Navarros. Womply would need to plead and prove that the Navarro Entities are the alter egos of the Navarros or otherwise pierce their corporate veil. Womply has not done so and is effectively asking the Court to deprive the Navarro Entities of due process. This the Court cannot do.

**IV.    Information Concerning the Navarro Entities is Irrelevant to the Remedies Sought by the Plaintiffs.**

Womply finally argues that information concerning the Navarro Entities is relevant to the remedies sought by Plaintiffs. Womply seeks recission of the transfers between Benworth FL and Benworth PR and the Reserve Bank seeks a declaration that it has a first-priority lien on Defendants' assets to the extent they constitute "PPP Collateral." Womply asserts that "Plaintiffs must trace the flow of funds from Benworth FL to Benworth PR and the Navarro Entities" to determine which funds are PPP Collateral and which are not. *See* Motion at 14. Womply is wrong.

Again, Womply only seeks to rescind transfers Benworth FL made to Benworth PR. There

---

on undercapitalization of Benworth FL, let alone Benworth PR, and one would expect more candor from counsel, especially the esteemed counsel representing Womply.

11

is no pending claim to rescind any transfer from either Benworth FL or Benworth PR to the Navarro Entities. So, the Court has no jurisdiction to rescind any such transfers, and they have no impact on any remedies available to Plaintiffs. Likewise, information concerning the Navarro Entities is not relevant to tracing the flow of funds between Benworth FL and Benworth PR to determine which funds constitute PPP Collateral. Moreover, Defendants have produced Benworth FL's bank statements to facilitate any necessary tracing of funds.

Information concerning the Navarro Entities is therefore irrelevant to Plaintiffs' remedies and not discoverable.

**WHEREFORE**, Defendants respectfully request that this Honorable Court deny the Motion to Compel.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing reply was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 20th day of December 2024.

**Ferraiuoli**
PO Box 195168
San Juan, PR 00919-5168
Tel.: 787.766.7000
Fax: 787.766.7001

*s/ Roberto A. Cámara-Fuertes*
**Roberto A. Cámara-Fuertes**
USDC-PR 219002
rcamara@ferraiuoli.com

*s/ Jaime A. Torrens-Dávila*
**Jaime A. Torrens-Dávila**
USDC-PR 223810
jtorrens@ferraiuoli.com

*s/ Mónica Ramos Benítez*
**Mónica Ramos-Benítez**
USDC-PR 308405
mramos@ferraiuoli.com

**KOZYAK TROPIN & THROCKMORTON**
2525 Ponce de Leon Blvd., 9th Fl.
Miami, FL 33134
(305) 372-1800

Jorge L. Piedra (admitted *pro hac vice*)
jpiedra@kttlaw.com
Michael R. Lorigas (admitted *pro hac vice*)
mlorigas@kttlaw.com
Rasheed K. Nader (admitted *pro hac vice*)
rnader@kttlaw.com

*Counsel for Benworth Capital Partners LLC
and Bernardo Navarro*

**CASELLAS ALCOVER & BURGOS PSC**
PO Box 364924
San Juan, PR 00936-4924
Tel. (787) 756-1400
Fax. (787) 756-1401
rcasellas@cabprlaw.com
cloubriel@cabprlaw.com

/s/ Ricardo F. Casellas
USDC-PR Bar No. 203114

/s/ Carla S. Loubriel Carrión
USDC-PR Bar No. 227509

*Counsel for Benworth Capital Partners PR LLC
and Claudia Navarro*