IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **OTO ANALYTICS, LLC,**<br>Plaintiff,<br><br>v.<br><br>**BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br>Defendants. | Civil No. 23-01034 (GMM) *cons.*<br>Civil No. 24-01313 (GMM) |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br>Plaintiff-Intervenor,<br><br>v.<br><br>**OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br>Defendants in Intervention. | |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br>Consolidated Plaintiff,<br><br>v.<br><br>**BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br>Consolidated Defendants. | |

**<u>PLAINTIFF-INTERVENOR FEDERAL RESERVE BANK OF SAN FRANCISCO'S
MOTION TO COMPEL BENWORTH'S QUICKBOOKS ACCOUNTING DATA</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ......................................................................................................... 2

LEGAL STANDARD.................................................................................................... 6

ARGUMENT............................................................................................................... 7

CONCLUSION............................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Georgine v. Amchem Prods., Inc.*,
  1994 WL 502475 (E.D. Pa. Sept. 2, 1994) ............................................................... 12

*Sher v. Barclays Cap. Inc.*,
  2013 WL 3279801 (D. Md. June 26, 2013)................................................. 9, 10, 11, 12

*Torres-Román v. Martínez-Ocasio*,
  2023 WL 8372045 (D.P.R. Dec. 1, 2023) ................................................................. 7

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961)..................................................................................... 10

*von Kahle v. Cargill, Inc.*,
  No. 1:21-cv-08532, ECF No. 26 (S.D.N.Y. Nov. 29, 2021) ................................. 10

*von Kahle v. Cargill, Inc.*,
  No. 1:21-cv-08532, ECF No. 190 (S.D.N.Y. Dec. 4, 2023) .................................. 10

*von Kahle v. Cargill, Inc.*,
  No. 1:21-cv-08532, ECF No. 194 (S.D.N.Y. Dec. 13, 2023)................................. 8, 10

*Westernbank P.R. v. Kachkar*,
  2009 WL 530131 (D.P.R. Feb. 9, 2009).................................................................. 10

**Rules and Statutes**

Fed. R. Civ. P. 26(b) ........................................................................................ 6, 7, 8, 9, 11

Fed. R. Civ. P. 34(a)(1)............................................................................................... 6, 7

**Other Authorities**

8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2026 (3d ed. 2024) ....................................................................................................................... 9

Pursuant to Federal Rules of Civil Procedure 26(b), 34(a)(1), and 37(a), Plaintiff-Intervenor Federal Reserve Bank of San Francisco (the "Reserve Bank"), by and through its undersigned counsel, respectfully requests that this Court compel Defendants Benworth Capital Partners, LLC ("Benworth FL") and Benworth Capital Partners PR, LLC ("Benworth PR" and together with Benworth FL, "Benworth") to produce accounting data from QuickBooks in response to: (i) Request Nos. 2, 3, 7, 16, 17, 25 and 26 of the *Reserve Bank's First Set of Requests for Production to Defendant Benworth Capital Partners LLC* dated August 23, 2024 (Ex. 1, the "Benworth FL RFPs") and (ii) Request Nos. 2, 3, 7, 14, 15, 21 and 22 of the *Reserve Bank's First Set of Requests for Production to Defendant Benworth Capital Partners PR LLC* dated August 23, 2024 (Ex. 2, the "Benworth PR RFPs").

## PRELIMINARY STATEMENT

The Reserve Bank asserts claims against Benworth FL and Benworth PR, as well as Bernardo and Claudia Navarro (the "Navarros" and together with Benworth, "Defendants"), in connection with Benworth FL's transfers of millions of dollars to Benworth PR and the Navarros, which have left the Reserve Bank unable to collect from Benworth FL amounts currently due and owing under the parties' agreements. In connection with these claims, the Reserve Bank seeks financial information from Benworth to, among other things, trace the flow of funds among and between Defendants and other affiliated entities; assess the value of services provided by Benworth PR to Benworth FL; and determine Benworth FL's solvency. Defendants do not argue that the financial information sought is irrelevant to the Reserve Bank's claims or that the requests are unduly burdensome or disproportionate to the needs of this case. This makes good sense because, of course, they are squarely relevant and readily available. In fact, Defendants have represented that the majority of the financial information requested is conveniently housed in Benworth's

