# EXHIBIT 5

# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

December 4, 2023

**VIA ECF**

The Honorable Stewart D. Aaron
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1970
New York, NY 10007-1312

      Re:    *Kahle v. Cargill, Inc.*, No. 1:21-cv-08532 (AT)(SDA) (S.D.N.Y.)

Dear Judge Aaron:

Pursuant to Federal Rules of Civil Procedure 26(c) and 37(a), Local Civil Rule 37.2, and Rule II.B of this Court's Individual Practices, Defendant Cargill, Incorporated ("Cargill") respectfully requests a discovery conference regarding Plaintiff Philip Von Kahle's ("Plaintiff") refusal to provide access to undisputedly relevant inventory accounting data in its possession except through Plaintiff's counsel. Plaintiff has had access to this data for more than three years and used his analysis of this data to prepare the Complaint against Cargill in this action. Cargill's ability to analyze this data is therefore key to litigating Plaintiff's claims and Cargill's defenses. Yet Plaintiff will not permit Cargill's experts to access the data without Plaintiff's counsel present, and will permit Cargill to request only specific reports run through Plaintiff's counsel. There is no valid reason for Plaintiff's *counsel* to have access to Cargill's counsel's and accounting experts' thinking and analysis, which are protected by the attorney-client privilege and work-product doctrine. To address any concerns about data integrity and control, Cargill even offered to run reports through Plaintiff's IT personnel who would not share such reports with Plaintiff's counsel, but Plaintiff refused. Plaintiff's tactics are needlessly delaying Cargill's ability to conduct expert analysis. This Court should order Plaintiff to provide Cargill with full access to the accounting data and issue a protective order preventing Plaintiff's counsel from accessing Cargill's requests.

## Background

Plaintiff is the assignee for the benefit of creditors of Coex Coffee International, Inc. ("Coex Miami"). Plaintiff brings claims for actual or constructive fraudulent transfer in connection with certain coffee swap transactions with Cargill. Plaintiff alleges that Coex Miami defrauded its lenders because, among other things, "purchase order numbers assigned to the fictitious purchase orders were assigned by Tradepag:TRM ('TRM'), the enterprise accounting software used by Coex Miami," while "actual, legitimate transactions supported by purchase orders were regularly kept and maintained on TRM in the regular course of business." (Am. Compl. ¶ 49, ECF No. 26; *see also id.* ¶ 109.) In its Initial Disclosures, Plaintiff identified "Tradepag:TRM" data as documents in its possession it "may use to support its claims or defenses."

In December 2021, Cargill served document requests seeking, among other things, "[a]ccess to the accounting software Tradepag: TRM referenced in Paragraph 49 of the Amended Complaint, and Coex Miami's entries in that accounting software." Plaintiff did not object to Cargill's request but claimed in its February 2022 responses that "TRM requires a user to obtain a license to operate the program," so "Plaintiff is investigating potential solutions, such as cloning TRADEPAQ:TRM,

The Honorable Stewart D. Aaron
December 4, 2023
Page 2

so that Cargill can have a free-standing copy of the program and the data it holds." Plaintiff also represented that he would "allow Cargill's information technology specialists to inspect the TRADEPAQ:TRM system, which is in Fort Lauderdale, Florida." None of this happened.

In May 2022, Plaintiff claimed that he could not provide the TRM data to Cargill because "attempting to copy TRM may corrupt the data." Cargill's representatives therefore planned to fly to Fort Lauderdale to receive a tutorial on TRM and inspect the data. The day before the meeting, Plaintiff's counsel announced that if Cargill wanted to ask "questions about TRM, the Assignee's counsel is going to be there," so Cargill cancelled the meeting. In June 2022, Plaintiff "had a video made" it claimed was "a full tour of TRM" and agreed to provide only specific reports requested through Plaintiff's counsel. Cargill requested two preliminary reports showing "all purchases" and "all sales from August 1, 2017, through June 30, 2020." The case was then stayed.

In October 2023, after the stay had been lifted, Cargill requested "login credentials to access Coex Miami's TRM inventory management system." Plaintiff asserted that "[w]e cannot provide remote access to TRM," "[w]e can't copy TRM for you," and directed Cargill to the video "tutorial on how TRM works," which Cargill could use to ask Plaintiff's counsel "to run specific reports from TRM." Cargill explained that "[o]ur expert personnel need access to Coex Miami's inventory data, and running reports through you enables you to see into their thinking and analysis, which violates attorney-client privilege and work product." Cargill offered to work with Plaintiff's IT personnel and vendors so Cargill's expert personnel could access the TRM data in-person without Plaintiff's counsel present. Plaintiff's counsel refused "to give you or your expert witnesses direct access to TRM," and instead insisted that "any report you or expert would like" must be run through Plaintiff's counsel.

On November 9, 2023, the parties met and conferred by telephone from 1:00 p.m. to 1:40 p.m. regarding discovery issues, including TRM data. Attorneys Jason Hernandez, Matthew Graham, and Veronica de Zayas participated for Plaintiff. Attorneys Joshua Levy, Stephanie Miner, Richard Wolkoff, and Amanda Wigler participated for Cargill. Cargill explained that it would not agree to run TRM reports through Plaintiff's counsel, and proposed running reports through Plaintiff's IT personnel who would not share such reports with Plaintiff's counsel. On November 20, 2023, Plaintiff rejected Cargill's proposal, and the parties agreed they had reached impasse.

