IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br>Plaintiff<br><br>v.<br><br>**OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br>Defendants. | Civil No. 23-01034 (GMM) |

**REPLY TO JOINT OPPOSITION TO CONSOLIDATED PLAINTIFF FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO COMPEL BENWORTH'S QUICKBOOKS ACCOUNTING DATA**

**COMES NOW** Plaintiff Federal Reserve Bank of San Francisco (the "Reserve Bank"), by and through its undersigned counsel, and respectfully files, with prior leave of the Court, this reply ("Reply") to Defendants' *Joint Opposition to Consolidated Plaintiff Federal Reserve Bank of San Francisco's Motion to Compel Benworth's Quickbooks Accounting Data* (ECF No. 206, the "Opposition"), in further support of the Reserve Bank's *Motion to Compel Benworth's QuickBooks Accounting Data* (ECF No. 200, the "Motion to Compel").[1]  Pursuant to Local Civil Rule 7(c), the Reserve Bank submits this Reply solely to respond to two arguments raised in the Opposition: (1) Defendants' claim that the Reserve Bank's request for access to the QuickBooks database violates the parties' ESI Stipulation; and (2) Defendants' claim that providing search queries to run through the QuickBooks database is no different from establishing search terms for the production of responsive documents.  We address each in turn.

ARGUMENT

**A. The ESI Stipulation Does Not Mandate Defendants' Proposed Approach to Production of the QuickBooks Data.**

*First,* Defendants' arguments that the Reserve Bank "has refused to comply with the ESI Stipulation" by requesting access to Defendants' QuickBooks database are facially meritless.  *See* Opp'n at 2.  The ESI Stipulation merely requires the parties to discuss and consider whether the requested information may be provided by querying the QuickBooks database and generating a report, which the Reserve Bank has done in good faith.  *See* Mot. to Compel at 4-6.

Despite this clear language, Defendants continue to double-down on their erroneous assertion that the ESI Stipulation *requires* the parties to adopt Defendants' preferred method of running the Reserve Bank's own search queries through the QuickBooks database, in order to then

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Compel.

"determine whether the reports generated from those queries contain all relevant information." Opp'n at 4. For the reasons set forth in the Motion to Compel, and as is clear from the plain language of the ESI Stipulation, that interpretation is flatly wrong. *See* Mot. to Compel at 5-6 (explaining that the ESI Stipulation requires only that the parties "meet and confer regarding methods of production" and "consider" whether the requested information may be provided by querying the database and generating a report).

In addition to being predicated on a fundamental misreading of the ESI Stipulation, Defendants' position is also functionally unworkable. Setting aside the privilege concerns implicated by Defendants' proposed approach (which are well briefed in the Motion to Compel and supplemented below), the Reserve Bank is simply not in a position to ex ante provide queries that will provide it with all relevant information requested by the discovery requests. That is because, among other reasons, the Reserve Bank does not have necessary details regarding *what transfers were made to which entities* during the relevant time period. Indeed, as of the filing of this Reply, the Reserve Bank does not know which entities other than Benworth FL and Benworth PR are owned or controlled by the Navarros—a key predicate to determining which transfers may have been undertaken with actual intent to hinder, defraud or delay Benworth creditors.[2] The Reserve Bank expects that further details will unfold throughout the discovery process, and therefore requires full access to the QuickBooks database so it can update and iterate upon its searches as facts evolve.[3]

---

[2] Of course, if Defendants experience a change of heart and now are willing to provide a comprehensive list of all entities in which the Navarros have a beneficial ownership stake and to detail any and all transfers from Defendants to those entities, that would largely moot the Motion to Compel.

[3] By way of example, the Reserve Bank only recently learned of an entity affiliated with Defendants that materially contributed to Defendants' settlement with Womply, which it otherwise would have had no knowledge of.

At base, Defendants' proposed approach risks supplying the Reserve Bank with an incomplete picture of the flow of funds made by and among Defendants during the relevant time period, when understanding the complete picture is integral to the Reserve Bank's claims. And, because Defendants have raised no arguments with respect to relevance, proportionality, burden, or confidentiality, there is no reason the Reserve Bank should be required to rely solely on a smattering of transactions that Defendants are willing to disclose, rather than the full scope of information it is entitled to, in order to further develop its claims. *See Autoridad de Carreteras y Transportacion v. Transcore Atlantic, Inc.*, 319 F.R.D. 422 (D.P.R. 2016) ("When a party resists the production of evidence, it bears the burden of establishing lack of relevancy or undue burden.") (internal quotation marks and citations omitted)). If Defendants continue to refuse to provide the Reserve Bank access to the QuickBooks database, the only suitable alternative is for Defendants to export and produce to the Reserve Bank *all* QuickBooks data from the relevant time period, which Defendants have thus far objected to (but which the Reserve Bank would accept).

**B. Defendants' Attempts to Dismiss the Reserve Bank's Privilege Concerns Fail.**

*Second,* Defendants' attempts to defeat the Reserve Bank's arguments with respect to attorney-client privilege and work product are unavailing.

