**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Oto Analytics, LLC<br><br>   Plaintiff,<br><br>     v.<br><br>Benworth Capital Partners PR, LLC; Benworth Capital Partners, LLC; Bernardo Navarro and Claudia Navarro,<br><br>   Defendants. | **Civil No. 23-01034(GMM)** *cons.*<br><br>**Civil No. 24-01313 (GMM)** |
| Federal Reserve Bank of San Francisco,<br><br>   Plaintiff-Intervenor,<br><br>     v.<br><br>Oto Analytics, LLC; Benworth Capital Partners PR, LLC; Benworth Capital Partners, LLC; Bernardo Navarro and Claudia Navarro,<br><br>   Defendants in Intervention. | |
| Federal Reserve Bank of San Francisco,<br><br>   Consolidated Plaintiff,<br><br>     v.<br><br>Benworth Capital Partners PR, LLC; Benworth Capital Partners, LLC; Bernardo Navarro and Claudia Navarro,<br><br>   Consolidated Defendants. | |

Civil No. 23-01034(GMM)*cons.*
Civil No. 24-01313 (GMM)
Page -2-

## OPINION AND ORDER

Before the Court is Defendant Benworth Capital Partners, LLC's ("Benworth FL") *Defendant Benworth Capital Partners, LLC's Motion to Dismiss the Federal Reserve's Complaint and Complaint in Intervention* ("Motion to Dismiss") (Docket No. 169), joined by Defendants Benworth Capital Partners PR, LLC; Bernardo Navarro and Claudia Navarro at Docket No. 170. Therein, Benworth FL seeks to dismiss in its entirety Plaintiff Federal Reserve Bank of San Francisco's ("Reserve Bank") *Complaint* at Docket No. 1 in Civil No. 24-01313 pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons the Court **DENIES** the Reserve Bank's Motion to Dismiss.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is a civil action against defendants Benworth Capital Partners PR LLC, a Puerto Rico limited liability company ("Benworth PR"), Benworth Capital Partners LLC, a Florida limited liability company ("Benworth FL" and, together with Benworth PR, "Benworth"), Bernardo Navarro ("Mr. Navarro"), and Claudia Navarro ("Ms. Navarro" and, together with Mr. Navarro, the "Navarros" and, collectively with Benworth, the "Defendants") for, among other relief, damages for breach of contract, collection of money, conversion, and rescission of fraudulent transfers of various

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -3-

assets from Benworth FL to Benworth PR and the Navarros. Before the Court is *Defendant Benworth Capital Partners, LLC's Motion to Dismiss the Federal Reserve's Complaint and Complaint in Intervention* ("Motion to Dismiss"). (Docket No. 169).

The following facts, drawn from the Complaint, are accepted as true for purposes of the Motion to Dismiss. The Reserve Bank of San Francisco ("Reserve Bank" or "Plaintiff") is part of the U.S. central bank system known as the Federal Reserve System. *See* (Docket No. 1 at ¶5). Beginning in May 2020, the Reserve Bank provided approximately $4.3 billion in credit advances to Benworth FL under the Paycheck Protection Program ("PPP") which provided small businesses with funds to pay certain business costs during the COVID-19 pandemic. *See* (id. at ¶2). The Reserve Bank holds a properly perfected, valid first-priority security interest in certain PPP loans pledged as collateral ("PPP Collateral") to secure those advances, as well as all "proceeds and products" thereof and other collateral. *See* (id.).

The agreements that provided for such credit advances were the *Paycheck Protection Program Liquidity Facility Letters of Agreement* dated May 4, 2020, January 14, 2021, and January 30, 2023 (collectively, the "Letters of Agreement"). *See* (id. at ¶¶ 19, 20). The Letters of Agreement incorporate the *Reserve Bank's Operating Circular No. 10* (the "Operating Circular" and, together

```
Civil No. 23-01034(GMM)cons.
Civil No. 24-01313 (GMM)
Page -4-
```

with the Letters of Agreement, the "Program Agreements"), which together set forth the relevant terms and conditions that govern Benworth FL's relationship with the Reserve Bank. *See* (id. at ¶20).

Under the Program Agreements, Benworth FL was authorized to request credit advances ("Advances") from the Reserve Bank. Those Advances were secured by PPP loans pledged as collateral to the Reserve Bank (the "Pledged PPP Loans") and set to mature on the maturity dates of the Pledged PPP Loans, subject to the terms of the Program Agreements. *See* (id. at ¶ 21). The maturity date of all Advances is accelerated upon the occurrence of an event of default, and all Advances become due and owing. *See* (id. at ¶ 25). Additionally, if Benworth FL "(i) has breached any of the representations, warranties, or covenants made under the [Program Agreements] or (ii) has engaged in any fraud or misrepresentation in connection with any Advance or any request to obtain an Advance under the [Paycheck Protection Program Liquidity Facility ("PPPLF")," all Advances made to Benworth FL immediately become recourse obligations, regardless of the value of the PPP Collateral. *See* (id. at ¶ 27). In addition, failure by a PPPLF borrower to meet any of the requirements of the Program Agreements, including if the PPP Collateral fails to satisfy the requirements for guaranty purchase of PPP loans by the Small Business Administration ("SBA"), may, at the sole discretion of the Reserve

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -5-

Bank, void the non-recourse provisions of the Program Agreements and any related provisions. The Reserve Bank's rights therefore become full recourse with respect to the portion of any Advance equal to the amount of the valuation of the non-conforming PPP Collateral. *See* (id. at ¶ 28).

