**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,**<br><br>    Plaintiff<br><br>v.<br><br>**OTO ANALYTICS, LLC; BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,**<br><br>    Defendants. | Civil No. 23-01034 (GMM) *cons.*<br>Civil No. 24-01313 (GMM) |

**JOINT OPPOSITION TO PLAINTIFF-INTERVENOR
FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO COMPEL
DOCUMENTS AND COMMUNICATIONS OVER WHICH DEFENDANTS
IMPROPERLY ASSERT ACCOUNTANT-CLIENT PRIVILEGE [DE 250]**

**TO THE HONORABLE COURT:**

**COME NOW** defendants Benworth Capital Partners PR, LLC ("Benworth PR"), Benworth Capital Partners, LLC ("Benworth FL"), and Bernardo and Claudia Navarro ("Mr. and Mrs. Navarro" and, jointly with Benworth PR and Benworth FL, the "Defendants"), through the undersigned counsel, very respectfully file this opposition to the *Motion to Compel Documents and Communications Over Which Defendants Have Improperly Asserted Accountant-Client Privilege* (the "Motion) (D.E. 250) filed by Plaintiff-Intervenor the Federal Reserve Bank of San Francisco (the "Reserve Bank").[1]

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as in the Motion.

**PRELIMINARY STATEMENT**

The Reserve Bank continues to waste the resources of this Court, Defendants, and the U.S. government through unnecessary discovery disputes. As was contemplated at the time the Reserve Bank advanced funds to Benworth FL to originate PPP loans, the Reserve Bank will be repaid the outstanding amounts owed once the SBA resolves Benworth FL's requests for the SBA's guaranteed purchase of Benworth FL's outstanding PPP loan portfolio. In fact, since the Reserve Bank brought this claim alleging that Benworth FL owes it more than $66 million, the SBA has approved the guaranteed purchase of hundreds of PPP loans, resulting in a reduction of the amounts owed to the Reserve Bank to less than $50 million. Rather than allow the SBA to complete that process, the Reserve Bank has engaged in scorched-earth litigation tactics on discovery disputes with Defendants, wasting significant taxpayer dollars.

The Reserve Bank now asks the Court to deprive Defendants of their accountant-client privilege. Specifically, the Reserve Bank requests that the Court order Defendants and four non-parties to produce all documents and communications relating to the TPAs. The TPAs, which were produced by Defendants, reflect the professional judgment of accountants that the monies Benworth FL paid to Benworth PR comply with the reasonableness requirements of federal and Puerto Rico tax law. But the documents and communications involving Defendants' CPAs relating to those TPAs contain confidential accounting advice and are therefore immune from disclosure pursuant to the accountant-client privilege. The Reserve Bank raises several arguments concerning the scope of the accountant-client privilege, waivers of the privilege, and exceptions that render the privilege inapplicable, but they are unavailing. The Reserve Bank has not met its burden to prove that the accountant-client privilege does not apply here.

For the reasons detailed below, the Court should deny the Motion.

2

## ARGUMENT[2]

**I.      The Reserve Bank Seeks Documents and Communications Immune From Disclosure Under the Accountant-Client Privilege.**

Florida's accountant-client privilege "is designed to carry out the public policy of being able to consult an attorney or accountant without fear that the resultant communications may become public." *Affiliated of Fla., Inc. v. U-Need Sundries, Inc.*, 397 So. 2d 764, 766 (Fla. 2d DCA 1981). The accountant-client privilege provides Defendants with the right "to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant when such other person learned of the communications because they were made in the rendition of accounting services to the client." § 90.5055(2), Fla. Stat. The privilege extends to not only communications between the accountant and client, but also to communications with those "to whom disclosure is in furtherance of the rendition of accounting services to the client" as well as other persons who are "reasonably necessary for the transmission of the communication." § 90.5055(1)(c), Fla. Stat.

