IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,** <br> Plaintiff <br><br> v. <br><br> **BENWORTH CAPITAL PARTNERS PR, LLC; BENWORTH CAPITAL PARTNERS, LLC; BERNARDO NAVARRO and CLAUDIA NAVARRO,** <br> Defendants | Civil No. 23-01034 (GMM) |

**PLAINTIFF-INTERVENOR FEDERAL RESERVE BANK OF SAN FRANCISCO'S REPLY TO DEFENDANTS' JOINT OPPOSITION TO THE MOTION TO COMPEL DOCUMENTS AND COMMUNICATIONS OVER WHICH DEFENDANTS IMPROPERLY ASSERT ACCOUNTANT-CLIENT PRIVILEGE**

**COMES NOW** Plaintiff Federal Reserve Bank of San Francisco (the "Reserve Bank"), by and through its undersigned counsel, and respectfully files, with prior leave of the Court and pursuant to Local Civil Rule 7(c), this reply ("Reply") to Defendants' *Joint Opposition to Plaintiff-Intervenor Federal Reserve Bank of San Francisco's Motion to Compel Documents and Communications Over Which Defendants Have Improperly Asserted Accountant-Client Privilege* (ECF No. 270, the "Opposition" or "Opp."), in further support of the Reserve Bank's *Motion to Compel Documents and Communications Over Which Defendants Have Improperly Asserted Accountant-Client Privilege* (ECF No. 250, the "Motion").

## PRELIMINARY STATEMENT

The Opposition seeks to distract from the straightforward privilege questions at issue in the Motion, largely by impugning the Reserve Bank's motives for seeking redress from this Court. At the outset and lest there be any question: the only purpose of the Motion is to secure the production of documents the Reserve Bank believes are squarely relevant, clearly nonprivileged, and otherwise discoverable. The Opposition's counterfactual claims are baseless and without merit.

The Opposition's misdirection continues on the substance, citing a federal tax privilege not at issue in this case and misstating applicable law on the scope of, and exceptions to, Florida's accountant-client privilege. The Court should brush aside that misdirection and focus on what matters: Defendants admit they plan to use the TPAs to justify the fraudulent transfers at the heart of this case in support of their affirmative defenses, while inexplicably seeking to shield any informed inquiry about the TPAs, including under the novel theory that a *post hoc* justification for improper fraudulent transfers somehow deserves special protection. Defendants' position is an affront to the purpose for granting litigants limited evidentiary privileges. The Court should not countenance such gamesmanship and should grant the Motion.

1

I.    **<u>Defendants Have Not Met their Burden that TPA-Related Documents are Privileged.</u>**

It is Defendants' burden to show their entitlement to a "global" accountant-client privilege—a privilege that "must be strictly construed"—over documents related to transfer pricing analyses ("TPAs"). *See Probinsky v. Probinsky*, No. 13-cv-10097, 2014 WL 12621968, at *1–2 (S.D. Fla. Feb. 3, 2014) (citing Fla. Stat. § 473.316); Motion ¶ 4 n. 13 (citing the Third-Party Firm Kaufman's understanding of Defendants' "global invocation of privilege"). Defendants have failed to prepare customary privilege logs of documents withheld from the Third-Party Firms, to explain why Forvis (the firm authoring several TPAs) does not appear on Defendants' own privilege log, or even to produce applicable engagement letters for their longtime accountant Emil Sotolongo. *See* Motion ¶¶ 14–19. In sum, they have fallen far short of their burden.[1]

Defendants assert that TPA-related communications and drafts are "accounting advice" protected by Florida's statutory privilege because TPAs address "the reasonableness" of federal and Puerto Rico tax law and "[t]here can be no dispute that documents and communications between a client and its accountants related to tax matters" are privileged. Opp. at 4–5. Defendants primary authority for this proposition is the federally authorized tax practitioner privilege under 26 U.S.C.A. § 7525—a privilege not applicable or asserted here.[2]

Next, Defendants try to sidestep disclaimers written into the Forvis TPAs that the documents are not "accounting opinions" by arguing that the underlying communications "contain

---

[1]    Defendants also misconstrue the underlying purpose of Florida's accountant-client privilege, Opp. at 3, confusing the policy's means (limited protection from disclosure) for the ends (promoting candor in clients' consultations with licensed, ethics-bound professionals). *See Worley v. Cent. Fla. Young Men's Christian Ass'n, Inc.*, 228 So. 3d 18, 25 (Fla. 2017) ("The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." (citation omitted)). Indeed, the Reserve Banks' interest in the communications sought though the Motion is, in part, whether Defendants were forthright in representations to their CPAs.