QuickBooks Premier Plus 2022 ("QuickBooks") platform—meaning that the relevant requests could be satisfied instantly by granting the Reserve Bank access to Benworth's QuickBooks database. However, despite multiple attempts to meet and confer on this issue, Defendants refuse to provide such access to the Reserve Bank and will only agree to run specific searches on the QuickBooks database, as dictated by the Reserve Bank, *through Defendants' counsel*. Defendants' proposal is an untenable solution to the Reserve Bank's requests. The Reserve Bank has requested access to *all* the QuickBooks data, not merely a subset of it, so its advisors can effectively analyze the information, which is an iterative process. Additionally, Defendants' proposed approach would provide Defendants access to the Reserve Bank's counsel's and experts' search queries, which reflect their thinking and analyses about the legal and factual theories of this case. The Court should reject such a flagrant violation of the work product and attorney-client privilege doctrines and order Defendants to provide the Reserve Bank with full access to the QuickBooks data, given the relevance of the information and lack of hardship it would impose on Defendants.

## BACKGROUND

On July 10, 2024, the Reserve Bank filed a complaint against Defendants, alleging that Benworth FL owes the Reserve Bank approximately $66,980,967.08 in principal, plus interest and other fees and costs, in connection with the parties' agreements pursuant to the Reserve Bank's Paycheck Protection Program Liquidity Facility.[1] In the Complaint, the Reserve Bank alleges claims for fraudulent transfer, alter ego, and veil piercing relating to Benworth FL's transfer of assets to Benworth PR and the Navarros, which have left it with virtually no capital to fulfill its current obligations to the Reserve Bank. *See* Compl. ¶ 3. The Reserve Bank also filed a complaint

---

[1] Complaint, Federal Reserve Bank of San Francisco v. Benworth Capital Partners PR LLC, Civil No. 3:24-cv-01313 (July 10, 2024, D.P.R.) (the "Complaint").

in intervention after the Court granted its motion to intervene in Oto Analytics, LLC's ("Womply" and together with the Reserve Bank, "Plaintiffs") action against Defendants, which asserted similar claims. *See* ECF Nos. 127, 145, 146. On August 20, 2024, the Court consolidated the actions of the Reserve Bank and Womply against Defendants due to the substantially similar questions of law and fact implicated in both cases, and the parties commenced discovery. *See* ECF No. 155.[2]

On August 23, 2024, the Reserve Bank served the Benworth FL RFPs and Benworth PR RFPs on Defendants. *See* Ex. 1, 2. Among other things, the Reserve Bank requested certain financial statements and records for Benworth FL and Benworth PR. Specifically, the Reserve Bank requested the following information:[3]

    a. "All financial and accounting records for Benworth [], including without limitation general ledgers, accounts receivable ledgers, and accounts payable ledgers [from January 1, 2020 to present]." Benworth FL RFP No. 2; Benworth PR RFP No. 2.

    b. "All Financial Statements[4] for Benworth [] for the fiscal years (or partial years) 2020, 2021, 2022, 2023, and 2024." Benworth FL RFP No. 3; Benworth PR RFP No. 3.

---

[2] In December 2024, while discovery remained ongoing, Womply and Defendants negotiated a settlement of Womply's claims. On January 2, 2025, the Court approved Womply and Defendants' Joint Stipulation to Dismiss with Prejudice and entered a Partial Judgment dismissing with prejudice all of Womply's claims against Defendants in this consolidated action. *See* ECF Nos. 194, 196. As noted by the Court, all of the Reserve Bank's claims against Defendants remain unaffected by the settlement. *See* ECF No. 196.

[3] Womply propounded similar discovery requests on Defendants which are no longer at issue given the recent settlement of Womply's claims.