**Argument**

The Federal Rules require Plaintiff to give Cargill and its experts unfettered access to the TRM data. *See* Fed. R. Civ. P. 34(a)(1)–(2) (requiring responding party "to produce and permit the requesting party or its representative to inspect" documents or "to permit entry" to "inspect" property). Plaintiff does not—and cannot—dispute that the TRM data are discoverable "data or data complications" in Plaintiff's "possession, custody, or control." *Id.* Plaintiff does not—and cannot—dispute that the TRM data are relevant to his claims and Cargill's defenses because they are expressly referenced in the Complaint and in Plaintiff's Initial Disclosures. Fed. R. Civ. P. 26(a)(1)(A)(ii), 26(b)(1). Cargill's analysis of the TRM inventory accounting data is essential for, among other things, showing that Coex Miami in fact purchased and sold coffee and hedged those transactions through swaps with Cargill. Plaintiff does not—and cannot—raise any objections based on proportionality or "undue burden or cost," because giving Cargill access to the data does not impose any burden on Plaintiff. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(B). Thus, there is no valid reason to prevent Cargill from having full access to the TRM data.

The Honorable Stewart D. Aaron
December 4, 2023
Page 3

Plaintiff refuses to do so. Plaintiff has agreed to provide to Cargill only *subsets* of the TRM data that Cargill requests **through Plaintiff's counsel**. Plaintiff has never provided any reason why Plaintiff's *counsel*—as opposed to IT personnel—need to be involved in Cargill accessing the data because there is none. Plaintiff's counsel is using its control over the TRM data to attempt to pry into Cargill's protected work product and attorney-client privilege. And Plaintiff's unreasonable position is delaying Cargill's access to data that are highly relevant to this matter.

Cargill's counsel's and accounting experts' search queries of the TRM data contain "the mental impressions, conclusions, [and] opinions" of Cargill's "attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). As Plaintiff recognized when he successfully asserted privilege and work-product protection over his financial advisor's notes, disclosing such accounting search queries "would reveal to our adversary choices, thought processes, and decisions made by counsel that go to the heart of the work product doctrine." (Pls.' Apr. 8, 2022 Resp. at 7, ECF No. 86 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).) "This holds especially true for" the "thought process in undertaking to evaluate the raw data and arrive at counsel's recommendations." (*Id.* (quoting *Georgine v. Amchem Prods., Inc.*, 1994 WL 502475, at *2 (E.D. Pa. Sept. 2, 1994)) (cleaned up).) Such "[o]pinion work product 'is entitled to virtually absolute protection.'" (*Id.* (quoting *United States v. Ghavami*, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012)); *see also id.* at 6 (collecting cases that accounting analyses are "protected work product").) Nor has Plaintiff made any showing of "substantial need" to obtain even "factual work product." (*Id.* at 7.) As Plaintiff recognized, he already has "all of the factual documents underlying the work product analysis," so he "can perform [his] own analysis of the data" and "is not entitled to freeload off [Cargill's] analysis." (*Id.* at 8 (cleaned up; collecting cases).)

Cargill's counsel's and accounting experts' search queries of the TRM data are also privileged. As Plaintiff recognized, "a communication is privileged 'if the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice.'" (*Id.* at 9 (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)).) Here, because "the accountant has been retained by the attorney or by the client at the attorney's direction," the accountant's analyses are "protected by the attorney-client privilege." (*Id.* (quoting *Florentia Contracting Corp. v. Resol. Tr. Corp.*, 1993 WL 127187, at *6 (S.D.N.Y. Apr. 22, 1993)).) "For the attorney-client privilege," even "facts collected at counsel's request for later use in providing legal advice are protected." (Pls.' Apr. 22, 2022 Reply at 3, ECF No. 92 (quoting *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 26 (D.D.C. 2016), *aff'd*, 892 F.3d 1264 (D.C. Cir. 2018)).)

Plaintiff raised two meritless arguments during the meet-and-confer process. First, Plaintiff makes much of the fact that Cargill initially ran two, preliminary reports through Plaintiff's counsel, which is irrelevant to whether Cargill's ongoing requests—which will be far more detailed as this case enters expert discovery and risks revealing exactly which payments and bags of coffee Cargill is analyzing—are protected. Second, Plaintiff offered to stipulate that running search queries through Plaintiff's counsel would not waive privilege or work-product protection. Such a stipulation effectively concedes that Plaintiff is invading those protections, and ignores that Plaintiff would have real-time access to Cargill's defense to Plaintiff's claims in this matter.

Accordingly, Cargill respectfully requests that this Court order Plaintiff to immediately provide Cargill with full access to the TRM data without Plaintiff's counsel interference.

The Honorable Stewart D. Aaron
December 4, 2023
Page 4

Respectfully submitted,

/s/ *Joshua S. Levy*

Joshua S. Levy
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006
jlevy@willkie.com
Tel: (202) 303-1000

*Attorneys for Defendant Cargill Incorporated*