As explained in the Motion to Compel, Defendants' proposed approach raises significant privilege concerns, as any search queries developed by the Reserve Bank's counsel or experts would reflect the mental impressions, conclusions, or opinions of counsel and would therefore constitute undiscoverable opinion work product. *See* Mot. to Compel at 9. Despite this, Defendants' main argument in the Opposition is that any queries provided by the Reserve Bank to Defendants to run through the QuickBooks database are "no different than search terms" and are therefore categorically non-privileged. Opp'n at 4. But each of the cases Defendants rely upon

-3-

address whether there is a categorical prohibition on disclosing search terms in the context of a bona fide dispute over a party's compliance with its discovery obligations.  As explained in *Burnett v. Ford Motor Co*:

> When two-way planning does not occur upfront, and questions about the adequacy of the document production subsequently arise, common sense dictates that the party conducting the search must share information regarding the universe of potentially relevant documents being preserved . . . as well as the search terms used in collecting relevant documents . . . . After all, the party responsible for the search and production has the duty to demonstrate its reasonableness.

2015 WL 4137847, at *8 (S.D. W. Va. July 8, 2015) (citations omitted); *see also HealthEdge Software, Inc. v. Sharp Health Plan*, 2021 WL 1821358, at *2-3 (D. Mass. May 6, 2021) (requiring defendant to disclose to plaintiff "how it filtered [] documents to arrive at its proposed review universe (i.e., date ranges, search terms, de-duping methods, etc.)" where plaintiff alleged that defendant had "failed to be transparent" regarding its collection of electronically stored information); *FormFactor*, *Inc. v. Micro-Probe, Inc.*, 2012 WL 1575093, at *1, 7 (N.D. Cal. May 3, 2012) (ordering plaintiff to provide the search terms it used to identify documents responsive to defendants' document requests, where defendants argued that plaintiff failed to comply with the court's discovery order).

Here, there is no dispute about the information the Reserve Bank is requesting or the Defendants' obligation to produce such information.  All parties are aware that the Reserve Bank seeks Defendants' financial records from the relevant time period, and that such records are housed on the QuickBooks database.  Unlike in the cases cited by Defendants, the search terms at issue here do not go to "the underlying facts of what documents are responsive" to the Reserve Bank's discovery requests, but rather the "thought processes of [] counsel" around how to review and analyze such responsive documents and which transfers may be subject to legal challenge.  *See*

-4-

*FormFactor*, 2012 WL 1575093, at 7 n.4. Courts have drawn distinctions between the two. *See, e.g.*, *Brooks v. Thomson Reuters, Corp.*, 2022 WL 16698686, at \*2 (N.D. Cal. Nov. 3, 2022) (denying defendant's request for production of screen recordings generated from plaintiffs' use of an online database because plaintiffs' search processes "may reflect what an attorney believes is relevant preparation for the instant litigation, including the choice of search terms and queries, which results are chosen, and which additional steps to take"); *see also Hickman v. Taylor,* 329 U.S. 495, 511 (1947) ("Proper preparation of a client's case demands that [a lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.").

Defendants' attempts to minimize the import of *von Kahle v. Cargill, Inc.*, No. 1:21-cv-08532, also miss the mark. *See* Opp'n at 5. Although the district court in *von Kahle* did not provide a written analysis regarding privilege in its order, the filings make clear that privilege concerns were at the forefront of the dispute. And the court's order prohibiting the plaintiff's representative, who supervised the defendant's use of the accounting database, from disclosing to plaintiff's counsel any information on the searches conducted demonstrates the court's focus on preserving defendant's privilege. *See* Mot. to Compel at 11. [4]

## CONCLUSION

For the foregoing reasons, the Reserve Bank respectfully requests that this Court grant the Motion to Compel.

---

[4] Defendants also argue, without citing a single authority, that "the Reserve Bank waived any privilege concerns when it signed the ESI Stipulation." Opp'n at 3. Defendants fail to articulate *any* theory as to how the ESI Stipulation operates as a waiver of privilege, let alone the type of "extreme circumstances" necessary for a court to find an implied waiver of privilege. *See Especias Montero, Inc. v. Best Seasonings Grp. Inc.*, 2021 WL 12319949, at \*4 (D.P.R. Oct. 26, 2021). As such, this argument holds no water. For the avoidance of doubt, the Reserve Bank has not, and does not, waive any privileges it or its attorneys enjoy.

Respectfully submitted in San Juan, Puerto Rico on February 18, 2025.

Thomas S. Kessler (admitted *pro hac vice*)
tkessler@cgsh.com

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Attorneys for the Federal Reserve Bank of
San Francisco*

s/ *Antonio L. Roig Lorenzo*
Antonio L. Roig Lorenzo
antonio.roig@oneillborges.com
USDC-PR No. 207712

s/ *Salvador J. Antonetti Stutts*
Salvador J. Antonetti Stutts
salvador.antonetti@oneillborges.com
USDC-PR No. 215002

s/ *Ubaldo M. Fernández Barrera*
Ubaldo M. Fernández Barrera
ubaldo.fernandez@oneillborges.com
USDC-PR No. 224807

s/ *Aníbal A. Román Medina*
Aníbal A. Román Medina
anibal.roman@oneillborges.com
USDC-PR No. 308410

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Attorneys for the Federal Reserve Bank of
San Francisco*

## CERTIFICATE OF SERVICE

I certify that on February 18, 2025, I filed a copy of the foregoing document using the Court's CM/ECF system, which will automatically generate a Notice of Electronic Filing to all counsel of record in this matter.


s/ *Aníbal A. Román Medina*
Aníbal A. Román Medina