Beginning in February 2021, Benworth FL contracted with Oto Analytics, LLC ("Womply") to use its services to collect loan files from borrowers to originate PPP loans. *See* (id. at ¶¶ 39, 42). In August 2021, Womply commenced JAMS arbitration against Benworth FL in San Francisco, California (the "Arbitration"), seeking payment of unpaid fees that Benworth FL allegedly owes Womply under the parties' agreements. *See* (id. at ¶ 40). On December 21, 2023, the arbitrator overseeing the Arbitration issued an interim award (the "Interim Award") that, if finalized and not set aside, would require Benworth FL to pay Womply over $86 million on account of unpaid fees, plus contractual interest and Womply's costs of collection of the debt. *See* (id. at ¶ 41). On June 11, 2024, the arbitrator issued a final award requiring Benworth FL to pay Womply nearly $118 million in unpaid fees, interest, and costs. *See* (id.). Pursuant to the Final Award, Womply is required to promptly transmit numerous loan files related to Benworth FL's PPP loan portfolio that it had failed to return, and which are necessary

Civil No. 23-01034(GMM)*cons.*
Civil No. 24-01313 (GMM)
Page -6-

for the SBA to provide payment to Benworth FL for PPP loans that are not eligible for forgiveness. *See* (id. at ¶¶ 42-44).

Benworth FL informed the Reserve Bank that the loan files were not in its possession and that they were necessary to process guaranty purchase applications that were pending or were on appeal with the SBA. *See* (id. at ¶ 34). If an application for guaranteed purchase of a PPP loan was not approved by the SBA, Benworth FL would not receive any payment on the loan thereby likely affecting its ability to repay the Reserve Bank. *See* (id. at ¶ 43).

Based on the information acquired by Womply during discovery in the arbitration proceedings, it filed an action in this Court to, inter alia, unwind an alleged fraudulent transfer (the "Fraudulent Transfers") of approximately $171 million from Benworth FL to Benworth PR, both of which the Navarros own and control. *See* (id. at ¶ 45). Plaintiff alleges the funds at issue in the Fraudulent Transfers include PPP Collateral over which the Reserve Bank hold a first-priority lean. As a result of the Fraudulent Transfers, Benworth FL did not have access to sufficient funds to service the Pledged PPP Loans and pay its debt to the Reserve Bank. *See* (id. at ¶ 63).

On or about December 27, 2023, Benworth FL informed the Reserve Bank of certain developments impacting its financial position which caused the Reserve Bank to determine that various

Civil No. 23-01034(GMM)*cons.*
Civil No. 24-01313 (GMM)
Page -7-

Events of Default had occurred per the definition provided in the Program Agreements. *See* (id. at ¶ 31). One such development was Benworth FL's acknowledgement to the Reserve Bank that it did not have access to sufficient funds to pay the interim arbitral award, or any commensurate or larger final award yet to be awarded. *See* (id. at ¶ 30). On the basis of this acknowledgement and on "financial statements, reports, and other information disclosed by Benworth FL," the Reserve Bank concluded that at least the following Events of Default had occurred: "(i) that the Reserve Bank "deem[ed] itself insecure with respect to the financial condition of" Benworth FL and Benworth FL's ability to perform its obligations under the Program Agreements as provided for under the Operating Circular, and (ii) Benworth FL's Insolvency (as defined under the Operating Circular)[.]" *See* (id. at ¶ 32). As such, Plaintiff alleged that due to the Events of Default, the entire amount outstanding on Benworth FL's Advances became due.

Further, the Reserve Bank determined that Benworth FL had breached multiple representations, warranties, or covenants it made under the Program Agreements, causing the Advances to Benworth FL to become recourse obligations. *See* (id. at ¶ 33). These breaches included, but were not limited to, a breach of the representation that no event of default had occurred or was continuing, and a breach of the covenant to promptly notify the

```
Civil No. 23-01034(GMM) cons.
Civil No. 24-01313 (GMM)
Page -8-
```

Reserve Bank when Events of Default occurred. *See* (id.). Moreover, the Reserve Bank states a separate basis for Benworth FL's loans becoming recourse obligations: the SBA denied over $60 million of Benworth Fl's requests for guaranty purchase of PPP loans because Benworth FL lacked the appropriate documentation to support the requests. *See* (id. at ¶ 34). The Reserve Bank states this was due either to Womply's withholding the necessary documentations, or "due to other problems internal to Benworth, FL." (Id.).