The Reserve Bank argues that "TPAs, draft TPAs, and communications regarding TPAs" do not "contain the kind of confidential accounting guidance" protected by the accountant client-privilege for three reasons. *See* Motion, § II. None have merit. First, the Reserve Bank argues the privilege does not extend to TPA-related documents and communications "because, as opposed to typical accounting services providing a client with advice on how to prepare financial reports in compliance with accounting rules, a TPA documents and assesses the basic facts of intercompany transactions to draw conclusions about their fair market value." *Id*. at ¶ 14. That is a misleading

---

[2] After thorough legal analysis, Defendants agree with the Reserve Bank that a choice of law analysis is not necessary to resolve the Motion because there is no actual conflict between the laws of Florida and Puerto Rico concerning the accountant-client privilege issues raised in the Motion. *See* Motion at 7, n. 14. Thus, Defendants analyze the issues raised in the Motion under Florida law.

characterization of the purpose of the TPAs. While it is true that a TPA assesses the value of intercompany transactions, the TPAs here were intended to provide documentation and support "for purposes of evaluating compliance with the reasonableness" requirements of federal and Puerto Rico tax laws. *See* **Ex. G** of Motion at Defendants_00226814. There can be no dispute that documents and communications between a client and its accountants related to tax matters are "the kind of confidential accounting guidance" the privilege was designed to protect. Indeed, Congress enacted a statutory privilege over confidential documents and communications relating to tax advice from, *inter alia*, CPAs. *See* 26 U.S.C. § 7525; *see also Pasadena Ref. Sys. Inc. v. United States*, 2011 WL 1938133, at *3 (N.D. Tex. Apr. 26, 2011) (holding that documents and communications concerning tax advice, including emails reflecting the consequences of certain deductions and pricing calculations as well as draft exhibits regarding the valuation of companies, were privileged because they were made "for the purpose of rending tax advice").[3] Because TPAs and related communications concern tax advice, they fall within the scope of the accountant-client privilege.

Second, the Reserve Bank argues that the accountant-client privilege does not apply because the TPAs disclaim that they are "accounting opinions." Motion at ¶ 15. But the Reserve Bank has cited no authority for the sweeping proposition that only formal accounting opinions qualify as accounting services. In any event, the Reserve Bank misses the mark. As the Motion

---

[3] The Reserve Bank also asserts that the privilege should not apply because Defendants have not cited authority treating TPAs and related communications as privileged. The fact that a state or federal court has not analyzed the application of Florida's accountant-client privilege to TPAs does not mean that the privilege does not apply. In fact, courts have recognized generally that "there is a dearth of case law on Florida's accountant-client privilege." *See List Indus., Inc. v. Wells Fargo Bank, N.A.*, 2021 WL 319661, at *3 (S.D. Fla. Feb. 1, 2021). Moreover, the Reserve Bank has cited no authority that forecloses, as a matter of law, application of the accountant-client privilege to TPAs and related communications.

reflects, Defendants have produced all final versions of the TPAs. Accordingly, Defendants are not claiming that the TPAs themselves are protected by the accountant-client privilege. Rather, Defendants contend that communications concerning the TPAs that contain accounting advice from Defendants' CPAs, such as analyses of Defendants' financial data, as well as drafts of the TPAs that include accounting advice are privileged. Such documents and communications fall within the scope of Florida's accountant-client privilege. *See In re Hillsborough Holdings Corp.*, 176 B.R. 223, 236 (M.D. Fla. 1994) (holding that "notations" made by "accountants on non-privileged documents were privileged and non-discoverable, as they reflected [the accountants'] analysis of the financial data").

Finally, with respect to only Forvis, the Reserve Bank asserts that Defendants cannot claim the accountant-client privilege because Defendants did not list Forvis in response to an interrogatory asking Defendants to identify their accountants. Motion at ¶ 16. The fact that Defendants did not list Forvis as their accountants does not mean Forvis did not provide accountant services when preparing the TPAs. As the TPAs state, they represent Forvis's "professional judgment" that Benworth FL's and Benworth PR's "transfer pricing practices" meet federal tax requirements, "thereby avoiding the potential transfer pricing penalties." *See* **Ex. G** of Motion at Defendants_00226817. Such professional judgment clearly involves accounting advice.

Moreover, Florida's accountant-client privilege also extends to documents and communications exchanged between the accountant and other persons "to whom disclosure is in furtherance of the rendition of accounting services to the client" and those who are "reasonably necessary for the transmission of the communication." § 90.5055(1)(c), Fla. Stat. Documents and communications exchanged between Forvis and Defendants' CPAs were in furtherance of the accounting services provided by the CPAs to Defendants and Forvis was reasonably necessary for

the CPAs to provide accounting services to Defendants. The same would be true for internal communications among Forvis employees to the extent those communications concern the accounting services provided by Defendants' CPAs. Thus, the accountant-client privilege applies to documents and communications involving Forvis.