[2]    Defendants also misstate the scope of the tax practitioner privilege, which does not cover all documents "relating to tax advice" from CPAs. *See, e.g., Valero Energy Corp. v. United States*, 569 F.3d 626, 631 (7th Cir. 2009) ("[I]t's not enough that the communications raised federal tax topics . . . worksheets containing financial data and estimates of tax liability [and] deductions and the calculations of gains and losses [are] not covered.").

accounting advice from Defendants' CPAs, such as analyses of Defendants' financial data, as well as drafts of the TPAs." Opp. at 5. But not only can Defendants not rely on *ipse dixit* statements to meet their burden, their own cited authority holds that no privilege attaches to documents simply because a CPA received or annotated them. *See id.* (citing *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 236 (M.D. Fla. 1994)). If Defendants continue to maintain that certain information is privileged, their own cases further emphasize the need for privilege log-like justifications of any assertion (something they fail to do entirely). *See id.*; *see also PDR Grayson Dental Lab, LLC v. Progressive Dental Reconstruction, Inc.*, 203 So. 3d 213, 215 (Fla. Dist. Ct. App. 2016) (citing *Hillsborough* and noting that a producing party can "avail itself of the customary procedures for asserting privilege on a document-by-document basis"). In any case, various communications and drafts containing information over which Defendants now claim privilege were already produced to the Reserve Bank, so any privilege has been waived. *See* Motion ¶¶ 23–24; *infra* at 6–8.

In sum, Defendants have failed to meet the burden they assumed in asserting the privilege.

## II.   <u>Defendants' Demonstrate Exactly Why 'Sword-and-Shield' Tactics are Not Permitted.</u>

The Opposition makes clear that Defendants plan to rely on the TPAs to justify their affirmative defenses that the fraudulent transfers at the heart of this case were "reasonable," ordinary-course transactions blessed by licensed CPAs. Opp. at 6–8. Yet Defendants now seek to prevent the Reserve Bank from testing the basis for those conclusions.

Defendants first misconstrue the Reserve Bank's argument. The Reserve Bank is not claiming that TPAs were injected into the case simply because it sued Defendants. Rather, *Defendants* injected the issue into the case by asserting affirmative defenses that rely on the TPAs, which the Opposition confirms remains true. Take but three examples:

- Although Defendants play coy about exactly how they intend to use TPAs, they admit that they "may use the TPAs themselves as evidence." Opp. at 7.

3

- Defendants do not contest that the TPAs were (and will be) used to justify the transfers by assigning a value to Benworth PR's services or to show the transfers were made in good faith, in the ordinary course of business, for fair value, to pay off a purportedly legitimate obligation by Benworth FL. *See* Motion ¶¶ 21–22; Opp. at 6–7; *see also* ECF No. 234 ("Benworth FL Answer"), at 15–16 (raising affirmative defenses).
- In response to interrogatories, Defendants cited the Forvis TPAs as containing "[a]n in-depth description of Benworth FL's management structure." *See* Motion Ex. C, Interrog. No. 7.[3]

These examples are exactly "the narrow circumstance where a party puts an [accountant]-client communication, the [accountant]-client relationship, or [accountant] advice at issue." *See* Opp. 7 (citing *Penrod Bros., Inc. v. City of Miami Beach, Fla.*, 2024 WL 5007834, at *3 (S.D. Fla. Dec. 6, 2024)).