[4] Financial Statements are defined as "the following, whether audited or unaudited and whether final, interim, pro forma, complete or partial: consolidated, consolidating or unconsolidated balance sheets, statements of earnings, revenues, profits and losses, budgets, additional paid-in capital, retained earnings or source of application of funds, cash flow statements, notes to each of such statements, and any and all other statements and notes that relate to such Person's past or present financial condition, including on a cash and accrual basis." Benworth FL RFP Definition No. 14; Benworth PR RFP Definition No. 13.

c. "Documents sufficient to show Benworth FL's assets and liabilities during each month from January 2020 to the present."  Benworth FL RFP No. 7.

d. "Documents sufficient to show Benworth PR's assets and liabilities during each month from its formation to the present."  Benworth PR RFP No. 7.

e. "All Documents and Communications Concerning any Payments, dividends, loans, advances (for working capital or other purposes) or transfers made by or on behalf of Benworth FL, whether directly or indirectly, to or for the benefit of Benworth PR, including without limitation the 2021 Transfer and any Pre-Payment, and all journal entries and all supporting documentation regarding the accounting treatment thereof [from January 1, 2020 to present]" and "All Documents and Communications Concerning any Payments, dividends, loans, advances, or transfers to any immediate or mediate transferee of any recipient described in the preceding Request."  Benworth FL RFP Nos. 16-17; Benworth PR RFP Nos. 14-15.

f. "All Documents and Communications Concerning Payments, distributions, dividends, or transfers from or on behalf of Benworth [], whether directly or indirectly, to or for the benefit of Mr. Navarro, Ms. Navarro, any B. Navarro Entity, or any C. Navarro Entity, including without limitation any Dividend Payments [from January 1, 2020 to present]" and "All Documents and Communications Concerning any Payments, dividends, distributions, or transfers to any immediate or mediate transferee of any recipient described in the preceding Request."  Benworth FL RFP Nos. 25-26; Benworth PR RFP Nos. 21-22.

On October 17, 2024, the parties (including Womply, whose claims had not yet been dismissed) met and conferred by videoconference regarding discovery issues, including to discuss a "chart of transfers" that Defendants produced to Plaintiffs.  *See* Ex. 3 at 19.[5]  At the meet-and-confer, "Defendants represented that Benworth FL and Benworth PR use QuickBooks Premier Plus 2022 accounting software, which they used to generate" the produced chart.  *Id*.  Plaintiffs stated that asking Defendants to run specific reports in the database would "reveal [] work product" by showing Plaintiffs' and their experts' thinking and analysis of financial documentation in real time.  *Id*.  Accordingly, Plaintiffs requested that Defendants either "(1) export and produce all

---

[5] Page numbers to Exhibit 3 refer to the PDF page numbers.

QuickBooks data to Womply and the Reserve Bank, or (2) provide Womply and the Reserve Bank with login credentials so they can run their own searches and reports in the database." *Id*. Defendants stated that they would "confer internally and [] follow up." *Id*.

On October 29, 2024, Defendants canceled a scheduled meet-and-confer and stated that Defendants would refuse to accept either of Plaintiffs' proposed resolutions. *Id*. at 12. On October 30, 2024, Defendants were asked to provide a "good-faith basis for refusing to produce the requested documents and information." *Id*. at 11. On November 8, 2024, Defendants responded without further explanation that they would not give "unfettered access" to the QuickBooks data and could not "agree to the level of access" sought by Plaintiffs. *Id*. at 7. On November 11, 2024, Womply provided Plaintiffs' shared position:

> As to the Quickbooks data, you have rejected multiple compromise proposals from Womply without explanation.  There is no valid basis for Defendants to withhold access to or production of the data.  You have agreed that the Quickbooks data contains relevant information, there is no burden to providing Plaintiffs will access to this data, and the protective order protects the confidentiality of the data.  You state that you are "willing to reach a compromise on the information in Quickbook," but do not provide any compromise proposals or basis for withholding the information.  Please provide a compromise proposal or explain your basis for withholding the information so we can promptly raise this issue to the Court.

*Id*. at 5-6.