On February 27, 2024, the Reserve Bank sent Benworth FL a letter ("Default Notice") memorializing the Events of Default and breached covenants the Reserve Bank believed to have caused the Advances to become immediately payable and the obligations to become full recourse. *See* (id. at ¶ 35). The Default Notice, attached to the Complaint as Exhibit D, states in relevant part as follows:

> Various facts and circumstances have occurred that have caused the Reserve Bank to conclude that Events of Default, as defined in the PPPLF Agreement, have occurred. Among other things, Benworth informed the Reserve Bank that the U.S. Small Business Administration (the "SBA") has denied guaranty purchase applications for over 3,600 PPP Loans pledged as PPPLF Collateral which could result in these PPP Loans not being fully guaranteed by the SBA. Moreover, Benworth has provided various facts to the Reserve Bank regarding the concerning state of Benworth's financial condition. On December 27, 2023, Benworth informed the Reserve Bank that it is in arbitration proceedings with Oto Analytics (d/b/a "Womply"), and that the arbitrator issued an interim award that would require Benworth to pay Womply over $86 million. Benworth acknowledged to the Reserve

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -9-

> Bank that it may not have access to sufficient funds to
> pay Womply the amount of the interim award or any larger
> amount that may be finally awarded, which assertion is
> supported by Benworth's financial statements provided to
> the Reserve Bank.
>
> . . .
>
> Accordingly, we hereby declare and provide notice to
> Benworth that Events of Default have occurred, as
> defined in the Operating Circular, including, without
> limitation, under sections (ii), (iii) and (vii) of the
> definition of an Event of Default. See Operating
> Circular at 2-3.
>
> . . .
>
> In addition to the foregoing, the Letters of Agreement
> state that "all Advances made to the Borrower pursuant
> to the PPPLF shall become a recourse obligation if, in
> the sole discretion of the Reserve Bank, the Borrower
> (i) has breached any representations, warranties, or
> covenants made under the PPPLF Agreement or (ii) has
> engaged in any fraud or misrepresentation in connection
> with any Advance or request to obtain an Advance under
> the PPPLF." See each Letter of Agreement at 4.
> Accordingly, under the terms of the PPPLF Agreement, the
> Reserve Bank hereby notifies the Borrower that the
> Borrower's Obligations under the PPPLF Agreement have
> become full recourse obligations of the Borrower.

(Docket No. 1-8).

The Operating Circular provides the definition for Events of Default under the Program Agreements. As referenced in the Default Notice, the Reserve Bank notified Benworth FL that the following Events of Default had occurred: "(ii) the Borrower fails to perform or observe any of its obligations or agreements under the Lending Agreement or under any other instrument or agreement delivered or executed in connection with the Lending Agreement or under any

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -10-

other agreement with the Bank or another Reserve Bank;" "(iii) any representation or warranty made or deemed to be made by the Borrower under or in connection with the Lending Agreement, or that is contained in any certificate, document or financial or other statement delivered by it or in connection with the Lending Agreement, is inaccurate in any material respect on or as of the date made or deemed made;" and "(vii) whenever the Bank deems itself insecure with respect to the financial condition of the Borrower or the Borrower's ability to perform its Obligations." *See* (Docket No. 1-6 at 5-6).

On July 10, 2024, the Reserve Bank filed a Complaint before this Court seeking a judgment that Benworth FL defaulted on its obligations under the Program Agreements and ordering them to pay the amounts owed, specifically $66,980,967.08. The Reserve Bank also asks the Court to issue an order of recission for the Fraudulent Transfers between Benworth FL and Benworth PR, to declare Benworth PR am *alter ego* of Benworth FL, to pierce the corporate veil and find the Navarros personally liable for Benworth's obligations, and to find that Defendants converted the property of the Reserve Bank. *See* (Docket No. 1 at 31-32).

On August 20, 2024, the Court granted the Reserve Bank's request to consolidate this case with the case file by Womply against the defendants, <u>Oto Analytics, LLC v. Benworth Capital</u>

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -11-

Partners PR LLC, et al., Civil No. 23-01034. *See* (Docket No. 153).

Thereafter, on October 1, 2024, Bentworth FL filed the Motion to

Dismiss. (Docket No. 169). Codefendants Benworth PR, Bernardo

Navarro, and Claudia Navarro joined the Motion to Dismiss through

its request at Docket No. 170. Since then, the complaint in case

Civil No. 23-01034 has been dismissed, *see* (Docket No. 196), and

thus the Motion to Dismiss as to the Complaint in Intervention has

become moot, *see* (Docket No. 205).

In the Motion to Dismiss, Defendants allege that the Reserve

Bank's Complaint fails to state a claim upon which relief can be

granted under Fed. R. Civ. P. 12(b)(6). Particularly, Defendants

argue that statements in support of the four breach of contract

claims asserted in Federal Reserve's Complaint are conclusory and

fail to sufficiently allege conduct by Benworth FL that constitutes

a breach. Defendants challenge the sufficiency of the facts alleged

to support the Reserve Bank's assertion that an Event of Default

occurred or that Benworth FL could reasonably be considered

"insolvent" under the Program Agreements. *See* (Docket No. 169 at

8-9). Those facts being only that (1) Benworth FL does not have

sufficient funds to pay the arbitration award, and (2) "financial

statements, reports, and other information disclosed by Benworth

FL to the Reserve Bank." *See* (id. at 10; *citing* Complaint at ¶¶

30, 32). Thus, "without more detailed allegations," Plaintiff

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -12-

failed to sufficiently allege Benworth FL was insolvent or that
Plaintiff's "financial insecurity is objectively reasonable." (Id.
at 11). Defendants also contend that by stating that Events of
Default "included but were not limited to" the two alleged,
Plaintiff failed to notify Defendants of their breaches and leaves
then without sufficient information to respond to the Complaint.
*See* (id. at 12-13).