## II.    Defendants Have Not Waived Their Accountant-Client Privilege.

Next, the Reserve Bank argues that Defendants waived the accountant-client privilege in two ways. First, the Reserve Bank asserts that Defendants waived their privilege by issue injection. Second, the Reserve Bank claims the privilege was waived because Defendants produced certain TPA-related documents and communications in discovery. Neither argument supports the conclusion that Defendants waived their accountant-client privilege.

### A.    Defendants did not waive their accountant-client privilege through issue injection.

The Reserve Bank first argues Defendants waived the accountant-client privilege objection through issue injection. Motion, § III.a. "It is true that the privilege can be waived by a party if it injects into a case an issue that requires an examination of otherwise protected communications." *Choice Rest. Acquisition Ltd. v. Whitley, Inc.*, 816 So. 2d 1165, 1167 (Fla. Dist. Ct. App. 2002). "As a general rule, a party does not waive the accountant-client and attorney-client privileges by simply bringing or defending a lawsuit." *In re Hillsborough Holdings Corp.*, 176 B.R. at 239. "To waive a privilege, a party must do more than merely deny the opposing party's accusations, but must affirmatively raise the issue involving privileged communications." *Id*.

Defendants did not waive their accountant-client privilege over TPA-related documents and communications by simply defending themselves against the Reserve Bank's claims. By alleging that the monies paid by Benworth FL to Benworth PR were fraudulent transfers, the Reserve Bank — not Defendants — injected into this case the issue of whether the transfers were

6

made for reasonably equivalent value and for the payment of a legitimate debt. The fact that Defendants may use the TPAs themselves as evidence in support of their defenses does not mean that they must disclose privileged communications to prove the defense. Instead, for there to be a waiver by issue injection, it must be clear that the party invoking the privilege will have to disclose or describe confidential communications. *See Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, 2011 WL 2682958, at *3 (S.D. Fla. July 11, 2011) (explaining that issue injection "applies only when the disclosing party attempts to prove a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication"). Thus, issue injection applies only "in the narrow circumstance where a party puts an attorney-client communication, the attorney-client relationship, or attorney advice at issue." *Penrod Bros., Inc. v. City of Miami Beach, Fla.*, 2024 WL 5007834, at *3 (S.D. Fla. Dec. 6, 2024).[4]

None of Defendants' affirmative defenses disclose or describe an accountant-client communication, the accountant-client relationship, or accountant advice at issue. At no time have Defendants affirmatively raised an argument that the transfers were based upon the representations of accountants or in reliance on accountants. Thus, Defendants will not need to disclose what was communicated to them by their accountants to establish that the transfers were done in good faith. *See Long v. Murphy*, 663 So. 2d 1370, 1372 (Fla. Dist. Ct. App. 1995) (concluding that privilege was not waived because, "[i]n order to prove his case, Long does not need to resort to proof of privileged communications with his attorneys"). The Reserve Bank recognizes as much by arguing that the TPAs were prepared "to justify Benworth FL ***pre-paying*** Benworth PR for its purported allocation of the Benworth entities' combined profits from PPP servicing operations." Motion at ¶

---

[4] The Reserve Bank has acknowledged that "Florida law demonstrates that waiver of the accountant-client privilege is treated similarly to waiver of the attorney-client privilege." Motion at 11, n. 20.

21 (emphasis added). As a matter of common sense, Defendants could not have relied on accountant advice at the time of making the transfers when such advice was rendered *after* the transfers. Under these circumstances, Defendants have not waived their accountant-client privilege by issue injection.

> **B.    Defendants did not waive their accountant-client privilege through voluntary disclosure.**

The Reserve Bank also argues that Defendants waived their accountant-client privilege because they produced "multiple final and draft TPAs and communications relating to TPAs in this litigation." Motion, § III.b. The production of those documents does not constitute a waiver of every confidential accountant-client communication that touches upon the TPAs. Any waiver is limited to the documents produced. *See Petzold v. Castro*, 365 So. 3d 1199, 1202-03 (Fla. Dist. Ct. App. 2023). Moreover, the disclosure of documents not protected by the accountant-client privilege "could not constitute a waiver of their right not to disclose documents which [are] privileged." *Affiliated of Fla.*, 397 So. 2d at 766; *see also In re Hillsborough Holdings Corp.*, 176 B.R. at 236-37 (finding no waiver of accountant client privilege over documents reflecting the accountant's underlying analyses of his opinions even though accountant's opinions were disclosed publicly).