Defendants also argue issue waiver only applies if "it [is] clear that the party invoking the privilege will have to disclose or describe confidential communications." Opp. at 7. That is a misstatement of the law.[4] Instead, the question is whether Defendants have "inject[ed] into the case an issue that in fairness requires an examination of otherwise protected communications." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) ("Having gone beyond mere denial, affirmatively to assert good faith, USX injected the issue of its knowledge of the law"); *see also Christenbury v. Locke Lord Bissell & Liddell, LLP*, 285 F.R.D. 675, 681–82 (N.D. Ga. 2012) (citing *Cox*). As demonstrated above and in the Motion, Defendants have done precisely that in affirmatively raising defenses that the transfers were, as the TPAs purport to justify, made in good faith, in the ordinary course of business, for fair value, to pay off a purportedly legitimate obligation. *Cf. Cox*, 17 F.3d at 1419 (a party "need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way").

---

[3]   The Reserve Bank is not arguing that this interrogatory response alone effected a privilege waiver, but the response indicates the degree to which Defendants are likely to rely on the TPAs at trial for any number of issues.

[4]   Even if Defendants' view of the law were right (and it is not), as described above, Defendants have already placed their relationships with CPAs squarely at issue by raising these defenses and producing the TPAs in support.

If Defendants were correct that they could selectively choose which privileged documents or communications to rely on in their defense, the Court would have no role in analyzing whether issue injection occurs at all.  As the First Circuit observed, "[w]ere the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process."  *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003) (approving of the result in *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)).  Defendants chose to produce the TPAs, waiving whatever privilege claim they might have raised, along with various communications showing their accountants' in-depth advice on the subject.[5]  Having offered up this evidence, Defendants cannot now shield the underlying analysis (or select unfavorable documents) from inquiry.[6]

The Court should not permit Defendants to use the privilege to dodge the question of whether TPAs were genuine analyses or simply *post hoc* rationalizations for a fraudulent transfer.

### III.   Defendants Have Voluntary Waived Any Privilege over TPA-Related Documents.

Even if Defendants were not seeking to use the TPAs to defend themselves (as they admit they are), their clear waiver of any accountant-client privilege—by producing significant communications between CPAs and other professionals commenting on and about the TPAs— provides an independent basis to grant the Motion.  *See* Motion ¶¶ 23–24.

In response, Defendants argue that "any waiver is limited to the documents produced," and no broader subject-matter waiver applies.  Opp. at 8.  That is just wrong.  Florida law is clear that,

---

[5]    The Forvis TPAs state that they are not intended to be relied upon by any other party.  *See* Motion Ex. G at 10.  The Forvis' engagement letters with Benworth FL regarding the TPAs, which can be provided to the Court upon request, state that the TPAs are not intended to be distributed to or relied upon by any other party.

[6]    Defendants' position would permit a party asserting an advice-of-counsel defense to produce only a formal statement by the attorney and withhold underlying communications with the attorney on the same subject—precisely what Florida courts do not allow.  *See, e.g.*, *Lender Processing Servs., Inc. v. Arch Ins. Co.*, 183 So. 3d 1052, 1062– 64 (Fla. Dist. Ct. App. 2015) (holding that reliance on attorney affidavit to show lack of authority to settle waived privilege over attorney's underlying communications with the client about authority to settle).

where privilege is waived, the wavier applies to communications on the same "matter." *See* Fla. Stat. Ann. § 90.507; *Alliant Ins. Servs., Inc. v. Riemer Ins. Grp.*, 22 So. 3d 779, 781 (Fla. Dist. Ct. App. 2009); *Hoyas v. State*, 456 So. 2d 1225, 1228–29 (Fla. Dist. Ct. App. 1984).