On November 20, 2024, more than one month after the QuickBooks issue was raised, Defendants finally provided their purported basis for refusing to provide Plaintiffs access to Defendants' QuickBooks data. *See id*. at 3-4. Specifically, Defendants pointed to Section III.E of the parties' Stipulation Regarding the Production of Electronically Stored Information (ECF No. 164-1, the "ESI Stipulation"), which provides that the parties will "meet and confer regarding methods of production" for electronic information stored in a database and "will consider whether

all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file." *Id*. Based on this provision, Defendants refused "to either export all QuickBooks data or provide access to the database based on the requesting party's concerns over revealing their work-product" and agreed only "for Plaintiffs to identify queries they want Defendants to run in QuickBooks and [have Defendants] then produce the reports generated from those queries[]." *Id*.

On November 25, 2024, Womply relayed Plaintiffs' position that given that Defendants had "reject[ed] all of [Womply's and the Reserve Bank's] attempts at compromise and ma[de] no effort to address our concerns that Defendants running Plaintiffs' queries will reveal Plaintiffs' work product," the parties were at impasse and court intervention was necessary. *Id*. at 2. As the sole remaining Plaintiff in this consolidated action, the Reserve Bank files this motion to compel Benworth's QuickBooks data in response to the Reserve Bank's discovery requests.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Rule 34 provides that a "party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect" any "documents or electronically stored information," including any "data or data compilations [] stored in any medium from which information can be obtained[.]" Fed. R. Civ. P. 34(a)(1)(A). A "requesting party may move to compel disclosure and for appropriate sanctions" if a party fails to produce documents as requested under Rule 34. *Torres-Román v. Martínez-Ocasio*, 2023 WL 8372045, at *4 (D.P.R. Dec. 1, 2023) (quoting Fed. R. Civ. P. 37(a)). Further, under Rule 26, courts "must protect against disclosure of

-6-

the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" in connection with discovery.  Fed. R. Civ. P. 26(b)(3)(B).

## ARGUMENT

Defendants are obligated to provide the Reserve Bank access to Benworth's QuickBooks data under Federal Rules of Civil Procedure 26(b)(1) and 34(a)(1) for the below reasons.

*First*,  Benworth's QuickBooks data is highly relevant to the Reserve Bank's claims in this case.  Defendants do not dispute that the QuickBooks platform consists of discoverable "data or data compilations" in Defendants' "possession, custody, or control," nor do they dispute such data's relevance to this case.  Fed. R. Civ. P. 34(a)(1).  In the Complaint, the Reserve Bank alleges that Defendants have engaged in multiple transfers designed to drain Benworth FL of assets to the detriment of the Reserve Bank, and that funds comprising such transfers include, in whole or in part, cash collateral of the Reserve Bank.  *See* Compl. ¶¶ 60-61.  Although the Complaint identifies certain specific transfers the Reserve Bank is aware of, it also notes that "[b]ecause the Reserve Bank does not have access to Benworth's and the Navarros' complete financial statements, nor their transaction or accounting records, the Reserve Bank does not have specific, transaction-level information on any transfers that may have been made to cover 2021 and 2022."  *Id*. at 13 n.10. The Reserve Bank is entitled to Benworth's full set of QuickBooks data so it can determine the flow of funds from Benworth FL during the relevant time period, particularly to the extent such funds were ultimately transferred to Benworth PR and/or the Navarros through an intermediary. Such unfettered access is particularly necessary given the Reserve Bank's lack of clarity as to which Benworth- or Navarro-affiliated entities may have received funds that comprise the Reserve

Bank's cash collateral or are otherwise subject to clawback.[6]  Such information is squarely within the scope of Rule 26, and is routinely provided in fraudulent transfer actions.  *See, e.g.*, *von Kahle v. Cargill, Inc.*, No. 1:21-cv-08532, ECF No. 194 (S.D.N.Y. Dec. 13, 2023) (Ex. 6).