Defendants further argue Plaintiff's determination that
Benworth FL had breached multiple representations, warranties, or
covenants under the Program Agreements, making the amount owed a
recourse obligation was not sufficiently pled. The Motion to
Dismiss provides three reasons: (1) the Complaint does not identify
which event of default occurred or were continuing at the time of
the representations; (2) the Complaint does not allege which event
of default Benworth FL failed to promptly notify it about; and (3)
the Complaint uses the same overbroad "including but not limited
to" language. *See* (id. at 13-14). The Motion to Dismiss also argues
the Complaint fails to allege specific terms of the PPP loan
program which Benworth FL failed to comply with thus warranting
the amount owed becoming a full recourse debt to the Reserve Bank.
*See* (id. at 14-15).

Defendants also posit that because Plaintiff fails to state
a claim as to its Breach of Contract claims, then its fraudulent

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -13-

transfer claims and claim for declaratory judgment are not yet ripe for adjudication because those claims hinge on an accelerated debt becoming due as a consequence of the breaches. *See* (id. at 15). Thus, Defendants contend, if the Court should dismiss the Reserve Bank's breach of contract claims, the Court should also dismiss these claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See* (id. at 16).

Defendants further request the Court dismiss the Reserve Bank's conversion claim for failure to state a claim because Plaintiff "fails to allege an essential element of a conversion claim" under Puerto Rico law and because the claim of conversion is a tort, and cannot be based on a claims for breach of contract. *See* (id. at 17). Finally, the Motion to Dismiss asserts that the Complaint is an impermissible "shotgun pleading" because (1) each cause of action incorporates by reference the allegations for each cause of action that preceded it and (2) it asserts multiple claims against multiple defendants without specifying which defendant is responsible for the conduct, or which of the defendants the claim is brought against. *See* (id. at 19).

On October 29, 2024, Plaintiff filed *Federal Reserve Bank of San Francisco's Opposition to Defendant Benworth Capital Partners, LLC's Motion to Dismiss the Federal Reserve's Complaint and Complaint in Intervention* ("Opposition"), the Reserve Bank refutes

Civil No. 23-01034(GMM)*cons.*
Civil No. 24-01313 (GMM)
Page -14-

each one of Benworth FL's arguments. *See* (Docket No. 177). First, the Reserve Bank states that it has adequately stated a claim for breach of contract, including properly alleging that Events of Default took place and that Benworth FL was insolvent, according to the language of the Program Agreements. *See* (id. at 12-13). The Reserve Bank also argues that the Complaint provides a clear basis for the allegation that Benworth FL's debt is now a recourse obligation. Specifically, it "identities three representations or covenants that have been breached and the basis for the Reserve Bank's determination as to each." (Id. at 18).

The Opposition also argues that the Complaint adequately pleads fraudulent transfer, alter ego, veil piercing, and conversion. *See* (id. at 20-23). Finally, the Reserve Bank argues that the complaint is not an impermissible shotgun pleading because its use of incorporation is not improper and because the Complaint provides sufficient information regarding which claim is applicable to each defendant, and thus not an impermissible "group pleading." *See* (id. at 25-26).

On November 12, 2024, Defendants jointly filed *Defendants' Reply in Support of Motion to Dismiss the Federal Reserve's Complaint and Complaint in Intervention* ("Reply"). (Docket No. 180). In the Reply, Defendants reassert Plaintiff's failure to adequately plead facts to support its claim for breach of contract,

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -15-

thus making the fraudulent transfer claims and claim for declaratory judgment not ripe. (Id.). Defendants also reiterate their arguments regarding the inadequate pleading of the Reserve Bank's conversion claim as well as the overall impermissibility of the Complaint as a "shotgun" pleading. *See* (id. at 7-8).