In any event, Defendants have not asserted that every TPA-related document or communication is subject to the accountant-client privilege. As noted in the email exchange attached to the Motion as Exhibit D, counsel for Defendants explained "that they are not claiming privilege over final versions of the transfer pricing studies, but that they are claiming privilege over some drafts that include confidential communications or comments from a CPA, specifically about financial advice to Benworth related to taxes." D.E. 250-4 at 6-7. And in response to the Reserve Bank asking whether Defendants are asserting that all communications with CPAs about

the transfer pricing studies are privileged, Defendants answered, "that the determination was communication-specific" and would be asserted only "to the extent it involves confidential communication related to accounting advice." *Id*. Defendants have thus not waived the accountant-client privilege as to all documents and communications relating to the TPAs.

**III.    The Fraud Exception to the Accountant-Client Privilege Does Not Apply.**

The Reserve Bank next argues that the Court should deprive Defendants of their accountant-client privilege based solely on its fraudulent transfer allegations. Motion, § V. Mere allegations, however, are not enough. *See Joba, Inc. v. Voicecom Telecommunications, LLC*., 2005 WL 8156030, at *1 (S.D. Fla. July 25, 2005) ("Notwithstanding the factual allegations of the Plaintiff in this case, this court has insufficient factual information at this point in time to make a determination as to whether or not the Defendant in this case has used the accountant-client relationship to promote a fraud."). Florida law requires that the fraud exception be established through "prima facie evidence" showing that Defendants used the relationships with their accountants "to promote an intended or actual fraud." *Deloitte, Haskins & Sells v. S. Fin. Holding Corp.*, 566 So. 2d 906, 906 (Fla. Dist. Ct. App. 1990). "That showing must have some foundation in fact, for mere allegations of criminality are insufficient to warrant application of the exception." *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987).

The Reserve Bank has presented no evidence to make a prima facie showing that the fraud exception applies to Defendants' accountant-client privilege. For this reason alone, the Court should deny application of the exception. But if the Court concludes that it need not consider actual evidence but instead only allegations, then the fraud exception still does not apply. For one, Defendants have denied the allegations of the Complaint. *See* D.E. 234-37. If allegations are sufficient to make a prima facie showing of the existence of the exception, then allegations must

also be sufficient to rebut the prima facie allegations.[5] Moreover, unlike in *Kadiyala v. Pupke*, 2019 WL 4262574 (S.D. Fla. Sept. 9, 2019), the case upon which the Reserve Bank relies, the Reserve Bank has not alleged that Defendants' accountants participated in any fraud. Nor is there any allegation (or proof) that Defendants used their accountants to engage in fraudulent conduct.

There is simply no factual basis for this Court to infer that the fraud exception applies. The Reserve Bank has not proffered any evidence that Defendants engaged in fraudulent conduct when they sought the advice of accountants, that Defendants were planning such conduct when they sought the advice of accountants, or that they committed a fraud subsequent to receiving the benefit of accountants' advice. Under these circumstances, the fraud exception does not apply. *See In re Grand Jury Investigation*, 842 F.2d at 1226 (explaining that for the fraud exception to apply, as a threshold matter, "there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice").

The Reserve Bank also argues that the fraud exception should apply because it is entitled to documents and communications relevant to Defendants' intent and allegedly fraudulent conduct. Motion at ¶ 27. However, "the mere relevance of the information is not sufficient grounds to override this privilege." *Choice Rest. Acquisition Ltd*, 816 So. 2d at 1168. Thus, the relevancy of the information sought is irrelevant to the application of the fraud exception.

---

[5] The Reserve Bank cites *BNP Paribas v. Wynne*, 967 So. 2d 1065 (Fla. Dist. Ct. App. 2007) for the proposition that Defendants must present evidence to rebut a prima facie showing. However, the burden to present evidence shifts to Defendants only after the "party invoking the crime-fraud exception has" satisfied "the initial burden of presenting prima facie ***evidence*** of the existence of the exception." *Id*. at 1067 (emphasis added).

**IV.    No Pressing Public Interest Overrides Defendants' Accountant-Client Privilege.**

Finally, the Reserve Bank argues that, if Puerto Rico law controls, the "pressing public interest" exception applies. Motion, § V. According to the Reserve Bank, a pressing public interest exists because its "claims concern fraud implicating public funds and the proper administration of the PPPLF and PPP, which were put in place by Congress and the Board of Governors of the Federal Reserve to benefit small businesses affected by COVID-19." *Id*. The Reserve Bank adds, "[g]overnmental efforts to uncover and prosecute fraud in COVID relief programs are still actively pursued, underscoring the urgency of the public's interest in safeguarding these funds." *Id*. This argument is meritless.