Defendants cite *Petzold* to refute this blackletter proposition.  Opp. at 8.  But *Petzold* merely held that the *inadvertent* disclosure of a single privileged email that was *irrelevant to the claims and defenses* in the case does not waive privilege over "all attorney-client communications with that counsel's entire office."  *See Petzold v. Castro*, 365 So. 3d 1199, 1202–03 (Fla. Dist. Ct. App. 2023).  No part of that extreme fact pattern applies here.  First, there has been no inadvertent disclosure—Defendants do not dispute their disclosure of apparently privileged documents was intentional or that the communications are relevant to this case.  Second, Defendants have produced numerous documents revealing the very type of information they now claim is privileged. *See, e.g.*, Motion Ex. J; Defendants_00297611; Defendants_00297613; Defendants_00297628 (Up Consulting draft TPA dated April 1, 2022 and Emil Sotolongo's annotations and commentary on same shared via April 6–7, 2022 email from Mildred Avila); Defendants_00252438 (October 11, 2022–March 1, 2023 emails between Forvis, Sotolongo, and Mr. Navarro regarding regulatory deadline for 2022 Forvis TPA); Defendants_00252576 (March 7–31, 2023 emails between Forvis and Sotolongo regarding information underlying 2022 Forvis TPA).[7]  Finally, the Reserve Bank is not seeking every document held by the Third-Party Firms, but only those that directly bear on the TPAs at issue.

Defendants cannot intentionally disclose some TPA-related communications with their CPAs (much less attempt to use them for defensive purposes) while strategically withholding

---

[7]    The Reserve Bank is willing to provide the Court, under seal, with these additional examples demonstrating waiver of any CPA privilege.

others.[8]  *See In re Keeper of Recs.*, 348 F.3d 16, 24 (1st Cir. 2003); *see also Triad Constr. Co. v. Robert Half Int'l Inc.*, No. 1:13-cv-3581-ODE, 2015 WL 13358195, at *5 (N.D. Ga. Feb. 23, 2015) (holding that multiple emails disclosed to defendant were "clearly communications between [accountant] and [plaintiff] regarding the services for which [accountant] was retained" and such disclosure "waived the privilege with respect to those documents and documents concerning the same subject matter").  And again, Defendants' assurance that their privilege assertions are "communication-specific," Opp. at 9, is directly undermined by what Defendants apparently conveyed to the Third-Party Firms, namely that a "global invocation of privilege" applies to all documents sought by the subpoenas.  *See* Motion ¶ 4 n. 13 (citing Ex. F).

## IV.     The Crime-Fraud Exception Defeats the Privilege.

The Reserve Bank's fraudulent transfer claims were sufficiently pled in the Complaint, as recognized by this Court's order denying Defendants' motion to dismiss.  *See* ECF No. 225.  Those claims were closely tied to the Benworth FL-Benworth PR profit allocation, which Defendants hired their accountants to help justify.  *See* Motion ¶ 26.  Through discovery, the Reserve Bank learned of the existence of multiple TPAs and accountants that Defendants employed as part of their efforts to legitimize their scheme, which notably were procured months after the transfers at issue.  These allegations provide reasonable cause to believe that Defendants employed their accountants to provide a *post hoc* rationalization for the fraudulent transfers that the Reserve Bank sufficiently pled beyond the Rule 12(b)(6) stage.  As a result, the Reserve Bank has made a *prima*

---

[8]      Federal Rule of Evidence 502, regarding waiver of the attorney-client and work product privilege, would dictate the same result as Florida law.  *See Chick-fil-A v. ExxonMobil Corp.*, No. 08-cv-61422, 2009 WL 3763032, at *5 (S.D. Fla. Nov. 10, 2009) (finding an intentional and voluntary waiver and noting "it would be unfair to permit Exxon to produce work product supporting its contention . . .  while at the same time withholding other Exxon work product documents (if any) that may undermine this contention").

7

*facie* showing that Defendants used their accountants to further their fraudulent conduct, and the crime-fraud exception therefore extinguishes any privilege that might exist.

Defendants claim that "unproven allegations" without evidence that they "used their accountants to engage in fraudulent conduct" are insufficient to establish that Florida's crime-fraud exception applies. Opp. at 10–11. But courts in Florida and elsewhere have found a *prima facie* showing of fraud based on allegations comparable to those in the Complaint. *See Kadiyala v. Pupke*, No. 17-cv-80732, 2019 WL 4262574 (S.D. Fla. Sept. 9, 2019); *Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 373 (D. Md. 2005) (finding alleged tortious conduct sufficient to warrant the crime-fraud exception under Maryland law); *see also BOKF, N.A. v. BCP Land Co., LLC*, No. 6:14-cv-03025-MDH, 2015 WL 6436833, at *4–5 (W.D. Mo. Oct. 22, 2015) (finding amended complaint and the "timeline outlined in Plaintiff's motion" provided adequate factual basis to support *in camera* review); *In re Campbell*, 248 B.R. 435, 440 (Bankr. M.D. Fla. 2000) (finding a factual showing sufficient to invoke the crime-fraud exception based on allegation of intentionally fraudulent transfers).