*Second*, Defendants provide no other valid basis for their refusal to provide the requested access.  There are no issues of proportionality or "undue burden or cost" associated with this request because Benworth need only provide the Reserve Bank access to its QuickBooks platform in order to satisfy the relevant requests, which does not impose any burden on Defendants.  Fed. R. Civ. P. 26(b)(1), 26(b)(2)(B).  Indeed, Defendants represented to this Court that "the majority of [Benworth's] financial documents are stored in Quickbooks."  ECF No. 190 at 4.  Nor have Defendants raised any cogent objections to this discovery on the basis of confidentiality (for good reason, given that the parties' Protective Order, *see* ECF No. 176, provides ample avenues for protection of the data).  The only basis Defendants *have* provided for their refusal to provide access to the QuickBooks data is the language of Section III.E of the ESI Stipulation, *see* Ex. 3 at 3-4, which merely provides that the parties will "meet and confer regarding methods of production" of electronic information stored in a database and "consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file."  ESI Stip. at 6.  As detailed above, the parties have met and conferred extensively on this issue, yet Defendants remain unyielding in their position that they will only produce information from QuickBooks that is generated from specific searches provided by the Reserve Bank and run by Defendants' counsel.[7]

---

[6] On December 6, 2024, Womply filed a motion to compel Defendants to produce information regarding entities owned or controlled by the Navarros, which the Reserve Bank joined.  *See* ECF Nos. 182, 188, 189.  Defendants have opposed the motion, *see* ECF No. 193, which remains pending before the Court.

[7]  Defendants' ability to claim that these requests are inappropriate or overreaching is further undermined by the fact that Benworth FL voluntarily agreed to provide broad access to its financials prior to this litigation.  See ECF No. 1-

*Third*, Defendants' proposal to only produce information from QuickBooks that is generated from specific searches provided by the Reserve Bank and *run by Defendants' counsel* is a stark violation of the attorney-client privilege and work product doctrines. Any search queries generated by the Reserve Bank's counsel and/or experts would necessarily contain "the mental impressions, conclusions, [and] opinions" of the Reserve Bank's "attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such queries reflect the "judgments[] and thought processes of counsel" and therefore "constitute opinion work product" that must be shielded from discovery. 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2026 (3d ed. 2024) (citations omitted); *see also Sher v. Barclays Cap. Inc.*, 2013 WL 3279801, at *4 (D. Md. June 26, 2013) (preventing discovery of a spreadsheet on the basis that "the work of choosing and compiling certain records constitutes opinion work product" and disclosure would reveal "opposing counsel's thought process in undertaking to evaluate the raw data and arrive at his recommendations") (internal quotation marks and citations omitted)). Here, the Reserve Bank's proposed search queries and resulting hits are not merely "a collection of facts, but rather a comprehensive opinion work product that evolved out of [the Reserve Bank's] specific choices and processes concerning litigation against" Defendants, and are therefore undiscoverable. *See Sher*, 2013 WL 3279801, at *4.

Any proposed search queries generated by the Reserve Bank's counsel—and by extension, its financial experts—are also protected by attorney-client privilege. A communication is privileged "if the lawyer has directed the client, either in the specific case or generally, to tell his

---

6 in Civil No. 3:24-cv-01313 (July 10, 2024, D.P.R.), section 10(a)-(b) (covenanting that Benworth FL "shall provide to the [Reserve] Bank any reports or statements that the [Reserve] Bank requests" and "permit the [Reserve] Bank or its designee to inspect or copy any documents or evidence in [Benworth FL's] possession or control relating to" the Reserve Bank's collateral or any obligation under the parties' agreements.

story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961); *see also Westernbank P.R. v. Kachkar*, 2009 WL 530131, at *3 (D.P.R. Feb. 9, 2009) (attorney-client privilege "may be maintained in light of disclosure to accountants" where the "accountant's assistance is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit") (quoting *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (internal quotation marks omitted)).