## II.    LEGAL STANDARD

### A. Motion to Dismiss Standard Rule 12(b)(6)

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." Cortés-Ramos v. Martin-Morales, 956 F.3d 36, 41 (1st Cir. 2020) (*quoting* Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

In performing a 12(b)(6) analysis, a Court first "accepts as true the non-conclusory factual allegations in the complaint and

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -16-

draws all reasonable inferences in the plaintiff's favor." <u>In re</u>
<u>Fin. Oversight & Mgmt. Bd. for Puerto Rico</u>, 633 B.R. 463, 471-72
(D.P.R. 2021) (*citing* <u>Mississippi Pub. Emps.' Ret. Sys. v. Boston</u>
<u>Scientific Corp.</u>, 523 F.3d 75, 85 (1st Cir. 2008)); *see also*
<u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 17 (1st Cir. 2011)
(In ruling on a 12(b)(6) motion, a court is "obligated to view the
facts of the complaint in the light most favorable to the
plaintiffs, and to resolve any ambiguities in their favor."). The
Court must then "isolate and ignore statements in the complaint
that simply offer legal labels and conclusions or merely rehash
cause-of-action elements." <u>Reyes de Leon v. Coconut Prop., LLC</u>,
546 F.Supp.3d 116, 122 (D.P.R. 2021) (*quoting* <u>Schatz v. Republican</u>
<u>State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012)). If the
"factual content, so taken 'allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged,'
the claim has facial plausibility" and the Court must deny the
motion to dismiss. <u>Ocasio-Hernández</u>, 640 F.3d at 12 (*quoting* <u>Iqbal</u>,
556 U.S. at 678, 129 S.Ct. 1937).

　　Additionally,     at     the motion to dismiss stage,
a Court may consider: "(1) 'implications from documents' attached
to or fairly 'incorporated into the complaint,' (2) 'facts'
susceptible to 'judicial notice,' and (3) 'concessions' in
plaintiff's 'response to the motion to dismiss.'" <u>Nieto-Vicenty</u>

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -17-

v. Valledor, 984 F.Supp.2d 17, 20 (D.P.R. 2013); *see also* Schatz,

669 F.3d at 55-56.[1]

### III.    APPLICABLE LAW AND ANALYSIS

A. Breach of Contract

Defendants argue that the allegations contained in the
Complaint that state that "various events of default ha[ve]
occurred under the. . .Agreements" are insufficiently pled because
the Federal Reserve did not provide enough facts to allege that
"Benworth FL was, in fact, insolvent pursuant to the Operating
Circular or that the Federal Reserve's financial insecurity is
objectively reasonable." (Docket No. 169 at 11). Defendants claim
California case law governs the pleading standard here. *See* (Docket
No. 169 at 7). Relying on Levy v. State Farm Mut. Auto. Ins. Co.,
150 Cal. App. 4th 1, 5 (2007), Defendants assert the pleading
standard for breach of contract requires that facts alleging breach
"must be pled with specificity." However, as District Courts in
California have recognized, the Federal Rules of Civil Procedure
will apply over conflicting state law, creating a one-size-fits-

---

[1] Attached to its Opposition, the Reserve Bank includes Benworth FL financial
statements for the year 2023, stating that those statement were sufficiently
incorporated into the Complaint for the Court to consider them in evaluating
the Motion to Dismiss. The Court will disregard this attached exhibit as there
is not sufficient mention of this financial document in the Complaint, only
that "financial statements, reports, and other information" were disclosed by
Benworth FL which caused the Reserve Bank to determine that Events of Default
had occurred. *See* (Docket No. 1 at ¶32). Nor will the court consider the Reserve
Bank's argument pointing to the existence of "negative equity" in Benworth FL's
financial documents in determining its insolvency as those facts were not pled
in the Complaint.

all pleading standard in federal court. *See* <u>Ramirez v. U.S. Bank</u> <u>Nat'l Ass'n</u>, No. 17-CV-0786 W (BGS), 2017 WL 3478740, at *9 (S.D. Cal. Aug. 14, 2017); <u>Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd.</u> <u>v. Preferred Secured Agents</u>, Inc., No. 15-CV-00624-LB, 2016 WL 6524396, at *3 (N.D. Cal. Nov. 3, 2016); <u>Lanini v. JPMorgan Chase</u> <u>Bank</u>, No. 2:13-CV-00027 KJM, 2014 WL 1347365, at *5 (E.D. Cal. Apr. 4, 2014). Fed. R. Civ. P. 8 ("Rule 8") requires only "a short and plain statement of the claim showing that the pleader is entitled to relief", —one in which a pleading is sufficient so long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 678. Thus, Rule 8 applies over the rule of <u>Levy</u>. Put differently, "it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision," but "the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." <u>Langan v. United</u> <u>Servs. Auto. Ass'n</u>, 69 F.Supp.3d 965, 979 (N.D. Cal. 2014).

1. <u>Events of Default</u>

The Complaint alleges that an Event of Default occurred under Section 2.1, *Event of Default*, clause (vii) of the Operating Circular. This clause states that an Event of Default occurs "whenever the [Reserve] Bank *deems itself insecure* with respect to the financial condition of the Borrower or the Borrower's ability

to performing its Obligations." (Docket No. 1-6 at 3) (emphasis added). The Complaint further alleges that the Reserve Bank *did* deem itself insecure as to Benworth FL's ability to perform its Obligations, and that it notified Benworth FL of that determination on February 27, 2024. *See* (Docket No. 1 at ¶¶ 31,32,35). The allegation that the Reserve Bank deemed itself insecure based on information regarding Benworth FL's finances and notified Benworth FL of that determination through a Letter of Default, is sufficiently pled at this stage. The Reserve Bank gave adequate notice to Defendants of the allegations against them as to this potential breach, both prior to this litigation and in the Complaint, and to the Court to determine which "material obligation of the contract the defendant allegedly breached." *See* Langlan, 69 F.Supp.3d at 965.