Although it is true that the government is still investigating and prosecuting fraud in COVID relief programs, those investigations and prosecutions have nothing to do with the Reserve Bank's claims here. As described in the April 2024 report issued by the COVID-19 Fraud Enforcement Task,[6] COVID-19 fraud prosecutions have focused on individuals and businesses who fraudulently obtained or used PPP loans. None of the Defendants have been accused of fraudulently obtaining or misusing PPP loans. The Reserve Bank itself has made no such allegations. And the Reserve Bank fails to draw any connection between its claims and the government's efforts to combat fraud in COVID-19 relief programs. Nor does the Reserve Bank explain how communications between Defendants and their accountants will safeguard public funds. Instead, the Court is left with only the conclusory and unsubstantiated statements of the Reserve Bank's counsel. *See Puerto Rico Asphalt, LLC v. Betteroads Asphalt, LLC*, 2020 WL 2843031, at *8 n. 10 (D.P.R. May 29, 2020) ("[I]t is well settled that statements and arguments by counsel are not evidence.") (citing *Sosa-Pérez v. Sessions*, 884 F.3d 74, 83 (1st Cir. 2018)). That

---

[6] The report is accessible here: https://www.justice.gov/coronavirus/media/1347161/dl?inline.

is not enough to deprive Defendants of their accountant-client privilege.

Before making accusations of misuse of public funds, the Reserve Bank should consider the unnecessary attorneys' fees and costs it has incurred and continues to incur in prosecuting this action. The Reserve Bank knows full well that it will be repaid the amounts owed by Benworth FL once the SBA completes its review of Benworth FL's requests for guaranteed purchase of its outstanding PPP loan portfolio. Resolution of those guarantee purchase requests will result in the SBA repaying the funds advanced by the Reserve Bank to Benworth FL. Indeed, since the Reserve Bank filed its Complaint, the SBA's guarantee purchase of PPP loans originated by Benworth FL has reduced the amounts owed to the Reserve Bank from more than $66 million to less than $50 million.[7] If the Reserve Bank is concerned about safeguarding public funds, then instead of incurring in unnecessary attorney's fees and costs derived of public funds in prosecuting this action, it should stay the litigation pending completion of the SBA's review of Benworth FL's guaranteed purchase requests.

**WHEREFORE**, Defendants respectfully request that this Honorable Court deny the Motion.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing reply was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 18th day of June 2025.

---

[7] The data supporting this statement is available in the PPPLF Transaction-specific Disclosures report published on June 11, 2025, on the website for the Federal Reserve. The report can be accessed via the following link: https://www.federalreserve.gov/monetarypolicy/ppplf.htm.

**KOZYAK TROPIN & THROCKMORTON**
2525 Ponce de Leon Blvd., 9th Fl.
Miami, FL 33134
(305) 372-1800

s/ Jorge L. Piedra (admitted *pro hac vice*)
jpiedra@kttlaw.com
s/ Michael R. Lorigas (admitted *pro hac vice*)
mlorigas@kttlaw.com
s/ Rasheed K. Nader (admitted *pro hac vice*)
rnader@kttlaw.com

**Ferraiuoli**
PO Box 195168
San Juan, PR 00919-5168
Tel.: 787.766.7000
Fax: 787.766.7001

*s/ Roberto A. Cámara-Fuertes*
USDC-PR 219002
rcamara@ferraiuoli.com

*s/ Jaime A. Torrens-Dávila*
USDC-PR 223810
jtorrens@ferraiuoli.com

*s/ Mónica Ramos Benítez*
USDC-PR 308405
mramos@ferraiuoli.com
*Counsel for Benworth Capital Partners LLC and Bernardo Navarro*

**CASELLAS ALCOVER & BURGOS PSC**
PO Box 364924
San Juan, PR 00936-4924
Tel. (787) 756-1400
Fax. (787) 756-1401
rcasellas@cabprlaw.com
cloubriel@cabprlaw.com

/s/ Carla S. Loubriel Carrión
USDC-PR Bar No. 227509

Ricardo F. Casellas
USDC-PR Bar No. 203114
*Counsel for Benworth Capital Partners PR LLC and Claudia Navarro*

13