Defendants attempt to distinguish *Kadiyala* because there the plaintiff had alleged the accountants participated in the fraud. Opp. at 10. But the distinction makes no difference under Florida law—*Kadiyala* only mentioned claims against the accountant after reasoning that:

> Plaintiff has explicitly alleged fraud *against Defendants* in the Complaint. Through the allegations in the Complaint, Plaintiff has made a *prima facie* showing of fraud and has sufficiently alleged that the assistance of the accountant . . . was obtained in furtherance of fraudulent activity *or was closely related to it.*

*Kadiyala* at *3 (emphasis added). In any case, *In re Grand Jury Investigation*, on which Defendants rely, notes that accountants "need not have been aware that [they were] assisting" in the fraudulent activity. 842 F.2d 1223, 1227 (11th Cir. 1987).

## V.    Puerto Rico's Public Interest Exception Defeats the Privilege.

If Puerto Rico law applies, yet another reason to deny Defendants any accountant-client privilege is that the public interest in rooting out misuse of public funds far outweighs Defendants' privacy in its consultations with CPAs. *See* Motion ¶ 28 (citing *Puerto Rico v. Marquez Cabarrouy*, No. KLCE0900135, 2009 WL 768566, at *26 (P.R. Cir. Feb. 27, 2009)). In response, Defendants repeatedly state the Reserve Bank "knows full well it will be repaid" on the amounts owed by Benworth FL once the SBA finishes its review of Benworth FL's guaranteed purchase requests. Of course, repayment is by no means a "foregone conclusion." At present, Benworth FL continues to owe nearly $50 million in unpaid advances to the Reserve Bank. Defendants' own Answers admit that the "SBA denied certain requests for guaranty purchase of Pledged PPP Loans," Benworth FL Answer ¶ 34, and raise, as an affirmative defense, that the "SBA den[ied] the guarantee purchase of Pledged Loans based on non-existent requirements of the PPP," *id.* at 19. As a result, the Reserve Bank's claims present a pressing public interest warranting disclosure under Puerto Rico law.

## CONCLUSION

For the reasons described herein and in the Motion, the Reserve Bank respectfully requests that this Court order Defendants and the Third-Party Firms to produce documents and communications related to the TPAs as requested by the Reserve Bank within seven (7) days from entry of such order.

9

Respectfully submitted in San Juan, Puerto Rico on June 25, 2025.

Thomas S. Kessler (admitted *pro hac vice*)
tkessler@cgsh.com

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
*Attorneys for the Federal Reserve Bank of*
*San Francisco*

s/ *Antonio L. Roig Lorenzo*
Antonio L. Roig Lorenzo
antonio.roig@oneillborges.com
USDC-PR No. 207712

s/ *Salvador J. Antonetti Stutts*
Salvador J. Antonetti Stutts
salvador.antonetti@oneillborges.com
USDC-PR No. 215002

s/ *Ubaldo M. Fernández Barrera*
Ubaldo M. Fernández Barrera
ubaldo.fernandez@oneillborges.com
USDC-PR No. 224807

s/ *Aníbal A. Román Medina*
Aníbal A. Román Medina
anibal.roman@oneillborges.com
USDC-PR No. 308410

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Attorneys for the Federal Reserve Bank of*
*San Francisco*

## CERTIFICATE OF SERVICE

I certify that on June 25, 2025, I filed a copy of the foregoing document using the Court's CM/ECF system, which will automatically generate a Notice of Electronic Filing to all counsel of record in this matter.

*s/Aníbal A. Medina Roman*