The recent decision of the District Court for the Southern District of New York in *von Kahle v. Cargill, Inc.*, No. 1:21-cv-08532, which presents strikingly similar facts to this case, is instructive. In *von Kahle*, the plaintiff, on behalf of all creditors of a Florida coffee company, sought to avoid and recover more than $91 million in transfers from the coffee company to a defendant global food corporation, alleging actual and constructive fraudulent transfer. *See von Kahle*, ECF No. 26, at ¶ 2 (S.D.N.Y. Nov. 29, 2021) (Ex. 4). The plaintiff alleged that the coffee company "used fictitious purchase orders to falsely represent to its lenders that it was requesting more than $91 million in loan proceeds to purchase coffee and resell it," when the funds were actually transferred directly to the defendant corporation to satisfy certain debts owed. *Id.* ¶ 5. The coffee company's purchase orders and related records were stored in an enterprise accounting platform called Tradepag: TRM ("TRM"). *Id.* ¶ 49. The defendant corporation moved to compel plaintiff to provide it with "unfettered access to the TRM data" which was essential for its own accounting analyses. *von Kahle*, ECF No. 190, at 2 (S.D.N.Y. Dec. 4, 2023) (Ex. 5). As here, the plaintiff agreed only to provide the defendant with subsets of the data it requested "through [p]laintiff's counsel," which the defendant argued violated both the work-product and attorney-client privilege doctrines. *Id.* at 3. The district court granted the defendant's motion to compel,

-10-

ordering that the defendant "be provided access to the TRM database at reasonable times for a reasonable period of time." Ex. 6.  Although the court permitted a representative of the plaintiff to supervise the defendant's access to the database, it cautioned "that such representative *shall not disclose to Plaintiff or Plaintiff's counsel any information regarding searches conducted or data retrieved*." *Id*. (emphasis added).  This Court should similarly grant the Reserve Bank access to Defendants' QuickBooks database outside the view of Defendants or their counsel in order to shield from discovery any information regarding the Reserve Bank's search queries or results generated.

*Lastly*, even if this Court determines that such search queries or results constitute fact work product rather than protected opinion work product (which it should not), Defendants are unable to show that they have the required "substantial need" for the Reserve Bank's search information in order to "prepare [their] case and cannot, without undue hardship, obtain the substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  When assessing substantial need, courts consider "(1) importance of the materials to the party seeking them for case preparation; (2) the difficulty the party will have obtaining them by other means; and (3) the likelihood that that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." *Sher*, 2013 WL 3279801, at *4 (internal quotation marks and citation omitted).  Defendants clearly "have in their possession all the raw data" from Benworth's QuickBooks database, which would "form the basis" of any analyses prepared by the Reserve Bank, and are therefore "equally capable of conducting similar analyses." *Georgine v. Amchem Prods., Inc.*, 1994 WL 502475, at *3 (E.D. Pa. Sept. 2, 1994); *see also Sher*, 2013 WL 3279801, at *5.  Allowing Defendants to "freeload" off the Reserve Bank's work would circumvent

the policy behind the work product doctrine and should not be entertained by this Court. *See Sher*, 2013 WL 3279801, at *4.

## CONCLUSION

For the foregoing reasons, the Reserve Bank respectfully requests that this Court order Defendants to provide it with full access to Benworth's QuickBooks data without interference by Defendants' counsel within seven (7) days from entry of an order granting this motion.

Respectfully submitted in San Juan, Puerto Rico on January 17, 2025.

Thomas S. Kessler (admitted *pro hac vice*)
tkessler@cgsh.com

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Attorneys for the Federal Reserve Bank of*
*San Francisco*

*s/ Antonio L. Roig Lorenzo*
Antonio L. Roig Lorenzo
antonio.roig@oneillborges.com
USDC-PR No. 207712

*s/ Salvador J. Antonetti Stutts*
Salvador J. Antonetti Stutts
salvador.antonetti@oneillborges.com
USDC-PR No. 215002

*s/ Ubaldo M. Fernández Barrera*
Ubaldo M. Fernández Barrera
ubaldo.fernandez@oneillborges.com
USDC-PR No. 224807

*s/ Aníbal A. Román Medina*
Aníbal A. Román Medina
anibal.roman@oneillborges.com
USDC-PR No. 308410

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Attorneys for the Federal Reserve Bank of*
*San Francisco*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 17, 2025, the foregoing document was filed with the Clerk of the Court using CM/ECF, which sent notice to all parties receiving notifications through the CM/ECF system.

Dated: January 17, 2025

*s/ Aníbal A. Román Medina*
Aníbal A. Román Medina