The Reserve Bank also alleges that an Event of Default occurred under Section 2.1, *Event of Default*, clause (iv) of the Operating Circular, which Defendants argue was not adequately pled. Specifically, Defendants point to the fact that the Complaint does not identify which definitions of 'Insolvency' apply to Benworth FL, instead, it "generally assets insolvency and financial insecurity as an event of default without any factual or legal foundation[.]" (Docket No. 169 at 11). In this regard, the Complaint alleges the Reserve Bank identified Events of Default

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -20-

"based on Benworth FL's inability to pay the Final Award and financial statements, reports, and other information disclosed by Benworth FL to the Reserve Bank." The Reserve Bank also argues that the allegations in the complaint put Benworth FL on sufficient notice of its claims because it is evident that only two of the definitions of insolvency in the Operating Circular could reasonably apply here: "(i) the condition of insolvency;" and "(viii) any other circumstances that evince the Borrower's inability to pay its debts when due." *See* (Docket Nos. 177 at 15, 1-6 at 3-4). The Court agrees that the text of the contract on its face combined with the allegations presented in the Complaint are sufficient to provide Defendants notice as to the provisions of the contract that are the bases of the Reserve Bank's claims.

Defendants also argue that the reference in the Complaint to "financial statements, reports, and other information" received from Benworth FL, were not described with sufficient specificity because there was no notice of "which documents in particular where reviewed." (Docket No. 169 at 12). In response, the Reserve Bank states that "Benworth FL knows which financial statements the Reserve Bank reviewed because *they provided* those statements to the Reserve Bank." (Docket No. 177 at 16) (emphasis in original). In both the Complaint and the Letter of Default issued on February 27, 2024, the Reserve Bank mentions their reliance on "financial

statements provided to the Reserve Bank." *See* (Docket Nos. 1 at ¶ 32, 1-8). Based on this allegation alone, the Court is able to conclude that the Defendants are on notice of the bases for the Reserve Banks claims. Whether these financial statements, combined with the notification that Benworth FL "may not have access to sufficient funds" to pay the final arbitral award, support the Reserve Bank's conclusion that Events of Default had occurred is not a matter the Court may resolve on a motion to dismiss. Thus, the Court concludes that the facts alleged in the Complaint as to Events of Default, and thus breach of the contract, are sufficiently pled to survive the motion to dismiss stage.

    2. <u>Representations, Warranties, or Covenants</u>

The Complaint also alleges the Advances it made to Benworth FL have become recourse obligations because it has "determined that Benworth FL had breached multiple representations, warranties, or covenants it made under the. . .Agreements." *See* (Docket No 1. at ¶ 33). These breaches "included but were not limited to, a breach of the representation that no event of default had occurred or was continuing, and a breach of the covenant to promptly notify the [Federal Reserve] when events of default occurred." (<u>Id.</u>); *see also* (Docket No. 1-6 at 13). Defendants reason that there is no breach of a representation because that representation was made only as of the date Benworth FL executed

Civil No. 23-01034(GMM)*cons.*
Civil No. 24-01313 (GMM)
Page -22-

the Program Agreements on January 30, 2023.16 *See* (Docket No. 169

at Motion at 13-14). This argument side steps the clear language

of the agreement:

> Each time the Borrower requests an Advance, incurs any
> Indebtedness, or grants a security interest in any
> Collateral to a Reserve Bank, the Borrower is deemed to
> make all of the foregoing representations and warranties
> on and as of the date such Advance or Indebtedness is
> incurred or security granted. *Such representations and*
> *warranties shall be true on and as of such date and shall*
> *remain true and correct so long as the Lending Agreement*
> *remains in effect, any Obligation remains outstanding,*
> *or any other amount is owing to the Bank.*

(Docket No. 1-6 at 14) (emphasis added). Based on language of the

Program Agreements, Defendants' contentionthat there was no breach

because of the timing of the alleged event of default is

unsuccessful as there was a continuous obligation to maintain the

representations and warranties in the agreement. The Reserve Bank

has adequately pled that Events of Default have occurred, thus the

allegation that a warranty that no event of default had occurred

and of which they were not notified is also sufficiently pled.

The Complaint alleges a second reason why the Benworth FL's

advances have become recourse obligations: the Federal Reserve has

"become aware that Benworth FL has failed to comply with the terms

of the PPP for at least some portion of the outstanding Pledged

PPP Loans." (Docket No 1.at ¶ 34). The Reserve Bank bases this

allegation on the fact that "SBA has already denied over $60

million of Benworth FL's requests for guaranty purchase of Pledged

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -23-

PPP loans" because of either "Womply's withholding of the appropriate documentation" or "other problems internal to Benworth FL." (Id.). As referenced in the Complaint, the Reserve Bank's default notice states "Benworth informed the Reserve Bank that the [SBA] has denied guaranty purchase applications for over 3,600 PPP Loans pledged as PPPLF Collateral which could result in these PPP Loans not being fully guaranteed by the SBA." (Docket No. 1-8). These factual assertions form the basis for the Reserve Bank's allegation that Benworth FL violated the terms of the PPP loan program, thus converting the advances into full recourse obligations under the Program Agreements.

Defendants argue that these allegations are insufficient because they do not identify "(1) which specific terms of the PPP Benworth FL has failed to comply with, (2) what actions by Benworth FL amount to a violation of the PPP, (3) which portion of Benworth FL's PPP portfolio was denied because of Benworth FL's violation of the PPP as opposed to Womply's actions, and (4) which 'problems internal to Benworth FL' have caused violations of the PPP." (Docket No. 169 at 15). Notwithstanding Defendant's desire for this specific information, that is not what the federal pleading standard requires. The Court finds that the facts alleged allow the Court to draw the reasonable inference that the advances to Benworth FL's have become recourse obligations under the Program

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -24-

Agreements. *See* <u>Iqbal</u>, 556 U.S. at 678. Whether Benworth actually violated the Program Agreements, or the terms of the PPP loan program is a matter to be explored through discovery.

    3. <u>"Including, but not limited to"</u>

    Finally, Defendants call into question the Reserve Bank's use of the phrase "including, but not limited to" when referring to Benworth FL's alleged Events of Default and breaches of the representations, warranties, and covenant provisions. *See* (Docket No. 169 at 12, 14). They assert that this language is "inherently ambiguous and leaves the door open to unpled breaches." As the Court has described in detail, the Reserve Bank has alleged sufficient facts to support its breach of contract claims. Stating that the allegations "include[e], but are not limited to" the alleged breaches do not negate that those breaches were sufficiently pled and meet the plausibility standard. Thus, this language does not destroy the adequacy of Plaintiff's pleading. Neither do these statements function to expand the claims adequately pled –all legal conclusions "must be supported by factual allegations." *See* <u>Iqbal</u>, 556 U.S. at 679. Thus, the Court understands that Defendants now have the clarity required to answer the Complaint and conduct discovery pursuant to the constraints of Fed. R. Civ. P. 26(b)(1).

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -25-


B. Ripeness of Fraudulent Transfer, Alter Ego, and Veil
   Piercing Claims

Defendants correctly state that ripeness and ability of the
Federal Reserve to state fraudulent transfer and declaratory
judgment claims in the Complaint hinges on it sufficiently alleging
that Benworth FL has an accelerated debt that is due because it
breached the Agreements. Because the Court has found the breach of
contract claims adequately pled, it is also true that there exists
a controversy regarding the fraudulent transfer of funds from
Benworth FL to other Defendants. These claims are ripe for
adjudication.

C. Conversion

The Complaint also alleges a cause of action arising from the
tort of conversion. *See* (Docket No. 1 at 30). Specifically, the
Reserve Bank states, [d]uring the period of 2021 to 2024, Benworth
FL transferred millions of dollars to Benworth PR and the Navarros,
which include, in whole or in part, cash proceeds of the pledged
PPP loans," over which the Reserve Bank "holds a first-priority
lien and, therefore, is the rightful property of the Reserve Bank."
(Id.). Thus, the transfers by Benworth FL of property allegedly
belonging to the Reserve Bank "indicates its intent to unlawfully
exercise or assert dominion over property inconsistent with the
Reserve Bank's right of possession." (Id.).

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -26-

Defendants argue that the Reserve Bank failed to state a claim for conversion under Puerto Rico law because it failed to plead facts demonstrating the Defendants' "malicious and wrongful" intent in the act, and that the allegations sounded in contract, not in tort.[2] *See* (Docket No. 169 at 18). Under Puerto Rico law, the intentional tort of conversion is "'not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and enjoyment.'" Montalvo v. LT's Benjamin Recs., Inc., 56 F.Supp.3d 121, 139 (D.P.R. 2014) (*quoting* Hull Dobbs Co. v. Superior Court*,* 81 [P.R. Dec.] 214, 222 [81 D.P.R. 221] (1959)) (finding the allegation that Plaintiffs failed to pay royalties owed to defendants did not demonstrate malicious or wrongful intent).

---

[2] The reserve Bank correctly points out that the Court has not yet determined whether Puerto Rico law shall apply to their state law claims. *See* (Docket No. 177 at 23). For the purposes of the Motion to Dismiss, the Court analyzes the conversion cause of action under Puerto Rico law. However, notably, the tort of conversion under California law does not contain the same element of "malicious and wrongful" intent. *See* Taylor v. Google, LLC, No. 22-16654, 2024 WL 837044, at *1 (9th Cir. Feb. 28, 2024) ("Under California law, conversion has three elements: (1) the plaintiff owns or has a right to possess the personal property; (2) the defendant disposes of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages.") (internal citations omitted).

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -27-

The Reserve Bank argues that the Complaint contains sufficient facts to support a reasonable inference that the Defendants maliciously and wrongfully deprived the Federal Reserve of its lawful property. The Court agrees. The Complaint alleges that Benworth PR "was not formed for a reasonable business purpose," and that Defendants were aware of "serious risks to Benworth FL's financial situation" and that "the Reserve Bank had a substantial secured claim that would become a recourse obligation upon an event of default." (Docket No. 1 at 25). Knowing this, Benworth FL transferred millions of dollars to Benworth PR for services that are not a reasonably equivalent value" which left "Benworth FL undercapitalized and unable to satisfy its debts to the Reserve Bank." (Id.). Based on these facts, it is plausible to infer that Defendants engaged in tortious conversion by exercising dominion over PPP Collateral over which the Reserve Bank holds a first-priority lien. *See* United States v. GZ Constr. St, Inc., 155 F.Supp.3d 147 (D.P.R. 2015) (finding it was plausible to infer president's intent, maliciousness, and desire to defraud by transferring title to taxpayer's only asset, an aircraft which was subject to seizure by the Internal Revenue Service (IRS) pursuant to its lien, to his son, which was sold to a third party, the proceeds of which were used to pay taxpayer's other creditors' claims, instead of known tax obligation to the IRS).

Civil No. 23-01034(GMM)*cons.*
Civil No. 24-01313 (GMM)
Page -28-

Further, the Court finds the facts alleged demonstrate that the Reserve Bank's asserted cause of action for conversion is based on the Defendants' conduct in transferring PPP loan collateral which the Reserve Bank presents as "separate and independent from Benworth FL's defaults on its obligations to the Reserve Bank under the Program Agreement." (Docket No. 1 at 30). Unlike in <u>Montalvo</u>, which centered on a failure to pay royalties under a contract, here, the Reserve Bank alleges the conversion of its property separate from its claims for breach of contract. Given that the Reserve Bank has sufficiently pled that Benworth FL had an obligation to it, by virtue of a first-priority lien over PPP Collateral, the Reserve Bank has met the pleading standard for its claim of conversion.

D. <u>Shotgun Pleading</u>

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Such statement "needs only enough detail to provide a defendant with fair notice of what the. . .claim is and the grounds upon which it rests." <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 11-12 (1st Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 10(b),

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -29-

     so would promote clarity, each claim founded on a
     separate transaction or occurrence—and each defense
     other than a denial—must be stated in a separate count
     or defense.

Fed. R. Civ. P. 10(b).

    These rules exist so that the party being sued "'can discern what [the plaintiff] is claiming and frame a responsive pleading.'" Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021) (*quoting* Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015)). A defendant must be able to "understand 'the grounds upon which each claim [against him] rests.'" Id. at 1326 (*quoting* Weiland, 792 F.3d at 1322-23); *see also* Ocasio-Hernández, 640 F.3d at 12 ("an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim.").

    Defendants argue the Court should dismiss the Complaint because it is an impermissible shotgun pleading. *See* Sanchez-Sifonte v. Fonseca, CV 22-1444 (RAM), 2023 WL 5753677, at *2 (D.P.R. Sept. 6, 2023) (*quoting* Barmapov, 986 F.3d at 1324) ("A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure Rule 8(a)(2) or Rule 10(b), or both."). Specifically, they argue the Reserve Bank has violated the Federal Rules of Civil Procedure because the Complaint (1) contains multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire

complaint; and (2) asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *See* (Docket No. 169 at 19) (*citing* Sanchez-Sifonte, 2023 WL 5753677, at *2).

"Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities. . .and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits." Kuehl v. FDIC, 8 F.3d 905, 908 (1st Cir. 1993) (internal citation omitted) (stating that dismissal based on over-drafting would be an overly harsh penalty but affirming the lower court's dismissal on other grounds); *see also* Miranda v. United States, 105 F.App'x 280, 281 (1st Cir. 2004) ("'Dismissal [for noncompliance with Rule 8] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *quoting* Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).

Considering these principles, the Court cannot conclude that the Complaint is an impermissible shotgun pleading which warrants dismissal. Upon review of each of the causes of actions alleged in the Complaint, the Court cannot reasonably believe that Defendants

Civil No. 23-01034(GMM) *cons.*
Civil No. 24-01313 (GMM)
Page -31-

could be so confused as to be unable to respond to the substance
of the claims alleged. Not only does the Complaint give Defendants
notice as to the facts and claims alleged, the Court agrees with
the Reserve Bank that it also provides sufficient information to
discern without much difficulty which claim is applicable to which
defendant. *See* (Docket No. 177 at 26) ("¶¶ 65-67 (Benworth FL
liable for breach of contract); ¶¶ 92-99 (Benworth PR liable under
*alter ego* or successor liability); ¶¶ 104-105 (Mr. and Mrs. Navarro
liable under theory of veil piercing). As for the claims of actual
and constructive fraudulent transfer, rescission, and conversion,
it is plausible that all four Defendants are responsible.").

### IV.    CONCLUSION

For the forgoing reasons, *Defendant Benworth Capital
Partners, LLC's Motion to Dismiss the Federal Reserve's Complaint
and Complaint in Intervention* filed at Docket No. 169 is **DENIED**.

IT IS SO ORDERED
In San Juan, Puerto Rico, April 2, 2025.



s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE